| | |
|---|---|
| **KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>Joshua A. Sussberg, P.C. (*pro hac vice* pending)<br>Matthew C. Fagen, P.C. (*pro hac vice* pending)<br>Oliver Paré (*pro hac vice* pending)<br>601 Lexington Avenue<br>New York, New York 10022<br>Telephone:     (212) 446-4800<br>Facsimile:      (212) 446-4900<br>joshua.sussberg@kirkland.com<br>matthew.fagen@kirkland.com<br>oliver.pare@kirkland.com | **COLE SCHOTZ P.C.**<br>Michael D. Sirota, Esq.<br>Warren A. Usatine, Esq.<br>Felice R. Yudkin, Esq.<br>Court Plaza North, 25 Main Street<br>Hackensack, New Jersey 07601<br>Telephone:     (201) 489-3000<br>msirota@coleschotz.com<br>wusatine@coleschotz.com<br>fyudkin@coleschotz.com |
| *Proposed Co-Counsel to the Debtors and the Debtors in Possession* | *Proposed Co-Counsel to the Debtors and the Debtors in Possession* |

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>EDDIE BAUER LLC, *et al.*,<br><br>                                        Debtors.[1] | Chapter 11<br><br>Case No. 26-11422 (SLM)<br><br>(Joint Administration Requested) |

**DECLARATION OF STEPHEN COULOMBE
IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING THE
DEBTORS TO USE CASH COLLATERAL, (II) GRANTING
ADEQUATE PROTECTION TO THE PREPETITION SECURED
PARTIES, (III) SCHEDULING A FINAL HEARING, (IV) MODIFYING
THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

I, Stephen Coulombe, hereby declare under penalty of perjury as follows:

1.  I am a Managing Director at Berkeley Research Group, LLC ("BRG"). I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of Interim and*

---

[1]  The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer. The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

*Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* (the "Motion") [Docket No. 7].[2] As discussed in greater detail below and in the Motion, the Debtors have an immediate need for the use of Cash Collateral.

2. Since October 2025, my team and I have been working closely with the Debtors to help determine a value-maximizing path forward for the Company. The scope of BRG's work has included assisting the Company with liquidity management, assessment of strategic alternatives, and contingency preparations in the event a chapter 11 filing became necessary. From the outset of BRG's retention, I have worked closely with the Debtors' management and advisors to evaluate the Debtors' liquidity and cash needs in the event of a chapter 11 filing. I was previously Chief Restructuring Officer of F21 OpCo, LLC, another SPARC subsidiary, as well as its affiliates. As a result, I am familiar with the Debtors' day-to-day operations, business affairs, financial performance, and restructuring efforts.

3. The statements in this Declaration are based on (a) my personal knowledge of the Debtors' operations and finances; (b) information from the Debtors' books, records, and relevant documents; (c) information supplied to me by members of the Debtors' management and their advisors; and/or (d) my opinions, experience, and knowledge as a restructuring professional. I am not being specifically compensated for this testimony other than through payments that are

---

[2] Descriptions of my experience and qualifications, the Debtors and their business, and the facts and circumstances supporting the Motion and giving rise to the Debtors' Chapter 11 Cases are set forth in greater detail in the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein. Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion, the Interim Order, or the First Day Declaration.

2

proposed to be received by BRG as a professional retained by the Debtors, subject to the Court's approval. I am authorized to submit this declaration on behalf of the Debtors. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### **The Debtors' Immediate Need for the Use of Cash Collateral**

4. Recent financial challenges led the Debtors to engage BRG. The Debtors faced multiple headwinds beginning in 2023, including (a) a shift in consumer preferences that resulted in a decline in customer demand below the historical trends; (b) a rise in inflation that increased the Debtors' costs of doing business, and (c) competition from non-U.S. retailers who took advantage of the longstanding "de minimis" tariff exemption. As a result, the Debtors have endured a sustained period of negative earnings.

5. Based on the work that my team and I have performed, I believe that the Debtors require immediate access to the Cash Collateral. Access to the Cash Collateral will enable the Debtors to (a) continue operating during these Chapter 11 Cases, (b) preserve the value of their estates for the benefit of all parties in interest, and (c) pursue the value-maximizing restructuring transactions contemplated by the Restructuring Support Agreement attached to the First Day Declaration as **Exhibit B**. Based on BRG's analysis, absent immediate access to Cash Collateral the Debtors operations will grind to a halt.

### **Development of the Initial Budget**

6. To determine their anticipated liquidity needs, the Debtors and BRG reviewed and analyzed projected cash receipts and disbursements. Using that analysis, and in consultation with the Debtors' management and major stakeholders, BRG prepared a budget outlining the Debtors' postpetition cash flow forecast over the first thirteen weeks of these Chapter 11 Cases (the "Initial Budget"). Based on my experience and extensive discussions with the Debtors and their Advisors,

I believe the Initial Budget presents a reasonable estimate of the Debtors' cash sources and needs during these Chapter 11 Cases.

7. The Initial Budget contains line items for the cash flows anticipated to be received and disbursed during the anticipated duration of these Chapter 11 Cases. Specifically, the Initial Budget includes all reasonable, necessary, and foreseeable expenses that the Debtors expect to incur in carrying out going-out-of-business sales, conducting a going-concern marketing process, prosecuting these Chapter 11 Cases, and continuing to operate the Debtors' business. Projected disbursements include payments to employees, taxing authorities, vendors, landlords, and other parties. I believe the Debtors' ability to satisfy these expenses as they become due is essential to maximizing the value of the Debtors' estates. Without access to Cash Collateral, the Debtors would face the prospect of a disorderly, value-destructive liquidation, materially damaging their business reputation and relationships with employees, vendors, landlords, and customers. As a result, the Debtors and their estates would suffer immediate and irreparable harm to the detriment of all stakeholders.

8. As of the Petition Date, the Debtors have approximately $20 million of cash on hand. Based on the Initial Budget, the Debtors project that their remaining cash balance at the end of the first thirteen weeks of these Chapter 11 Cases will be approximately $5 million. Accordingly, the Initial Budget establishes that, subject to the continued access to Cash Collateral, the Debtors will have sufficient cash on hand to operate their business in the ordinary course.

### The Adequate Protection Package

9. Recognizing the Debtors' need to access Cash Collateral, the Debtors and their advisors engaged the Prepetition Secured Parties in the weeks leading up to the Petition Date to discuss, among other things, the terms on which Cash Collateral would be made available to fund these Chapter 11 Cases. As part of these negotiations, the parties agreed to a budget, an adequate

4

protection package, and a restructuring timeline that would allow the Debtors to continue to use Cash Collateral while they work to effectuate a value-maximizing restructuring transaction, either by completing going-out-of-business sales at all remaining stores or by consummating a going-concern sale of some or all of their leased properties. Ultimately, on February 8, 2026, the Debtors and the Prepetition Secured Parties entered into the Restructuring Support Agreement, pursuant to which, among other things, the Prepetition Secured Parties have consented to the Debtors' use of the Cash Collateral during these Chapter 11 Cases on the terms set forth in the Interim Order.

10. The Debtors propose to provide the Prepetition Secured Parties with adequate protection to protect against the postpetition diminution in value of their Prepetition Collateral, including Cash Collateral. The proposed Adequate Protection Package, taken as a whole, is fair and reasonable under the circumstances and will ensure the Debtors can continue using the Cash Collateral for the benefit of all parties in interest and the Debtors' estates.

11. The Adequate Protection Package includes the following:

    a. *First*, the Debtors will provide to the Prepetition Secured Parties, subject to the Carve Out and the rights obligations set forth in the Intercreditor Agreements, the Adequate Protection Liens on all of the Debtors' property;

    b. *Second*, the Debtors will provide the Prepetition Secured Parties, subject to the Carve Out and the rights obligations set forth in the Intercreditor Agreements, the Superpriority Claims;

    c. *Third*, the Debtors will comply with the terms of the Approved Budget, subject to the Permitted Variances, among other things; and

    d. *Fourth*, the Debtors will make adequate protection cash payments from a Bank Account (as defined in the Cash Management Order) of a U.S. Debtor to the Prepetition ABL Administrative Agent in an amount equal to the greater of (i) the amount set forth in the line item titled "Distribution to Creditors," for the week of the determination date as set forth in the

applicable Approved Budget, and (ii) the Minimum Sweep Balance[3] as of the determination date (such amount, the "Weekly Paydown Amount"), *provided* that, if (x) actual ending book cash as of the date of determination is less than (y) the amount set forth in the line item titled "Ending Book Cash" as of the date of determination in the applicable Approved Budget, then the Weekly Paydown Amount for such week shall be reduced by an amount equal to (y) less (x).  For the avoidance of doubt, nothing herein shall in any way waive or limit the Debtors' obligation to comply with the applicable Approved Budget, subject to any Permitted Variances thereunder.

12. I believe that this Adequate Protection Package, taken as a whole, is on market terms, appropriate under the circumstances, and consistent with the terms of adequate protection granted in other similar cases.  The Adequate Protection Liens are, based on my professional experience, appropriate as they preserve the prepetition priority of claims with respect to the Prepetition Collateral, and payment of the Weekly Paydown Amount is reasonable under the circumstances because such payments are limited, tied to the Debtors' actual cash receipts and disbursements, and necessary to induce the Prepetition ABL Lenders to consent to the Debtors' use of cash collateral.

13. Because the Debtors' access to Cash Collateral is critical to the Debtors' continued business operations and the success of these Chapter 11 Cases, I believe the relief requested in the

---

[3] "Minimum Sweep Balance" means (a) the Debtors' good faith estimate of the actual ending cash balance as of the end of the determination date, *less* (b) the amount set forth in the line item titled "Ending Book Cash" for the week of the determination date in the applicable Approved Budget, *less* (c) all outstanding and unpaid disbursements through the determination date in the applicable Approved Budget, *less* (d) the greater of (i) zero, and (ii) (x) actual total cash receipts through the determination date *less* (y) the amount set forth in the line item titled "Cash Receipts" through the determination date in the applicable Approved Budget, *less* (e) the amount, if any, by which the amount due to be funded into the Funded Reserve Account pursuant to paragraph **Error! Reference source not found.** hereof for such week exceeds the amount set forth in the line item titled "Professional Fees" for the week of the determination date in the applicable Approved Budget, *less* (f) the incremental amount attributable to the Permitted Variance applicable to such outstanding and unpaid disbursements referenced in (c) of this paragraph.  The Minimum Sweep Balance will be funded in accordance with the Approved Budget and from the proceeds of the Prepetition Collateral (including Cash Collateral).

Motion is necessary and appropriate to avoid immediate and irreparable harm to the Debtors' estates and should be approved.

[*Remainder of Page Intentionally Left Blank*]

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: February 9, 2026                /s/ *Stephen Coulombe*
                                       Name: Stephen Coulombe
                                       Title: Managing Director
                                       Berkeley Research Group, LLC

**<u>Exhibit A</u>**

**Initial Budget**

**Eddie Bauer**
**Cash Collateral Budget**
*($ in 000's)*

|  |  | Petition | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Fiscal Month | | Feb | Feb | Feb | Mar | Mar | Mar | Mar | Mar | Apr | Apr | Apr | Apr | May | |
| Forecast Week | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
| Week Ending (Saturday) | | 14-Feb | 21-Feb | 28-Feb | 7-Mar | 14-Mar | 21-Mar | 28-Mar | 4-Apr | 11-Apr | 18-Apr | 25-Apr | 2-May | 9-May | Post-Pet. |
| Forecast / Actual | | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst | Fcst |
| **Operating Cash Flow** | | | | | | | | | | | | | | | |
| 1) | Cash Receipts | 5,086 | 9,038 | 9,921 | 10,168 | 11,060 | 9,404 | 10,104 | 8,879 | 9,209 | 7,969 | 3,622 | 1,147 | 43 | 95,650 |
| 2) | Direct Operating Disbursements | (8,007) | (4,588) | (8,208) | (4,835) | (1,895) | (1,751) | (7,471) | (2,992) | (1,413) | (2,514) | (1,518) | (3,710) | (94) | (48,994) |
| 3) | Payroll Reimbursement to Parent | - | (2,221) | (5,568) | (1,907) | - | (1,832) | - | (1,717) | - | (1,872) | - | (6,020) | - | (21,137) |
| 4) | Operating Reimbursement to Parent | - | - | (1,416) | - | - | - | (4,306) | - | - | - | - | (4,308) | - | (10,030) |
| 5) | **Operating Cash Flow** | **(2,921)** | **2,229** | **(5,271)** | **3,427** | **9,166** | **5,820** | **(1,672)** | **4,170** | **7,796** | **3,583** | **2,103** | **(12,891)** | **(51)** | **15,488** |
| **Restructuring Disbursements** | | | | | | | | | | | | | | | |
| 6) | Professional Fees | (5,264) | (1,437) | (737) | (729) | (829) | (1,279) | (700) | (700) | (925) | (1,370) | - | - | - | (13,972) |
| 7) | Store Liquidation Fee / Expense | (947) | - | (175) | (407) | (417) | (435) | (438) | (414) | (387) | (364) | (351) | (359) | - | (4,695) |
| 8) | Utility Deposits | - | (500) | - | - | - | - | - | - | - | - | - | - | - | (500) |
| 9) | Credit Card Holdback | (1,500) | - | - | - | - | - | - | - | - | - | - | - | - | (1,500) |
| 10) | **Total Restructuring Disbursements** | **(7,710)** | **(1,937)** | **(912)** | **(1,136)** | **(1,247)** | **(1,715)** | **(1,138)** | **(1,114)** | **(1,313)** | **(1,734)** | **(351)** | **(359)** | **-** | **(20,667)** |
| 11) | **Net Cash Flow** | **(10,631)** | **291** | **(6,183)** | **2,290** | **7,919** | **4,106** | **(2,810)** | **3,056** | **6,483** | **1,849** | **1,752** | **(13,249)** | **(51)** | **(5,178)** |
| **Cash Roll** | | | | | | | | | | | | | | | |
| 12) | Beginning Book Cash | 20,000 | 9,369 | 9,660 | 3,477 | 3,768 | 11,686 | 12,792 | 9,982 | 10,038 | 16,521 | 16,370 | 18,123 | 4,873 | 20,000 |
| 13) | (+/-) Net Cash Flow | (10,631) | 291 | (6,183) | 2,290 | 7,919 | 4,106 | (2,810) | 3,056 | 6,483 | 1,849 | 1,752 | (13,249) | (51) | (5,178) |
| 14) | (-) Distribution to Creditors | - | - | - | (2,000) | - | (3,000) | - | (3,000) | - | (2,000) | - | - | - | (10,000) |
| 15) | **Ending Book Cash** | **9,369** | **9,660** | **3,477** | **3,768** | **11,686** | **12,792** | **9,982** | **10,038** | **16,521** | **16,370** | **18,123** | **4,873** | **4,822** | **4,822** |
| 16) | Check Float | 373 | 153 | 3,398 | 247 | 142 | 129 | 3,142 | 113 | 29 | 23 | 128 | 116 | - | - |
| 17) | **Ending Bank Cash** | **9,742** | **9,813** | **6,875** | **4,015** | **11,828** | **12,921** | **13,123** | **10,151** | **16,550** | **16,393** | **18,251** | **4,989** | **4,822** | **4,822** |