**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>EDDIE BAUER LLC, *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 26-11422 (SLM)<br><br>(Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND STALKING HORSE BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF

---

[1] The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer. The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state the following in support of this motion (this "Motion"):[2]

**Preliminary Statement**

1.    The Debtors commenced these chapter 11 cases to, among other things, identify a buyer or buyers for some or all of their remaining brick-and-mortar retail business, which comprises approximately 220 stores throughout the United States and Canada.  To maximize value for all stakeholders, the Debtors seek to pursue and consummate one or more value-maximizing sale transactions (each, a "Sale Transaction") involving all, substantially all, or any portion of their remaining retail operations and related assets (the "Assets").  Accordingly, with the support of their prepetition secured lenders, as memorialized in the restructuring support agreement (the "RSA"),[3] the Debtors file these proposed Bidding Procedures to facilitate a competitive, value-maximizing sale process for all or substantially all of the Assets.

2.    As part of their ongoing analysis of all potential paths to maximize the value of their estates for the benefit of all parties in interest, the Debtors and SOLIC Capital Advisors, LLC ("SOLIC"), the Debtors' proposed investment banker, began informal outreach to potential third-party purchasers in December 2025.  Then on January 5, 2026, the Debtors, with the advice and assistance of SOLIC, launched a formal, comprehensive sale and marketing process for the Assets (the "Prepetition Sale Process").  In connection with the Prepetition Sale Process, the

---

[2]    A description of the Debtors and their business, as well as the facts and circumstances supporting this Motion and giving rise to the Debtors' chapter 11 cases, is set forth in greater detail in the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not otherwise defined in this Motion shall have the meanings ascribed to them in the First Day Declaration or the Bidding Procedures (as defined herein), as applicable.

[3]    The RSA is attached as Exhibit B to the First Day Declaration.

Debtors, with SOLIC's assistance, contacted 126 potential acquirers, including 58 strategic parties and 68 financial parties.  As of the filing of this Motion, 34 parties have executed nondisclosure agreements and were provided with access to the Debtors' virtual data room (the "Data Room") containing a confidential information presentation and additional financial, operational, and legal diligence materials.  On or after January 30, 2026, the Debtors received two non-binding indications of interest ("IOIs") relating to a portion of the Debtors' Assets.  These IOIs reflect strong interest in the assets and demonstrate the potential for a robust in-court sale process and a competitive auction.  Following receipt of these IOIs, the Debtors, together with SOLIC, conducted a comprehensive review of each proposal and have engaged in extensive negotiations with the interested parties to refine and enhance their initial bids.

3.      The Debtors seek authority to continue the competitive Prepetition Sale Process on a postpetition basis in order to solicit and evaluate proposals to purchase discrete portions of the Debtors' assets.  Furthermore, while the Debtors have not yet selected (and may not elect to select) a stalking horse to serve as a committed buyer of the applicable Assets, the Bidding Procedures (as defined herein) provide the Debtors with flexibility to select one or more Stalking Horse Bidders (as defined herein) and grant Stalking Horse Bid Protections (as defined herein) after notice and an opportunity to object.  The Debtors believe that approval of the Bidding Procedures will maximize the time available to potential purchasers to review diligence and develop and submit bids within the proposed timeline.

4.      To that end, pursuant to this Motion, the Debtors seek to establish a schedule that provides sufficient time to finalize the Debtors' Prepetition Sale Process while also minimizing administrative expenses and business disruption as they work to complete these chapter 11 cases on an efficient and expeditious timeline.  The Debtors continue to incur significant administrative

3

expenses without sufficient income to meet their financial obligations; accordingly, an expedited process is necessary to reduce further cash burn and preserve the Debtors' estates.  Specifically, this Motion seeks approval of Bidding Procedures that contemplate an approximately 30-day process to close out any remaining leads from the Debtors' Prepetition Sale Process, assess any potential bidders that may emerge, solicit final Bids (as defined herein), and hold a hearing to consider approval of the Sale Transaction.

5.       If approved, the Bidding Procedures will provide sufficient time for the Debtors to market the Assets, receive and evaluate Bids, and hold an Auction (as defined herein), if necessary, to determine the highest or otherwise best Bids for the Assets.  The Debtors will consider all viable options in accordance with the Bidding Procedures before determining if selling the Assets will, in their business judgment, maximize value for the Debtors' estates.  Conversely, if the Bidding Procedures are not approved or there is any material delay to the proposed sale timeline—including delay resulting from the fourteen-day stay under Bankruptcy Rule 6004(h)—the Debtors' ability to maximize value for the benefit of all stakeholders will be jeopardized.

6.       In addition, to ensure the orderly transfer of assets following any Sale Transaction in accordance with section 365 of the Bankruptcy Code, the Debtors also seek approval of assumption and assignment procedures by which the Debtors and counterparties to the Executory Contracts (as defined herein) or Unexpired Leases (as defined herein) transferred in connection with any Sale Transaction can (a) reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code and (b) object to the assumption and assignment of the Executory Contracts or Unexpired Leases and/or related cure payments (the "Assumption and Assignment Procedures") as set forth in detail in the Order (as defined herein).

7.      The Bidding Procedures and the related relief requested in this Motion are in the best interests of the Debtors' estates and their stakeholders and will expedite resolution of these chapter 11 cases, reduce the expenses associated with administering these cases, and allow the Debtors to emerge as quickly and as smoothly as possible.  Moreover, the Bidding Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules (each as defined herein).  The Debtors therefore request that the Court approve the Bidding Procedures as set forth herein.

## Relief Requested

8.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"): (a) authorizing and approving the proposed marketing, auction, and bidding procedures (the "Bidding Procedures") attached as Exhibit 1 to the Bidding Procedures Order, by which the Debtors will solicit and, if value maximizing, will select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of the Debtors' Assets (each successful bidder for the sale of some or all of the Debtors' Assets, a "Successful Bidder"); (b) approving the Stalking Horse Bid Protections relating to the stalking horse bidder (the "Stalking Horse Bidder"), if any; (c) establishing certain dates and deadlines related thereto and scheduling an auction, if needed, to determine the highest and otherwise best Bid available (the "Auction"); (d) approving the form and manner of notice of the Auction, if any, and any hearing to approve a sale of some, all, or substantially all of the Debtors' assets, (the "Sale Hearing"), as may be necessary; (e) approving procedures for the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with the Sale Transaction; and (f) granting related relief.

9.       Additionally, if applicable, the Debtors will seek entry of one or more orders (each, a "Sale Order") (a) authorizing and approving the Sale Transaction with the Successful Bidder on the terms substantially set forth in the Successful Bid; (b) authorizing and approving the sale of the Debtors' Assets free and clear of liens, claims, encumbrances, and other interests to the extent set forth in an asset purchase agreement with any Successful Bidder; (c) authorizing the assumption and assignment of Executory Contracts and Unexpired Leases as set forth in an asset purchase agreement with any Successful Bidder; and (d) granting any related relief.  If applicable, Eddie Bauer LLC (as foreign representative) (the "Foreign Representative"), if appointed, shall seek an Order of the Canadian Court (the "Canadian Sale Order"), among other things, (a) recognizing and enforcing the Sale Order in Canada, and (b) approving the sale of the Assets of the Canadian Debtors in Canada to the applicable Successful Bidder or Successful Bidders in accordance with the applicable binding purchase agreement(s).

10.       In support of this Motion, the Debtors respectfully submit the *Declaration of D. Reid Snellenbarger in Support of the Debtors' Bidding Procedures Motion* (the "Snellenbarger Declaration") (filed contemporaneously herewith).

## Jurisdiction and Venue

11.       The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.).  The Debtors confirm their consent to the Court's entry of a final order in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

12.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

13.     The bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, and 6006(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 1002-2, 6004-1, 6004-2, and 9013-1(a)(3) of the Local Rules of the United States Bankruptcy Court for the District of New Jersey dated August 1, 2025 (the "Bankruptcy Local Rules") and the *General Order Governing Chapter 11 Complex Case Procedures*.

### Background

14.     On February 9, 2026 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have filed a motion contemporaneously herewith requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

15.     Eddie Bauer LLC, as proposed foreign representative, will shortly commence an ancillary proceeding in Canada (the "Canadian Proceedings") on behalf of the Debtors' estates under the Companies' Creditors Arrangement Act (the "CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court") in order to, among other things, protect the Debtors' assets and operations in Canada.

### The Proposed Sale Process and Selection of Stalking Horse Bidder

**I.      The Bidding Procedures.**

16.     The Debtors seek approval of the Bidding Procedures to establish an open process for the solicitation, receipt, and evaluation of bids in a fair, accessible, and expeditious manner.

The Bidding Procedures describe, among other things, the procedures for interested parties to access due diligence, the manner in which bidders and Bids become "acceptable" and/or "qualified," the conduct of any Auction, the selection and approval of a successful bidder or bidders and back-up bidders, and the deadlines with respect to the foregoing.

17.    The timelines set forth in the Bidding Procedures are calculated to balance the need to provide adequate notice to parties in interest and any person or entity interested in purchasing the Assets (a "Potential Bidder") with the Debtors' need to run an expeditious and efficient sale process, taking into account the robust Prepetition Sale Process they have already completed.  The Bidding Procedures are designed to generate the highest or otherwise best available recoveries to the Debtors and their stakeholders by encouraging prospective bidders to submit competitive, value-maximizing bids.  Furthermore, the Bidding Procedures provide each Potential Bidder with ample notice, as well as a meaningful opportunity to conduct due diligence and submit binding Bids in advance of the Auction, if one is held.  For these reasons, the Debtors believe that the Bidding Procedures and the timeline set forth therein are in the best interests of their estates, will establish whether and to what extent any additional market for the Assets exists, and provide interested parties with sufficient opportunity to participate.

18.    Because the Bidding Procedures are attached as Exhibit 1 to the Bidding Procedures Order, they are not restated in their entirety herein.  Generally speaking, however, the Bidding Procedures establish the following, among other things:[4]

      a.    **Public Announcement of Auction**. As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (i) cause (A) a notice of the Auction substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice"), (B) the Bidding

---

[4]    The following summary is provided in accordance with Local Rule 6004-2(b) and for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Bidding Procedures, the Bidding Procedures shall govern in all respects.

Procedures Order, and (C) the Bidding Procedures to be served on the parties that received notice of this Motion; (ii) post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer; and (iii) publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition). Any information officer appointed by the Canadian Court in the Canadian Proceedings will also post the Auction Notice on its case website.

*See* Bid. Proc., at § II.

b. **Potential Bidder Requirements**. To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing some or all of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

(i)     an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

(ii)    identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale Transaction;

(iii)   a statement of the portion of the Assets that the Potential Bidder intends to acquire;

(iv)    sufficient information to demonstrate that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors; and

(v)     a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid.

The Debtors, in consultation with their advisors, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct

due diligence and submit a Bid (such Potential Bidder, an "Acceptable Bidder"). For the avoidance of doubt, any party that has already executed a Confidentiality Agreement and submitted a non-binding indication of interest prior to the Petition Date and, in the judgment of the Debtors, has provided adequate forms of the preliminary documentation requested above, shall be deemed to be an Acceptable Bidder and automatically be authorized to conduct due diligence and submit a Bid. An Acceptable Bidder shall not be eligible to participate in the Auction unless such Acceptable Bidder meets the requirements set forth in subsection c below.

*See* Bid. Proc., at § III.

c.   **Qualified Bid Requirements**. To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer to purchase some or all of the Assets in the form of a document signed by the Acceptable Bidder (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline:

(i)   ***Purchased Assets and Assumed Liabilities***. Each Bid must clearly state the following: (A) which particular Assets are to be included in the applicable Sale Transaction; (B) if applicable, the liabilities and obligations to be assumed, including any cure costs to be assumed; and (C) any executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") proposed to be assumed by the Debtors and assigned to the Acceptable Bidder;

(ii)   ***Good Faith Deposit***. Each Bid must be accompanied by a cash deposit equal to ten percent of the applicable Purchase Price, to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent that a Bid is modified to increase its proposed Purchase Price at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit such that it equals ten percent of the increased aggregate Purchase Price promptly and in no event later than one business day following the conclusion of the Auction. Each Bid shall include a written acknowledgement from the bidder that, in the event of the Acceptable Bidders' breach of, or failure to perform under the applicable purchase agreement, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages to the Debtors and their estates resulting from such breach or failure to perform, and the Debtors shall be entitled to pursue all other available legal and equitable remedies that may be available to the Debtors. The Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or

Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved;

(iii)    ***Purchase Price***.  Each Bid must:  (A) clearly specify the purchase price to be paid for the applicable Assets (the "<u>Purchase Price</u>"); (B) identify separately any cash and non-cash components of the Purchase Price; and (C) indicate the allocation of the Purchase Price among the applicable Assets (including liabilities and obligations to be assumed in connection with any Sale Transaction).  The Purchase Price should be a single point value in U.S. dollars on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all of the Assets or whether the Bid should be viewed as a separate Bid for one or more sets of Assets;

(iv)    ***Sources of Financing***.   To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, such Bid must include evidence of committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, that demonstrates that the Acceptable Bidder has received sufficient funding commitments to satisfy the Acceptable Bidder's obligations under the applicable Sale Transaction as well as any other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals and shall have covenants and conditions acceptable to the Debtors.  The Debtors will view more positively Acceptable Bidders that have, or have immediate access to, the cash necessary to fund the Purchase Price directly themselves;

(v)    ***Same or Better Terms; Bid Documents***.  Each Bid must include duly executed and non-contingent transaction documents necessary to effectuate any Sale Transaction contemplated in the Bid (the "<u>Bid Documents</u>") and must be submitted by the Bid Deadline.  The Bid Documents shall include, at a minimum:  (A) a purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "<u>Form APA</u>"), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposed to effectuate any Sale Transaction, along with copies that are marked to reflect any amendments and modifications from the Form APA, which amendments and modifications may not be materially more burdensome than the Form APA or otherwise inconsistent with the

11

Bidding Procedures; (B) a schedule of Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors and assigned to the Acceptable Bidder pursuant to the applicable Bid; (C) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof; (D) any other material documents integral to such Bid; and (E) a statement from the Acceptable Bidder that (1) it is prepared to consummate the applicable Sale Transaction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder in such Bid Documents and (2) to the extent such Acceptable Bid is designated as a Qualified Bid pursuant to the Bidding Procedures, such Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "<u>Back-Up Bid</u>")) until the consummation of the applicable Sale Transaction;

(vi) **_No Qualified Bidder Bid Protections_**:  Unless such Qualified Bid is selected as a stalking horse bid (a "<u>Stalking Horse Bid</u>"), a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

(vii) **_Employee Obligations_**.  Each Bid must include a description of the Acceptable Bidder's intentions with respect to the relevant members of non-Debtor affiliate Catalyst Brands LLC's current employees and a description of any contemplated incentive plan, to the extent applicable;

(viii) **_Contingencies; No Financing or Diligence Outs_**.  The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects), and all diligence must be completed before the Bid Deadline;

(ix) **_Identity & Corporate Authority_**.  Each Bid must: (A) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners, sponsors, or other co-investors), and the complete terms of any such participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise,

to complete the applicable Sale Transaction on the terms contemplated by the parties; and (B) include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. A Bid must also fully disclose any business relationships, affiliations, or agreements with the Debtors, any other known, potential, prospective bidder, Acceptable Bidder, or Qualified Bidder, or any officer, director, or equity security holder of the Debtors. Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

(x)     *As-Is, Where-Is*.    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the applicable Sale Transaction prior to making its offer; (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the applicable Assets in making its Bid; (C) did not rely, is not relying, and will not rely, on or receive from any person or entity (including any of the Debtors or their advisors or other representatives, or any information officer appointed by the Canadian Court in the Canadian Proceedings) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, including regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement; and (D) agrees that, upon Closing, the Debtors shall sell and transfer to the Successful Bidder, and the Successful Bidder shall accept, the Assets identified in the Successful Bidder's proposed purchase agreement, to the extent expressly provided in the Court's order approving the applicable Sale Transaction with respect to such Assets. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's order approving a Sale Transaction with respect to such Assets;

(xi)     *Adequate Assurance of Future Performance and Information*. Each Bid must: (A) identify the Executory Contracts and

13

Unexpired Leases to be assumed or assumed and assigned in connection with the applicable Sale Transaction; (B) provide for payment of Cure Payments (as defined in the Bidding Procedures Order) related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder; (C) be accompanied by financial and other information (the "Adequate Assurance Information") that, in the Debtors' business judgment, is sufficient and adequate to demonstrate that such Acceptable Bidder (1) has the financial wherewithal and ability to consummate the applicable Sale Transaction, and (2) can satisfy the adequate assurance requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code; and (D) identify a contact person that parties may contact to obtain additional Adequate Assurance Information;

(xii)    *Privacy Policies*.  The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of the personally identifiable information of its customers, and each Bid must contain a statement acknowledging such compliance;

(xiii)    *No Collusion*.  The Acceptable Bidder must acknowledge in writing:  (A) that it has not engaged in any collusion with respect to any Bids or the applicable Sale Transaction, including specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (B) agree not to engage in any collusion with respect to any Bids, the Auction, or the applicable Sale Transaction.  For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

(xiv)    *Joint Bids*.  The Debtors will be authorized to approve joint Bids in their reasonable business judgment on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with the Bidding Procedures;

(xv)    ***Acknowledgement of Compliance with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and Non-Bankruptcy Law***.  Each Bid must acknowledge its compliance in all respects with the Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the CCAA (if applicable) and any applicable non-bankruptcy law;

(xvi)    *Good Faith Offer*.  Each Bid must constitute a good faith, *bona fide* offer to consummate any Sale Transaction;

14

(xvii)   ***Back-Up Bid***.  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is, in the Debtors' business judgment, the next highest or otherwise best bid for some or all of the Assets after the Successful Bid and that, in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

(xviii)  ***Regulatory Approvals and Covenants***.  Each Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Sale Transaction and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Debtors' chapter 11 plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as possible), and any further information necessary for, or related to the likelihood of, obtaining such approvals;

(xix)    ***Expected Closing Date***.  Each Bid must state the Acceptable Bidder's expected date of closing of the applicable Sale Transaction (the "Closing").  A Bid by an Acceptable Bidder must be reasonably likely, in the Debtors' business judgment, to be consummated within a time frame acceptable to the Debtors;

(xx)     **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale Transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive any payments or amounts analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; *provided* that the Debtors are authorized to provide the Stalking Horse Bid Protections to one or more Stalking Horse Bidders in accordance with the Bidding Procedures.

(xxi)    ***Adherence to Bidding Procedures***.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of the Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the conclusion of the Auction;

(xxii)   ***Consent to Jurisdiction***.  Any Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s), and the construction and enforcement of the Bidding Procedures, any

15

written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable;

(xxiii) ***Conditions to Closing***.  Each Bid must identify with particularity any conditions to Closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and

(xxiv) ***Transition Services***.   Each Bid must describe the types of transition services, if any, the Acceptable Bidder would require of and/or provide to the Debtors or any of the Debtors' non-Debtor affiliates, including an estimate of the time any such transition services would be required of and/or provided to the Debtors or any of the Debtors' non-Debtor affiliates, and that the Acceptable Bidder will be responsible for the actual costs of providing any such services.

*See* Bid. Proc., at § IV.

d. **Stalking Horse Bid Protections**.  Pursuant to the Bidding Procedures Order, the Debtors may designate one or more Bidders to be a Stalking Horse Bidder, which are entitled to certain bid protections in the amounts set forth in, and in accordance with the terms of the Bidding Procedures Order, consisting of (i) a break-up fee (the "Break-Up Fee") not to exceed three percent of the aggregate amount of the Purchase Price and/or (ii) reimbursement of reasonable and documented out of pocket fees and expenses (the "Expense Reimbursement" and together with the Break-Up Fee, the "Stalking Horse Bid Protections").  For the avoidance of doubt, except for the Stalking Horse Bidder, and as otherwise set forth herein, no other party submitting an offer, a Bid, or a Qualified Bid shall be entitled to any Expense Reimbursement, Break Up Fee, termination fee, or similar fee or payment.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

*See* Bid. Proc., at § IX.

e. **Modification of the Bidding Procedures**.  The Debtors reserve their rights to modify the Bidding Procedures in good faith to further the goal of

attaining the highest or otherwise best offer or impose, at or prior to the Auction (if held), additional terms and conditions on the Sale Transaction(s) in any manner that will best promote the goals of the bidding process including, without limitation: (i) extending the deadlines set forth in the Bidding Procedures; (ii) adjourning the Auction; (iii) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (iv) canceling the Auction; (v) rejecting any or all Bids or Qualified Bids; and (vi) adjusting the applicable Minimum Overbid.  Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale with the Successful Bidder or Successful Bidders under section 363 of the Bankruptcy Code (and the CCAA, if applicable) as opposed to pursuant to the Plan.

*See* Bid. Proc., at § XVI.

19.    Importantly, the Bidding Procedures recognize and comply with the Debtors' fiduciary obligations to maximize value, and, as such, do not impair the Debtors' ability to consider all Qualified Bids and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize the value of the Debtors' estates.

**II.    The Proposed Schedule.**

20.    The Debtors are seeking approval of the Bidding Procedures and the proposed sale schedule (the "Schedule") set forth below to establish a clear and open process for the solicitation, receipt, and evaluation of Bids on an efficient timeline that allows the Debtors to consummate one or more Sale Transactions.  Moreover, the Debtors, in their sound business judgment, reserve the right to alter the timing of the Schedule as necessary under the circumstances, or to conduct multiple Sale Transactions across one or more than one Auction in order to maximize the value of the estates, in each case in accordance with the Bidding Procedures.  The Debtors respectfully request that the Court approve the Schedule, subject to the Court's availability.

| Action | Description | Deadline |
|---|---|---|
| **Stalking Horse Deadline** | The deadline by which the Debtors may choose a Stalking Horse Bidder and enter into a Stalking Horse APA. | February 27, 2026, at 5:00 p.m., prevailing Eastern Time. |
| **Bid Deadline** | The deadline by which any Acceptable Bidders must submit all binding Bids to be evaluated as Qualified Bids to participate in the Auction, if any. | March 3, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Auction (if necessary)** | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. | March 6, 2026, at 10:00 a.m. prevailing Eastern Time |
| **Notice of Successful Bidder** | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline), the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures) identifying the applicable Successful Bidder, Assets, and key terms of the agreement. | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline). |
| **Sale Objection Deadline** | The deadline by which objections to the entry of an order by the Court approving any Sale Transaction or objections to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Executory Contract or Unexpired Lease (the "Sale Objection Deadline") must be filed with the Court and served so as to be actually received by the appropriate notice parties. | March 9, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Sale Objection Reply Deadline** | Deadline for the Debtors and any other parties supporting the Sale Transaction(s) to respond to any objections to such Sale Transaction(s). | March 11, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Sale Hearing** | Date for a hearing at which the Court will consider approving any Sale Transaction(s) to one or more prospective purchasers. A hearing to consider approval of each Canadian Sale Order shall be scheduled to the extent a Successful Bid includes Assets of the Canadian Debtors. | March 12, 2026, or such other date as may be scheduled by the Court, at a time to be announced |

21.     The Debtors believe that the proposed timeline provides the Debtors with ample opportunity to conclude their Prepetition Sale Process and pursue the highest or otherwise best offer(s) for the Assets without unduly burdening their estates. During the Debtors' Prepetition Sale Process, relevant information regarding the Debtors' business was made available in the Data

Room, allowing potential bidders to conduct diligence on the Debtors' business prior to the Petition Date.  To the extent any bidder has not previously conducted such diligence, such bidder will have immediate access to the information in the Data Room, subject to the execution of a confidentiality agreement.

22.     Moreover, the Debtors will utilize the time prior to, and after, entry of the Bidding Procedures Order to actively market the Assets to solicit higher or otherwise better Bids.  In light of the foregoing, the Debtors have determined that the proposed Schedule is in the best interests of the Debtors' estates, is essential for the Debtors' swift emergence from chapter 11 and preserving the value of the Debtors' estates, will provide interested parties with sufficient opportunity to participate in the Sale Transaction(s), and ultimately will result in the highest and best bids for the Assets under the circumstances.

### III.     The Form and Manner of Auction Notice.

23.     The Auction, if needed, will be held on March 6, 2026, at 10:00 a.m., prevailing Eastern Time (or such other date as selected by the Debtors) at the offices of the Debtors' proposed co-counsel:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.

24.     As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will cause the Auction Notice to be served on the parties that receive notice of this Motion. In addition, as soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors will post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer and publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition).  Any

information officer appointed by the Canadian Court in the Canadian Proceedings will also post
the Auction Notice on its case website.  The Debtors submit that, in light of the nature of the relief
requested, no other or further notice need be given.

25.    The Auction Notice is reasonably calculated to provide all interested parties with
timely and proper notice of the proposed Sale Transaction(s), including the date, time, and place
of the Auction (if any), the Bidding Procedures, and the dates and deadlines related thereto.
Accordingly, the Debtors request that the form and manner of the Auction Notice be approved and
no other or further notice of the Auction be required.

**Basis for Relief**

## I.    The Relief Sought in the Bidding Procedures Order Is in the Best Interests of the Debtors' Estates and Should Be Approved.

26.    "When conducting an asset sale, the ultimate responsibility of the debtor, and the
primary focus of the bankruptcy court, is the maximization of the value of the assets sold."
John J. Jerome & Robert D. Drain, *Bankruptcy Court is Newest Arena for M&A Action*, N.Y.L.J.,
June 3, 1991;  *see In re Mushroom    Transp.    Co.*, 382  F.3d  325,  339  (3d  Cir  2004)
(debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets");
*In re Adams Res. Expl. Corp.*, No. 17-10866, 2017 WL 5493616, at *12 (Bankr. D. Del. May 24,
2017) ("The relief requested in the Sale Motion is a necessary and appropriate step toward enabling
the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the
Debtor, its estate and its creditors.").  To further that goal, bidding procedures and bid protections,
such as those proposed here, may be used in court-supervised sales because they streamline the
acquisition process, "help to provide an adequate basis by which to compare offers," and maximize
value.  Jerome & Drain (1991) at 8, col. 4; *see In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa.
1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale

designed to maximize value for the estate."); *In re O'Brien Env't Energy, Inc.*, 181 F.3d 527, 535

(3d Cir. 1999) (recognizing that bid protections "encourage a prospective bidder to do the due

diligence that is the prerequisite to any bid by assuring the prospective bidder that it will receive

compensation for that undertaking if it is unsuccessful"); *In re Dura Automotive Sys., Inc.*,

No. 06-11202, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) (recognizing that bidding

procedures "intended to enhance competitive bidding are consistent with the goal of maximizing

the value received by the estate and therefore are appropriate in the context of bankruptcy sales");

*Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147

B.R. 650, 659 (S.D.N.Y. 1992) (bidding procedures and bid protections "are important tools to

encourage bidding and to maximize the value of the debtor's assets"); *In re Metaldyne Corp.*, 409

B.R. 661, 670 (Bankr. S.D.N.Y. 2009) ("[b]idder protections are granted when a bidder provides

a floor for bidding by expending resources to conduct due diligence and allowing its bid to be

shopped around for a higher offer").   In overseeing a sale subject to an auction process, the

bankruptcy court must weigh:

> on the one hand, providing for an orderly bidding process, recognizing the danger
> that absent such a fixed and fair process bidders may decline to participate in the
> auction; and, on the other hand, retaining the liberty to respond to differing
> circumstances so as to obtain the greatest return for the bankrupt estate.

*In re Fin. News Network, Inc.*, 980 F.2d 165, 166 (2d Cir. 1992).   Because the bankruptcy court

must perform this balancing act, "a bankruptcy judge's broad discretionary power in conducting

the sale of a debtor's assets should not be narrowed by technical rules mindlessly followed" that

"reduce the broad discretion and flexibility a bankruptcy court must necessarily have to enhance

the value of the estates before it."  *Id.* at 169–70; *see Dura Automotive*, 2007 WL 7728109, at *90

("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds

received by the estate.").  Where there is a court-approved auction process, the assets are presumed

to sell for a full and fair price because the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "sale transaction does not require an auction procedure[,] [t]he auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

27.    Approval of bidding procedures on or around the petition date following the first-day hearing is appropriate where the debtors have demonstrated that such approval will maximize estate value, and this Court has approved bidding procedures on such a timeline several times. *See, e.g., In re Invitae Corporation*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (approving bidding procedures entered one day after the first-day hearing); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (approving bidding procedures entered two days after the first-day hearing); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. April 25, 2023) (approving bidding procedures entered one day after the first-day hearing); *In re David's Bridal, LLC*, No. 23-13131 (CMG) (Bankr. D.N.J. April 19, 2023) (same); *In re SLT Holdco, Inc.*, No. 20-18368 (MBK) (Bankr. D.N.J. July 13, 2020) (approving bidding procedures entered three days after the first-day hearing).

28.    Here, the Debtors submit that the Bidding Procedures are a valid exercise of their business judgment, fair and appropriate under the circumstances, consistent with procedures routinely approved by courts in this circuit, and in the best interest of their estates. Courts have consistently held that a debtor's business judgment is entitled to substantial deference with respect to selling an estate's assets, including with respect to the procedures used to solicit bids in connection with such sale. *See, e.g., In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In

determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [debtor] to show that a sound business purpose justifies such actions.'  If the [debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991)); *Schipper*, 933 F.2d at 515 (internal citations and quotations omitted) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see Integrated Res.*, 147 B.R. at 656 (applying business judgment rule to bidding procedures and incentives and noting that "[c]ourts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence").

29.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will maximize the value of the Assets for the benefit of the Debtors' estates.  The proposed Bidding Procedures will allow the Debtors to conduct an Auction in a controlled, fair, and open fashion that will encourage participation by financially capable bidders that can demonstrate the ability consummate a chapter 11 plan.  In particular, the Bidding Procedures contemplate an open and public marketing process with minimum barriers to entry and provide potential purchasers with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed Bid.

30.     The Debtors respectfully submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings in bankruptcy proceedings, and are consistent with the controlling legal standard in the Third Circuit.  Accordingly, the Debtors request that the Court approve the Bidding Procedures as a valid exercise of the Debtors' business judgment.

## II.    The Stalking Horse Bid Protections Are Necessary and Appropriate and Should Be Approved.

31.    In the event the Debtors seek to appoint a Stalking Horse Bidder, the Debtors seek authority to offer customary bid protections, including the Break-Up Fee, not to exceed three percent of the Purchase Price, and Expense Reimbursement.  The use of a stalking horse in a public auction process for the sale of a debtor's assets is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Off. Comm. of Unsecured Creditors v. Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254, No. 11-219, *1 (E.D. Wis. July 7, 2011).

32.    Generally, bidding protections, such as break-up fees, are a normal and, in many cases, necessary component of significant sales under the Bankruptcy Code.  *See Integrated Res.*, 147 B.R. at 659–60 ("Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets. . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be ***necessary*** to discharge [such] duties to maximize value.") (emphasis added).  As a result, courts routinely approve such bidding protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees . . . depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate.") (internal quotations omitted) (alterations in original); *In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010); *O'Brien*, 181 F.3d 527.  The Debtors believe that the allowance of the Stalking Horse Bid Protections is in the best interests of the Debtors' estates and their creditors, as a Stalking Horse

Bidder, if designated, will establish a floor for further bidding that may increase the consideration given in exchange for the Assets for the benefit of the Debtors' estates.

33.     In the Third Circuit, bidding protections, such as those proposed here, are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. *Energy Future*, 904 F.3d at 313 (citing *O'Brien*, 181 F.3d at 535); *Reliant Energy*, 594 F.3d at 206 (holding that the general standard used for all administrative expenses applies to break-up fees). Thus, "the allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Reliant Energy*, 594 F.3d at 206 (internal quotations omitted) (quoting *O'Brien*, 181 F.3d at 535).

34.     Approval of the Stalking Horse Bidding Protections is warranted by the facts and circumstances of these chapter 11 cases.  The Debtors propose to pay the Stalking Horse Bid Protections only in the event they determine, after good faith, arm's-length negotiations, that designating one or more Stalking Horse Bidder(s) would be necessary and beneficial for their estates.  Without the Stalking Horse Bid Protections, a potential bidder may elect not to participate in the process at all to the detriment of the Debtors' estates.  The Bidding Procedures do not require the payment of the Stalking Horse Bid Protections.  Rather, the Debtors have the option of paying or otherwise incurring such obligations in the event that offering such Stalking Horse Bid Protections is necessary to foster a competitive bidding process that will maximize the value of the Debtors' estates.  In that instance, the value created for the Debtors' estates will likely greatly outweigh the cost of any Stalking Horse Bid Protections.  In any case, granting the Debtors the authority to offer the Stalking Horse Bid Protections sends a strong signal to the market that the Debtors are serious about running a competitive sale process aimed at generating the best result

for the Debtors and their estates.  Furthermore, to the extent any party objects to the Stalking Horse Bid Protections, such party's ability to object is preserved, since there will be an objection deadline following the filing of the Stalking Horse Notice and an opportunity for a hearing.

35.    The Stalking Horse Bid Protections shall not exceed three percent of any proposed purchase price.  This is an amount that is well within market for transactions of this type, and which has been routinely approved by courts in this district.  *See, e.g.*, *In re Careismatic Brands, LLC*, No. 24-10561, (VFP) (Bankr. D.N.J. Feb. 29, 2024) (approving stalking horse bid protections, including a break-up fee not to exceed three percent of the proposed purchase price and reasonable and documented expense reimbursements); *In re Invitae Corp.*, No. 24-11362 (MBK) (Bankr. D.N.J. Feb. 16, 2024) (same); *In re Rite Aid Corp.*, No. 23-18993 (MBK) (Bankr. D.N.J. Oct. 18, 2023) (approving stalking horse bid protections, including a break-up fee and expense reimbursement, not to exceed three percent or three and a half percent, as applicable, of the proposed purchase price in the aggregate); *In re Cyxtera Tech., Inc.*, No. 23-14853 (JKS) (Bankr. D.N.J. June 29, 2023) (approving stalking horse bid protections, including a break-up fee not to exceed three percent of the proposed purchase price and reasonable and documented expense reimbursements); *In re Bed Bath & Beyond Inc.*, No. 23-13359 (VFP) (Bankr. D.N.J. April 25, 2023) (same); *In re David's Bridal, LLC*¸ No. 23-13131 (CMG) (Bankr. D.N.J. April 17, 2023) (same).

36.    Accordingly, for the reasons set forth above, the Debtors respectfully request that the Court grant the Debtors the authority to incur and pay the Stalking Horse Bid Protections to the extent they are necessary to preserve the value of the Debtors' estates.

### III.    The Form and Manner of Notice Should Be Approved.

37.    Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with twenty-one days' notice of the Auction.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the deadline for filing any objections to such a sale.  As soon as reasonably practicable following entry of the Bidding Procedures Order, the Debtors will cause the Auction Notice to be served upon parties that receive notice of this Motion.

38.    The Debtors submit that the Auction Notice constitutes good and adequate notice of the Auction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.  Accordingly, no further notice is necessary and the Debtors request that this Court approve the form and manner of the notice of the Auction Notice.

### IV.    The Assumption and Assignment Procedures Are Appropriate and Should be Approved.

39.    As set forth in detail in Section III of the Bidding Procedures Order, any Sale Transaction will contemplate the assumption and assignment of Executory Contracts and Unexpired Leases (the "Assumed Contracts") to a Successful Bidder (including, for the avoidance of doubt, a Stalking Horse Bidder, if any).  In connection with this process, the Debtors believe it is necessary to establish assumption and assignment procedures by which: (a) the Debtors and counterparties to the Executory Contracts or Unexpired Leases (the "Contract or Lease Counterparties") can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such Contract or Lease Counterparties can object to the assumption and assignment of the contracts and/or related cure payments in a streamlined and orderly manner.  As set forth in the Bidding Procedures Order, the Debtors also request that any Contract or Lease Counterparty that fails to object to the proposed assumption and assignment of any Executory

Contract or Unexpired Lease be deemed to consent to the assumption and assignment of the applicable Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure payments identified in the Assumption Notice (as defined in the Bidding Procedures Order).  *See, e.g., In re Boy Scouts of Am.*, 642 BR 504, 569 (Bankr. D. Del. 2022) ("The lack of objection of a [creditor] is also consensual for purposes of § 363 and, again, permissible under § 363(f)(2)."); *In re Christ Hosp.*, No. CIV.A. 14-472 ES, 2014 WL 4613316, at *14 (D.N.J. Sept. 12, 2014) (same); *In re Congoleum Corp.*, No. 03-51524, 2007 WL 1428477, at * 1 (Bankr. D.N.J. May 11, 2007) (same); *Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *In re Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

40.    Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g., Grp. of Inst'l Invrs. v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to section 365 of the Bankruptcy Code, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code"); *In re S.A. Holding Co., LLC*, 357 B.R. 51, 56 (Bankr. D.N.J. 2006) (applying the business judgment test in

determining whether to approve a contract rejection); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) ("Although the [Bankruptcy Code] does not provide the standard to be applied in determining the propriety of the [debtor's] decision [to assume or reject a contract], most Circuits, including the Third Circuit have adopted the business judgment test.").

41.    Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract or unexpired lease is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code, specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder. *Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988).    This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain." *Id.* (quoting *In re Bon Ton Restaurant & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985)).

42.    Here, the Court should approve the decision to assume and assign the Assumed Contracts in connection with any Sale Transaction as a sound exercise of the Debtors' business judgment.    ***First***, the Assumed Contracts are necessary to operate the Assets, integral to any Sale Transaction, and, as such, are essential to inducing the best offer for the Assets.    ***Second***, it is unlikely that any purchaser would want to acquire the Assets unless a significant number of the Executory Contracts and Unexpired Leases needed to manage the Debtors' day-to-day operations were included in the transaction.    ***Third***, proposed purchase agreements submitted by Potential Bidders likely will provide that the assumption and assignment of the Assumed Contracts is

integral to, and inextricably integrated in, any proposed Sale Transaction. **Finally**, the Assumed Contracts will be assumed and assigned though the process approved by the Court pursuant to the Bidding Procedures Order and, thus, will be available for review by key constituents in these chapter 11 cases.

43.     Moreover, the Debtors submit that the statutory requirements of section 365(b) will be promptly satisfied because (a) each Bid must provide for the payment of all Cure Payments, (b) the Assumption and Assignment Procedures (once approved) provide a clear process by which to resolve disputes over Cure Payments or other defaults, (c) the Debtors will evaluate the financial wherewithal of Potential Bidders to ensure that they can demonstrate adequate assurance of future performance, and (d) the Assumption and Assignment Procedures provide the Court and other interested parties ample opportunity to evaluate and, if necessary, challenge proposed Cure Payments or the ability of the Successful Bidder to provide adequate assurance of future performance.

44.     The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to parties to the Executory Contracts and Unexpired Leases, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  Accordingly, the Debtors request that the Court approve the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

**V.      The Sale Transaction(s) and the Debtors' Entry into One or More Asset Purchase Agreements Should be Approved as an Exercise of Sound Business Judgment.**

45.     Section 363(b) of the Bankruptcy Code permits a debtor, subject to court approval, to enter into a transaction outside the ordinary course of its business so long as there is a "sound business purpose" that justifies such action.  *See* 11 U.S.C. § 363(b)(1); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) ("[U]nder normal circumstances the court would

defer to the trustee's judgment so long as there is a legitimate business justification.") (citation omitted); *Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task"); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that judicial approval under section 363 of the Bankruptcy Code requires a showing that there is a good business reason).

46.    The business judgment rule shields a debtor's decisions from judicial second-guessing.  Once a debtor articulates a valid business justification, the business judgment rule "is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate.") (citations omitted); *see also In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("[A] presumption of reasonableness attaches to a debtor's management decisions.").  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

47.    Generally, courts in the Third Circuit have applied four factors in determining whether a sale of a debtor's assets should be approved:  (a) whether a sound business purpose exists for the sale; (b) whether the proposed sale price is fair; (c) whether the debtor has provided adequate and reasonable notice; and (d) whether the buyer acted in good faith.  *See In re Summit Glob. Logistics, Inc.*, No. 08-11566, 2008 WL 819934, at *9 (Bankr. D.N.J. Mar. 26, 2008)

(citing *In re Exaeris, Inc.*, 380 B.R. 741, 744 (Bankr. D. Del. 2008)); *see also In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 149–50 (3d Cir. 1986) (noting that the element of "good faith" is of particular importance in the Third Circuit); *In re Delaware & Hudson Ry.*, 124 B.R. 169, 176 (D. Del. 1991) ("Once a court is satisfied that there is a sound business reason or an emergency justifying the pre-confirmation sale the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the purchaser is proceeding in good faith.").

### A.    A Sound Business Purpose Exists for the Sale Transaction(s).

48.    The Sale Transaction(s) are supported by a sound business purpose—maximizing the value of the Debtors' estates.  As previously discussed, it is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.  *See Bank of Am. Nat 'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P 'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, *4 (Bankr. D. Del. 2001)("[I]t is worth noting that a [section] 363(b) sale transaction does not require an auction procedure.  The auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").  Consequently, the ultimately successful bid, after being subject to a "market check" in the form of the Auction, will constitute, in the Debtors' business judgment, the highest or otherwise best offer for the Assets and will provide a greater recovery for their estates than any known or practicably available alternative.  *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure, [t]he auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

49.     As noted above, prior to the Bid Deadline, SOLIC will continue to market the Assets and solicit offers consistent with the Bidding Procedures, including, for example, by contacting previously solicited parties, continuing to provide Acceptable Bidders with data room access and requested information, and otherwise assisting the Debtors with all efforts to increase transaction value.  In this way, the number of bidders that are eligible to participate in a competitive Auction process will be maximized, or, if no Auction is held because no Auction is necessary the purchase price will, conclusively, be deemed fair value.  The Debtors will submit additional evidence at the Sale Hearing if necessary to support the foregoing conclusions.  All of these considerations, together, support the conclusion that a Sale Transaction pursuant to the Bidding Procedures will represent the most value-maximizing path forward for the Debtors in these chapter 11 cases.

50.     As such, the Debtors' determination to sell the Assets through the competitive process outlined in the Bidding Procedures and subsequently to enter into a purchase agreement with the Successful Bidder is a valid and sound exercise of the Debtors' business judgment. Therefore, the Debtors request that the Court make a finding that the proposed sale of the Assets is a proper exercise of the Debtors' business judgment and is rightly authorized.

**B.      Adequate and Reasonable Notice of the Auction and Sale Transactions Will Be Provided.**

51.     The Auction Notice:  (a) will be served in a manner that provides parties in interest notice of the date, time, and location of the Sale Hearing; (b) informs parties in interest of the deadlines for objecting to the Sale Transaction(s) or the assumption and assignment of the Executory Contracts and Unexpired Leases; and (c) otherwise includes all information relevant to parties interested in or affected by the Sale Transaction(s).  Significantly, the form and manner of

the Auction Notice will have been approved by this Court pursuant to the Bidding Procedures

Order after notice and a hearing before is the Auction Notice served on parties in interest.

> **C.      The Sale Transaction(s) Have Been Proposed in Good Faith Without Collusion, and the Successful Bidder Is a "Good-Faith Purchaser."**

52.      The Debtors request that the Court find the Successful Bidder is entitled to the

benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with

the sale of Assets.  Section 363(m) of the Bankruptcy Code provides, in pertinent part, that:

> [t]he reversal or modification on appeal of an authorization under
> subsection (b) or (c) of this section of a sale or lease or property does
> not affect the validity of a sale or lease under such authorization to
> an entity that purchased or leased such property in good faith,
> whether or not such entity knew of the pendency of the appeal,
> unless such authorization and such sale or lease were stayed
> pending appeal.

11 U.S.C. § 363(m).

53.      Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold

pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the

purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser

leased or purchased the assets in "good faith."  *See id*.  While the Bankruptcy Code does not define

"good faith," courts have held that a purchaser shows its good faith through the integrity of its

conduct during the course of the sale proceedings, finding that where there is a lack of such

integrity, a good-faith finding may not be made.  *See, e.g., In re Abbotts Dairies of Pennsylvania,

Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195,

1198 (7th Cir. 1978)) ("Typically, the misconduct that would destroy a [buyer's] good faith status

at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the

trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy

Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608,

610 (S.D.N.Y. 1988) (same) *abrogated on other grounds, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993).

54.     The Debtors submit that the Successful Bidder will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code, and that the Stalking Horse APA, if any, or the Form APA, and any marked versions thereof, would be a good-faith, arms'-length agreement entitled to the protections of section 363(m) of the Bankruptcy Code.[5]

55.     ***First***, as set forth in more detail above, the consideration to be received by the Debtors from a Successful Bidder will be substantial, fair, and reasonable.  ***Second***, any sale agreement with a Successful Bidder will be the culmination of a competitive Auction process in which all parties will be represented by counsel and all negotiations will be conducted on an arm's-length, good-faith basis.  ***Third***, there is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders," or similar conduct that would cause or permit the Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.  *Abbotts Dairies of Pennsylvania*, 788 F.2d at 147 (citing *Rock Indus. Mach. Corp.*, 572 F.2d at 1198).  With respect to potential bidders, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the process.  ***Finally***, any Bids that the Debtors ultimately determine to be Successful Bids will have been evaluated and approved by the Debtors in consultation with their advisors.  Accordingly, the

---

[5]    The Debtors believe that a finding of good faith within the meaning of section 363(m) of the Bankruptcy Code will be appropriate for any Successful Bidder.  Pursuant to the Bidding Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bidding Procedures.  In addition, the Debtors will not choose as the Successful Bidder or Back-Up Bidder any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.

Debtors believe that the Successful Bidder, if any, and any purchase agreement associated with a

Successful Bid should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

**D.** **The Sale Transaction(s) Should be Approved "Free and Clear" under Section 363(f) of the Bankruptcy Code.**

56.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and

clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such

a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale

price of the property exceeds the value of all liens on the property; (d) the interest is the subject of

a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable

proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

57.     Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the

requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and

clear of all Encumbrances, except with respect to any interests that may be assumed liabilities

under the applicable purchase agreement. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793

(Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to

conduct the sale free and clear of all liens."); *see also Citicorp Homeowners Servs., Inc. v. Elliot

(In re Elliot)*, 94 B.R. 343, 354 (E.D. Pa. 1988) (holding that a sale "free and clear" may be

approved provided the requirements of at least one subsection are met).

**58.**     The Debtors submit that, to the extent that any interest in the Assets will not be an

assumed liability, any such interest in the Assets satisfies or will satisfy at least one of the five

conditions of section 363(f) of the Bankruptcy Code, and any such interest will be adequately

protected by either being paid in full at the Closing, or by having it attach to the net proceeds of

such Sale Transaction(s), subject to any claims and defenses the Debtors may possess with respect

thereto. The Debtors accordingly request authority to convey the Assets to the Successful Bidder

arising from the Auction, if any, free and clear of all encumbrances, with any such encumbrances to attach to the proceeds of the applicable Sale Transaction.

### **Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate**

59.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."  The Debtors request that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

60.    The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).  Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 *Collier on Bankruptcy* 6004.10 (15th rev. ed. 2006).  Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to file such appeal.  *Id.*

61.    To maximize the value received for the Assets, the Debtors seek to close the Sale Transaction(s) as soon as possible after a hearing on the Sale Order.  Accordingly, the Debtors

hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

## Disclosures Under Local Rule 6004-1

62.     Local Rule 6004-1 requires, among other things, that a debtor include the "material terms of the proposed sale" in a sale motion.  As set forth in this Motion, the Debtors and their professionals are in the midst of marketing the Assets, the continuation of a process that began almost two months ago.  Nevertheless, the Debtors do not, as yet, have a signed agreement. Moreover, because the Debtors continue to negotiate with parties in interest, they cannot, as yet, identify, with any reasonable specificity, the terms of the sale or sales of some or all of the Assets. Accordingly, the Debtors are unable, at this time, to make the disclosures required under Local Rule 6004-1.  In the event the Debtors secure one or more Stalking Horse Bidder(s), the Debtors will file a Stalking Horse Agreement and make the requisite disclosures.

## Request of Waiver of Stay

63.     To the extent that the relief sought in this Motion constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  Further, to the extent applicable, the Debtors request that the Court find that the provisions of Bankruptcy Rule 6003 are satisfied.  As explained herein, the relief requested in this Motion is immediately necessary for the Debtors to be able to continue to operate their business and preserve the value of their estates.

## Reservation of Rights

64.     Notwithstanding anything to the contrary herein, nothing contained in this Motion or any actions taken pursuant to any order granting the relief requested by this Motion is intended or should be construed as:  (a) an implication or admission as to the amount of, basis for, or validity of any particular claim against the Debtors under the Bankruptcy Code or other applicable

nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien (contractual, common law, statutory, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a proof of claim.

### No Prior Request

65.     No prior request for the relief sought in this Motion has been made to this Court or any other court.

### Notice

66.     The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the state attorneys general for the states in which the Debtors conduct business; (d) the United States Attorney's Office for the District of New Jersey; (e) the Internal Revenue Service; (f) any parties known or reasonably believed to have expressed an interest in the Assets; (f) Otterbourg P.C., counsel to the Prepetition ABL Administrative Agent; (g) Ropes & Gray LLP, counsel to the Consenting

Prepetition Term Loan Agent; (h) Choate, Hall & Stewart LLP, counsel to the Prepetition

Subordinated Loan Agent; (i) all entities known or reasonably believed to have asserted a lien,

encumbrance, claim, or other interest in any portion of the Debtors' Assets; and (i) any party that

has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the

nature of the relief requested, no other or further notice need be given.


*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors request that the Court enter the Bidding Procedures Order

granting the relief requested herein and such other relief the Court deems appropriate under the

circumstances.

Dated:  February 9, 2026

/s/  Michael D. Sirota

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com


*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

| | |
|---|---|
| In re:<br><br>EDDIE BAUER LLC, *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 26-11422 (SLM)<br><br>(Joint Administration Requested) |

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer.   The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

**ORDER (I) APPROVING THE
BIDDING PROCEDURES AND STALKING
HORSE BID PROTECTIONS, (II) SCHEDULING
CERTAIN DATES AND DEADLINES WITH RESPECT
THERETO, (III) APPROVING THE FORM AND MANNER
OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND
PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF
CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING
THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through and including seventeen (17), is **ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Upon the Debtors' motion (the "Motion")[2] for entry of an order (this "Bidding Procedures Order"):  (a) authorizing and approving the proposed marketing, auction, and bidding procedures (the "Bidding Procedures") attached hereto as **Exhibit 1**, by which the Debtors will solicit and, if value maximizing, will select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of the Debtors' Assets; (b) approving the Stalking Horse Bid Protections relating to the Stalking Horse Bidder, if any; (c) establishing certain dates and deadlines related thereto and scheduling an Auction, if needed, to determine the highest and otherwise best Bid available; (d) approving the form and manner of notice of the Auction, if any, and any hearing to approve a sale of some, all, or substantially all of the Debtors' assets, as may be necessary; (e) approving procedures for the assumption and assignment of certain Executory Contracts and Unexpired Leases in connection with the Sale Transaction; and (f) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"), if any; and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** as set forth herein.

2.      The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances.  The Bidding Procedures are designed to maximize value for the benefit of the Debtors' estates, their creditors, and other parties, including with respect to the proposed procedures for providing Stalking Horse Bid Protections as determined by the Debtors in an exercise of their business judgment in accordance with the Bidding Procedures.

3.      The Debtors' proposed notice of the Motion and the Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and

(Page | 5)

| Debtors: | EDDIE BAUER LLC, *et al.* |
|---|---|
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

the Local Rules, and (iii) adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the relief granted by this Order has been afforded to all interested persons and entities.

4. Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

## I.    **Important Dates and Deadlines**.

5. **The Final Bid Deadline**.  March 3, 2026, at 5:00 p.m. prevailing Eastern Time, is the deadline by which all Qualified Bids must be *actually received* by the parties specified in the Bidding Procedures.

6. **Stalking Horse Bidders and Stalking Horse Bid Protections**.  The Debtors, upon entry of this Order, shall be authorized, but are not obligated or directed, in an exercise of their reasonable business judgment, to designate one or more Stalking Horse Bidders with respect to the applicable Assets and enter into a stalking horse agreement (the "Stalking Horse APA") by no later than February 27, 2026 at 5:00 p.m. (prevailing Eastern time).

7. In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee.  The Stalking Horse Notice shall:  (a) set forth the

(Page | 6)

| Debtors: | EDDIE BAUER LLC, *et al*. |
|---|---|
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) the applicable Assets to which the Stalking Horse Bid relates; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections.   If there are no objections to the Stalking Horse Notice within two business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing.   If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

8.     Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors are authorized, but not directed, to incur and pay (a) the Break Up Fee, not to exceed three percent of the Purchase Price, and (b) the Expense Reimbursement, to each Stalking Horse Bidder in

(Page | 7)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

accordance with the terms of such Stalking Horse Order and Stalking Horse APA.

9.     Except for the Stalking Horse Bid Protections provided to the Stalking Horse Bidder, if any, no person or entity shall be entitled to any expense reimbursement, break-up fees, "topping," termination, or other similar fee or payment, and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for break-up fees, expense reimbursement, or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

10.     **The Auction**.  The date and time of the Auction, if needed, is March 6, 2026, at 10:00 a.m. prevailing Eastern Time, which time may be modified by the Debtors in their sole discretion, upon written notice with the Court.  The Auction will be held at the offices of proposed co-counsel to the Debtors: Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022, or such other place as the Debtors determine.  Only the Debtors, the Qualified Bidders, any information officer appointed by the Canadian Court in the Canadian Proceedings and any other parties as the Debtors may determine in their reasonable discretion, in each case, along with their representatives and advisors, shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. The Debtors shall send written notice (e-mail being sufficient) of the date, time, and place of any Auction to the Qualified Bidders no later than two business days before such Auction and will post notice of the date, time, and place of such Auction no later than two business days before such

| | |
|---|---|
| (Page \| 8) | |
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Auction on the website of the Debtors' proposed notice, claims, and solicitation agent, Stretto, Inc. (the "Claims and Noticing Agent") at https://cases.stretto.com/EddieBauer.  The Debtors may suspend or terminate the auction at any time if the Debtors determine, in their reasonable business judgment, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors.

11.    **Notice of Successful Bidder**.   As soon as reasonably practicable upon the conclusion of the Auction, if any, the Debtors shall file a Notice of Successful Bidder.

12.    **Sale Objection Deadline**.  Objections to the Sale Transaction(s) and the Sale Order must:  (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be *actually received* by the Debtors by March 9, 2026, at 5:00 p.m., prevailing Eastern Time ("Sale Objection Deadline").

13.    **Failure to Object**.  If any party fails to timely file with the Court and serve an objection by the Sale Objection Deadline or otherwise abide by the procedures set forth in the Bidding Procedures regarding an objection to any Sale Transaction(s), such party shall be barred from asserting, at the Sale Hearing or otherwise, any objection to the relief requested in the Motion or to the consummation and performance of any Sale Transaction(s), including the transfer of the applicable Assets to a Successful Bidder, free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to

| Debtors: | EDDIE BAUER LLC, *et al.* |
|----------|--------------------------|
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

"consent" to the Sale Transaction(s) for the purposes of section 363(f) of the Bankruptcy Code.

14.     **The Sale Hearing**.  March 12, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard, is the date and time for the hearing for the Court to consider approval of the Successful Bid or Successful Bids, if needed (the "Sale Hearing").  The Sale Hearing may be adjourned in the Debtors' business judgment by announcement in open Court or on the Court's calendar without any further notice required.

## II.     The Auction, Bidding Procedures, Auction Notice, and Related Relief.

15.     The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale Transaction.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding Procedures Order.  The Debtors are authorized to take all actions necessary to implement the Bidding Procedures.  Subject to the terms of the Bidding Procedures, the Debtors may modify the Bidding Procedures as necessary or appropriate to maximize the value of their estates.

16.     Any deposit (including any Good Faith Deposit) provided by a Qualified Bidder shall be held in escrow by the Debtors or their agent and shall not become property of the Debtors' bankruptcy estates unless and until released from escrow to the Debtors pursuant to the terms of the applicable escrow agreement, the Bidding Procedures, or order of this Court, as applicable.

17.     The Auction Notice, substantially in the form attached hereto as **Exhibit 2**, is

| (Page \| 10) | |
| --- | --- |
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

approved.  As soon as reasonably practicable following the entry of this Bidding Procedures Order, the Debtors will cause the Auction Notice to be served upon the parties that received notice of the Motion.  In addition, as soon as practicable after entry of the Order, the Debtors shall post the Auction Notice on the website of the Debtors' proposed Claims and Noticing Agent, Stretto, Inc., at https:// https://cases.stretto.com/EddieBauer and shall publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition).

18.    Pursuant to Local Rule 6004-2:  (a) each bidder participating at the Auction shall be required to confirm that it has not engaged in any bad faith or collusion with respect to the bidding or the Sale Transaction, as set forth in the Bidding Procedures; (b) the Auction shall be conducted openly and all parties in interest will be permitted to attend; and (c) the bidding at the Auction will be documented, recorded, or videotaped.

### III.    <u>The Assumption and Assignment Procedures</u>.

19.    The procedures set forth in paragraph 20 below regarding the assumption and assignment of any Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors pursuant to section 365(b) of the Bankruptcy Code and assigned to the Successful Bidder, if any, pursuant to section 365(f) of the Bankruptcy Code in connection with any Sale Transaction are approved to the extent set forth herein.

(Page | 11)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

20.     The Assumption and Assignment Procedures shall govern the assumption and assignment of all of the Debtors' Executory Contracts and Unexpired Leases to be assumed and assigned in connection with any Sale Transaction, subject to the payment of any amount necessary to satisfy all defaults and actual pecuniary loss to the counterparty resulting from such defaults including, but not limited to, all claims, demands, charges, rights to refunds and monetary and non-monetary obligations that the relevant counterparty can assert under an Executory Contract or Unexpired Lease, whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate, relating to money now owing or owing in the future, arising under or out of, in connection with, or in any way relating to an Executory Contract or Unexpired Lease (the foregoing amounts as stated in the Assumption Notice, the "Cure Payments"):

a.     **Notice of Assumption**.  As soon as reasonably practicable upon conclusion of any Auction (or, if no Auction is held, the Bid Deadline), the Debtors shall file on the docket and serve a notice of contracts assumed and assigned to any Successful Bidder, in substantially the form attached hereto as **Exhibit 3** (the "Assumption Notice"), via first-class mail on the Contract or Lease Counterparties.  The Assumption Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the Executory Contract or Unexpired Lease, (ii) the name of the Contract or Lease Counterparty, (iii) the Debtors' good faith estimates of the Cure Payments, if any, required in connection with the Executory Contract or Unexpired Lease, and (iv) the Sale Objection Deadline; *provided*, however, that service of an Assumption Notice shall not constitute an admission that any Executory Contracts and Unexpired Leases listed thereon is an executory contract or that such stated Cure Payment constitutes a claim against the Debtors or a right against any Successful Bidder, all rights with respect thereto being expressly reserved.

(Page | 12)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Further, the inclusion of a contract on the Assumption Notice is not a guarantee that such contract will ultimately be assumed and assigned.

b. **Cure Payments**. The payment of the applicable Cure Payments by the Debtors and/or the Successful Bidder, as applicable, shall (i) effect a cure of all defaults existing thereunder, (ii) compensate the applicable Contract or Lease Counterparties for any actual pecuniary loss to such counterparty resulting from such default, and (iii) together with the assumption of the Executory Contract or Unexpired Lease by the Debtors and the assignment of such Executory Contract or Unexpired Lease to the Successful Bidder, constitute adequate assurance of future performance thereof.

c. **Supplemental Assumption Notice**. To the extent the Debtors, at any time after the Auction (or, if no Auction is held, the Bid Deadline) (i) identify additional Executory Contracts or Unexpired Leases that may be assumed by and assigned to the Successful Bidder, (ii) remove any Executory Contracts or Unexpired Leases from the list attached to the Assumption Notice, and/or (iii) modify the previously stated Cure Payment associated with any Executory Contract or Unexpired Lease, the Debtors will file with this Court and serve in accordance with the noticing procedures approved for the Assumption Notice attached hereto as **Exhibit 3**, a supplemental notice of contract or lease assumption (a "Supplemental Assumption Notice") on each of the Contract or Lease Counterparties affected by the Supplemental Assumption Notice as soon as is reasonably practicable. Each Supplemental Assumption Notice will include the same information with respect to listed Executory Contracts or Unexpired Leases as was included in the Assumption Notice. Except as otherwise provided in any purchase agreement, the Debtors (in consultation with the Successful Bidder) may add or remove Executory Contracts and Unexpired Leases from the list of Executory Contracts and Unexpired Leases to be assumed in connection with the Sale Transaction(s) at any time up to and including two business days prior to Closing.

(Page | 13)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

d.  **Objections**.  Objections, if any, to the proposed assumption and assignment or the Cure Payment proposed with respect thereto, must (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payment, state the Cure Payment alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Court and served upon (a) proposed counsel to the Debtors, (b) counsel to the Successful Bidder, if any, and (c) any other party that has filed a notice of appearance in these chapter 11 cases, so as to be *actually received* **no later than March 9, 2026, at 5:00 p.m., prevailing Eastern Time, or the deadline set forth in a Supplemental Assumption Notice, as applicable**. The Debtors may modify the Sale Objection Deadline and the deadline set forth in a Supplemental Assumption Notice by filing a notice of such modification with the Court.

e.  **Dispute Resolution**.  In the event that the Debtors and a Contract or Lease Counterparty cannot resolve an objection to a Cure Payment, the Executory Contract or Unexpired Lease at issue may be assumed by the Debtors and assigned to the Successful Bidder; *provided* that the Debtors shall segregate the Cure Payment that the Contract or Lease Counterparty asserts is required to be paid, pending a resolution of the dispute by the Court or mutual agreement by the parties.  If an objection to the proposed assumption and assignment of a contract or related Cure Payment proposed in connection with any Sale Transaction remains unresolved as of the Sale Hearing, the Debtors shall seek a hearing before this Court to determine such Cure Payments, if any, and approve the assumption of the applicable Executory Contracts or Unexpired Leases.

f   **Contract or Lease Assumption**.  No Executory Contract or Unexpired Lease shall be deemed assumed and assigned pursuant to section 365 of the Bankruptcy Code until the later of (i) the date the Court has entered an order assuming and assigning such Executory Contract or Unexpired Lease or (ii) the date the Sale Transaction has closed.

21.  Any party failing to timely file an objection to the Cure Payments or the proposed

assumption and assignment of an Executory Contract or Unexpired Lease listed on the Assumption

(Page | 14)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Notice or a Supplemental Assumption Notice is deemed to have consented to (a) such Cure Payment, (b) the assumption and assignment of such Executory Contract or Unexpired Lease, (c) the related relief requested in the Motion, (d) and adequate assurance of future performance, and (e) the applicable Sale Transaction. Such party shall be forever barred and estopped from objecting to the Cure Payments, the assumption and assignment of the applicable Executory Contract or Unexpired Lease, adequate assurance of future performance, the relief requested in the Motion, whether or not applicable law excuses such counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code, and from asserting any additional cure or other amounts against the Debtors and the Successful Bidder with respect to the applicable Executory Contract or Unexpired Lease.

22.     The Debtors shall, at the request of the applicable Executory Contract or Unexpired Lease counterparty, provide evidence to such Executory Contract or Unexpired Lease counterparty that the proposed assignee has the ability to comply with the requirements of adequate assurance of future performance; *provided* that any such evidence that constitutes nonpublic information shall be provided on a confidential basis. All Bidders are deemed to consent to the transmission of such evidence of adequate assurances of future performance on a confidential basis to counsel for the applicable Executory Contract or Unexpired Lease counterparties via e-mail with such information to be used only for purpose of assessing the applicable Bidder.

23.     The inclusion of an Executory Contract or Unexpired Lease in the Assumption

| Debtors: | EDDIE BAUER LLC, *et al.* |
|---|---|
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

Notice or a Supplemental Assumption Notice will not obligate any Debtor to assume such Executory Contract or Unexpired Lease listed thereon or a Successful Bidder to take assignment of such assumed Executory Contract or Unexpired Lease. Only those Executory Contracts and Unexpired Leases that are included on a schedule of assumed and assigned contracts attached to the executed definitive asset purchase agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such asset purchase agreement) will be assumed and assigned to the applicable Successful Bidder. No Executory Contract or Unexpired Lease in the Assumption Notice or a Supplemental Assumption Notice shall be assumed other than in connection with (and concurrently with the effectiveness of) the assignment of such Executory Contract or Unexpired Lease to the applicable Successful Bidder.

## IV.    **Miscellaneous**.

24.    Nothing in this Bidding Procedures Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies or defenses that any party (including the Debtors and the Stalking Horse Bidder, if any, or any other prospective purchaser) has or may have under applicable bankruptcy and non-bankruptcy law, under any indemnity agreements, or related agreements or any letters of credit relating thereto, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking Bankruptcy Court relief with respect to the Auction, the Bidding Procedures, the Sale Transaction, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

(Page | 16)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

22.     The Debtors may modify any of the dates and deadlines set forth herein without further order of the Court; *provided* that the Debtors will serve notice (with e-mail from proposed co-counsel to the Debtors being sufficient) to any Qualified Bidder, as applicable and appropriate, informing them of such modification.  The Debtors are further authorized, but not directed, to conduct multiple Sale Transactions and/or Auctions (as necessary) in substantial conformity with the Schedule and Bidding Procedures established through this Bidding Procedures Order.

23.     The failure to include or reference a particular provision of the Bidding Procedures specifically in this Bidding Procedures Order shall not diminish or impair the effectiveness or enforceability of such provision.

24.     In the event of any inconsistencies between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

25.     The Debtors may modify any Good Faith Deposit as necessary or appropriate, based on the Assets being sold.

26.     Notwithstanding anything to the contrary herein, nothing contained in the Motion or any actions taken pursuant to this Bidding Procedures Order granting the relief requested by the Motion is intended as or should be construed or deemed to be:  (a) an implication or admission as to the amount of, basis for, priority of, or validity of any particular claim against a Debtor entity under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular

| (Page \| 17) | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief |

claim; (d) an implication or admission that any particular claim is of a type specified or defined in the Motion or any order granting the relief requested by the Motion or a finding that any particular claim is an administrative expense claim or other priority claim; (e) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a waiver of the obligation of any party in interest to file a proof of claim. Nothing contained in this Bidding Procedures Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim on account of such claim not being paid.

27.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion, and the requirements of the Bankruptcy Rules, the Bankruptcy Local Rules, and the Complex Case Procedures are satisfied by such notice.

28.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, the terms and conditions of this Bidding Procedures Order are immediately effective and enforceable upon its entry.

29.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Bidding Procedures Order in accordance with the Motion.

30.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Bidding Procedures Order.

## **Exhibit 1**

**Bidding Procedures**

## **Exhibit 2**

**Auction Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

## NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on [    ], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. [    ]] (the "Bidding Procedures Order")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "Debtors"). On [    ], 2026, the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court")

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of all, substantially all, or any portion of the Debtors' assets (the "Assets") consistent with the bidding procedures (the "Bidding Procedures") approved by the Court pursuant to the Bidding Procedures Order.  **All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures Order**.  To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures is **March 3, 2026, at 5:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive qualified competing bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Assets **on March 6, 2026, at 10:00 a.m. (prevailing Eastern Time)** at the offices of proposed co-counsel to the Debtors:  Kirkland & Ellis LLP, 601 Lexington Avenue, New York, NY 10022.

**PLEASE TAKE FURTHER NOTICE** that only the Debtors, the U.S. Trustee, the Qualified Bidders, any information officer appointed by the Canadian Court in the Canadian Proceedings, and any other parties as the Debtors may determine in their reasonable discretion, in each case, along with the representatives and advisors, shall be entitled to participate in the Auction, and only Qualified Bidders will be entitled to make Overbids (as defined in the Bidding Procedures) at the Auction. **All interested or potentially affected parties should carefully read the Bidding Procedures and the Bidding Procedures Order.**  Copies of the Bidding Procedures, the Bidding Procedures Order, and any other related documents are available upon request to the Debtors' Claims and Noticing Agent, Stretto, Inc. by calling 833.437.6838 (U.S. / Canada) or 1.714.442.4326 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/EddieBauer).

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction(s) at a hearing scheduled to commence on or before March 12, 2026, at a time to be announced, subject to Court availability, or as soon thereafter as the Debtors may be heard., prevailing Eastern Time, (the "Sale Hearing") before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, NJ 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders.  A hearing to consider approval of each Canadian Sale Order may be scheduled once the Debtors determine whether a Successful Bid is likely to include Assets of the Canadian Debtors.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order, objections to the consummation or approval of the Sale Transaction(s) and any objections to proposed cure payments or the assumption and assignment of Executory Contracts or Unexpired Leases, must (a) be in writing; (b) conform to the applicable provisions of the

Bankruptcy Rules and the Local Rules; (c) state with particularity the legal and factual bases for the objection and the specific grounds therefor; and (d) be filed with the Court and served so as to be ***actually received*** on or before March 9, 2026, at 5:00 p.m., prevailing Eastern Time, by the following parties:  (i) the Debtors, Eddie Bauer LLC, 6501 Legacy Drive, Suite B100, Plano, TX 75024, Attn:  Dawn Wolverton (dawn.wolverton@catalystbrands.com); (ii) proposed co-counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com); Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); Oliver Paré (oliver.pare@kirkland.com); Nathan Felton (nathan.felton@kirkland.com); and Sarah Osborne (sarah.osborne@kirkland.com); and (c) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn:  Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Ustaine, Esq. (wustaine@coleschotz.com), and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com).

### <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY MAKE AN OBJECTION TO A SALE TRANSACTION, ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE APPLICABLE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS MAY BE SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT OR THE PLAN, AS APPLICABLE.**

Dated:  [●], 2026

/s/  *DRAFT*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com


*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

## **Exhibit 3**

**Assumption Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

> YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
> OR ONE OF YOUR AFFILIATES ARE A COUNTERPARTY TO AN
> EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE
> OF THE DEBTORS AS SET FORTH ON **EXHIBIT A** ATTACHED HERETO.

**PLEASE TAKE NOTICE** that on [__], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII)*

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

*Granting Related Relief* [Docket No. [___]] (the "<u>Bidding Procedures Order</u>")[2] in the chapter 11 cases of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>").  On [___], 2026, the Ontario Superior Court of Justice (Commercial List) granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the Executory Contracts and Unexpired Leases listed on **<u>Exhibit A</u>** to which you are a counterparty, upon approval of any Sale Transaction.  The Debtors have conducted a review of their books and records and have determined that the Cure Payment under such Executory Contract or Unexpired Lease is as set forth on **<u>Exhibit A</u>**.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Payment, object to a proposed assignment to the Successful Bidder of your Executory Contract or Unexpired Lease, or dispute the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Contract, your objection must:  (a) be in writing; (b) comply with the applicable provisions of the Bankruptcy Rules, the Local Rules, and any order governing the administration of these chapter 11 cases; (c) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Payments, state the correct Cure Payments alleged to be owed to the objecting Contract or Lease Counterparty, together with any applicable and appropriate documentation in support thereof; and (d) be filed with the Court and served and **<u>actually received</u> no later than March 9, 2026, at 5:00 p.m. (prevailing Eastern Time) (the "<u>Sale Objection Deadline</u>")** by the Court and the following parties:  (i) proposed co-counsel to the Debtors (A) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com); Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); Oliver Paré (oliver.pare@kirkland.com); Nathan Felton (Nathan.felton@kirkland.com); and Sarah Osborne (sarah.osborne@kirkland.com) and (B) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn.:  Michael D. Sirota (msirota@coleschotz.com); Warren A. Usatine (wusatine@coleschotz.com); and Felice R. Yudkin (fyudkin@coleschotz.com); and (ii) the Office of the United States Trustee for the District of New Jersey, 1085 Raymond Boulevard, Suite 2100, Newark, NJ 07102, Attn: Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov); *provided* that the Debtors may modify the Sale Objection Deadline by filing a notice of such modification on the Court's docket.

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Payments, (b) the proposed assignment and assumption of any Executory Contract or Unexpired Lease, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Sale Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Payments as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional Cure Payments are due under the Executory Contract or Unexpired Lease, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the

---

[2]   Capitalized terms used but not defined in this notice have the meanings given to them in the Bidding Procedures Order.

Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of any Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Executory Contract or Unexpired Lease or related Cure Payments in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the listing of any Executory Contract or Unexpired Lease on the Assumption Notice or any Supplemental Assumption Notice does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors, and all rights of the Debtors and the Successful Bidder with respect to such Executory Contracts and/or Unexpired Leases are reserved. Moreover, the Debtors explicitly reserve the right, in their reasonable discretion, to seek to reject or assume each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or the Successful Bidder, as applicable, to designate any Executory Contract or Unexpired Lease as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Executory Contracts or Unexpired Leases or the validity, priority, or amount of any claims of a counterparty to any Contract against the Debtors that may arise under such Executory Contract or Unexpired Lease, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

Dated:  [●], 2026

/s/  DRAFT
_____

**COLE SCHOTZ P.C.**                                            **KIRKLAND & ELLIS LLP**
Michael D. Sirota, Esq.                                          **KIRKLAND & ELLIS INTERNATIONAL LLP**
Warren A. Usatine, Esq.                                         Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Felice R. Yudkin, Esq.                                          Matthew C. Fagen, P.C. (*pro hac vice* pending)
Court Plaza North, 25 Main Street                        Oliver Paré (*pro hac vice* pending)
Hackensack, New Jersey 07601                            601 Lexington Avenue
Telephone:  (201) 489-3000                                 New York, New York 10022
msirota@coleschotz.com                                     Telephone:  (212) 446-4800
wusatine@coleschotz.com                                  Facsimile:  (212) 446-4900
fyudkin@coleschotz.com                                    joshua.sussberg@kirkland.com
                                                                          matthew.fagen@kirkland.com
                                                                          oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*              *Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*                                    *the Debtors in Possession*

## <u>Exhibit A</u>

**Schedule of Assumed and Assigned
Executory Contracts and Unexpired Leases**

## **Exhibit 1**

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

**BIDDING PROCEDURES FOR THE**
**SUBMISSION, RECEIPT, AND ANALYSIS OF BIDS IN**
**CONNECTION WITH THE SALE OF THE DEBTORS' ASSETS**

On February 9, 2026, each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of New Jersey (the "Court"). On February 9, 2026, Eddie Bauer LLC, as proposed foreign representative, commenced ancillary proceedings in Canada (the "Canadian Proceedings") on behalf of the Debtors' estates under the Companies' Creditors Arrangement Act (the "CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court").

The Debtors filed these chapter 11 cases after entering into a restructuring support agreement (the "RSA")[2] with the Debtors' prepetition secured lenders. Pursuant to the RSA, the Debtors propose to, through one or more transactions, sell or dispose of all, substantially all, or any portion of the Debtors' assets to the highest or otherwise best bidder through a competitive bidding process (each, a "Sale Transaction") designed to generate maximum value for the Debtors, their estates, and other parties in interest followed by a court-supervised wind-down of the Debtors' remaining store operations.

On [    ], 2026, the Court entered the *Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII)*

---

[1]     The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer. The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]     The RSA is attached as Exhibit B to the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of Chapter 11 Petitions and First Day Motions*, filed contemporaneously herewith.

*Granting Related Relief* (the "Bidding Procedures Order"),[3] approving, among other things, these bidding procedures (the "Bidding Procedures"). These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process and, if necessary, an auction (the "Auction") for a sale of all, substantially all, or any portion of the Debtors' assets pursuant to one or more Sale Transactions. On [___], 2026, the Canadian Court granted an order, among other things, recognizing and enforcing the Bidding Procedures Order in Canada.

Copies of the Bidding Procedures Order or any other documents in the Debtors' chapter 11 cases are available upon request to the Debtors' Claims and Noticing Agent, Stretto, Inc. by calling 833.437.6838 (U.S. / Canada) or 1.714.442.4326 (International) or visiting the Debtors' restructuring website at (https://cases.stretto.com/EddieBauer).

## I.    The Assets to be Auctioned.

The Debtors seek to sell all, substantially all, or any portion of the Debtors' assets to the person or entity making the most value-maximizing Bid through the process outlined in these Bidding Procedures. These assets being marketed in the sale process include substantially all assets used in connection with the Debtors' brick-and-mortar retail business, including, but not limited to, the Debtors' going-concern business, unexpired leases, executory contracts, equipment, inventory, supplies, intellectual property, insurance proceeds, prepaid expenses and deposits, and books and records, in each case, free and clear of all liens, claims, interests, or other encumbrances (collectively, the "Assets").

## II.    Public Announcement of the Auction.

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall (a) cause (i) a notice of the Auction substantially in the form attached to the Bidding Procedures Order as Exhibit 2 (the "Auction Notice"), (ii) the Bidding Procedures Order, and (iii) these Bidding Procedures to be served on the parties that received notice of the Bidding Procedures Motion; (b) post the Auction Notice on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer; and (c) publish the Auction Notice, with any modifications necessary for ease of publication, on one occasion in *The New York Times* (National Edition) and/or another national publication reasonably acceptable to the Debtors, including, if any Canadian Assets are implicated by the Auction, the *Globe and Mail* (National Edition). Any information officer appointed by the Canadian Court in the Canadian Proceedings will also post the Auction Notice on its case website.

---

[3]    Capitalized terms used but not defined herein have the meanings ascribed to them later in these Bidding Procedures, in the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Bidding Procedures Motion") filed contemporaneously herewith, or in the Bidding Procedures Order, as applicable.

### III.    The Potential Bidder Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, including to receive access to due diligence materials, a person or entity interested in purchasing some or all of the Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors and their advisors the following preliminary documentation (collectively, the "Preliminary Bid Documents"):

a.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

b.    identification of the Potential Bidder and any principals and representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale Transaction;

c.    a statement of the portion of the Assets that the Potential Bidder intends to acquire;

d.    sufficient information to demonstrate that the Potential Bidder has or can reasonably obtain the financial capacity to close a purchase of any portion, all, or substantially all of the Debtors' Assets, the adequacy of which must be acceptable to the Debtors; and

e.    a statement detailing whether the Potential Bidder is partnering with or otherwise working with any other interested party in connection with the potential submission of a joint Bid, the identity of any such party or parties, and a concise description of the nature of such partnership or joint Bid.

The Debtors, in consultation with their advisors, will determine and notify each Potential Bidder whether such Potential Bidder has submitted adequate documents so that such Potential Bidder may proceed to conduct due diligence and submit a Bid (such Potential Bidder, an "Acceptable Bidder").  For the avoidance of doubt, any party that has already executed a Confidentiality Agreement and submitted a non-binding indication of interest prior to the Petition Date and, in the judgment of the Debtors, has provided adequate forms of the preliminary documentation requested above, shall be deemed to be an Acceptable Bidder and automatically be authorized to conduct due diligence and submit a Bid.  An Acceptable Bidder shall not be eligible to participate in the Auction unless such Acceptable Bidder meets the requirements set forth in Section IV below.

### IV.    The Qualified Bid Requirements.

To be eligible to participate in the Auction, an Acceptable Bidder must deliver to the Debtors and their advisors an irrevocable offer to purchase some or all of the Assets in the form of a document signed by the Acceptable Bidder (each, a "Bid"), and shall meet the following criteria, in each case, on or prior to the Bid Deadline:

a.    ***Purchased Assets and Assumed Liabilities***.  Each Bid must clearly state the following: (i) which particular Assets are to be included in the applicable Sale Transaction; (ii) if applicable, the liabilities and obligations to be assumed,

including any cure costs to be assumed; and (iii) any executory contracts (the "Executory Contracts") and unexpired leases (the "Unexpired Leases") proposed to be assumed by the Debtors and assigned to the Acceptable Bidder;

b.  **_Good Faith Deposit_**.  Each Bid must be accompanied by a cash deposit equal to ten percent of the applicable Purchase Price, to be held in an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").  To the extent that a Bid is modified to increase its proposed Purchase Price at or prior to the Auction, the applicable Acceptable Bidder must adjust its Good Faith Deposit such that it equals ten percent of the increased aggregate Purchase Price promptly and in no event later than one business day following the conclusion of the Auction.  Each Bid shall include a written acknowledgement from the bidder that, in the event of the Acceptable Bidders' breach of, or failure to perform under the applicable purchase agreement, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages to the Debtors and their estates resulting from such breach or failure to perform, and the Debtors shall be entitled to pursue all other available legal and equitable remedies that may be available to the Debtors.  The Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved;

c.  **_Purchase Price_**.  Each Bid must:  (i) clearly specify the purchase price to be paid for the applicable Assets (the "Purchase Price"); (ii) identify separately any cash and non-cash components of the Purchase Price; and (iii) indicate the allocation of the Purchase Price among the applicable Assets (including liabilities and obligations to be assumed in connection with any Sale Transaction).  The Purchase Price should be a single point value in U.S. dollars on a cash-free, debt-free basis.  Any Bid for substantially all of the Assets must also include a statement as to whether the Bid is conditioned on purchasing all of the Assets or whether the Bid should be viewed as a separate Bid for one or more sets of Assets;

d.  **_Sources of Financing_**.  To the extent that a Bid is not accompanied by evidence of the Acceptable Bidder's capacity to consummate the Sale Transaction set forth in its Bid with cash on hand, such Bid must include evidence of committed financing from a reputable financing institution, documented to the satisfaction of the Debtors, that demonstrates that the Acceptable Bidder has received sufficient funding commitments to satisfy the Acceptable Bidder's obligations under the applicable Sale Transaction as well as any other obligations under its Bid.  Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals and shall have covenants and conditions acceptable to the Debtors.  The Debtors will view more positively Acceptable Bidders that have, or have immediate access to, the cash necessary to fund the Purchase Price directly themselves;

e.   ***Same or Better Terms; Bid Documents***.  Each Bid must include duly executed and non-contingent transaction documents necessary to effectuate any Sale Transaction contemplated in the Bid (the "Bid Documents") and must be submitted by the Bid Deadline.   The Bid Documents shall include, at a minimum: (i) a purchase agreement, the form of which will be provided to any Acceptable Bidder prior to the Bid Deadline (the "Form APA"), including the exhibits and schedules related thereto and any related material documents integral to such Bid pursuant to which the Acceptable Bidder proposed to effectuate any Sale Transaction, along with copies that are marked to reflect any amendments and modifications from the Form APA, which amendments and modifications may not be materially more burdensome than the Form APA or otherwise inconsistent with these Bidding Procedures; (ii) a schedule of Executory Contracts and Unexpired Leases proposed to be assumed by the Debtors and assigned to the Acceptable Bidder pursuant to the applicable Bid; (iii) a statement from the Acceptable Bidder specifying what, if any, other materials, conditions, due diligence, documents, exhibits, schedules, and/or ancillary materials are integral to such Bid or the Debtors' consideration thereof; (iv) any other material documents integral to such Bid; and (v) a statement from the Acceptable Bidder that (A) it is prepared to consummate the applicable Sale Transaction, subject to any necessary regulatory approvals, as specified by the Acceptable Bidder in such Bid Documents and (B) to the extent such Acceptable Bid is designated as a Qualified Bid pursuant to these Bidding Procedures, such Qualified Bid will be irrevocable (whether or not such Qualified Bid is selected as the Successful Bid or next highest or otherwise best bid (the "Back-Up Bid")) until the consummation of the applicable Sale Transaction;

f.   ***No Qualified Bidder Bid Protections***:  Unless such Qualified Bid is selected as a stalking horse bid (a "Stalking Horse Bid"), a Qualified Bid must include a statement that the bid does not entitle such bidder to any break-up fee, termination fee, expense reimbursement, or similar type of payment or reimbursement and a waiver of any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code related to bidding for the applicable Assets;

g.   ***Employee Obligations***.  Each Bid must include a description of the Acceptable Bidder's intentions with respect to the relevant members of non-Debtor affiliate Catalyst Brands LLC's current employees and a description of any contemplated incentive plan, to the extent applicable;

h.   ***Contingencies; No Financing or Diligence Outs***.  The Bid must not contain any contingencies as to the validity, effectiveness, or binding nature of the Bid, including, without limitation, contingencies for due diligence and inspection or financing of any kind (including any conditions pertaining to financial performance, conditions, or prospects), and all diligence must be completed before the Bid Deadline;

i.   ***Identity & Corporate Authority***.  Each Bid must:  (i) fully disclose the identity of each entity that will be participating in connection with such Bid (including any equity owners, sponsors, or other co-investors), and the complete terms of any such

5

participation, along with sufficient evidence that the Acceptable Bidder is legally empowered, by power of attorney or otherwise, to complete the applicable Sale Transaction on the terms contemplated by the parties; and (ii) include contact information for the specific person(s) and counsel whom the Debtors' advisors should contact regarding such Bid. A Bid must also fully disclose any business relationships, affiliations, or agreements with the Debtors, any other known, potential, prospective bidder, Acceptable Bidder, or Qualified Bidder, or any officer, director, or equity security holder of the Debtors. Each Bid must contain evidence that the Acceptable Bidder has obtained all necessary authorizations or approvals from its shareholders and/or its board of managers or directors, or any other internal and other approvals, as applicable, with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

j.    ***As-Is, Where-Is***.    Each Bid must include a written acknowledgement and representation that the Acceptable Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the applicable Sale Transaction prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the applicable Assets in making its Bid; (iii) did not rely, is not relying, and will not rely, on or receive from any person or entity (including any of the Debtors or their advisors or other representatives, or any information officer appointed by the Canadian Court in the Canadian Proceedings) any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, including regarding the completeness of any information provided in connection therewith, except as expressly stated in the Acceptable Bidder's proposed purchase agreement; and (iv) agrees that, upon Closing, the Debtors shall sell and transfer to the Successful Bidder, and the Successful Bidder shall accept, the Assets identified in the Successful Bidder's proposed purchase agreement, to the extent expressly provided in the Court's order approving the applicable Sale Transaction with respect to such Assets. Neither the Debtors nor any of their advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's order approving a Sale Transaction with respect to such Assets;

k.    ***Adequate Assurance of Future Performance and Information***.    Each Bid must: (i) identify the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned in connection with the applicable Sale Transaction; (ii) provide for payment of Cure Payments (as defined in the Bidding Procedures Order) related to such Executory Contracts and Unexpired Leases by the Acceptable Bidder; (iii) be accompanied by financial and other information (the "Adequate Assurance Information") that, in the Debtors' business judgment, is sufficient and adequate to demonstrate that such Acceptable Bidder (A) has the financial wherewithal and ability to consummate the applicable Sale Transaction,

and (B)  can satisfy the adequate assurance requirements of sections 365(b)(3) and 365(f)(2)(B) of the Bankruptcy Code; and (iv) identify a contact person that parties may contact to obtain additional Adequate Assurance Information;

l.      ***Privacy Policies***.  The Acceptable Bidder must comply in all respects with the Debtors' consumer privacy practices, which do not restrict the transfer of the personally identifiable information of its customers, and each Bid must contain a statement acknowledging such compliance;

m.      ***No Collusion***.  The Acceptable Bidder must acknowledge in writing:  (i) that it has not engaged in any collusion with respect to any Bids or the applicable Sale Transaction, including specifying that it did not agree with any Acceptable Bidders or Potential Bidders to control price; and (ii) agree not to engage in any collusion with respect to any Bids, the Auction, or the applicable Sale Transaction. For the avoidance of doubt, this requirement does not restrict Potential Bidder(s) from working with other Potential Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

n.      ***Joint Bids***.  The Debtors will be authorized to approve joint Bids in their reasonable business judgment on a case-by-case basis, so long as a joint bid meets the Qualified Bid requirements and the applicable bidders otherwise comply with these Bidding Procedures;

o.      ***Acknowledgement of Compliance with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, and Non-Bankruptcy Law***.  Each Bid must acknowledge its compliance in all respects with these Bidding Procedures, the Bidding Procedures Order, the Bankruptcy Code, the CCAA (if applicable) and any applicable non-bankruptcy law;

p.      ***Good Faith Offer***.  Each Bid must constitute a good faith, *bona fide* offer to consummate any Sale Transaction;

q.      ***Back-Up Bid***.  Each Bid shall provide that the Acceptable Bidder will serve as a Back-Up Bidder if the Acceptable Bidder's Bid is, in the Debtors' business judgment, the next highest or otherwise best bid for some or all of the Assets after the Successful Bid and that, in the event such Bid is chosen as the Back-Up Bid, it shall remain irrevocable until the Debtors and the Successful Bidder consummate the applicable Sale Transaction;

r.      ***Regulatory Approvals and Covenants***.  Each Bid must set forth each regulatory and third-party approval, if any, required for the Acceptable Bidder to consummate the applicable Sale Transaction and the time period within which the Acceptable Bidder expects to receive such regulatory and third-party approvals (and in the case that receipt of any such regulatory or third-party approval is expected to take more than thirty days following execution and delivery of the applicable purchase agreement and/or confirmation of the Debtors' chapter 11 plan, those actions the Acceptable Bidder will take to ensure receipt of such approvals as promptly as

7

possible), and any further information necessary for, or related to the likelihood of, obtaining such approvals;

s.    ***Expected Closing Date***.  Each Bid must state the Acceptable Bidder's expected date of closing of the applicable Sale Transaction (the "<u>Closing</u>").  A Bid by an Acceptable Bidder must be reasonably likely, in the Debtors' business judgment, to be consummated within a time frame acceptable to the Debtors;

t.    **No Fees**.  Each Acceptable Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale Transaction, and by submitting its Bid(s) is agreeing to disclaim any right to receive any payments or amounts analogous to a break-up fee, expense reimbursement, termination fee, or other similar form of compensation; *provided* that the Debtors are authorized to provide the Stalking Horse Bid Protections (as defined below) to one or more Stalking Horse Bidders (as defined below) in accordance with these Bidding Procedures.

u.    ***Adherence to Bidding Procedures***.  By submitting its Bid, each Acceptable Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after the conclusion of the Auction;

v.    ***Consent to Jurisdiction***.  Any Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, and the Closing, as applicable;

w.    ***Conditions to Closing***.  Each Bid must identify with particularity any conditions to Closing, including the Executory Contracts and Unexpired Leases for which assumption and assignment is required; and

x.    ***Transition Services***.  Each Bid must describe the types of transition services, if any, the Acceptable Bidder would require of and/or provide to the Debtors or any of the Debtors' non-Debtor affiliates, including an estimate of the time any such transition services would be required of and/or provided to the Debtors or any of the Debtors' non-Debtor affiliates, and that the Acceptable Bidder will be responsible for the actual costs of providing any such services.

Only Bids fulfilling all of the preceding requirements contained in this Section IV, or otherwise in the Debtors' reasonable business judgment, may be deemed to be "<u>Qualified Bids</u>," and only those parties submitting Qualified Bids, as determined in the Debtors' reasonable business judgment, may be deemed to be "<u>Qualified Bidders</u>."

None of the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors are making or have at any time made any

warranties or representations of any kind or character, express or implied, with respect to the Assets and any liabilities and obligations to be assumed in connection with any Sale Transaction, including, but not limited to, any warranties or representations as to operating history or projections, valuation, governmental approvals, the compliance of any Sale Transaction with governmental laws, the truth, accuracy, or completeness of any documents related to the Assets, or any other information provided by or on behalf of the Debtors to a bidder, or any other matter or thing regarding the Assets.  All Acceptable Bidders must acknowledge and agree that upon closing the Debtors shall sell and transfer to the Successful Bidder and the Successful Bidder shall accept the applicable Assets, except to the extent expressly provided in the Court's Sale Order and the Canadian Court's Sale Order, if applicable.  None of the Debtors, any information officer appointed by the Canadian Court in the Canadian Proceedings or any of their respective advisors will be liable for or bound by any express or implied warranties, guaranties, statements, representations, or information pertaining or relating to the Assets that the Debtors, any advisor, or any agent representing or purporting to represent the Debtors might have made or furnished, directly or indirectly, orally or in writing, to any person whatsoever unless (with respect to the Debtors only) specifically set forth in the Court's Sale Order and the Canadian Sale Order (as defined below), if applicable.

There shall be no communications between or among Potential Bidders and/or Acceptable Bidders unless the Debtors' advisors have authorized such communication in writing (with e-mail from the Debtors' advisors being sufficient).  The Debtors reserve the right, in their business judgment, to disqualify any Potential Bidders or Acceptable Bidders that have made communications between or among themselves without the prior authorization of the Debtors.  For the avoidance of doubt, the joining of Bids between Potential Bidders or Acceptable Bidders may be permitted by the Debtors in their business judgement.

In advance of the Auction, as is reasonably practicable, the Debtors shall determine which Acceptable Bidders are Qualified Bidders and will notify the Acceptable Bidders whether their Bids constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction.  The Debtors shall not consider any Bid that they deem is not a Qualified Bid; *provided* that, if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Debtors may provide (but shall not be obligated to provide) the applicable Acceptable Bidder with the opportunity to remedy any deficiencies prior to the Auction.  The Debtors shall have the right, in their business judgment, to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the requirements above.

## V.      The Right to Credit Bid.

Notwithstanding anything set forth in these Bidding Procedures, any Qualified Bidder who has a valid, perfected, and unavoidable lien on any Assets of the Debtors' estates (each, a "Secured Creditor") shall have the right, subject to any intercreditor subordination agreement enforceable under section 510(a) of the Bankruptcy Code, to credit bid all or a portion of the value of such Secured Creditor's claims within the meaning of section 363(k) of the Bankruptcy Code; *provided* that a Secured Creditor shall have the right to credit bid its claim only with respect to the collateral by which such Secured Creditor is secured.

Any Credit Bid made by a Secured Creditor or their respective assignees, as applicable, will be deemed to be a cash Bid solely for purposes of evaluating Bids (including evaluating Qualified Bids and subsequent Bids). Any Secured Creditor who submits a Credit Bid that satisfies the requirements of these Bidding Procedures before the Bid Deadline shall be deemed to be an Acceptable Bidder, shall be deemed to have submitted a Qualified Bid, and may participate in any Auction with respect to any Assets constituting collateral of such Secured Creditor.

## VI.    Obtaining Due Diligence Access.

Only Acceptable Bidders shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and additional non-public information regarding the Debtors; *provided* that such access may be terminated by the Debtors in their reasonable discretion, including if: (a) an Acceptable Bidder does not become a Qualified Bidder; (b) the Debtors determine any bidder is no longer an Acceptable Bidder; or (c) these Bidding Procedures are terminated. ***No Acceptable Bidder will be permitted to conduct any due diligence without entry into a Confidentiality Agreement***. Beginning on the date the Debtors determine that a party is an Acceptable Bidder, or as soon as reasonably practicable thereafter, the Debtors will provide such Acceptable Bidder with access to an electronic data room and reasonable due diligence information, as requested by such Acceptable Bidder, as soon as reasonably practicable after such request.

Acceptable Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or other contractual counterparty of the Debtors without the prior written consent of the Debtors. The due diligence period will end on the Bid Deadline, and after the Bid Deadline the Debtors shall have no obligation to furnish any due diligence information.

The Debtors and their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided* that the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment, have not established, or who have raised doubt, that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate a Sale Transaction. For any bidder who is a competitor or customer of the Debtors or is affiliated with any competitors or customers of the Debtors, or otherwise presents a *bona fide* competitive or strategic concern, the Debtors reserve the right to withhold or modify any diligence materials that the Debtors determine are business-sensitive or otherwise inappropriate for disclosure to such bidder.

### A.    Communications with Acceptable Bidders (including Qualified Bidders).

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Acceptable Bidders (including any Qualified Bidders) shall be through the Debtors' proposed investment banker, SOLIC Capital Advisors, LLC ("SOLIC").

---

**The Debtors have designated Reid Snellenbarger and George Koutsonicolis of SOLIC to coordinate all reasonable requests for additional information and due diligence access. They may be reached at reids@soliccapital.com and georgek@soliccapital.com.**

---

### B.    Due Diligence from Acceptable Bidders (including Qualified Bidders).

Each Acceptable Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Acceptable Bidder (including any Qualified Bidder) to consummate its contemplated Sale Transaction. Failure by an Acceptable Bidder (including any Qualified Bidder, other than the Stalking Horse Bidder, if any) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer an Acceptable Bidder or that a Bid made by such bidder is not a Qualified Bid.

## VII.    The Bid Deadline.

Binding Bids must be submitted in writing to the following parties (the "<u>Notice Parties</u>") so as to be ***actually received*** no later than 5:00 p.m. (prevailing Eastern Time) on March 3, 2026 (the "<u>Bid Deadline</u>"):

(i)    proposed co-counsel to the Debtors:  (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com); Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); Oliver Paré (oliver.pare@kirkland.com); Nathan Felton (nathan.felton@kirkland.com); and Sarah Osborne (sarah.osborne@kirkland.com); and (b) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07601, Attn:  Michael D. Sirota, Esq. (msirota@coleschotz.com), Warren A. Ustaine, Esq. (wustaine@coleschotz.com), and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com); and

(ii)    SOLIC, 444 W Lake St Suite 2450. Chicago, IL 60606 Attn:  Reid Snellenbarger (<u>reids@soliccapital.com</u>) and George Koutsonicolis (georgek@soliccapital.com).

The Debtors may extend the Bid Deadline for any reason whatsoever in their business judgment for all or certain Acceptable Bidders.

## VIII.    Evaluation of Qualified Bids.

The Debtors shall evaluate Qualified Bids and identify the Qualified Bid is, or combination of Qualified Bids that are, in the Debtors' business judgment, the highest or otherwise best Qualified Bid or combination of Qualified Bids for the Assets, as applicable (the "<u>Starting Bid</u>").

When determining the highest or otherwise best Qualified Bid or combination of Qualified Bids, as compared to other Qualified Bids, the Debtors may consider the following factors, in addition to any other factors that the Debtors deem appropriate:  (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the number,

type, and nature of any changes to the Form APA requested by each bidder in connection with each proposed asset purchase agreement, including the Assets to be acquired; (c) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (e) the Debtors' regulatory requirements; (f) the tax consequences of such Qualified Bid; (g) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (h) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (i) any other consideration that may impact the Debtors or their stakeholders.  Prior to commencing the Auction, the Debtors shall notify the Stalking Horse Bidder, if any, and all Qualified Bidders as to which Qualified Bid is the Starting Bid for the Auction with respect to the applicable Assets.  At such time, the Debtors shall also distribute copies of the Starting Bid to the Stalking Horse Bidder, if any, and each Qualified Bidder.

## IX.    **The Stalking Horse Bid Protections.**

Pursuant to the Bidding Procedures Order, the Debtors may designate one or more Bidders to be a stalking horse bidder (each a "Stalking Horse Bidder"), which are entitled to certain bid protections in the amounts set forth in, and in accordance with the terms of the Bidding Procedures Order, consisting of (a) a break-up fee (the "Break-Up Fee") not to exceed three percent of the aggregate amount of the Purchase Price and/or (b) reimbursement of reasonable and documented out of pocket fees and expenses (the "Expense Reimbursement" and together with the Break-Up Fee, the "Stalking Horse Bid Protections").  For the avoidance of doubt, except for the Stalking Horse Bidder, and as otherwise set forth herein, no other party submitting an offer, a Bid, or a Qualified Bid shall be entitled to any Expense Reimbursement, Break-Up Fee, termination fee, or similar fee or payment.

In the event that the Debtors receive multiple Qualified Bids, at any time until February 27, 2026, at 5:00 p.m. (prevailing Eastern Time), the Debtors shall be authorized, but not obligated, in their reasonable business judgment to (a) select one or more Acceptable Bidders to act as the Stalking Horse Bidder in connection with the Auction, and (b) in connection with any stalking horse agreement with a Stalking Horse Bidder (a "Stalking Horse APA") (i) agree to provide the Stalking Horse Bid Protections, consisting of (A) a Break-Up Fee not to exceed three percent of the Purchase Price and (B) reimbursement of the reasonable and documented out of pocket fees and expenses of such Stalking Horse Bidder(s).

In the event that the Debtors enter into a Stalking Horse APA with one or more Stalking Horse Bidders, within two business days of entry, the Debtors shall file a notice and proposed form of order with the Court designating a Stalking Horse Bidder and authorizing entry into a Stalking Horse APA (the "Stalking Horse Notice") and serve the Stalking Horse Notice on the Stalking Horse Bidder and the U.S. Trustee.  The Stalking Horse Notice shall:  (a) set forth the identity of the Stalking Horse Bidder (and if the Stalking Horse Bidder is a newly formed entity, then the Stalking Horse Bidder's parent company or sponsor); (b) set forth the amount of the Bid submitted by the Stalking Horse Bidder and what portion (if any) is cash; (c) state whether the Stalking Horse Bidder has any connection to the Debtors other than those that arise from the Bid submitted by the Stalking Horse Bidder; (d) specify any proposed Stalking Horse Bid Protections (including the amount and calculation thereof); (e) specify which Assets the Bid submitted by the Stalking Horse

Bidder includes; (f) attach the Stalking Horse APA, including all exhibits, schedules and attachments thereto; and (g) set forth the deadline to object to the Stalking Horse Bidder designation and any Stalking Horse Bid Protections.   If there are no objections to the Stalking Horse Notice within two business days of filing with the Court (the "Notice Period"), the Debtors may submit an order to the Court that incorporates any comments received during the Notice Period that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA, without the need for further hearing.   If a party timely files an objection to the Stalking Horse Notice, the Court shall hold a hearing after the expiration of the Notice Period and as soon thereafter as the Court is available.

Upon entry of an order that authorizes the Debtors to designate a Stalking Horse Bidder and to enter into a Stalking Horse APA (the "Stalking Horse Order"), the Debtors are authorized, but not directed, to incur and pay (a) the Break-Up Fee in an amount not to exceed three percent of the proposed Purchase Price and (b) the Expense Reimbursement to each Stalking Horse Bidder in accordance with the terms of such Stalking Horse Order and Stalking Horse APA.

Except as otherwise set forth herein, no person or entity, other than a Stalking Horse Bidder, shall be entitled to any Expense Reimbursement, Break-Up Fees, "topping," termination, or other similar fee or payment, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with the Court any request for Expense Reimbursement or any fee of any nature, whether by virtue of Bankruptcy Code section 503(b) or otherwise.

## X.   No Qualified Bids.

If no Qualified Bids other than a Bid submitted by a Stalking Horse Bidder, if any, are received for the Assets included in such Stalking Horse Bid by the applicable Bid Deadline, then the Debtors may cancel the Auction with respect to such Assets.  If any Stalking Horse Bid is the only Qualified Bid received by the applicable Bid Deadline, the Debtors may decide, in their business judgment to designate such Stalking Horse Bid as the Successful Bid as to the applicable Assets and pursue entry of an order approving a Sale Transaction with respect to such Assets to the Stalking Horse Bidder pursuant to the Stalking Horse APA.  The Debtors shall, as soon as reasonably practicable, file notice of any cancellation of the Auction and/or designation of the Stalking Horse Bid, where applicable, as the Successful Bid with the Court.

## XI.   The Auction.

Except as expressly set forth herein, if the Debtors receive more than one Qualified Bid for any particular Assets or portion of Assets by the Bid Deadline, the Debtors shall conduct the Auction to determine the Successful Bidder (or Back-Up Bidder, as applicable) in their reasonable business judgment with respect to such Assets or portion of Assets in accordance with the Auction Procedures.

The Auction, if necessary, shall commence on March 6, 2026 at 10:00 a.m. (prevailing Eastern Time), or such later time or other place as the Debtors determine.  The Auction shall be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022.

The Auction, if necessary, will be conducted in accordance with the following procedures (the "Auction Procedures"):

a.  except as otherwise provided herein, only Qualified Bidders shall be entitled to bid at the Auction;

b.  the Qualified Bidders, including the Stalking Horse Bidder, if any, must appear in person or through duly authorized representatives at the Auction; *provided* that Qualified Bidders may appear through a duly authorized representative bearing a valid and enforceable power of attorney or other written proof evidencing their ability to bind the applicable Qualified Bidder, which document(s) shall be delivered to the Debtors and their advisors prior to the commencement of the Auction;

c.  only the Debtors, Qualified Bidders, the U.S. Trustee, if applicable, any information officer appointed by the Canadian Court in the Canadian Proceedings, and such parties' representatives and advisors may attend the Auction;

d.  the Debtors, with the assistance of their advisors, shall direct and preside over any Auction;

e.  at the commencement of the Auction, the Debtors may announce modified or additional procedures for conducting the Auction and related rules governing the Auction, including time periods available to all Qualified Bidders to submit successive bid(s), or otherwise modify these Bidding Procedures;

f.  bidding shall begin with the Starting Bid;

g.  subsequent bids (each, an "Overbid") may only be made at the Auction and shall be at least (i) a $250,000 increase in cash, cash equivalents, or other such consideration that the Debtors, in their reasonable business judgment, deem equivalent over the previous bid *plus* (ii) in the event that the Debtors have entered into a Stalking Horse APA to which the Overbid relates, the aggregate amount of Stalking Horse Bid Protections (including, for the avoidance of doubt, any Break-Up Fees and/or Expense Reimbursements) under such Stalking Horse APA (a "Minimum Overbid"), and each successive Overbid shall exceed the then-existing Overbid by an incremental amount that is not less than the Minimum Overbid.  The Debtors may, in their reasonable business judgment, announce increases or reductions to the Minimum Overbid at any time during the Auction. For the avoidance of doubt, each successive Bid that a Qualified Bidder may submit at the Auction must contain a Purchase Price in cash, cash equivalents, or such other consideration that the Debtors, in their reasonable business judgment deem equivalent that exceeds the then existing highest Bid by at least the amount of the Minimum Overbid;

h.  each Qualified Bidder will be permitted a reasonable time, as determined by the Debtors, to respond to previous bids at the Auction; *provided*, that, unless the

Debtors determine otherwise, a failure to respond and submit successive bid(s) at the Auction may result in disqualification from participating in the Auction;

i.      during the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder of the terms of the previous bids and inform each Qualified Bidder which Overbid(s) reflect, in the Debtors' view, the highest or otherwise best bid(s) with respect to the Assets;

j.      the Debtors may require each Qualified Bidder to submit an Overbid with respect to each round of bidding in order to remain eligible to participate in the Auction, and, to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, the Debtors may disqualify such Qualified Bidder from continuing to participate in the Auction;

k.      the Auction will be transcribed to ensure an accurate recording of the bidding at the Auction;

l.      each Qualified Bidder will be required to confirm on the record that it has not engaged, and will not engage, in any collusion with respect to the bidding or any Sale Transaction.  For the avoidance of doubt, this requirement does not restrict Qualified Bidder(s) from working with other Qualified Bidder(s) with the Debtors' prior written consent (with e-mail from the Debtors' advisors being sufficient);

m.      each Qualified Bidder will be required to confirm on the record that its Bid is a good faith, *bona fide* offer and that it intends to consummate the applicable Sale Transaction if selected as the Successful Bid in accordance with these Bidding Procedures (as may be modified in accordance herewith at the Auction);

n.      subject to each Debtor's fiduciary obligations, including as set forth herein, the Court and the Debtors will not consider Bids made after the Auction has concluded;

o.      the Debtors, in their reasonable business judgment, may reject, at any time before entry of an order of the Court approving a Successful Bid, any Bid that the Debtors determine is: (i) inadequate or insufficient; (ii) not in conformity with the requirements of the Bankruptcy Code, these Bidding Procedures, the CCAA (if applicable) or the terms and conditions of the applicable Sale Transaction; or (iii) contrary to the best interests of the Debtors, their estates, and/or their stakeholders;

p.      the Debtors have the right to request any additional information that will allow the Debtors to make a reasonable determination as to a Qualified Bidder's financial and other capabilities to consummate the Sale Transaction contemplated by their proposal and any further information that the Debtors believe is reasonably necessary to clarify and evaluate any Bid made by a Qualified Bidder during the Auction;

q.      the Debtors may choose to adjourn the Auction one or more times to, among other things: (i) facilitate discussions between the Debtors and Qualified Bidders;

(ii) allow Qualified Bidders the opportunity to consider how they wish to proceed; and (iii) allow Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale Transaction at the prevailing amount, or to clarify any Bid; and

r.      the Debtors reserve the right to further amend, waive, or otherwise modify the Auction Procedures at any time.

For the avoidance of doubt, nothing in these Bidding Procedures, including the Auction Procedures, will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as determined by the Debtors in consultation with counsel).

## XII.    Acceptance of the Successful Bid.

The Auction shall continue until:  (a) there is only one Qualified Bid or a combination of Qualified Bids with respect to all or any portion of the Assets that the Debtors determine, in their reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail, is the highest or otherwise best Bid to purchase the applicable Assets (each, a "Successful Bid"); and (b) the Debtors determine, in their reasonable business judgment, that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be reasonably acceptable to the Debtors, at which point, the Auction will be closed.

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the following factors in addition to any other factors that the Debtors deem appropriate:  (a) the amount and nature of the total consideration, which may include, but is not limited to, assumed liabilities; (b) the likelihood of the Qualified Bidder's ability to close a transaction and the timing thereof; (c) the net economic effect of any changes to the value to be received by each of the Debtors' estates from the transaction contemplated by the Bid Documents; (d) the Debtors' regulatory requirements; (e) the tax consequences of such Qualified Bid; (f) whether the Qualified Bid contemplates a Sale Transaction that would be consummated through a Plan or a sale pursuant to section 363 of the Bankruptcy Code (and the CCAA, if applicable); (g) the certainty of a Qualified Bid leading to a confirmed chapter 11 Plan, and (h) any other consideration that may impact the Debtors or their stakeholders.

Any Qualified Bidder that submits a Successful Bid will be deemed a "Successful Bidder" with respect to the Assets contemplated for purchase pursuant to such Successful Bid.  The Debtors shall file notice of the Successful Bid and the Successful Bidder with the Court as soon as reasonably practicable after conclusion of the Auction.  Following conclusion of the Auction and selection of one or more Successful Bidders, the Debtors shall present the results of the Auction at a hearing with the Court and shall seek the Sale Order, among other things, (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the

applicable Debtors to enter into one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids; *provided* that, notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that the Debtors determined, in consultation with counsel, would be inconsistent with applicable law or its fiduciary obligations under applicable law. If applicable, the Foreign Representative shall seek an Order of the Canadian Court (the "Canadian Sale Order"), among other things, (x) recognizing and enforcing the Sale Order in Canada, and (y) approving the sale of the Assets of the Canadian Debtors in Canada to the applicable Successful Bidder or Successful Bidders in accordance with the applicable binding purchase agreement or binding purchaser agreements.

Within one business day of the selection of the Successful Bidder, such Successful Bidder (including both the Stalking Horse Bidder, if any, and Back-Up Bidder, if applicable) shall make a cash deposit, in addition to its Good Faith Deposit, in an amount calculated on the basis of the increased aggregate purchase price such that the Successful Bidder's total cash deposit is equal to ten percent of the aggregate purchase price contemplated in the Successful Bid, which amount shall be submitted by wire transfer of immediately available funds to an escrow account to be identified and established by the Debtors pursuant to a customary and reasonable escrow agreement. Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIII.  The Designation of a Back-Up Bidder.

The party that submits the Back-Up Bid, if any, to purchase any applicable Assets (the "Back-Up Bidder") will be determined by the Debtors at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. The Debtors' selection of a Back-Up Bid shall be deemed final, and the Debtors shall not accept any further bids or offers to submit a bid after such selection. The Debtors will be authorized, but not required, to consummate the Sale Transaction with the Back-Up Bidder without further order of the Court (or the Canadian Court, if applicable), so long as such Back-Up Bid shall have been approved in connection with the Court's (and Canadian Court's, if applicable) approval of the Successful Bid, or, if not, subject to Court (and Canadian Court, if applicable) approval.

If, for any reason, a Successful Bidder fails to consummate the purchase of the applicable Assets within the time permitted, then the Back-Up Bidder will, unless otherwise determined by the Debtors in their business judgment, automatically be deemed to have submitted the Successful Bid, and the Back-Up Bidder shall be deemed a Successful Bidder and shall be required to consummate any Sale Transaction with the Debtors as soon as is reasonably practicable without further order of the Court (or Canadian Court, if applicable). To the extent any objections to such sale are raised and remain unresolved, the Court (and Canadian Court, if applicable) may schedule a hearing on an expedited basis to adjudicate such objections.

The Back-Up Bid shall remain open and irrevocable until the earliest to occur of (a) ninety days following the hearing to consider the applicable order approving the Sale Transaction(s) (the "Sale Order"), (b) the effective date of a chapter 11 Plan, (c) the consummation of the

applicable Successful Bids, and (d) the release of such Back-Up Bid by the Debtors in writing (the "Back-Up Termination Date").  The Debtors shall return the Back-Up Bidder's deposit owed within five business days of the Back-Up Termination Date.

## XIV.    Approval of the Sale Transaction(s).

A hearing to consider approval of each Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on March 12, 2026, at a time to be announced, or as soon thereafter as the Debtors may be heard, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey at 50 Walnut Street, Newark, NJ, 07102, or conducted consistent with the procedures established pursuant to the Court's standing orders.  A hearing to consider approval of each Canadian Sale Order shall be scheduled to the extent a Successful Bid includes Assets of the Canadian Debtors.

At the Sale Hearing, the Debtors shall present the results of the Auction at a hearing and shall seek the Sale Order, among other things (a) making certain findings from the Court regarding the Auction, including, among other things, that (i) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure, and (iii) consummation of the Successful Bid or Successful Bids will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors' estates, and (b) authorizing the applicable Debtors to enter one or more binding purchase agreements with the Successful Bidder or Successful Bidders on the terms of the Successful Bid or Successful Bids.  **The Sale Hearing may be continued to a later date by the Debtors by sending notice to creditors or other parties in interest prior to, or by making an announcement at, the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party (including any Stalking Horse Bidder, if any).  The Sale Hearing may be the confirmation hearing with respect to the Debtors' Plan**.  If applicable, the Foreign Representative shall seek an Order of the Canadian Court (the "Canadian Sale Order"), among other things, (x) recognizing and enforcing the Sale Order in Canada, and (y) approving the sale of the Assets of the Canadian Debtors in Canada to the applicable Successful Bidder or Successful Bidders in accordance with the applicable binding purchase agreement or binding purchaser agreements.

Objections to the Sale Transaction(s) and the Sale Order must: (a) be in writing and specify the nature of such objection; (b) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Court; and (c) be filed with the Court and served so as to be *actually received* by the Debtors by March 9, 2026, at 5:00 p.m., prevailing Eastern Time.

## XV.    Return of Good Faith Deposit.

The Good Faith Deposit(s) of the Successful Bidder or Successful Bidders, if any, will, upon consummation of the Successful Bid or Successful Bids, become property of the Debtors' estates and be credited to the portion of such Successful Bidder's or Successful Bidders' applicable Purchase Price.

If the Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable), if any, fails to consummate the Successful Bid or Successful Bids (or Back-Up Bid or

Back-Up Bids, if applicable), then the Good Faith Deposit(s) of such Successful Bidder or Successful Bidders (or Back-Up Bidder or Back-Up Bidders, if applicable) will be irrevocably forfeited to the Debtors and may be retained by the Debtors as liquidated damages, in addition to all rights, remedies, or causes of action that may be available to the Debtors.

The Good Faith Deposits of any unsuccessful Qualified Bidders (except for any Back-Up Bidder or Back-Up Bidders and any Stalking Horse Bidders) will be returned within five business days after consummation of the applicable Sale Transaction or upon the permanent withdrawal of the applicable proposed Sale Transaction.

The Good Faith Deposit(s) of any Back-Up Bidder or Back-Up Bidders, if any, will be returned to such Back-Up Bidder or Back-Up Bidders no later than five business days of the Back-Up Termination Date.

The return of any Good Faith Deposits of any Stalking Horse Bidders will be subject to the terms of the applicable Stalking Horse APA.  All such Good Faith Deposits shall be held in escrow and at no time shall be deemed property of the Debtors' estates absent further order of the Court.

## XVI.    Reservation of Rights.

The Debtors reserve their rights to modify these Bidding Procedures in good faith to further the goal of attaining the highest or otherwise best offer or impose, at or prior to the Auction (if held), additional terms and conditions on the Sale Transaction(s) in any manner that will best promote the goals of the bidding process including, without limitation:  (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (if held); (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable Minimum Overbid.  Notwithstanding anything to the contrary herein, the Debtors may elect to consummate the Sale with the Successful Bidder or Successful Bidders under section 363 of the Bankruptcy Code (and the CCAA, if applicable) as opposed to pursuant to the Plan.

## XVII.    Consent to Jurisdiction.

All Qualified Bidders at the Auction will be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the Sale Transaction(s), and the construction and enforcement of these Bidding Procedures, any written indications of interest, Preliminary Bid Documents, the Bids, the Bid Documents, and any and all other agreements entered into in connection with any proposed Sale Transaction, as applicable, and consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to any Sale Transaction if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XVIII. Fiduciary Out.

Notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or its board of directors, board of managers, or similar governing body to take any action or to refrain from taking any action with respect to any Sale Transaction or these Bidding Procedures, to the extent such Debtor, board of directors, board of managers, or such similar governing body determines, in consultation with counsel, that taking or failing to take such action, as applicable, would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures or any document filed with or entered by the Court, until the entry of the Sale Order, the Debtors and their respective directors, managers, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives shall have the right to: (a) consider, respond to, and facilitate alternate proposals for sales or other transactions involving any or all of the Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiations of Alternate Proposals; and (e) enter into or continue discussions or negotiations with any person or entity regarding any Alternate Proposal.

## XIX.   Commissions.

The Debtors shall be under no obligation to pay any commissions, fees, or expenses to any Potential Bidder's agent, advisor, or broker.  All commissions, fees, or expenses for any such agents, advisors, or brokers shall be paid by the applicable Potential Bidder at such Potential Bidder's discretion.  In no case shall any commissions, fees, or expenses for any Potential Bidder's agent, advisor, or broker be deducted from any proceeds derived from any Sale Transaction including the Assets.