**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
Matthew C. Fagen, P.C. (*pro hac vice* pending)
Oliver Paré (*pro hac vice* pending)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Joint Administration Requested) |

## DECLARATION OF REID SNELLENBARGER IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING THE BIDDING PROCEDURES AND STALKING HORSE BID PROTECTIONS, (II) SCHEDULING CERTAIN DATES AND DEADLINES WITH RESPECT THERETO, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, (V) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS, (VI) AUTHORIZING THE SALE OF ASSETS, AND (VII) GRANTING RELATED RELIEF

---

[1]  The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

I, Reid Snellenbarger, declare as follows under penalty of perjury:

1.      I am the Co-Head and Senior Managing Director of SOLIC Capital Advisors, LLC ("SOLIC"), the proposed investment banker to the above-captioned debtors and debtors in possession (collectively, the "Debtors").  SOLIC is an investment banking and financial advisory firm which has its principal office at 444 West Lake Street Suite 2450, Chicago, Illinois 60606.  SOLIC has expertise providing capital restructuring solutions, mergers and acquisitions, raising debt and equity capital, and other financial advisory services.  SOLIC has served as an investment banker to debtors and creditors in a variety of industries.  SOLIC and its senior professionals have extensive experience with respect to the reorganization and restructuring of distressed companies, both out-of-court and in chapter 11 proceedings.

2.      I submit this declaration (this "Declaration") in support of the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith which, as noted in the Motion, seeks entry of an order:  (a) authorizing and approving the proposed marketing, auction, and bidding procedures (the "Bidding Procedures"), by which the Debtors will solicit and, if value-maximizing, will select the highest or otherwise best offer(s) for the sale or sales of all, substantially all, or any portion of

---

[2]     Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion, the Bidding Procedures (as defined herein), the Bidding Procedures Order (as defined in the Motion), or the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of the Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), each filed substantially contemporaneously herewith, as applicable.  The material terms of the Bidding Procedures are set forth in greater detail in the Motion.

the Debtors' Assets; (b) approving the Stalking Horse Bid Protections relating to the Stalking

Horse Bidder, if any; (c) establishing certain dates and deadlines related thereto and scheduling an

Auction, if needed, to determine the highest and otherwise best Bid available; (d) approving the

form and manner of notice of the Auction, if any, and any hearing to approve a sale of some, all,

or substantially all of the Debtors' assets, as may be necessary; (e) approving procedures for the

assumption and assignment of certain Executory Contracts and Unexpired Leases in connection

with the Sale Transaction; and (f) granting related relief.

3.      Although SOLIC is expected to be compensated for its work as the Debtors'

proposed investment banker in these chapter 11 cases, I am not being compensated separately for

this Declaration or testimony.  Except as otherwise indicated herein, all statements set forth in this

Declaration are based upon:  (a) my personal knowledge of the Debtors' operations, finances, and

restructuring initiatives; (b) my review of relevant documents; (c) information provided to me by

the Debtors, the Debtors' management and/or the Debtors' other advisors; (d) information

provided to me by the employees of SOLIC working directly with me under my supervision,

direction, or control; or (e) my experience as a restructuring professional.  If called upon to testify,

I could and would testify to the statements set forth herein on that basis.  I am over the age of 18

years and am authorized to submit this Declaration.

## Professional Background and Qualifications

4.      SOLIC is an independent restructuring and investment banking financial advisory

firm that has a wealth of experience in providing restructuring advisory services.  SOLIC has

assisted, consulted, and provided strategic advice to debtors, creditors, private equity sponsors,

and other stakeholders in numerous chapter 11 cases of similar size and complexity to these

chapter 11 cases.  Specifically, SOLIC's investment banking core services include mergers and acquisitions, capital placement, and restructuring advisory.

5.      During my over 27-year professional career, I have gained significant experience in mergers and acquisitions, raising various forms of capital, and negotiations relating to the restructuring of private and public securities as an advisor.  Prior to joining SOLIC, I spent most of my career as a Managing Director and shareholder at Houlihan Lokey Capital, Inc.  I have a Bachelor of Science degree in finance from Purdue University.  I have been involved in restructuring of private and public securities in chapter 11 and out-of-court distressed M&A transactions and recapitalizations since 1998.  My experience includes representing debtors, creditors and investors in both large and middle-market domestic and cross-border companies.

## The Retention of SOLIC

6.      As more fully described in the First Day Declaration, following the mutual termination of the Debtors' e-commerce and wholesale licenses, the Debtors' commenced these chapter 11 cases to, among other things, identify a buyer or buyers for some or all of their remaining brick-and-mortar retail business, which comprises approximately two hundred stores throughout the United States and Canada.  As a result, the Debtors, in consultation with their advisors, determined that the best path to preserving and maximizing value was to pursue the sale of all, substantially all, or any portion of the Debtors' retail business, followed by the orderly liquidation and wind-down of any remaining assets or operations that were not acquired.  As part of this process, the Debtors engaged SOLIC as investment banker on November 24, 2025, to initiate a sale and marketing process for the Debtors' retail operations and related assets.  Since being engaged by the Debtors, SOLIC has worked closely with the Debtors and their advisors to:  (a) review and analyze the Debtors' businesses and financial projections, and (b) market the Debtors' Assets (as defined herein), including developing marketing materials and identifying

potential purchasers.  Additionally, SOLIC has worked with the Debtors' management and other professionals retained by the Debtors, and has become familiar with the Debtors' capital structure, financial condition, liquidity needs, and business operations.

### The Restructuring Support Agreement

7.      As more fully described in the Motion and the First Day Declaration, prior to the commencement of these chapter 11 cases, the Debtors reached an agreement in principle with their prepetition secured lenders regarding the terms of a broad restructuring transaction, memorialized in that certain Restructuring Support Agreement, attached as Exhibit B to the First Day Declaration (the "RSA").  The RSA contemplates a potential sale of all, substantially all, or any portion of the Debtors' remaining retail operations and related assets (the "Assets") through a competitive bidding process designed to generate maximum value to the Debtors, their creditors, and the estate (each, a "Sale Transaction"), followed by a court-supervised wind-down of the Debtors' remaining store operations.  As explained in the Motion, the Bidding Procedures contemplate a sale process designed to continue the Debtors' prepetition marketing process for the Assets and gauge market interest in any Sale Transaction that may generate value in excess of the inventory liquidation value, thereby maximizing value for the Debtors' estates.

### The Marketing Process

8.      Prior to the Petition Date, the Debtors, with the assistance of SOLIC, launched a comprehensive marketing and sale process (the "Prepetition Sale Process") to engage interested third parties in the Sale Transaction(s).  Since the Debtors commenced the Prepetition Sale Process, the Debtors, with the assistance of SOLIC, have contacted 126 potential investors, including 58 strategic parties and 68 financial parties.  As of the filing of the Motion, 34 parties have executed nondisclosure agreements and were provided with access to the Debtors' virtual

data room (the "Data Room") containing a confidential information presentation and additional financial, operational, and legal diligence materials.

9.      On January 16, 2026, SOLIC distributed a formal process letter informing these strategic and financial investors that initial indications of interest were to be submitted no later than January 30, 2026, addressing the following key considerations, among any others, to enable Debtors to fully evaluate each bidder's proposal:  (a) the identity and description of the bidder; (b) the transaction structure, including the assets to be acquired and liabilities to be assumed, and the preliminary purchase price for the Debtors' business to be paid in cash; (c) descriptions of the material assumptions informing the proposed purchase price; (d) a description of due diligence information required to make a definitive proposal; (e) a proposed source of funds; (f) the anticipated number of the Debtors' employees to be retained following consummation of a transaction; (g) any conditions precedent required to be satisfied to consummate a transaction, including any necessary authorizations and approvals; (h) the bidder's contact information and a list of any external advisors retained to assist in due diligence; and (i) any other matters material to a proposal.

10.      On or after January 30, 2026, the Debtors received two non-binding indications of interest ("IOIs") relating to a portion of the Debtors' Assets.  Following receipt of these IOIs, the Debtors, together with SOLIC, conducted a comprehensive review of each proposal and have been engaged in extensive negotiations with the interested parties to refine and enhance their initial bids.

11.      With the foundation for a successful marketing process in place and proposals indicative of a competitive auction in hand, the Debtors plan to utilize chapter 11 to "market test" the interest they have received to attempt to consummate a Sale Transaction for the highest or otherwise best possible bid in an effort to maximize value for all stakeholders.  Accordingly, the

Prepetition Sale Process will continue during these cases so that the Debtors can determine if and
which of its potential purchasers should be signed up as a Stalking Horse Bidder, host an auction
(the "Auction"), if necessary, and solicit the highest or otherwise best possible bid in an effort to
maximize value for the Debtors' estates and exit these chapter 11 cases as quickly as possible.

### The Bidding Procedures

12.      As noted in the Motion, the Bidding Procedures set forth, among other things, the
procedures for interested parties to access due diligence, the manner in which Potential Bidders
and Bids become "qualified," the manner and timing of any Auction, the selection and approval
of a Successful Bidder or Bidders and Back-Up Bidders, and the deadlines with respect to the
foregoing.

13.      I understand from my conversations with the Debtors' management and other
advisors that the timeline set forth in the Bidding Procedures and laid out below is calculated to
balance the need to provide adequate notice to Potential Bidders with the need to run an expeditious
and efficient sale process.  I also understand from my conversations with the Debtors' management
and other advisors that the Bidding Procedures are designed to generate the highest or otherwise
best available recoveries for the Debtors' stakeholders by encouraging prospective bidders to
submit competitive, value-maximizing bids.  I believe that the Bidding Procedures and the timeline
set forth therein will appropriately market the Assets and provide interested parties with sufficient
opportunity to participate.  Importantly, I understand that the Bidding Procedures recognize the
Debtors' fiduciary obligations to seek to maximize value, and, as such, do not impair the Debtors'
ability to consider all Qualified Bid proposals, and preserve the Debtors' right to modify the
Bidding Procedures in accordance with their terms as necessary or appropriate to seek to maximize
value for the Debtors' estates.

14.      The Debtors are seeking approval of the following proposed timeline for the Sale

Transaction(s) (the dates set forth below, the "Schedule") to establish a clear and open process for

the solicitation, receipt, and evaluation of third-party bids on a timeline that allows the Debtors to

seek to consummate a Sale Transaction that is value maximizing:

| Schedule | | |
|---|---|---|
| **Action** | **Description** | **Deadline** |
| **Stalking Horse Deadline** | The deadline by which the Debtors may choose a Stalking Horse Bidder and enter into a Stalking Horse APA. | February 27, 2026, at 5:00 p.m., prevailing Eastern Time. |
| **Bid Deadline** | The deadline by which any Acceptable Bidders must submit all binding Bids to be evaluated as Qualified Bids to participate in the Auction, if any. | March 3, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Auction (if necessary)** | The date and time of the Auction, if one is needed, which will be held at the offices of Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022. | March 6, 2026, at 10:00 a.m. prevailing Eastern Time |
| **Notice of Successful Bidder** | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline), the Debtors will file on the docket, but not serve, a notice identifying the Successful Bidder (as defined in the Bidding Procedures) identifying the applicable Successful Bidder, Assets, and key terms of the agreement. | As soon as reasonably practicable after the conclusion of the Auction (or, if no Auction is held, the Bid Deadline). |
| **Sale Objection Deadline** | The deadline by which objections to the entry of an order by the Court approving any Sale Transaction or objections to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Executory Contract or Unexpired Lease (the "Sale Objection Deadline") must be filed with the Court and served so as to be actually received by the appropriate notice parties. | March 9, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Sale Objection Reply Deadline** | Deadline for the Debtors and any other parties supporting the Sale Transaction(s) to respond to any objections to such Sale Transaction(s). | March 11, 2026, at 5:00 p.m. prevailing Eastern Time |
| **Sale Hearing** | Date for a hearing at which the Court will consider approving any Sale Transaction(s) to one or more prospective purchasers. | March 12, 2026, or such other date as may be scheduled by the Court, at a time to be announced |

15.      I understand that the Debtors, in their business judgment, reserve the right to alter

the timing of the Schedule as necessary under the circumstances, or to conduct multiple Sale

Transactions across one or more Auctions in order to seek to maximize the value of their estates, in each case in accordance with the Bidding Procedures.

16.     Additionally, as noted in the Motion, I understand that the Debtors also seek approval of certain Stalking Horse Bid Protections.  Specifically, the Debtors seek approval of a break-up fee not to exceed three percent of the Purchase Price and the reimbursement of reasonable and documented fees and out-of-pocket expenses in the event the Debtors decide in their business judgment to offer Stalking Horse Bid Protections to a Stalking Horse Bidder in connection with a Stalking Horse APA.

**The Proposed Bidding Procedures, Stalking
Horse Bid Protections, and Schedule are Reasonable**

17.     Based on my experience, I believe that the proposed Bidding Procedures have been designed with the intent to maximize the value received for the Assets by facilitating an open and competitive bidding process in which Potential Bidders are encouraged to participate and submit competing Bids within the specified timeframe.

18.     Additionally, given the anticipated duration and scope of the Debtors' contemplated Schedule (taking into account both the Prepetition Sale Process, as well as the postpetition marketing process contemplated), it is my view, based on my experience, that the proposed Bidding Procedures, including, without limitation, the marketing process timeline, are reasonable under the circumstances of these chapter 11 cases, as described herein and in the Motion.

19.     With respect to the Schedule, as noted above, the Debtors, with the assistance of SOLIC, initially reached out to a group of strategic and financial investors almost two months ago and will continue the Prepetition Sale Process with respect to those strategic and financial parties, including any such parties who previously declined to pursue a bid, as well as any other parties

who express interest in the Assets.  In my opinion, the Schedule provides appropriate time for the Debtors to run their comprehensive marketing process, receive and evaluate bids, and, if necessary, hold an Auction.  Under the circumstances of these cases, I believe that, based on my experience, this timeline, although expedited with respect to the continued postpetition marketing efforts, provides the Debtors with an appropriate amount of time to conduct a marketing process for the Assets and to solicit and identify competitive, value-maximizing bids.  Additionally, at the Auction, as set forth in the proposed Bidding Procedures, the Debtors would have an opportunity to consider all potential competing offers and select the offer for the Assets that they deem to be the higher or otherwise better such offers.

20.     To the extent the Debtors seek to appoint a Stalking Horse Bidder, the Stalking Horse Bid Protections identified in the Motion are, in my view and based on my experience, customary and reasonable and are in line with bid protections that stalking horse bidders typically require in similar situations based on fee comparisons reviewed by myself and the SOLIC team. In the event the Debtors seek to appoint a Stalking Horse Bidder, such appointment will be sought on notice to parties in interest in these chapter 11 cases.  I believe that the allowance of the Stalking Horse Bid Protections is in the best interest of the Debtors' estates and their creditors, as a Stalking Horse Bidder, if designated, would establish a floor for bidding that may ultimately increase the consideration received by Debtors in exchange for the Assets.  I believe the ability to appoint a Stalking Horse Bidder and provide such bidder with Stalking Horse Bid Protections provides the Debtors the necessary flexibility to pursue a value maximizing transaction.

21.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

statements are true and correct.

Dated: February 9, 2026              */s/ Reid Snellenbarger*
                                      Name:  Reid Snellenbarger
                                      Title:    Co-Head and Senior Managing Director
                                      SOLIC Capital Advisors, LLC