**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF HEARING ON
### DEBTORS' MOTION FOR ENTRY
### OF AN ORDER (I) CONDITIONALLY
### APPROVING THE ADEQUACY OF THE
### INFORMATION CONTAINED IN THE DISCLOSURE
### STATEMENT, (II) APPROVING THE SOLICITATION AND
### VOTING PROCEDURES WITH RESPECT TO CONFIRMATION
### OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
### NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN
### DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE** that, on **March 16, 2026, at 10:00 a.m.**, prevailing Eastern

Time, or as soon thereafter as counsel may be heard, the above-captioned debtors and debtors in

---

[1] The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/EddieBauer. The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

possession (the "Debtors"), by and through their proposed undersigned counsel, shall move (the "Motion") before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey (the "Court"), 50 Walnut Street, Newark, NJ 07102, for entry of an order (the "Order"), substantially in the form submitted herewith, (a) authorizing the Debtors to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Plan"), filed contemporaneously herewith; (b) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "Disclosure Statement"), filed contemporaneously herewith, as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation package; (d) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (e) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (f) granting related relief.

    **PLEASE TAKE FURTHER NOTICE** that, in support of the relief requested, the Debtors shall rely on the accompanying Motion, which sets forth the relevant legal and factual bases upon which the relief requested should be granted.  A proposed Order granting the relief requested in the Motion is also submitted herewith.

    **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion shall:  (a) be in writing, (b) state with particularity the basis of the objection, and (c) be filed with the Clerk of the Court electronically by attorneys who regularly practice before the Court in accordance with the *General Order Regarding Electronic Means for Filing, Signing, and*

*Verification of Documents dated March 27, 2002* (the "General Order") and the *Commentary Supplementing Administrative Procedures* dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received no later than seven days before the hearing date set forth above.

**PLEASE TAKE FURTHER NOTICE** that copies of all documents filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto, Inc. at https://cases.stretto.com/EddieBauer.  You may also obtain copies of any pleadings by visiting the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE** that, unless responses are timely and properly filed and served, the Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-3(d), and the relief requested may be granted without further notice or hearing.

[*Remainder of Page Intentionally Left Blank*]

Dated:  February 23, 2026

/s/  Michael D. Sirota
**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) CONDITIONALLY APPROVING THE ADEQUACY OF THE INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, (II) APPROVING THE SOLICITATION AND VOTING PROCEDURES WITH RESPECT TO CONFIRMATION OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF

---

[1]   The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

TO:   THE HONORABLE STACEY L. MEISEL UNITED STATES BANKRUPTCY

COURT FOR THE DISTRICT OF NEW JERSEY:

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state

the following in support of this motion (this "<u>Motion</u>"):[2]

**<u>Relief Requested</u>**

1.   The Debtors seek entry of an order, substantially in the form attached hereto as

**<u>Exhibit A</u>** (the "<u>Order</u>"), granting the following relief:

   a.   ***Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement***.  Conditionally approving the Disclosure Statement, attached to the Order as <u>Exhibit 1</u>, as containing "adequate information" pursuant to section 1125(a)(1) of the Bankruptcy Code and providing Holders of Claims or Interests, and other parties in interest, with sufficient notice of, and the identities of the entities subject to, the injunction, exculpation, and release provisions contained in the Plan in satisfaction of the requirements of rules 2002(c)(3) and 3016(b) and (c) of the Bankruptcy Rules; with such approval without prejudice to the right of any party in interest to argue at the Combined Hearing that the Disclosure Statement does not contain adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code, and the Order shall be without preclusive effect as to any determination by the Court at the Combined Hearing solely regarding the adequacy of the information contained in the Disclosure Statement within the meaning of section 1125(a)(1) of the Bankruptcy Code;

---

[2]   A description of the Debtors and their business, as well as the facts and circumstances supporting this Motion and giving rise to the Debtors' Chapter 11 Cases, is set forth in greater detail in the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 35] (the "<u>First Day Declaration</u>").  Capitalized terms used but not immediately defined in this Motion shall have the meanings ascribed to them in (a) the First Day Declaration, (b) the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "<u>Plan</u>"), (c) the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (as may be amended, supplemented, or modified from time to time, the "<u>Disclosure Statement</u>"), or (d) later in this Motion.

2

b.       ***Solicitation and Voting Procedures***.  Approving procedures for (i) soliciting, receiving, and tabulating votes on the Plan; (ii) voting to accept or reject the Plan; and (iii) filing objections to the Plan (the "<u>Solicitation and Voting Procedures</u>"), substantially in the form attached to the Order as <u>Exhibit 2</u>;

c.       ***Ballots***.  Approving the form of ballots that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, substantially in the forms attached to the Order as <u>Exhibit 3A</u> and <u>Exhibit 3B</u> (collectively, the "<u>Ballots</u>");

d.       ***Notice of Non-Voting Status***.  Approving (i) the form of notice to Holders of Claims or Interests that are (A) Unimpaired under the Plan and that are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, (B) Impaired under the Plan and that are, pursuant to section 1126(g) of the Bankruptcy Code, deemed to reject the Plan, and (C) subject to a pending objection and that are not entitled to vote the disputed portion of such Claims or Interests, substantially in the form attached to the Order as <u>Exhibit 4</u> (the "<u>Notice of Non-Voting Status</u>"); and (ii) the release opt-out form, substantially in the form attached to the Order as <u>Exhibit 4A</u> (the "<u>Opt-Out Form</u>");

e.       ***Cover Letter***.  Approving the form of letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan describing the contents of the Solicitation Package and recommending that such parties vote in favor of the Plan, substantially in the form attached to the Order as <u>Exhibit 5</u> (the "<u>Cover Letter</u>");

f.       ***Combined Hearing Notice***.  Approving the form and manner of notice of the Combined Hearing and the procedures for objecting thereto (such notice, the "<u>Combined Hearing Notice</u>"), substantially in the form attached to the Order as <u>Exhibit 6</u>;

g.       ***Plan Supplement Notice***.  Approving the form of notice related to the filing of the Plan Supplement, substantially in the form attached to the Order as <u>Exhibit 7</u> (the "<u>Plan Supplement Notice</u>");

h.   ***Assumption and Rejection Notice***.  Approving the forms of notice to counterparties to executory contracts and unexpired leases that will be (i) assumed pursuant to the Plan (the "<u>Assumption Notice</u>"), substantially in the form attached to the Order as <u>Exhibit 8</u>, or (ii) rejected pursuant to the Plan (the "<u>Rejection Notice</u>"), substantially in the form attached to the Order as <u>Exhibit 9</u>;

i.   ***Solicitation Package***.  Finding that the solicitation materials and documents included in the solicitation package (the "<u>Solicitation Package</u>") that will be sent to, among others, Holders of Claims entitled to vote to accept or reject the Plan, comply with Bankruptcy Rules 2002(b) and 3017(d);

j.   ***Waiver of Bankruptcy Local Rule 3018-1***.  Waiving the requirements pursuant to Bankruptcy Local Rule 3018-1 that (i) the Ballots must be returned not later than seven (7) days prior to the Combined Hearing and (ii) the voting results must be certified at least three (3) days prior to the Combined Hearing; and

k.   ***Confirmation Dates***.  Establishing or reaffirming, as applicable, the following dates and deadlines with respect to Confirmation of the Plan, subject to modification as necessary (the "<u>Confirmation Dates</u>"):[3]

| Event | Date | Description |
|---|---|---|
| Voting Record Date | March 16, 2026 | With respect to Claims that either (a) are listed in the Schedules or (b) with respect to which a valid proof of claim (a "<u>Proof of Claim</u>") is filed before March 16, 2026 (such claims, the "<u>Known Eligible Claims</u>"),[4] the date to determine which Holders of such Claims are entitled to vote to accept or reject the Plan (the "<u>Voting Record Date</u>").  If a valid Proof of Claim for a Claim in a Voting Class (a) that is not listed in the Schedules and (b) with respect to which a valid Proof of Claim has not been filed as of the Voting Record Date (an "<u>Unknown Eligible Claim</u>") is filed on or after the Voting Record Date and before the applicable general claims bar date (the "<u>Claims Bar Date</u>") established in connection with the Bar Date Motion,[5] then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.  Such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline for such Ballot to be counted. |

---

[3]   All dates calculated in accordance with Bankruptcy Rule 9006(a).

[4]   Pursuant to the *Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules and Statements of Financial Affairs; and (II) Granting Related Relief* [Docket No. 59], the Debtors must file their schedules of assets and liabilities (the "<u>Schedules</u>") and statements of financial affairs by March 12, 2026.

[5]   The "<u>Bar Date Motion</u>" means the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code;*

| Event | Date | Description |
|---|---|---|
| Combined Hearing Notice and Publication Deadline | March 17, 2026, or, with respect to the Publication Notice, as soon as practicable thereafter. | The date by which the Debtors will (a) distribute, or cause to be distributed, the Combined Hearing Notice to the Holders of Claims or Interests, and (b) publish the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Combined Hearing Notice and Publication Deadline"). |
| Solicitation Package Mailing Deadline | Five (5) business days following entry of the Order | The deadline by which the Debtors must distribute, or cause to be distributed, the Solicitation Package, including the Ballots, to Holders of Known Eligible Claims entitled to vote to accept or reject the Plan (the "Solicitation Package Mailing Deadline"). |
| Plan Supplement Filing Deadline | April 1, 2026 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |
| Voting and Opt-Out Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are **actually received** by Stretto, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent," and such deadline, the "Voting and Opt-Out Deadline"). |
| Combined Objection Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with the Court (the "Combined Objection Deadline"). |
| Voting Report Deadline | April 15, 2026, at 2:00 p.m., prevailing Eastern Time | The date by which the report tabulating the voting results with respect to the Plan (the "Voting Report") shall be filed with the Court (such date, the "Voting Report Deadline"). |
| Confirmation Brief Deadline | April 15, 2026 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | April 16, 2026 | The date of the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing," and such date, the "Combined Hearing Date"). |

## **Jurisdiction and Venue**

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court")

has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of

Reference to the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on

June 6, 2025 (Bumb, C.J.).  The Debtors confirm their consent to the Court's entry of a final order

in connection with this Motion to the extent that it is later determined that the Court, absent consent

of the parties, cannot enter final orders or judgments in connection herewith consistent with

Article III of the United States Constitution.

---

*(II) Establishing a Rejection Damages Bar Date and an Amended Schedules Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief*, filed contemporaneously herewith.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), rules 2002, 3001, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rule 3018-1 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey, dated August 1, 2025 (the "<u>Bankruptcy Local Rules</u>").

## **Background**

5.      On February 9, 2026 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On February 10, 2026, the Court entered an order directing the procedural consolidation and joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) [Docket No. 56].  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases, and no official committees have been appointed or designated.

## **Preliminary Statement and Summary of the Plan**[6]

6.      The Debtors commenced these Chapter 11 Cases with the support of 100 percent of their secured lenders in order to pursue two interlocking processes to effectuate a value-maximizing restructuring and address the Company's balance sheet and operational challenges.  Specifically, the Debtors sought to complete one or more going concern sales of their assets free and clear of all liens, claims, and other encumbrances to the highest or otherwise best

---

[6]      The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  In the event of any inconsistency between this Motion and the Plan, the Plan shall govern.

bidder(s) (each, a "Sale Transaction") while simultaneously carrying out an orderly, value-maximizing winddown of all of the Debtors' brick-and-mortar retail operations (the "Store Closing Sales") that are not sold in a Sale Transaction.

7.     Since the Petition Date, the Debtors have worked diligently to accomplish these goals.  As of the date hereof, the Debtors, with the assistance of SOLIC Capital Advisors, LLC, their proposed investment banker, have reached out to a total of 126 potential counterparties for a Sale Transaction and received two indications of interest.  While the sale process remains ongoing, to date, no actionable bid has yet emerged that improves upon the orderly winddown of brick-and-mortar operations.   The Debtors' Store Closing Sales at each of their 175 brick-and-mortar retail locations remain ongoing and are projected to conclude before April 30, 2026.  Regardless of whether the Debtors identify a value-maximizing going-concern bid and consummate a Sale Transaction or complete the Store Closing Sales at all retail locations, the Debtors stand ready to confirm the proposed chapter 11 plan with the support of the ABL Lenders, the Term Loan Lenders, and the Subordinated Loan Lenders on the most expeditious timeline possible.

8.     If confirmed, the Plan will provide:   (a) for the payment of all allowed administrative and priority claims in full; (b) that, subject to the class of General Unsecured Claims voting to accept the Plan, 100 percent of Net Proceeds (as defined in the Plan) *less* the GUC Contingent Recovery Pool (as defined herein), will be distributed to the ABL Lenders; (c) that, if they vote as a class to accept the Plan, Holders of General Unsecured Claims will receive their *pro rata* share of the greater of (i) $250,000 or (ii) ten percent of Net Proceeds in excess of the ABL Threshold Recovery Amount (as defined in the Plan) (such recovery, the "GUC Contingent Recovery Pool"); (d) that Term Loan Claims and Subordinated Loan Claims will be extinguished

with no recovery from the Debtors, and holders of such claims will forego a distribution from the Debtors they would have otherwise had a right to in the event the class of General Unsecured Claims votes to accept the Plan; and (e) that Existing Equity Interests will be extinguished with no recovery.

9.      By definition, the Store Closing Sales will only last for approximately twelve more weeks at most, which means that each day the Debtors spend in chapter 11—and the attendant administrative fees that they will generate as a result—matters.  In light of this, the Debtors believe that proceeding towards confirmation as expeditiously as possible while satisfying the procedural and noticing requirements of the Bankruptcy Rules and Bankruptcy Local Rules will best position the Debtors to maximize the value of their estates for the benefit of all stakeholders.  Accordingly, the Debtors propose a solicitation schedule consistent with the dates set forth by the Court in the Scheduling Order[7] that will allow them to complete solicitation between the dates of the hearing to consider the conditional approval of the Disclosure Statement (March 16, 2026) and the Combined Hearing (April 16, 2026).

10.      Further, the Plan classifies Holders of Claims or Interests into the following Classes of Claims and Interests for all purposes, including with respect to voting on and distributions under the Plan.  The following table summarizes the Classes of Claims and Interests under the Plan and their respective voting rights:

---

[7]      The "Scheduling Order" means the *Order Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure Statement and Plan Confirmation* [Docket No. 72].

| Class No. | Claim / Interest | Status | Voting Rights |
|---|---|---|---|
| Class 1 | **Other Secured Claims** | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | **Other Priority Claims** | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | **ABL Claims** | Impaired | Entitled to Vote |
| Class 4 | **Term Loan Claims** | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | **Subordinated Loan Claims** | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | **General Unsecured Claims** | Impaired | Entitled to Vote |
| Class 7 | **Intercompany Claims** | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | **Intercompany Interests** | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | **Existing Equity Interests** | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | **Section 510(b) Claims** | Impaired | Not Entitled to Vote (Deemed to Reject) |

11.     The Debtors propose to solicit votes to accept or reject the Plan from Holders of Claims in Class 3 and Class 6 (collectively, the "Voting Classes").  The Debtors are **not** proposing to solicit votes from Holders of Claims or Interests in Class 1, Class 2, Class 4, Class 5, Class 7, Class 8, Class 9, or Class 10 (collectively, the "Non-Voting Classes").  Holders of Claims or Interests in the Non-Voting Classes will not receive a Solicitation Package but instead will receive a Notice of Non-Voting Status, except for Class 7 and Class 8, which will receive neither a Solicitation Package nor a Notice of Non-Voting Status, as discussed below.

12.     The Disclosure Statement ensures that Holders of Claims entitled to vote on the Plan will receive information of a kind and in sufficient detail to make an informed judgment regarding acceptance or rejection of the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code, and the proposed Confirmation Dates and Solicitation and Voting Procedures will move these Chapter 11 Cases forward in a timely manner while ensuring due process and observing the procedural safeguards mandated under the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.   Accordingly, the relief requested in this Motion should be approved.

**Basis for Relief**

I.     **The Court Should Approve the Disclosure Statement on a Conditional Basis**.

A.     **The Standard for Approval of the Disclosure Statement**.

13.     Pursuant to section 1125 of the Bankruptcy Code, the proponent of a proposed chapter 11 plan must provide "adequate information" regarding that plan to holders of impaired claims or interests entitled to vote on the plan.  11 U.S.C. § 1125.  Specifically, section 1125(a)(1) of the Bankruptcy Code provides, in relevant part:

> "[A]dequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan.

11 U.S.C. § 1125(a)(1).

14.     Courts in several circuits, including the Third Circuit, have stated that the primary purpose of a disclosure statement is to provide all material information that stakeholders affected by a proposed plan need to make an informed judgment regarding whether to vote for the plan. *See, e.g.*, *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (providing that a disclosure statement must "[contain] adequate information to enable a creditor to make an informed judgment about the Plan" (internal quotations omitted)); *Century Glove, Inc. v. First Am. Bank of N.Y.*, 860 F.2d 94, 100 (3d Cir. 1988) ("[Section] 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote."); *accord In re Monnier Bros.*, 755 F.2d 1336, 1342 (8th Cir. 1985) ("The primary purpose of a disclosure statement is to give the creditors the information they need to decide whether to accept the plan."); *In re Phx. Petrol., Co.*, 278 B.R. 385, 392 (Bankr. E.D. Pa. 2001) ("[T]he general purpose of the

disclosure statement is to provide 'adequate information' to enable 'impaired' classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan."); *In re A. H. Robins Co., Inc.*, 880 F.2d 694, 696 (4th Cir. 1989) (stating that the disclosure statement must provide "information of a kind, and in sufficient detail . . . that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan").

15.    "Adequate information" is a flexible standard, based on the facts and circumstances of each case.  11 U.S.C. § 1125(a)(1) ("'[A]dequate information' means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . ."); *see also Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 417 (3d Cir. 1988) ("From the legislative history of § 1125 we discern that adequate information will be determined by the facts and circumstances of each case."); *In re Congoleum Corp.*, 636 B.R. 362, 383 (Bankr. D.N.J. 2022) ("What constitutes adequate information is determined on a case-by-case basis, with the ultimate determination within the discretion of the bankruptcy court." (internal quotations omitted)); *In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case."); *In re River Vill. Assoc.*, 181 B.R. 795, 804 (E.D. Pa. 1995) ("[T]he Bankruptcy Court is thus given substantial discretion in considering the adequacy of a disclosure statement."); *Phx. Petrol. Co.*, 278 B.R. at 393 (same); *First Am. Bank of N.Y.*, 81 B.R. at 279 (noting that adequacy of disclosure for a particular debtor will be determined based on how much information is available from outside sources); S. Rep. No. 95-989, at 121 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5907 ("[T]he information required will necessarily be governed by the circumstances of the case[.]").

16.     In determining whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a.     the events that led to the filing of a bankruptcy petition;

b.     the relationship of the debtor with its affiliates;

c.     a description of the available assets and their value;

d.     the debtor's anticipated future performance;

e.     the source of information stated in the disclosure statement;

f.     the debtor's condition while in chapter 11;

g.     claims asserted against the debtor;

h.     the estimated return to creditors under a chapter 7 liquidation of the debtor;

i.     the future management of the debtor;

j.     the chapter 11 plan or a summary thereof;

k.     financial information, valuations, and projections relevant to a creditor's decision to accept or reject the chapter 11 plan;

l.     information relevant to the risks posed to creditors under the plan;

m.     the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

n.     litigation likely to arise in a nonbankruptcy context; and

o.     tax attributes of the debtor.

*See In re U.S. Brass Corp.*, 194 B.R. 420, 424–25 (Bankr. E.D. Tex. 1996); *see also In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170–71 (Bankr. S.D. Ohio 1988) (listing the factors courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Metrocraft Pub. Serv., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984) (same).  Disclosure

regarding all topics listed above is not necessary in every case. *See U.S. Brass*, 194 B.R. at 425; *see also In re Phx. Petrol.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

      **B.**      **The Disclosure Statement Contains Adequate Information in Accordance with Section 1125 of the Bankruptcy Code.**

      17.      The Disclosure Statement meets and even exceeds the applicable standard for "adequate information" to allow Holders of Claims in the Voting Classes to make an informed judgment whether to vote to accept or reject the Plan. Specifically, the Disclosure Statement contains several categories of information that together meet the "adequate information" standard, including:

      a.      ***The Debtors' Business Operations and Capital Structure***. An overview of the Debtors' corporate history, business operations, and corporate and capital structure and liquidity profile, *see* <u>Article III</u> of the Disclosure Statement;

      b.      ***Events Leading to these Chapter 11 Cases***. An overview of the events leading to the commencement of the Debtors' Chapter 11 Cases, *see* <u>Article IV</u> of the Disclosure Statement;

      c.      ***Events of the Chapter 11 Cases***. An overview of key events and material developments in the Debtors' Chapter 11 Cases, *see* <u>Article V</u> of the Disclosure Statement;

      d.      ***Release and Exculpation Provisions of the Plan***. A description of the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing, including bolded language related to the Debtor Release and the Third-Party Release, as well as the exculpation and injunction provisions, *see* <u>Article II.O</u> and <u>Article VI.I</u> of the Disclosure Statement;

e.     ***Risk Factors***.  A description of certain risks associated with recoveries under the Plan and the Wind-Down Transactions, as well as certain risks associated with forward-looking statements, and an overall disclaimer about information provided by and set forth in the Disclosure Statement, *see* <u>Article VII</u> of the Disclosure Statement;

f.     ***Liquidation Analysis.***  A liquidation analysis will be filed in advance of the hearing to approve the Disclosure Statement on a conditional basis and will be attached to the Disclosure Statement;

g.     ***Solicitation and Voting Procedures***.  A description of the procedures for soliciting votes to accept or reject the Plan and voting on the Plan, *see* <u>Article VIII</u> of the Disclosure Statement;

h.     ***Confirmation of the Plan***.  Confirmation procedures and statutory requirements for confirmation and consummation of the Plan, *see* <u>Article IX</u> of the Disclosure Statement;

i.     ***Certain United States Federal Income Tax Consequences of the Plan***.  A description of certain U.S. federal income tax law consequences of the Plan, *see* <u>Article X</u> of the Disclosure Statement;

j.     ***Recommendation of the Debtors***.  A recommendation by the Debtors that Holders of Claims in the Voting Classes should vote to accept the Plan, *see* <u>Article XI</u> of the Disclosure Statement; and

k.     ***Questions and Answers Regarding the Disclosure Statement and the Plan***.  A list of frequently asked questions, *see* <u>Article II</u> of the Disclosure Statement.

18.     Based on the foregoing, the Debtors submit, and will demonstrate at the Combined Hearing, that the Disclosure Statement contains sufficient information for a reasonable investor to make an informed judgment about the Plan and complies with section 1125 of the Bankruptcy Code.  The Debtors request that the Court (a) conditionally approve the Disclosure Statement as containing "adequate information" within the meaning of section 1125 of the Bankruptcy Code, for solicitation purposes only, and (b) determine on a final basis at the Combined Hearing that the

14

Disclosure Statement contains "adequate information" within the meaning of section 1125 of the

Bankruptcy Code.   Parties in interest will have an opportunity to object to the adequacy of

information provided in the Disclosure Statement up until the Combined Objection Deadline,

which the Debtors propose to be on April 14, 2026 at 4:00 p.m., prevailing Eastern Time, subject

to extension.   Nevertheless, the Disclosure Statement should be approved on a conditional basis

so that the Debtors may commence the Plan solicitation process.

     **C.**    **The Disclosure Statement Provides Sufficient Notice of Release, Exculpation, and Injunction Provisions in the Plan**.

    19.    Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against

conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must

describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to

the injunction.   Fed. R. Bankr. P. 3016(c).   Bankruptcy Rule 2002(c)(3) similarly requires that

such disclosure be provided for the notice of the time fixed for filing objections to and the hearing

to consider confirmation of a chapter 11 plan.   Fed. R. Bankr. P. 2002(c)(3).

    20.    <u>Article VIII</u> of the Plan and <u>Article VI</u> of the Disclosure Statement describe in detail

the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing,

including bolded language related to the Debtor Release and the Third-Party Release, as well as

the exculpation and injunction provisions.   Furthermore, the language in <u>Article VIII</u> of the Plan

regarding the Debtor Release and the Third-Party Release, as well as the exculpation and

injunction provisions, is in bold font, making it conspicuous to any reader.   In addition, the

Combined Hearing Notice states in clear and bolded text that the Plan contains release,

exculpation, and injunction provisions, including the Third-Party Releases.   Accordingly, the

Disclosure Statement complies with Bankruptcy Rule 3016(c) by conspicuously describing the

conduct and parties enjoined, released, or exculpated by the Plan, and the Combined Hearing

Notice complies with Bankruptcy Rule 2002(c)(3) by conspicuously describing the nature of and entities subject to the injunction under the Plan.

II. **The Court Should Approve the Solicitation Materials and Timeline for Soliciting Votes on the Plan**.

    A. **The Court Should Approve the Voting Record Date, Solicitation Package Mailing Deadline, Combined Hearing Notice and Publication Deadline, and Voting and Opt-Out Deadline**.

21. Bankruptcy Rule 3017(d) provides that, for the purposes of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stock, bonds, debentures, notes, and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing." Fed. R. Bankr. P. 3017(d). Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes. Fed. R. Bankr. P. 3018(a). Additionally, Bankruptcy Rule 3017(c) provides that before approving the disclosure statement, the court must fix a time within which the holders of claims and interests may accept or reject a plan and may fix a date for the hearing on confirmation of a plan. *See* Fed. R. Bankr. P. 3017(c).

22. The Debtors request that the Court exercise its authority under Bankruptcy Rules 3017(c), 3017(d), and 3018(a) to establish the following dates in connection with confirmation:

- **March 16, 2026**, as the Voting Record Date with respect to Known Eligible Claims;

- **March 17, 2026** (or as soon as practicable thereafter with respect to the Publication Notice), as the Combined Hearing Notice and Publication Deadline;

- **Five (5) business days following the entry of the Order** as the Solicitation Package Mailing Deadline; and

- **April 14, 2026, at 4:00 p.m., prevailing Eastern Time**, as the Voting and Opt-Out Deadline.

23.    If a Holder of an Unknown Eligible Claim that is in a Voting Class files a valid Proof of Claim after the Voting Record Date and before the Claims Bar Date, then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

24.    The proposed solicitation timeline will also require waivers of subsections (a) and (b) of Bankruptcy Local Rule 3018-1.  These provisions, respectively, prescribe (a) a seven-day period between the return of ballots and a confirmation hearing, and (b) a three-day period between the submission of a voting report and a confirmation hearing.  There are substantial reasons that weigh in favor of the Court modifying the requirement of Bankruptcy Local Rule 3018-1(a) and (b).  Granting a waiver of Bankruptcy Rule 3018-1(a) and (b) is warranted given that the restructuring transactions contemplated by the Restructuring Support Agreement enjoy the support of all holders of the Debtors' funded debt.  Further, only eleven Class 3 Ballots must be submitted. With overwhelming stakeholder support for the Plan and the limited number of Class 3 Ballots to collect, there is limited risk that a shortened interval between the receipt of completed Ballots and the Combined Hearing would reduce stakeholder participation.  On the other hand, a shorter period between Ballot submission and the Combined Hearing will preserve estate value and avoid unnecessary administrative expense while also giving all parties in interest adequate notice of the hearing and an opportunity to be heard.  The proposed Voting and Opt-Out Deadline and Objection Deadline will occur 28 days after the Combined Hearing Notice is delivered, as required by Bankruptcy Rule 2002(b)(2).  Thus, waiving Bankruptcy Local Rule 3018-1(a) and (b) will have no effect on the mandatory 28-day solicitation period.  As previously discussed, the Debtors must proceed toward confirmation of the Plan as expeditiously as possible to reduce the amount of time

they spend in chapter 11, control administrative expenses, and maximize value for stakeholders. Waiving the requirements of Bankruptcy Local Rule 3018-1(a) and (b) will make this possible and will enable the Debtors to comply with the Scheduling Order entered by the Court setting the hearing to consider conditional approval of the Disclosure Statement and the Combined Hearing.

25.     The Debtors also propose that, with respect to any transferred Claim, the transferee shall be entitled to receive a Solicitation Package and, if the Holder of such Claim is entitled to vote with respect to the Plan, cast a Ballot on account of such Claim only if both (a) all actions necessary to effectuate the transfer of the Claim pursuant to Bankruptcy Rule 3001(e) have been completed and (b) such transfer is reflected on the Claims Register by: (i) with respect to Known Eligible Claims, the Voting Record Date, or (ii) with respect to Unknown Eligible Claims with respect to which a valid Proof of Claim is filed on or after the Voting Record Date and before the Claims Bar Date, the Claims Bar Date. In the event a Claim is transferred after the Voting Record Date or the Claims Bar Date, as applicable, the transferee of such Claim will not be allowed to vote such claim, and the transferee of such Claim shall be bound by any vote on the Plan made by the Holder of such Claim as of the Voting Record Date.

26.     Finally, the Debtors request that, after the Debtors distribute the Solicitation Package to Holders of Claims entitled to vote on the Plan, the Court require that all Holders of Claims entitled to vote on the Plan complete and submit their Ballots so that they are **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline. Similarly, Holders of Claims or Interests who wish to opt out of the Third-Party Release must complete and submit their Opt-Out Form so that it is **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline.

27.    The foregoing timing and materials will afford Holders of Claims entitled to vote on the Plan with sufficient time to review and analyze such materials and subsequently make an informed judgment as to whether to vote to accept or reject the Plan before the Voting and Opt-Out Deadline consistent with the requirements of the applicable Bankruptcy Rules.[8]  Accordingly, the Debtors request that the Court approve the form of, and the Debtors' proposed procedures for distributing, the Solicitation Package to the Holders of Claims in the Voting Classes, the Combined Hearing Notice and Publication Deadline, and the deadline for Holders of Claims or Interests to vote to accept or reject the Plan and/or return their Opt-Out Form, as applicable.

**B.    The Court Should Approve the Forms of the Ballots**.

28.    Bankruptcy Rule 3018(c) requires that "[a]n acceptance or rejection of a plan shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c).    In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared and customized the Ballots.  Although based on Official Form B 314, the Ballots have been modified to (a) address the circumstances of these Chapter 11 Cases and (b) include certain additional information that is relevant and appropriate for Claims in the Voting Classes.  The proposed Ballots for the Voting Classes are attached to the Order as Exhibit 3A and Exhibit 3B. Accordingly, the Debtors submit that the forms of the Ballots comply with Bankruptcy Rule 3018(c) and, therefore, should be approved.

---

[8]    *See* Fed. R. Bankr. P. 3017(d) (after approval of a disclosure statement, the debtor must transmit the plan, the approved disclosure statement, a notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to certain holders of claims).  Nonetheless, the Debtors request authority to extend the Voting and Opt-Out Deadline without further order of the Court.

**C.      The Court Should Approve the Form and Distribution of the Solicitation Package to Holders of Claims Entitled to Vote on the Plan**.

29.      Bankruptcy Rule 3017(d) specifies, among other things, the materials to be distributed to holders of allowed claims and/or equity interests upon approval of a disclosure statement, including the court-approved plan, disclosure statement, and the notice of the time to file acceptances and rejections of the plan.  Fed. R. Bankr. P. 3017(d).

30.      In accordance with this requirement, the Debtors propose to distribute the Solicitation Package to provide Holders of Claims entitled to vote on the Plan with the information they need to make an informed judgment with respect to how to vote on the Plan.  Specifically, on or before the Solicitation Package Mailing Deadline, the Debtors, through the Claims and Noticing Agent, will cause the Solicitation Package to be distributed to Holders of Known Eligible Claims via email (using the email address maintained by the Debtors as of the Voting Record Date) or, to the extent an email address is not on file and the Debtors are in possession of a physical mailing address for such Holders, via first-class mail in electronic format (*i.e.*, USB flash drive format).[9] If a Holder of an Unknown Eligible Claim files a valid Proof of Claim before the Claims Bar Date, the Claims and Noticing Agent will serve such Holder a Solicitation Package (including the applicable Ballot) within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent, and such Holders shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline in order for such Ballot to be counted.

31.      Importantly, any party that receives a Solicitation Package via email or for which service by USB flash drive imposes a hardship may receive a Solicitation Package in paper format by contacting the Claims and Noticing Agent and requesting paper copies.

---

[9]      Parties that receive a Solicitation Package via first-class mail will also receive a paper copy of the Cover Letter and the applicable Ballot.

32.     Each Solicitation Package will include the following materials, as applicable:

a.      the Disclosure Statement (and exhibits thereto, including the Plan), attached to the Order as <u>Exhibit 1</u>;

b.      a copy of the Solicitation and Voting Procedures, substantially in the form attached to the Order as <u>Exhibit 2</u>;

c.      the applicable Ballot, substantially in the forms attached to the Order as <u>Exhibits 3A</u> and <u>3B</u>, together with detailed voting instructions and instructions on how to submit the Ballot;

d.      the Cover Letter, substantially in the form attached to the Order as <u>Exhibit 5</u>, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

e.      the Combined Hearing Notice, substantially in the form attached to the Order as <u>Exhibit 6</u>;

f.      the Order granting the relief requested herein (without exhibits, except for the Solicitation and Voting Procedures); and

g.      any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

33.     The Debtors request that they be authorized to distribute the Solicitation Packages (including the Ballots) via email or first-class mail in paper or electronic format (*i.e.*, USB flash drive format), as applicable.   The Plan, the Disclosure Statement, the proposed Order, and Solicitation and Voting Procedures, collectively, are hundreds of pages.   Distribution in the manner requested will enable the Debtors' estates to save on printing and postage costs, which would be unjustifiably expensive if delivery of hard copy Solicitation Packages is required.   Bankruptcy courts in this district have permitted debtors to transmit solicitation documents in electronic format in other large chapter 11 cases in the interest of saving printing and mailing costs.   *See, e.g.*, *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026) (authorizing the debtors to distribute solicitation packages in electronic format by email); *In re Pretium*

*Packaging, Inc.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 30, 2026) (same); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by email and by USB drive where email was not available); *In re Thrasio Holdings, Inc.*, No. 24-11840 (CMG) (Bankr. D.N.J. Apr. 18, 2024) (authorizing the debtors to distribute solicitation packages in electronic format by email, hyperlink, and/or flash drive); *In re Rite Aid Corp.*, No. 23-19883 (MBK) (Bankr. D.N.J. March 28, 2024) (same).[10]

34.     Additionally, the Debtors will provide (via email where available) complete Solicitation Packages (excluding the Ballots) to the U.S. Trustee and all parties on the Master Service List as of the Solicitation Package Mailing Deadline.  The Debtors will not provide the Solicitation Package, the Notice of Non-Voting Status, or other solicitation materials to: (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by the Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; (b) any party to whom the notice of this Motion was sent but subsequently returned as undeliverable without a forwarding address on or prior to the Voting Record Date; or (c) the Holders of Claims or Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests).  For purposes of serving the Solicitation Package, the Notice of Non-Voting Status, and the Combined Hearing Notice, the Debtors and the Claims and Noticing Agent will rely on the address information (including email addresses) maintained by the Debtors and provided to the Claims and Noticing Agent.  The Debtors also request a waiver of any obligation for the Debtors

---

[10]     Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

or the Claims and Noticing Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

35.     Given the attendant timing considerations and administrative costs associated with tabulating hard copy Ballots, in addition to accepting hard copy Ballots via first-class mail, overnight courier, and hand delivery, the Debtors request authorization to accept electronic Ballots ("E-Ballots") via online submissions through a customized online balloting portal on the Debtors' case website maintained by the Claims and Noticing Agent (the "E-Ballot Portal").   Ballots submitted via the E-Ballot Portal may be electronically signed and submitted.   Instructions for online submission of Ballots are set forth on the forms of Ballots.   The encrypted ballot data and audit trail created by such electronic submission will become part of the record of any Ballot submitted in this manner and the voting party's electronic signature will be deemed to be immediately legally valid and effective.

36.     All votes to accept or reject the Plan must be cast by using the appropriate Ballots and/or voting instructions.   All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions via:  (a) first-class mail, in the return envelope provided with each Ballot; (b) overnight delivery; (c) personal delivery; or (d) the E-Ballot Portal, in each case so that the Ballots are **actually received** by the Claims and Noticing Agent no later than the Voting and Opt-Out Deadline at the return address set forth in the applicable Ballot.   Each Ballot contains detailed instructions that describe the appropriate means of Ballot submission.

   **D.     The Court Should Approve the Combined Hearing Notice**.

37.     The Combined Hearing Notice includes the following:  (a) instructions as to how to view or obtain copies of the conditionally approved Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent's and/or the Court's website via

PACER; (b) notice of the Voting and Opt-Out Deadline; (c) notice of the date by which the Debtors will file the Plan Supplement; (d) notice of the Combined Objection Deadline; and (e) notice of the Combined Hearing Date and information related thereto. The Debtors will serve (via email where available) the Combined Hearing Notice on all known Holders of Claims or Interests and the list of notice parties maintained by the Debtors pursuant to Bankruptcy Rule 2002 (regardless of whether such parties are entitled to vote on the Plan) no later than the Combined Hearing Notice and Publication Deadline.

38.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice." Fed. R. Bankr. P. 2002(l). Therefore, in addition to the foregoing distribution of the Combined Hearing Notice, the Debtors will publish the Publication Notice in *The New York Times* (National Edition) and/or the *Financial Times* (Global Edition) no later than the Combined Hearing Notice and Publication Deadline. The Debtors believe that the Publication Notice will provide sufficient notice of, among other things, the entry of the Order, the Voting and Opt-Out Deadline, the Combined Objection Deadline, and the Combined Hearing Date to parties who did not otherwise receive notice thereof by mail. Additionally, service of the Combined Hearing Notice and publication of the Publication Notice comports with the requirements of Bankruptcy Rule 2002 and should be approved.

### E.    The Court Should Approve the Plan Supplement Notice.

39.    The Plan defines "Plan Supplement" to mean the compilation of documents, term sheets, and forms of documents, agreements, schedules, and exhibits to the Plan (in each case as may be altered, amended, modified, or supplemented from time to time in accordance with the terms thereof and in accordance with the Bankruptcy Code and Bankruptcy Rules). The Debtors propose that the Plan Supplement Filing Deadline be no later than **April 1, 2026**, which is thirteen

(13) days prior to the Voting and Opt-Out Deadline and the Combined Objection Deadline. The Plan Supplement will include, but is not limited to including, the following materials in connection with confirmation, as applicable:  (a) the Schedule of Assumed Executory Contracts and Unexpired Leases; (b) the Schedule of Retained Causes of Action; (c) the Wind-Down Transactions Memorandum; (d) the Plan Administrator Agreement; (e) the identity of the Plan Administrator; and (f) additional documents filed with the Court prior to the Effective Date as amendments to the Plan Supplement (each as defined in the Plan).

40.    To ensure that all Holders of Claims or Interests receive notice of the Debtors' filing of the Plan Supplement, the Debtors propose to file and serve (via email where available) the Plan Supplement Notice on or before the Plan Supplement Filing Deadline.  Accordingly, the Plan Supplement Notice should be approved.

**F.    The Court Should Approve the Form of Notice to the Non-Voting Classes and Opt-Out Form.**

41.    As discussed above, the Non-Voting Classes are not entitled to vote on the Plan. Accordingly, except to the extent the Debtors determine otherwise, the Debtors will not provide the Solicitation Package to Holders of Claims or Interests in the Non-Voting Classes.  Instead, on or before the Solicitation Package Mailing Deadline, the Claims and Noticing Agent shall distribute the Notice of Non-Voting Status (via email or via first-class mail) in lieu of the Solicitation Package, the form of each of which will include the mechanisms for opting out of the Third-Party Release contained in Article VIII of the Plan, to those parties outlined below, who are not entitled to vote on the Plan:

| Class | Status | Treatment |
|---|---|---|
| Class 1, Class 2 | Unimpaired—Presumed to Accept | Holders of Claims that are conclusively presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |
| Class 4, Class 5, Class 9, Class 10 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection that prohibits Holders of such Claims from voting will receive a Notice of Non-Voting Status, substantially in the form attached to the Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to the Order as Exhibit 4A, in lieu of a Solicitation Package. |

42.    The Debtors will not provide the Holders in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) with a Solicitation Package or any other type of notice in connection with the solicitation. Intercompany Claims will either be (a) reinstated (solely for the purpose of facilitating the Wind-Down Transactions); (b) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Claim; or (c) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor and Intercompany Interests will either be (x) reinstated (solely for the purpose of facilitating the Wind-Down Transactions), (y) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Interest; or (z) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor, so the Holders of Intercompany Claims

or Intercompany Interests will not be entitled to vote to accept or reject the Plan. Nevertheless, given that the Intercompany Claims and Intercompany Interests are all held by the Debtors, the Debtors are requesting a waiver from any requirement to serve such Holders of Intercompany Claims or Intercompany Interests with any notices or the Solicitation Package.

43.     The Notice of Non-Voting Status and Opt-Out Form will include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), the Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent and/or the Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in <u>Article VIII</u> of the Plan; (d) the Opt-Out Form by which Holders could elect to opt out of the Third-Party Release set forth in <u>Article VIII.D</u> of the Plan; (e) the notice of the Combined Objection Deadline; and (f) the notice of the Combined Hearing Date and information related thereto. The Claims and Noticing Agent will serve Holders of Claims and Interests in Non-Voting Classes with the Notice of Non-Voting Status and Opt-Out Form by email and/or first-class mail, as applicable.

44.     The Debtors believe that distributing the Notice of Non-Voting Status and Opt-Out Form in lieu of the Solicitation Package satisfies the requirements of Bankruptcy Rule 3017(d). Accordingly, unless the Court orders otherwise, the Debtors do not intend to distribute Solicitation Packages to Holders of Claims or Interests in the Non-Voting Classes.

**G.     The Court Should Approve Notice to Contract and Lease Counterparties.**

45.     <u>Article V</u> of the Plan provides that, except as otherwise provided in the Plan, each of the Debtors' executory contracts and unexpired leases not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected by the applicable Wind-Down

Debtor or the Plan Administrator, as applicable, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease is:  (a) specifically described in the Plan as to be assumed in connection with Confirmation of this Plan; (b) identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (c) subject to a filed motion to assume (or assume and assign) such unexpired lease or executory contract as of the Effective Date; (d) to be assumed by the Debtors and assigned to another third party in connection with a Sale Transaction, if any, including the Purchaser as set forth in the Purchase Agreement approved pursuant to the Sale Order; (e)  a contract, instrument, release, or other agreement or document entered into in connection with the Plan; (f) is an Insurance Policy (including any D&O Liability Insurance Policies); or (g) an employee benefit plan, severance plan, or other executory contract under which employee obligations arise.

46.    To ensure that counterparties to executory contracts and unexpired leases receive notice of the assumption or rejection of their executory contract or unexpired lease, if any, pursuant to the Plan, the Debtors will serve via email (or, to the extent the Debtors are not aware of a counterparty's email address or email service is returned as undeliverable, via physical mail in paper format) the Assumption Notice or Rejection Notice, substantially in the forms attached to the Order as Exhibit 8 and Exhibit 9 respectively, to the applicable counterparties no later than April 9, 2026, which is seven (7) days prior to the Combined Hearing Date.  The Assumption Notice and Rejection Notice adequately describe the treatment of the applicable counterparties' agreements under the Plan and provide sufficient detail as to how such counterparties can object to such assumption or rejection or obtain additional information regarding the Plan and these Chapter 11 Cases.  Accordingly, the Assumption Notice and Rejection Notice should both be approved.

### III.    The Court Should Approve the Solicitation and Voting Procedures.

47.    Section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

48.    Additionally, Bankruptcy Rule 3018(c) provides, in part, that "[a]n acceptance or rejection [of a plan] shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."  Fed. R. Bankr. P. 3018(c).  Pursuant to Bankruptcy Local Rule 3018-1(c), "[t]he ballot recipient must retain the ballots for two years from the closing of the case."  Bankr. Local R. 3018-1(c). The Debtors propose using the Solicitation and Voting Procedures to satisfy such requirements, among others, as described in greater detail below.

### A.    Completion of Ballots.

49.    To ease and clarify the process of tabulating all votes received, the Debtors propose that a Ballot be counted in determining the acceptance or rejection of the Plan only if it satisfies certain criteria.  Specifically, the Solicitation and Voting Procedures provide that the Debtors will not count a Ballot if it is, among other things, illegible, contains insufficient information, submitted by a Holder of a Claim that is not entitled to vote on the Plan, unsigned, or not submitted pursuant to the instructions provided on the Ballots and Solicitation and Voting Procedures; *provided* that Ballots submitted through the Claims and Noticing Agent's E-Ballot Portal shall be deemed electronically signed.  The Debtors may waive any defects or irregularities as to any particular Ballot at any time, either before or after the close of voting, and any such waivers shall be

documented in the Voting Report.  Additionally, as required by Bankruptcy Local Rule 3018-1(c), the Claims and Noticing Agent will retain all paper copies of Ballots and all solicitation-related correspondence for two years following the Effective Date, whereupon the Claims and Noticing Agent may destroy and/or otherwise dispose of such materials.

### B.     General Ballot Tabulation and Voting Procedures.

50.     The proposed Solicitation and Voting Procedures set forth specific criteria with respect to the general tabulation of Ballots, voting procedures applicable to Holders of Claims, and tabulation of such votes.  The Debtors believe that the proposed Solicitation and Voting Procedures will facilitate a smooth Plan solicitation and confirmation process.  The Solicitation and Voting Procedures clarify the procedures that Holders of Claims entitled to vote on the Plan must follow to have their votes counted and also create a straightforward process by which the Debtors can determine whether they have satisfied the numerosity and amount requirements of section 1126(c) of the Bankruptcy Code.  Accordingly, the Solicitation and Voting Procedures are in the best interests of the Debtors' estates, Holders of Claims or Interests, and other parties in interest and should be approved.

51.     The Debtors request that the Claims and Noticing Agent be authorized to assist the Debtors in: (a) distributing the Solicitation Package and Notice of Non-Voting Status; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Package, the Notice of Non-Voting Status, Opt-Out Form, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan;

and (e) if necessary, contacting parties in interest regarding the Plan and/or the Disclosure Statement.

## IV.    The Court Should Approve the Procedures for Confirming the Plan.

### A.    The Combined Hearing Date.

52.    Section 1128 of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan" and provides that parties in interest can "object to confirmation." 11 U.S.C. § 1128. Bankruptcy Rule 3017(a) also requires that the court "hold a hearing on at least 28 days' notice to the debtor, creditors, equity security holders and other parties in interest . . . to consider the disclosure statement and any objections or modifications thereto." Fed. R. Bankr. P. 3017(a). Additionally, Bankruptcy Rule 3017(c) provides that, on or before approval of a disclosure statement, a court shall fix a time for the hearing on confirmation of a plan. Fed. R. Bankr. P. 3017(c). Furthermore, Bankruptcy Rule 2002(b) provides that notice shall be given to "the debtor, the trustee, all creditors and indenture trustees [of] not less than 28 days . . . by mail of the time fixed . . . for filing objections and the hearing to consider approval of a disclosure statement or, under § 1125(f), to make a final determination whether the plan provides adequate information so that a separate disclosure statement is not necessary." Fed. R. Bankr. P. 2002(b). Section 105(d)(2)(B)(vi) of the Bankruptcy Code expressly authorizes the Court to "issue an order . . . that . . . provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan" where the Court deems a combined hearing to be "appropriate to ensure that the case is handled expeditiously and economically." *See In re Gulf Coast Oil Corp.*, 404 B.R. 407, 425 (Bankr. S.D. Tex. 2009)

("Section 1125(f) authorizes combined plans and disclosure statements in small business cases and § 105(d) authorizes the court to combine them in other cases.").

53.     Courts in this district have previously allowed combined hearings to consider adequacy of a disclosure statement and confirmation of a Plan in the context of chapter 11 cases. *See, e.g.*, *In re Multi-Color Corp.*, No. 26-10910 (MBK) (Bankr. D.N.J. Feb. 2, 2026); *In re Pretium Packaging, Inc.*, No. 26-10896 (CMG) (Bankr. D.N.J. Jan. 30, 2026); *In re WeWork, Inc.*, No. 23-19865 (JKS) (Bankr. D.N.J. Apr. 29, 2024); *In re Rite Aid Corp.*, No. 23-19883 (MBK) (Bankr. D.N.J. March 28, 2024); *In re Bed Bath & Beyond.*, No. 23-13359 (VFP) (Bankr. D.N.J. Aug. 2, 2023).[11]

54.     The Debtors request that the Court enter the Order reaffirming the Combined Hearing Date of April 16, 2026.  Adjudicating final approval of the Disclosure Statement at the Combined Hearing will streamline and expedite the confirmation process, which will inure to the benefit of the Debtors' estates and their creditors by hastening the implementation of the Plan and limiting the amount of time the Debtors remain in chapter 11.  A Combined Hearing will also spare the Debtors from additional administrative expenses associated with a two-stage confirmation process and thereby promote judicial efficiency and economy.

55.     The Debtors further request that the Combined Hearing may be continued from time to time by the Court or the Debtors without further notice to parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with the Court and serving the same on parties entitled to notice under Bankruptcy Rule 2002 or otherwise.

---

[11]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this Motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

**B.**    **The Court Should Approve the Procedures for Filing Objections to Confirmation of the Plan and Final Approval of the Disclosure Statement**.

56.    Bankruptcy Rule 2002 requires no less than twenty-eight days' notice to all Holders of Claims of the time fixed for filing objections to the hearing on confirmation of a chapter 11 plan. Fed. R. Bankr. P. 2002(b), (d). Pursuant to Bankruptcy Rule 3020(b)(1), objections to confirmation of a plan must be filed and served "within a time fixed by the court." Fed. R. Bankr. P. 3020(b)(1). The Debtors request that the Court establish **April 14, 2026, at 4:00 p.m., prevailing Eastern Time**, as the Combined Objection Deadline. The Debtors believe that the Combined Objection Deadline, which is twenty-eight days following the Combined Hearing Notice and Publication Deadline, provides all parties in interest reasonable time to object to the final approval of the Disclosure Statement and confirmation of the Plan and otherwise satisfies the requirements of Bankruptcy Rule 2002(b).

57.    The Debtors also request that the Court direct the manner in which parties in interest may object to confirmation of the Plan. The Combined Hearing Notice will require that objections to confirmation of the Plan or requests for modifications to the Plan, if any, must:

      a.      be in writing;

      b.      conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any other orders of this Court;

      c.      state, with particularity, the legal and factual basis of the objection and, if practicable, a proposed modification of the Plan (or related materials) that would resolve such objection; and

      d.      be filed with the Court (contemporaneously with a proof of service) and served upon parties in interest on or before the Combined Objection Deadline.

58.    The Debtors believe that the Combined Objection Deadline for filing and service of objections (and proposed modifications, if any) will afford the Court, the Debtors, and other

parties in interest reasonable time to consider the objections and proposed modifications prior to the Combined Hearing.  The Debtors believe that the Combined Objection Deadline, which is twenty-eight days following the Combined Hearing Notice and Publication Deadline, provides all parties in interest reasonable time to object to the final approval of the Disclosure Statement and confirmation of the Plan and otherwise satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and Bankruptcy Local Rules.

59.    The Disclosure Statement and other solicitation materials are being distributed to each Holder of a Claim entitled to the vote to accept or reject the Plan and are readily available at no cost on the Debtors' chapter 11 website at https://cases.stretto.com/EddieBauer.  Furthermore, the Holders of Claims and Interests not entitled to vote to accept or reject the Plan will be afforded due process because such Holders will be served with the Notice of Non-Voting Status, which includes notice of the applicable deadlines thereto and an opportunity to opt out of the Third-Party Release.

### C.    The Court Should Approve the Deadline for Filing the Certification of Balloting.

60.    Bankruptcy Local Rule 3018-1(b) requires that "the ballot recipient must file Local Form Certification of Balloting not later than 3 days before the confirmation hearing."  For the reasons previously discussed herein, and in light of the Debtors' proposed solicitation timeline, the Debtors request that the Court waive the requirements of Bankruptcy Local Rule 3018-1(b) and set the deadline to file the Voting Report as **April 15, 2026**, which is one day in advance of the Combined Hearing Date.

### D.    The Court Should Approve the Consequences of Not Confirming or Consummating the Plan.

61.    The Debtors reserve the right to revoke or withdraw the Plan before the Combined Hearing and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if

either Confirmation or the Effective Date does not occur, then: (a) the Plan will be null and void

in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or

limiting to a certain amount of any Claim or Interest or Class of Claims or Interests), assumption

or rejection of executory contracts or unexpired leases effected under the Plan, and any document

or agreement executed pursuant to the Plan, shall be deemed null and void, *provided* that all

provisions of the Restructuring Support Agreement that survive termination thereof shall remain

in effect in accordance with the terms thereof; and (c) nothing contained in the Plan shall

(i) constitute a waiver or release of any Claims or Interests, (ii) prejudice in any manner the rights

of such Debtor or any other entity, or (iii) constitute an admission, acknowledgment, offer, or

undertaking of any sort by such Debtor or any other entity.

### **Non-Substantive Modifications**

62.    The Debtors request authorization to make changes to the Plan, Disclosure

Statement, Solicitation and Voting Procedures, Ballots, Solicitation Packages, Notices of Non-

Voting Status, Opt-Out Form, Combined Hearing Notice, Publication Notice, Cover Letter, Plan

Supplement Notice, Assumption Notice, Rejection Notice, any notice attached to the Order, and

any related documents without further order of the Court, including formatting changes, changes

to correct typographical and grammatical errors, if any, and to make conforming changes to the

Disclosure Statement, the Plan, and any other materials (including the appendices thereto) in the

Solicitation Packages before distribution.

### **Reservation of Rights**

63.    Notwithstanding anything to the contrary herein, nothing contained in this Motion

or any actions taken pursuant to any order granting the relief requested by this Motion is intended

or should be construed as: (a) an implication or admission as to the amount of, basis for, or validity

of any particular claim against the Debtors under the Bankruptcy Code or other applicable

nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission by the Debtors as to the validity, priority, enforceability, or perfection of any lien (contractual, common law, statutory, or otherwise) on, security interest in, or other encumbrance on property of the Debtors' estates and the rights of all parties in interest are expressly reserved to contest the extent, validity, or perfection or seek avoidance of all such liens; (g) a waiver or limitation of the Debtors' or any other party in interest's claims, causes of action, or other rights under the Bankruptcy Code or any other applicable law; or (h) a waiver of the obligation of any party in interest to file a Proof of Claim.

## **Notice**

64.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of New Jersey; (b) the holders of the thirty largest unsecured claims against the Debtors (on a consolidated basis); (c) the state attorneys general for the states in which the Debtors conduct business; (d) the United States Attorney's Office for the District of New Jersey; (e) the Internal Revenue Service; (f) Otterbourg P.C., counsel to the Prepetition ABL Administrative Agent; (g) Ropes & Gray LLP, counsel to the Consenting Prepetition Term Loan Agent; (h) Choate, Hall & Stewart LLP, counsel to the Prepetition Subordinated Loan Agent; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**WHEREFORE**, the Debtors request that the Court enter the Order granting the relief requested herein and such other relief the Court deems appropriate under the circumstances.

Dated:  February 23, 2026

/s/  Michael D. Sirota
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

## Exhibit A

### Order

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

-and-

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:      (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' Claims and Noticing agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

**ORDER (I) CONDITIONALLY
APPROVING THE ADEQUACY OF THE
INFORMATION CONTAINED IN THE DISCLOSURE
STATEMENT, (II) APPROVING THE SOLICITATION AND
VOTING PROCEDURES WITH RESPECT TO CONFIRMATION
OF THE PLAN, (III) APPROVING THE FORMS OF BALLOTS AND
NOTICES IN CONNECTION THEREWITH, (IV) SCHEDULING CERTAIN
DATES WITH RESPECT THERETO, AND (V) GRANTING RELATED RELIEF**

The relief set forth on the following pages, numbered three (3) through twenty (20), is

**ORDERED**.

(Page | 3)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Order</u>") pursuant to sections 105, 1125, 1126, and 1128 of the Bankruptcy Code, Bankruptcy Rules 1001, 2002, 3001, 3016, 3017, 3018, 3020, and 9006, and Bankruptcy Local Rule 3018-1 (a) approving or reaffirming, as applicable: (i) on a conditional basis, the adequacy of the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously with the Motion, attached hereto as **Exhibit 1** (as the same may be amended, modified, or supplemented from time to time consistent with applicable law, the "<u>Disclosure Statement</u>"); (ii) the Solicitation and Voting Procedures, attached hereto as **Exhibit 2**; (iii) the forms of Ballots, attached hereto as **Exhibits 3A** and **3B**; (iv) the form of Notice of Non-Voting Status, attached hereto as **Exhibit 4**, and the form of Opt-Out Form, attached hereto as **Exhibit 4A**; (v) the form of Cover Letter that the Debtors will send to Holders of Claims entitled to vote to accept or reject the plan, describing the contents of the Solicitation Package, and recommending that such parties vote in favor of the Plan, attached hereto as **Exhibit 5**; (vi) the form of the Combined Hearing Notice, attached hereto as **Exhibit 6**; (vii) the form of Plan Supplement Notice, attached hereto as **Exhibit 7**; (viii) the form of the Assumption Notice, attached hereto as **Exhibit 8**; (ix) the form of the Rejection Notice, attached hereto as **Exhibit 9**; (x) the Solicitation Package that will be sent to Holders of Claims entitled to vote to

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

(Page | 4)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

accept or reject the Plan in compliance with Bankruptcy Rule 2002(b) and 3017(d); (xi) the Confirmation Dates, including, but not limited to, the Combined Hearing Notice and Publication Deadline, the Voting Record Date, the Solicitation Package Mailing Deadline, the Plan Supplement Filing Deadline, the Voting and Opt-Out Deadline, the Combined Objection Deadline, the Voting Report Deadline, the Confirmation Brief Deadline, and the Combined Hearing Date; and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on June 6, 2025 (Bumb, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, **IT IS HEREBY ORDERED THAT**:

(Page | 5)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

1.      The Motion is **GRANTED** as provided herein.

2.      Any objections to the entry of this Order, to the extent not withdrawn or settled, are overruled.

## I.      Conditional Approval of the Adequacy of Information Contained in the Disclosure Statement.

3.      The Disclosure Statement is approved on a conditional basis as providing Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan in accordance with section 1125(a)(1) of the Bankruptcy Code.  This approval is without prejudice to the right of any party in interest to argue at the Combined Hearing that the Disclosure Statement does not contain adequate information within the meaning of section 1125(a)(1) of the Bankruptcy Code, and this Order shall be without preclusive effect as to any determination by this Court at the Combined Hearing solely regarding the adequacy of the information contained in the Disclosure Statement within the meaning of section 1125(a)(1) of the Bankruptcy Code.

4.      The Disclosure Statement (including all applicable exhibits thereto) provides Holders of Claims or Interests, and other parties in interest, with sufficient notice of, and the identities of the entities subject to, the injunction, exculpation, and release provisions contained in Article VIII of the Plan, in satisfaction of the requirements of Bankruptcy Rules 2002(c)(3) and 3016(b) and (c).

(Page | 6)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

## II. Approval of the Solicitation and Voting Procedures with Respect to Confirmation of the Plan.

### A. Approval of the Solicitation and Voting Procedures.

5.     The Debtors are authorized to solicit, receive, and tabulate votes to accept the Plan in accordance with the Solicitation and Voting Procedures attached hereto as **Exhibit 2**, which are hereby approved in their entirety.  The Solicitation and Voting Procedures comply with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

### B. Approval of Certain Dates and Deadlines with Respect to the Plan and Disclosure Statement.

6.     The following dates and deadlines are hereby established or reaffirmed, as applicable (subject to modification as necessary by the Debtors), with respect to the solicitation of votes to accept the Plan, voting on the Plan, and confirming the Plan:

(Page | 7)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

| Event | Date | Description |
|---|---|---|
| Voting Record Date | March 16, 2026 | With respect to Claims that either (a) are listed in the Schedules or (b) with respect to which a valid proof of claim (a "Proof of Claim") is filed before March 16, 2026 (such claims, the "Known Eligible Claims"),[1] the date to determine which Holders of such Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date"). If a valid Proof of Claim for a Claim in a Voting Class (a) that is not listed in the Schedules and (b) with respect to which a valid Proof of Claim has not been filed as of the Voting Record Date (an "Unknown Eligible Claim") is filed on or after the Voting Record Date and before the applicable general claims bar date (the "Claims Bar Date") established in connection with the Bar Date Motion,[2] then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent. Such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline for such Ballot to be counted. |
| Combined Hearing Notice and Publication Deadline | March 17, 2026, or, with respect to the Publication Notice, as soon as practicable thereafter. | The date by which the Debtors will (a) distribute, or cause to be distributed, the Combined Hearing Notice to the Holders of Claims or Interests, and (b) publish the Combined Hearing Notice in a format modified for publication (such notice, the "Publication Notice," and such date, the "Combined Hearing Notice and Publication Deadline"). |
| Solicitation Package Mailing Deadline | Five (5) business days following entry of this Order | The deadline by which the Debtors must distribute, or cause to be distributed, the Solicitation Package, including the Ballots, to Holders of Known Eligible Claims entitled to vote to accept or reject the Plan (the "Solicitation Package Mailing Deadline"). |
| Plan Supplement Filing Deadline | April 1, 2026 | The date by which the Debtors shall file the Plan Supplement (the "Plan Supplement Filing Deadline"). |

---

[1]   Pursuant to the *Order (I) Extending Time to File Schedules of Assets and Liabilities, Schedules and Statements of Financial Affairs; and (II) Granting Related Relief* [Docket No. 59], the Debtors must file their schedules of assets and liabilities (the "Schedules") and statements of financial affairs by March 12, 2026.

[2]   The "Bar Date Motion" means the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code; (II) Establishing a Rejection Damages Bar Date and an Amended Schedules Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief,* filed contemporaneously with the Motion.

(Page | 8)

Debtors:            EDDIE BAUER LLC, *et al*.
Case No.           26-11422 (SLM)
Caption of Order:  Order (I) Conditionally Approving the Adequacy of the Information
                   Contained in the Disclosure Statement, (II) Approving the Solicitation and
                   Voting Procedures with Respect to Confirmation of the Plan,
                   (III) Approving the Forms of Ballots and Notices in Connection Therewith,
                   (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting
                   Related Relief

| Event | Date | Description |
|---|---|---|
| Voting and Opt-Out Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time | The deadline by which all Ballots and Opt-Out Forms must be properly executed, completed, and submitted so that they are **actually received** by Stretto, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent," and such deadline, the "Voting and Opt-Out Deadline"). |
| Combined Objection Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time | The deadline by which objections to confirmation of the Plan and final approval of the Disclosure Statement must be filed with this Court (the "Combined Objection Deadline"). |
| Voting Report Deadline | April 15, 2026, at 2:00 p.m., prevailing Eastern Time | The date by which the report tabulating the voting results with respect to the Plan (the "Voting Report") shall be filed with this Court (such date, the "Voting Report Deadline"). |
| Confirmation Brief Deadline | April 15, 2026 | The deadline by which the Debtors shall file their brief in support of confirmation of the Plan (the "Confirmation Brief Deadline"). |
| Combined Hearing Date | April 16, 2026 | The date of the hearing at which this Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing," and such date, the "Combined Hearing Date"). |

7.     The Voting and Opt-Out Deadline provides sufficient time for Holders of Claims entitled to vote on the Plan to make an informed judgment as to whether to vote to accept or reject the Plan. The Debtors may adjourn the Combined Hearing and any related dates and deadlines from time to time, without notice to the parties in interest other than announcement of such adjournment in open court and/or filing a notice of adjournment with this Court.

## C.     Approval of the Form and Distribution of the Solicitation Package to Parties Entitled to Vote on the Plan.

8.     The Debtors shall cause the Solicitation Package to be distributed to Holders of Claims entitled to vote on the Plan as of the Voting Record Date on or before the Solicitation Mailing Deadline; *provided* that the Debtors shall distribute the Combined Hearing Notice on or prior to the Combined Hearing Notice and Publication Deadline. With respect to each Holder of

(Page | 9)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

an Unknown Eligible Claim with respect to which a valid Proof of Claim is filed after the Voting Record Date and before the Claims Bar Date, the Claims and Noticing Agent will distribute a Solicitation Package to each such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent. Such service satisfies the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules. Each recipient of the Solicitation Package shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline in order for such Ballot to be counted.

9.     The Solicitation Package shall include the following documents, the form of each of which is hereby approved and complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules:

a.     the Disclosure Statement (and exhibits thereto, including the Plan), attached hereto as **Exhibit 1**;

b.     a copy of the Solicitation and Voting Procedures, substantially in the form attached hereto as **Exhibit 2**;

c.     the applicable Ballot, substantially in the forms attached hereto as **Exhibits 3A** and **3B**, together with detailed voting instructions and instructions on how to submit the Ballot;

d.     the Cover Letter, substantially in the form attached hereto as **Exhibit 5**, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

e.     the Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**;

f.     this Order (without exhibits, except for the Solicitation and Voting Procedures); and

(Page | 10)

| | |
|---|---|
| Debtors: | **EDDIE BAUER LLC**, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

g.      any additional documents that this Court has ordered to be made available to Holders of Claims in the Voting Classes.

10.      The Solicitation Package provides the Holders of Claims entitled to vote on the Plan with adequate information to make an informed judgment as to whether to vote to accept or reject the Plan in accordance with the Bankruptcy Code, Bankruptcy Rules 2002(b) and 3017(d), and the Bankruptcy Local Rules.

11.      The Debtors are authorized to cause electronic copies of the Solicitation Package to be distributed through the Claims and Noticing Agent via email (using the email address maintained by the Debtors as of the Voting Record Date) to Holders of Claims in the Voting Classes.  To the extent (a) (i) an email address is not on file for any such Holders of Claims or (ii) distribution of the Solicitation Package via email as set forth in the previous sentence is returned as undeliverable; and (b) the Debtors are in possession of a physical mailing address for such Holders, the Claims and Noticing Agent shall serve the Solicitation Package on such Holders in electronic format (*i.e.*, USB flash drive format); *provided*, *however*, that any party that receives a Solicitation Package via email or for which service by USB flash drive imposes a hardship may receive a Solicitation Package in paper format by contacting the Claims and Noticing Agent and requesting paper copies.

12.      The Debtors and the Claims and Noticing Agent are authorized to rely on the address information (including email addresses for voting and non-voting parties alike) maintained by the Debtors and provided to the Claims and Noticing Agent.  Any obligation for the Debtors or

(Page | 11)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al.* |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

the Claims and Noticing Agent to conduct any additional research for updated addresses based on undeliverable solicitation materials (including undeliverable Ballots) is hereby waived. Furthermore, notwithstanding anything herein to the contrary, neither the Debtors nor the Claims and Noticing Agent shall be required to distribute a Solicitation Package or any other materials related to voting or confirmation of the Plan to any person or entity from which the notice of the Motion or other mailed notice in these cases was returned as undeliverable unless the Claims and Noticing Agent is provided with accurate mailing addresses for such persons or entities on or prior to the Voting Record Date.  In no event shall any Holder of a Claim be entitled to submit a Ballot after the Voting and Opt-Out Deadline without the Debtors' express written consent or by a separate order of this Court after notice and a hearing.

13.    The Debtors are authorized to cause copies of the Notice of Non-Voting Status, substantially in the form attached hereto as **Exhibit 4**, and the Opt-Out Form, substantially in the form attached hereto as **Exhibit 4A**, to be delivered via email and/or first-class mail, as applicable, through the Claims and Noticing Agent to Holders of Claims or Interests in the Non-Voting Classes.

14.    On or before the Solicitation Package Mailing Deadline, the Debtors (through the Claims and Noticing Agent) shall provide the Solicitation Packages (excluding the Ballots and the Cover Letter) via email (where available) to the U.S. Trustee and all parties on the Master Service List as of the Voting Record Date.

(Page | 12)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

15.     The Claims and Noticing Agent is authorized to assist the Debtors in all of the actions set forth herein, as applicable, including: (a) distributing the Solicitation Package and Notice of Non-Voting Status; (b) receiving, tabulating, and reporting on Ballots cast to accept or reject the Plan by Holders of Claims; (c) responding to inquiries from Holders of Claims or Interests and other parties in interest relating to the Disclosure Statement, the Plan, the Ballots, the Solicitation Package, the Notice of Non-Voting Status, the Opt-Out Form, and all other documents and matters related thereto, including the procedures and requirements for voting to accept or reject the Plan, opting out of the Third-Party Release, and for objecting to confirmation of the Plan; (d) soliciting votes on the Plan; and (e) if necessary, contacting parties in interest regarding the Plan and/or the Disclosure Statement.

16.     The Claims and Noticing Agent is authorized to accept Ballots and Opt-Out Forms via online submissions through an online balloting portal on the Debtors' case website (the "E-Ballot Portal" or the "Opt-Out Portal," as applicable) as set forth in the Solicitation and Voting Procedures. The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot or Opt-Out Form submitted in this manner, and the creditor's electronic signature will be deemed to be immediately legally valid and effective. Ballots submitted to the Claims and Noticing Agent by any means other than as expressly provided in this Order or in the Solicitation and Voting Procedures shall not be valid and shall not count as a vote to accept or reject the Plan. The Ballots and Opt-Out Forms submitted online via the E-Ballot Portal or Opt-Out Portal, as applicable, shall be deemed to contain an original signature.

(Page | 13)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

17.    All votes to accept or reject the Plan must be cast using the appropriate Ballots and/or voting instructions.  All Ballots must be properly executed, completed, and delivered according to their applicable voting instructions via:  (a) first-class mail, in the return envelope provided with each Ballot; (b) overnight delivery; (c) personal delivery; or (d) the E-Ballot Portal, so that the Ballots are **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline.  The Debtors are authorized to extend the Voting and Opt-Out Deadline in their discretion without further order of this Court.

**D.    Approval of the Form of Notices to Non-Voting Classes and Opt-Out Forms.**

18.    Except to the extent that the Debtors determine otherwise, the Debtors are not required to provide the Solicitation Package to Holders of Claims or Interests in Non-Voting Classes, as such Holders are not entitled to vote on the Plan.  Instead, on or before the Solicitation Package Mailing Deadline, the Claims and Noticing Agent shall distribute the Notice of Non-Voting Status (via email or via first-class mail, as applicable) in lieu of the Solicitation Package, the form of each of which will include the mechanisms for opting out of the Third-Party Release contained in Article VIII of the Plan, to those parties set forth below, who are not entitled to vote on the Plan; *provided* that the Debtors shall also distribute the Combined Hearing Notice on or before the Combined Hearing Notice and Publication Deadline to Holders of Claims or Interests in Non-Voting Classes:

(Page | 14)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

| Class | Status | Treatment |
|---|---|---|
| Class 1, Class 2 | Unimpaired—Presumed to Accept | Holders of Claims that are conclusively presumed to accept the Plan are not entitled to vote. As such, Holders of such Claims will receive a Notice of Non-Voting Status, substantially in the form attached to this Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to this Order as Exhibit 4A, in lieu of a Solicitation Package. |
| Class 4, Class 5, Class 9, Class 10 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of such Claims or Interests will receive a Notice of Non-Voting Status, substantially in the form attached to this Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to this Order as Exhibit 4A, in lieu of a Solicitation Package. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection that prohibits Holders of such Claims from voting will receive a Notice of Non-Voting Status, substantially in the form attached to this Order as Exhibit 4, and the Opt-Out Form, substantially in the form attached to this Order as Exhibit 4A, in lieu of a Solicitation Package. |

19.    Service of the Notice of Non-Voting Status and Combined Hearing Notice via email (using the email address maintained by the Debtors as of the Voting Record Date) or via first-class mail in paper or electronic format (*i.e.*, USB flash drive format), as applicable, to Holders of Claims or Interests that are not entitled to vote is reasonably calculated to provide notice to such Holders of the Combined Hearing under the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

(Page | 15)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

20.     The Debtors are not required to distribute the Solicitation Package, other solicitation materials, or a Notice of Non-Voting Status to: (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by this Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; (b) any party to whom the notice of the Motion was sent but subsequently returned as undeliverable without a forwarding address on or prior to the Voting Record Date; or (c) the Holders of Claims or Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests).

21.     The Notice of Non-Voting Status and the Opt-Out Form shall include, among other things: (a) instructions as to how to view or obtain copies of the Disclosure Statement (including the Plan and the other exhibits attached thereto), this Order, and all other materials in the Solicitation Package (excluding Ballots) from the Claims and Noticing Agent and/or this Court's website via PACER; (b) notice to recipients of their status as Holders or potential Holders of Claims or Interests in Non-Voting Classes; (c) a disclosure regarding the settlement, release, exculpation, and injunction language set forth in Article VIII of the Plan; (d) the Opt-Out Form by which Holders may elect to opt out of the Third-Party Release set forth in Article VIII.D of the Plan; (e) notice of the Combined Objection Deadline; and (f) notice of the Combined Hearing Date and information related thereto. Additionally, the Notice of Non-Voting Status is hereby approved and complies with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

(Page | 16)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

**E.      Approval of the Combined Hearing Notice.**

22.      The Combined Hearing Notice, substantially in the form attached hereto as **Exhibit 6**, which shall be filed by the Debtors and served upon all known Holders of Claims or Interests and the list of notice parties maintained by the Debtors pursuant to Bankruptcy Rule 2002 (regardless of whether such parties are entitled to vote on the Plan) and published in a format modified for publication one time on or before the Combined Hearing Notice and Publication Deadline (or, with respect to publication, at the first reasonably available opportunity offered by the relevant publications), in *The New York Times* (national edition) and/or the *Financial Times* (global edition), constitutes adequate and sufficient notice of the Combined Hearing, the manner in which a copy of the Plan and Disclosure Statement can be obtained, and the time fixed for filing objections to Confirmation of the Plan and final approval of the Disclosure Statement, in satisfaction of the requirements of the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules.

**F.      Approval of the Plan Supplement Notice.**

23.      The Debtors are authorized to send notice of the filing of the Plan Supplement, substantially in the form attached hereto as **Exhibit 7**, to parties in interest on or before the Plan Supplement Filing Deadline.  Notwithstanding the foregoing, the Debtors may amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with the Plan.

(Page | 17)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

### G.    Approval of Notices to Contract and Lease Counterparties.

24.    The Debtors are authorized to serve via email (or, to the extent the Debtors are not aware of a counterparty's email address or email service is returned as undeliverable, via physical mail in paper format) a notice of assumption or notice of rejection of any executory contracts or unexpired leases, in the forms attached hereto as **Exhibit 8** and **Exhibit 9**, respectively, which forms are hereby approved, to the applicable counterparties to executory contracts or unexpired leases that will be assumed or rejected pursuant to the Plan on or before the date that is seven (7) days prior to the Combined Hearing.

### F.    Non-Substantive Modifications.

25.    The Debtors are authorized to make changes to the Plan, Disclosure Statement, Solicitation and Voting Procedures, Ballots, Solicitation Packages, Notices of Non-Voting Status, Opt-Out Forms, Combined Hearing Notice, Publication Notice, Cover Letter, Plan Supplement Notice, Assumption Notice, Rejection Notice, any other notice attached hereto, and any related documents without further order of this Court, including formatting changes, changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials (including any appendices thereto) in the Solicitation Packages before distribution.  Subject to the foregoing, the Debtors are authorized to solicit, receive, and tabulate votes to accept or reject the Plan in accordance with this Order and the Solicitation and Voting Procedures without further order of this Court.

(Page | 18)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

**III.    Approval of the Procedures for Filing Objections to the Final Approval of the Adequacy of the Information Contained in the Disclosure Statement and Confirmation of the Plan.**

26.    Objections to Confirmation of the Plan and final approval of the Disclosure Statement will not be considered by this Court unless such objections are timely filed and properly served in accordance with this Order. Specifically, all objections to the confirmation of the Plan or requests for modifications to the Plan, if any, **<u>must</u>**: (a) be in writing; (b) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of this Court; (c) state, with particularity, the legal and factual basis for the objection and, if practicable, a proposed modification to the Plan or Disclosure Statement (or materials related to the foregoing) that would resolve such objection; and (d) be filed with this Court (contemporaneously with a proof of service) and served upon parties in interest on or before the Combined Objection Deadline.

**IV.    Approval of Consequences of Not Confirming or Consummating the Plan.**

27.    The Debtors are authorized to revoke or withdraw the Plan before the Combined Hearing and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (a) the Plan will be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, provided that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain

(Page | 19)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

in effect in accordance with the terms thereof; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims or Interests, (ii) prejudice in any manner the rights of such Debtor or any other Entity, or (iii) constitute an admission, acknowledgment, offer, or undertaking of any sort by such Debtor or any other Entity.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, recission, reversal, or unwinding of (a) the Cash Collateral Order, including, without limitation, any releases provided for therein, or (b) the Sale Transactions and/or the Store Closing Sales, as applicable, or the revocation of the Debtors' authority under any Sale Order to consummate the Sale Transaction or the Store Closing Sales, as applicable, and all provisions of the Sale Transaction Documents and the Restructuring Support Agreement (each as defined in the Plan) that survive termination thereof, as applicable, shall remain in effect in each case, in accordance with the terms thereof.

**V.    Miscellaneous.**

28.    The requirement set forth in Bankruptcy Local Rule 3018-1(a) that ballots be returned to the attorney for the chapter 11 plan proponent not later than seven (7) days before the Combined Hearing is hereby waived.

29.    The requirement set forth in Bankruptcy Local Rule 3018-1(b) that voting results be certified at least three (3) days before the Combined Hearing is hereby waived.

30.    The Debtors' rights to modify the Plan in accordance with <u>Article X</u> thereof, including the right to withdraw the Plan as to an individual Debtor at any time before the Combined Hearing Date, are reserved.

(Page | 20)

| | |
|---|---|
| Debtors: | EDDIE BAUER LLC, *et al*. |
| Case No. | 26-11422 (SLM) |
| Caption of Order: | Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief |

31.     Nothing in this Order shall be construed as a waiver of the right of the Debtors or any other party in interest, as applicable, to object to a Proof of Claim.

32.     Nothing in this Order constitutes a finding of fact or conclusion of law regarding whether the Debtors' proposed opt out procedures establish consensual releases, and the rights of all parties in interest to object to Confirmation on any grounds are fully reserved.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     Notice of the Motion as provided therein and of the Hearing, each as filed and served by the Debtors, shall be deemed adequate and sufficient notice thereof in satisfaction of the Bankruptcy Rules and the Bankruptcy Local Rules, and the deadline for filing objections to the conditional approval of the Disclosure Statement and responses thereto is hereby approved.

35.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

36.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

37.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**<u>Exhibit 1</u>**

**Disclosure Statement**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

## DISCLOSURE STATEMENT RELATING TO THE
## JOINT PLAN OF REORGANIZATION OF EDDIE BAUER LLC AND
## ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

---

[1]   The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060. A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://cases.stretto.com/EddieBauer. The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT AS CONTAINING "ADEQUATE INFORMATION" WITHIN THE MEANING OF SECTION 1125(A) OF THE BANKRUPTCY CODE. THIS DISCLOSURE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.

## IMPORTANT INFORMATION ABOUT THIS DISCLOSURE STATEMENT

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS OR INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE JOINT PLAN OF REORGANIZATION OF EDDIE BAUER LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE (AS AMENDED, SUPPLEMENTED, OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "PLAN"). NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY OR PERSON FOR ANY OTHER PURPOSE. BEFORE DECIDING WHETHER TO VOTE FOR OR AGAINST THE PLAN, EACH HOLDER ENTITLED TO VOTE SHOULD CAREFULLY CONSIDER ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE VII HEREIN.

HOLDERS OF CLAIMS OR INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX, OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN, AND THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE PLAN.

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, AND CERTAIN EVENTS AND ANTICIPATED EVENTS IN THE DEBTORS' CHAPTER 11 CASES (THE "CHAPTER 11 CASES"). ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS, STATUTORY PROVISIONS, OR EVERY DETAIL OF SUCH EVENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES. FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED. THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS AND OPERATIONS. WHILE THE DEBTORS BELIEVE THAT SUCH FINANCIAL INFORMATION FAIRLY REFLECTS THE FINANCIAL CONDITION OF THE DEBTORS AS OF THE DATE HEREOF AND THAT THE ASSUMPTIONS REGARDING FUTURE EVENTS REFLECT REASONABLE BUSINESS JUDGMENTS, NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS AND OPERATIONS AND THEIR FUTURE RESULTS. THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER. THE DEBTORS OR ANY OTHER AUTHORIZED PARTY MAY SEEK TO INVESTIGATE, FILE, AND PROSECUTE CLAIMS AND MAY SEEK TO OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THIS DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED. ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO AND EXPRESSLY DISCLAIM ANY DUTY TO PUBLICLY UPDATE ANY FORWARD-LOOKING STATEMENTS, WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE. HOLDERS OF CLAIMS OR INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED MATERIALLY SINCE THIS DISCLOSURE STATEMENT WAS FILED. INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, AND AMENDMENT. THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME, SUBJECT TO THE TERMS OF THE PLAN.

CONFIRMATION AND CONSUMMATION OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED IN ARTICLE IX OF THE PLAN. THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED OR, IF CONFIRMED, THAT SUCH MATERIAL CONDITIONS PRECEDENT WILL BE SATISFIED OR WAIVED.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS OR INTERESTS (INCLUDING THOSE HOLDERS OF CLAIMS OR INTERESTS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN, WHO VOTE TO REJECT THE PLAN, OR WHO ARE NOT

ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE WIND-DOWN TRANSACTIONS CONTEMPLATED THEREBY.

THE CANADIAN FEDERAL INCOME TAX CONSEQUENCES OF THE CONSUMMATION OF THE PLAN TO HOLDERS (INCLUDING BENEFICIAL OWNERS) OF ALLOWED CLAIMS AND INTERESTS ARE NOT DESCRIBED HEREIN.  HOLDERS (AND BENEFICIAL OWNERS) OF ALLOWED CLAIMS AND INTERESTS SHOULD CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE CANADIAN FEDERAL, PROVINCIAL, AND LOCAL TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN, HAVING REGARD TO THEIR PARTICULAR CIRCUMSTANCES.

YOU ARE ENCOURAGED TO READ THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY, INCLUDING <u>ARTICLE VII</u> HEREIN, TITLED "RISK FACTORS" BEFORE SUBMITTING YOUR BALLOT TO VOTE ON THE PLAN.

THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN OR AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE MERITS OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND IS NOT NECESSARILY PREPARED IN ACCORDANCE WITH FEDERAL, STATE, OR OTHER SECURITIES LAWS OR OTHER SIMILAR LAWS.  THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "<u>SEC</u>") OR ANY SIMILAR FEDERAL, STATE, LOCAL, OR FOREIGN REGULATORY AGENCY NOR HAS THE SEC OR ANY OTHER AGENCY PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT.   ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.

THE DEBTORS HAVE SOUGHT TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT; HOWEVER, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT OR INCORPORATED HEREIN BY REFERENCE HAS NOT BEEN, AND WILL NOT BE, AUDITED OR REVIEWED BY THE DEBTORS' INDEPENDENT AUDITORS UNLESS EXPLICITLY PROVIDED OTHERWISE HEREIN.

### SPECIAL NOTICE REGARDING FORWARD-LOOKING STATEMENTS

Certain statements in the Plan and this Disclosure Statement, including information concerning the timing and amount of actual distributions to holders of Allowed Claims and Allowed Interests, among other things, constitute "forward-looking statements" within the meaning of United States federal securities laws. Forward-looking statements include any statement that does not directly relate to any historical or current fact and can be identified by the use of words in the future tense and statements accompanied by words such as "expect," "potential," "continue," "may," "will," "should," "predict," "intend," "plan," "anticipate" or the negative version of these words or other comparable words. Forward-looking statements are based on the Debtors' current expectations and assumptions, which may not prove to be accurate. These statements are not guarantees and are subject to risks, uncertainties, and changes in circumstances that are difficult to predict, and significant contingencies, many of which are beyond the Debtors' control. The Debtors consider all statements regarding anticipated or future matters, including the following, to be forward-looking statements:

- The Debtors ability to consummate the Sale Transaction and complete the Wind-Down;

- Business strategy;

- Financial condition, revenues, cash flows and expenses;

- The adequacy of the Debtors' capital resources and liquidity;

- Levels of indebtedness, liquidity, and compliance with the covenants governing the Debtors' indebtedness;

- Financial strategy, budget, projections, and operating results;

- The amount, nature, and timing of capital expenditures;

- Availability of capital resources and any terms of funded capital;

- The effects of asset and property acquisitions or dispositions on the Debtors' cash position;

- Modifications to previously reported financial results as a result of the application of accounting standards;

- General economic and business conditions;

- Effectiveness of the Debtors' risk management activities;

- Counterparty credit risk;

- The outcome of pending and future litigation;

- Plans, objectives, and expectations;

- The potential adoption of new governmental regulations, including tariffs;

- **The Debtors' exposure to future currency exchange and interest rates;**

- **Taxation applicable to the Debtors and any changes thereto; and**

- **The Debtors' ability to satisfy future cash obligations.**

**Many factors could cause the Debtors' actual results to differ materially and adversely from any of these forward-looking statements. Among these factors are: (a) the Debtors' ability to confirm the Plan and consummate the transactions contemplated by the Plan; (b) objections to the Plan and the potential that the Debtors may need to pursue an alternative wind-down transaction if the Plan is not confirmed; (c) the effects of the Chapter 11 Cases, including increased legal and other professional costs necessary to execute a sale of some, all, or substantially all of the Debtors' assets as a going concern to the applicable purchasers and/or the Debtors' Wind-Down, on the Debtors' liquidity, results of operations, or business prospects; (d) the effects of the Chapter 11 Cases on the interests of various constituents and financial stakeholders; (e) the length of time that the Company will operate under chapter 11 protection and the continued availability of operating capital during the pendency of the Chapter 11 Cases; (f) risks associated with third-party motions in the Chapter 11 Cases; (g) Bankruptcy Court rulings in the Chapter 11 Cases and the outcome of the Chapter 11 Cases in general; (h) the Company's ability to comply with the restrictions imposed by the covenants, terms and conditions of its financing arrangements; (i) employee attrition and the Company's ability to retain key executive management and other personnel due to the distractions and uncertainties resulting from the Chapter 11 Cases; (j) the Company's ability to maintain relationships with suppliers, customers, employees and other third parties and regulatory authorities as a result of the Chapter 11 Cases; (k) the impact and timing of any cost-savings measures and related local law requirements in various jurisdictions; (l) the financial and other effects of the Company's cost reduction actions, including an inability to realize the benefits from such actions within the anticipated timeframe; (m) finalization of the Company's annual financial statements, including completion of standard annual-close processes; (n) the outcome of pending and future claims made against the Company resulting in litigation; (o) the effect of natural disasters, pandemics, and general economic and political conditions on the Debtors; (p) adverse tax changes; and (q) compliance with laws and regulations, including tariffs. These factors should not be construed as exhaustive and should be read in conjunction with the additional information and discussion of other risks identified in this Disclosure Statement. The Debtors undertake no obligation to (and expressly disclaim any obligation to) update or revise any forward-looking statements included in this Disclosure Statement as a result of new information, future events, or otherwise, unless instructed to do so by the Bankruptcy Court.**

**You are cautioned that all forward-looking statements are necessarily speculative, and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. The projections and forward-looking information contained herein and attached hereto are only estimates, and the timing and amount of actual distributions to Holders of Allowed Claims and Allowed Interests, among other things, may be affected by many factors that cannot be predicted. Any analyses, estimates, or recovery projections may or may not turn out to be accurate.**

# TABLE OF CONTENTS

**Page**

I.  Introduction ............................................................................................................................2

II.  Questions and Answers Regarding This Disclosure Statement and Plan...............................5

   A.  What is chapter 11? ........................................................................................5
   B.  Why are the Debtors sending me this Disclosure Statement? ...............................5
   C.  Am I entitled to vote on the Plan? ....................................................................6
   D.  What is the Sale Transaction?...........................................................................6
   E.  What is the Wind-Down under the Plan? ...........................................................6
   F.  What will I receive from the Debtors if the Plan is consummated? ........................7
   G.  What will I receive from the Debtors if I hold an Administrative Claim,
       Professional Fee Claim, or Priority Tax Claim, and how will payment of statutory
       fees be addressed under the Plan? ...................................................................10
   H.  Are any regulatory approvals required to consummate the Plan? ........................12
   I.  What happens to my recovery if the Plan is not confirmed or does not go effective?
       .....................................................................................................................12
   J.  If the Plan provides that I get a distribution, do I get it upon Confirmation or when
       the Plan goes effective, and what is meant by "Confirmation," "Effective Date,"
       and "Consummation"?....................................................................................13
   K.  What are the sources of Cash and other consideration required to fund the Plan? ...........13
   L.  What is the effect of the Plan on the Debtors' ongoing businesses?..................13
   M.  Is there potential litigation related to the Plan? ...............................................14
   N.  Does the Plan preserve Causes of Action? .......................................................14
   O.  Will there be releases, exculpation, and an injunction granted to parties in interest
       as part of the Plan?........................................................................................15
   P.  What is the deadline to properly execute, complete, and submit Ballots (*i.e.*, vote)?
       .....................................................................................................................18
   Q.  How do I vote for or against the Plan? .............................................................18
   R.  Why is the Bankruptcy Court holding a Combined Hearing?.............................18
   S.  What is the effect of Confirmation of the Plan? ...............................................18
   T.  When is the Combined Hearing set to occur? ...................................................18
   U.  Whom do I contact if I have additional questions with respect to this Disclosure
       Statement or the Plan? ...................................................................................18
   V.  Do the Debtors recommend voting in favor of the Plan?...................................19

III.  The Debtors' Corporate History, Structure, and Business Overview ...................................19

   A.  Eddie Bauer's Background and Current Operations. ..........................................19
   B.  The Company's Prepetition Corporate and Capital Structure and Liquidity Profile.
       .....................................................................................................................22

IV.  Events Leading to the Chapter 11 Filings ...........................................................................25

   A.  Retention of Advisors.....................................................................................26
   B.  Corporate Governance. ...................................................................................26
   C.  Pursuit of All Reasonable Alternatives.............................................................27
   D.  The License Termination Transaction. .............................................................27

**TABLE OF CONTENTS (CONT'D)**

|   | E. | The Store Closing Sales. | 28 |
|---|----|--------------------------|-----|
|   | F. | The Brick-and-Mortar Retail Sale Process. | 28 |
|   | G. | The Restructuring Support Agreement. | 29 |

**V.** **Material Developments and Anticipated Developments of the Chapter 11 Cases** ......**30**

|   | A. | First Day Relief. | 30 |
|---|----|-------------------|-----|
|   | B. | Second Day and Other Relief. | 33 |
|   | C. | Use of Cash Collateral. | 33 |
|   | D. | Lease Rejections and Optimization. | 35 |
|   | E. | Sale Process. | 35 |
|   | F. | The Bar Date Order. | 36 |
|   | G. | Schedules and Statements. | 36 |
|   | H. | The Disinterested Managers' Independent Investigation. | 36 |
|   | I. | Proposed Confirmation Schedule. | 37 |

**VI.** **Overview of the Plan** .......**38**

|   | A. | General Settlement of Claims and Interests. | 38 |
|---|----|---------------------------------------------|-----|
|   | B. | Sale Transaction. | 38 |
|   | C. | Store Closing Sales. | 39 |
|   | D. | Sources of Consideration for Plan Distributions. | 39 |
|   | E. | Employment Obligations. | 39 |
|   | F. | The Wind-Down. | 40 |
|   | G. | The Plan Administrator. | 41 |
|   | H. | Dissolution of the Wind-Down Debtors. | 44 |
|   | I. | Release of Liens, Debtor Release, Third-Party Release, Exculpation, Injunction. | 44 |
|   | J. | Preservation of Causes of Action. | 50 |
|   | K. | Cancellation of Existing Agreements and Interests. | 51 |
|   | L. | Section 1146 Exemption. | 51 |
|   | M. | Corporate Action. | 52 |
|   | N. | Effectuating Documents; Further Transactions. | 52 |
|   | O. | Closing the Chapter 11 Cases. | 52 |
|   | P. | Director and Officer Liability Insurance. | 52 |
|   | Q. | Other Key Aspects of the Plan. | 53 |
|   | R. | Conditions Precedent to the Effective Date. | 58 |

**VII.** **Risk Factors** .......**59**

|   | A. | Bankruptcy Law Considerations. | 59 |
|---|----|-------------------------------|-----|
|   | B. | Risks Related to Recoveries under the Plan and Wind-Down Transactions. | 64 |

**VIII.** **Solicitation and Voting Procedures** .......**66**

|   | A. | Holders of Claims or Interests Entitled to Vote on the Plan. | 66 |
|---|----|------------------------------------------------------------|-----|
|   | B. | Voting Record Date. | 66 |
|   | C. | Voting on the Plan. | 66 |
|   | D. | Votes Required for Acceptance by a Class. | 68 |
|   | E. | Certain Factors to Be Considered Prior to Voting. | 69 |
|   | F. | Solicitation Procedures. | 69 |

**TABLE OF CONTENTS (CONT'D)**

**Page**

IX.    **Confirmation of the Plan**...................................................................................................**71**

    A.    The Combined Hearing..............................................................................................71
    B.    Requirements for Confirmation of the Plan...............................................................71
    C.    Best Interests of Creditors/Liquidation Analysis......................................................71
    D.    Feasibility. ................................................................................................................72
    E.    Acceptance by Impaired Classes. .............................................................................72
    F.    Confirmation Without Acceptance from All Classes. ...............................................73
    G.    Valuation....................................................................................................................74

X.    **Certain Material U.S. Federal Income Tax Consequences of the Plan** ...................**74**

    A.    Introduction................................................................................................................74
    B.    Certain U.S. Federal Income Tax Consequences of the Plan to the Debtors - Characterization of the Sale Transaction, Store Closing Sales, and Wind-Down Transactions.................................................................................................................76
    C.    Certain U.S. Federal Income Tax Consequences of the Plan to Certain U.S. Holders of Class 3 ABL Claims and Class 6 General Unsecured Claims.......................77
    D.    Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Class 3 ABL Claims and Class 6 General Unsecured Claims. ...................................79

XI.    **Recommendation of the Debtors** ...............................................................................**82**

**EXHIBITS**[2]

EXHIBIT A      Chapter 11 Plan

EXHIBIT B      Proposed Disclosure Statement Order

---

[2]      Each Exhibit is incorporated herein by reference.

## I.    INTRODUCTION

Eddie Bauer LLC ("Eddie Bauer") and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors," or the "Company"), submit this disclosure statement (this "Disclosure Statement"), pursuant to section 1125 of the Bankruptcy Code, to holders of Claims against and Interests in the Debtors in connection with the solicitation of votes for acceptance of the *Joint Plan of Reorganization of Eddie Bauer LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* filed contemporaneously herewith (the "Plan").[1]  A copy of the Plan is attached hereto as **Exhibit A** and incorporated herein by reference.  The Plan constitutes a separate chapter 11 plan for each of the Debtors.

The Company is the exclusive licensee of the Eddie Bauer brand with respect to brick-and-mortar retail sales of Eddie Bauer casual garments and home goods, including men's and women's shirts, pants, footwear, accessories, bags, and camping gear, in addition to its famous outerwear.  As of the Petition Date, the Company has 175 retail locations across forty states and the United States and six provinces in Canada, employing approximately 2,200 people.  The Debtors do not own the Eddie Bauer brand, and the brand, along with wholesale and e-commerce sales thereunder, is not part of these Chapter 11 Cases.

The Company has a storied history spanning more than 100 years.  The first American to ever make it to the top of Mount Everest—Jim Whittaker—reached the summit wearing a bright red Eddie Bauer parka.  During World War II, United States Army soldiers slept in Eddie Bauer sleeping bags and Air Force pilots wore specially designed Eddie Bauer flight suits.  Since the turn of the twenty-first century, the Company's ownership has changed numerous times, including in connection with two prior chapter 11 proceedings.   Most   recently,   in   2021,   Eddie   Bauer's   operating   business   was   sold (the "SPARC Acquisition") to SPARC Group Holdings, LLC (together with certain of its affiliates, "SPARC") and its intellectual property was sold to Authentic Brands Group ("ABG"), an indirect equity holder of the Company and SPARC.  ABG then licensed the North American brick-and-mortar retail rights for the Eddie Bauer brand, as well as related wholesale and e-commerce rights (which have since been terminated, as discussed below), to the Company pursuant to a license agreement (the "License Agreement").  In January 2025, the Company's sole equity holder, SPARC Group Holdings LLC, was acquired by the parent company of another iconic American retail franchise, JCPenney.  The parent company of the combined entities currently owns and operates the Company along with several other major American retail brands under the trade name of Catalyst Brands ("Catalyst").

After the SPARC Acquisition, the Company capitalized on early COVID-19 era changes in consumer preferences as demand for outdoor apparel and outdoor gear increased and consumer discretionary spending spiked after federal relief spending.  The Company also captured operational savings by enacting cost-saving measures, which led to positive EBITDA of $21 million during the last eight months of 2021.  Multiple headwinds in recent years, however, including shifting consumer preferences, resulted in a decline in customer demand well below the historical trendline.  In addition, an historic rise in inflation led to an increase in the Debtors' cost of doing business.  Further, the long-standing though recently suspended "de minimis" tariff exemption allowed non-U.S. retailers to import good without paying duties and elevated tariffs combined to erode margins and led to significant negative earnings of approximately $2 million in 2022, $10 million in 2023, $82 million in 2024, and $80 million in 2025.

---

[1]    Capitalized terms used but not otherwise defined in this Disclosure Statement shall have the meanings ascribed to such terms in the Plan or the *Declaration of Stephen Coulombe, Co-Chief Restructuring Officer of Eddie Bauer LLC and its Affiliates, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 35] (the "First Day Declaration") or the Plan, as applicable.

In response to these macroeconomic headwinds, the Company began exploring and evaluating potential transactions and other measures to meet the Company's goal of maximizing value for all stakeholders. Among other things, the Company (a) engaged in a variety of operational cost-cutting measures in an attempt to address the Company's sizable operating expenses; (b) made changes to its leadership team, including appointing a new Chief Executive Officer, Ken Ohashi, in January 2025; (c) evaluated and modified its merchandising strategy; (d) exited certain unprofitable store locations; and (e) retained Kirkland & Ellis LLP ("Kirkland"), as legal counsel, and Berkeley Research Group, LLC ("BRG"), as financial advisor, to assist the Company with assessing strategic alternatives. The Company also appointed Jeffrey Stein and Anthony Horton as disinterested managers (the "Disinterested Managers") of Debtors Eddie Bauer LLC, SPARC EB Holdings LLC, and Eddie Bauer Gift Card Services LLC (the "U.S. Debtors"), and delegated to the Disinterested Managers binding decision-making authority with respect to matters that constitute, or are reasonably likely to constitute, a conflict of interest between the Company and its related parties. Mr. Stein and Mr. Horton were subsequently appointed as disinterested directors of 13051269 Canada Inc. and Eddie Bauer of Canada Corporation (the "Canadian Debtors").

The Debtors' financial challenges continued to mount in the fourth quarter of 2025. At the time, the Debtors faced approximately $220 million in future fees due over the remaining six years of the License Agreement. With declining sales and break-even or negative margins in the e-commerce and wholesale businesses, the Debtors could no longer support payment of fixed licensing fees. To halt the accrual of these licensing fees, the Debtors, following good-faith, arm's-length negotiations overseen and approved by the Disinterested Managers, reached an agreement with ABG (the "License Termination Agreement") whereby the Debtors agreed to terminate their right to use the Eddie Bauer IP in connection with the e-commerce and wholesale business channels. As part of the License Termination Agreement, the Debtors retained the exclusive right to operate their brick-and-mortar retail locations and were released from future obligations to pay the minimum royalty and certain other minimum fees and expenses under the License Agreement.

Although the License Termination Agreement alleviated a substantial liability for the Company, the Debtors' revised financial projections continued to indicate that the Debtors would generate negative cash flow. SPARC, which had been funding the Company's cash shortfalls through intercompany transfers, resulting in an intercompany payable to SPARC in the amount of approximately $215 million as of the Petition Date (the "SPARC Intercompany Payable"), had also expressed an intent to cease funding future losses. As a result, on November 24, 2025, the Debtors retained SOLIC Capital Advisors, LLC ("SOLIC," and collectively with BRG and Kirkland, the "Advisors") as investment banker to conduct a robust marketing process (the "Sale Process") for a potential going-concern sale of all or any portion of the Company's brick-and-mortar retail operations (a "Sale Transaction"). As of the Petition Date, the Debtors had received two indications of interest (an "IOI," and the submitting parties, the "IOI Parties") for a potential going-concern purchase of a subset of the Company's stores.

The Company has also substantially slimmed down its operations throughout the United States and Canada in recent months. Leases for forty-nine unprofitable stores were not renewed. Store closing sales ("Store Closing Sales") commenced at the remaining 175 stores between January 26, 2026, and February 7, 2026, and are expected to continue throughout the Chapter 11 Cases for any stores not sold as part of a going-concern sale.

Notwithstanding the Company's efforts to pursue all available alternatives, in January 2026 it became clear to the Company, its management, and the Debtors' boards of directors that a comprehensive restructuring would be necessary to address the Debtors' balance sheet and operational challenges. Accordingly, the Company, with the assistance of Kirkland and BRG, commenced negotiations with their Prepetition Lenders (as defined herein) regarding a consensual and value-maximizing wind-down of any assets not sold in the Sale Process (the "Wind-Down"). The Company also retained Hilco Merchant

Resources, LLC and SB360 Capital Partners, LLC (collectively, the "Liquidator") to assist with the winddown and RCS Real Estate Advisors to analyze the Company's lease portfolio.

The Company's good-faith, arms' length negotiations with the Prepetition Lenders culminated in the execution of the restructuring support agreement attached to the First Day Declaration as Exhibit B (the "Restructuring Support Agreement"). The Restructuring Support Agreement contemplates, among other things:

- **Transactions and Implementation.** The Debtors may pursue (a) a Sale Transaction for the Debtors' assets and/or equity to the highest or otherwise best bidder(s) following a sale and marketing process to be conducted pursuant to Bankruptcy Court-approved bidding procedures (the "Bidding Procedures");[2] and (b) notwithstanding the Sale Process, the Debtors will continue the Store Closing Sales with respect to any portion of the Debtors' business and store locations that are not otherwise sold.

- **Distributions to Creditors Pursuant to Chapter 11 Plan.** The Plan will (a) pay all allowed administrative and priority claims in full; (b) provide that, subject to the class of general unsecured creditors voting to accept the Plan, 100% of Net Proceeds,[3] whether from a going-concern sale or Store Closing Sales, *less* the GUC Contingent Recovery Pool, will be distributed to the ABL Lenders, with general unsecured creditors receiving their *pro rata* share of the greater of (i) $250,000 or (ii) 10% of Net Proceeds in excess of the ABL Threshold Recovery Amount[4] (such recovery, the "GUC Contingent Recovery Pool"); and (c) provide that Term Loan Claims, Subordinated Loan Claims, and existing equity interests will be extinguished with no recovery from the Debtors' estates, and holders of such claims will forego a distribution from the Debtors that they would have otherwise had a right to in the event the class of general unsecured claims votes to accept the Plan. Notwithstanding the foregoing, all ABL Claims, Term Loan Claims, and Subordinated Loan Claims shall be reserved and preserved as against all Persons or Entities other than the Debtors (and as to the Debtors, all Allowed ABL Claims, Allowed Term Loan Claims, and Allowed Subordinated Loan Claims shall be subject to the Plan and Confirmation Order).

- **Wind Down.** Following the conclusion of all Store Closing Sales and, if applicable, a Sale Transaction, the Debtors will be wound down in an orderly and court-approved process.

---

[2]  A detailed description of the Bidding Procedures may be found at **Exhibit 1** of the *Order (I) Approving the Bidding Procedures and Stalkinghorse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 65] (the "Bidding Procedures Order").

[3]  "Net Proceeds" means all Cash, if any, held by the Debtors or the Wind-Down Debtors, as applicable, on or after the Effective Date in accordance with the Cash Collateral Order, after (a) funding the Professional Fee Escrow Account, (b) funding the Wind-Down Account, and (c) paying or reserving amounts for Allowed Administrative Claims as set forth in Article II.A of the Plan.

[4]  "ABL Threshold Recovery Amount" means (a) an amount equal to 60% of the cost value of all retail inventory, wholesale inventory, credit card accounts receivable, and wholesale receivables of the Debtors, based on the levels of such assets in the Approved Budget as of the Petition Date *less* (b) the aggregate amount of all Weekly Paydowns (as defined in the Plan) actually paid as of the Effective Date.

The Restructuring Support Agreement enjoys the support of 100 percent of the ABL Lenders, Term Loan Lenders, and Subordinated Loan Lenders.

On February 9, 2026 (the "Petition Date"), the Debtors filed these Chapter 11 Cases to pursue the Restructuring Transactions (as defined in the Plan) contemplated by the Restructuring Support Agreement on the most expeditious and value-maximizing timeline possible, including a hearing to approve a Sale Transaction, if applicable, approximately thirty days after the Petition Date and a target confirmation date approximately seventy days after the Petition Date. The Debtors believe the Plan provides the best available alternative for the Estates (as defined in the Plan) and maximizes creditor recoveries. Based on the liquidation analysis to be filed in a revised version of this Disclosure Statement (the "Liquidation Analysis"), the Debtors believe that the Holders of all Claims, including General Unsecured Claims, would receive a lower recovery in a chapter 7 liquidation. The Debtors believe that the Plan is in the best interests of their estates and represents the best and only available path forward at this time. Accordingly, the Debtors strongly recommend that Holders of Claims in the Voting Classes vote to accept the Plan.

## II.  QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT AND PLAN

### A.  What is chapter 11?

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. In addition to permitting debtor rehabilitation, chapter 11 promotes equality of treatment for creditors and similarly situated equity interest holders, subject to the priority of distributions prescribed by the Bankruptcy Code.

The commencement of a chapter 11 case creates an estate that comprises all of the legal and equitable interests of the debtor as of the date the chapter 11 case is commenced. The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

Consummating a chapter 11 plan is the principal objective of a chapter 11 case. A bankruptcy court's confirmation of a plan binds the debtor, any person acquiring property under the plan, any creditor or equity interest holder of the debtor, and any other entity as may be ordered by the bankruptcy court. Subject to certain limited exceptions, the order issued by a bankruptcy court confirming a plan provides for the treatment of the debtor's liabilities in accordance with the terms of the confirmed plan.

### B.  Why are the Debtors sending me this Disclosure Statement?

The Debtors are seeking Bankruptcy Court approval of the Plan. Before soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan and to share such disclosure statement with all holders of claims or interests whose votes on the Plan are being solicited. The Debtors will seek approval of this Disclosure Statement on a conditional basis, and this Disclosure Statement is being submitted in accordance with these requirements. The Bankruptcy Court will consider final approval of this Disclosure Statement and the Plan at a hearing which is scheduled for April 16, 2025 (the "Combined Hearing"), subject to Bankruptcy Court availability.

### C.    Am I entitled to vote on the Plan?

Your ability to vote on, and your distribution under, the Plan, if any, depends on what type of Claim[5] you hold and whether you held that Claim as of the Voting Record Date.  Each category of Holders of Claims or Interests,[6] as set forth in Article III of the Plan pursuant to section 1122(a) of the Bankruptcy Code, is referred to as a "Class."  Each Class's respective voting status is set forth below:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | ABL Claims | Impaired | Entitled to Vote |
| Class 4 | Term Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 5 | Subordinated Loan Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 8 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept) / Not Entitled to Vote (Deemed to Reject) |
| Class 9 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 10 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

### D.    What is the Sale Transaction?

As of the date hereof, the Debtors are conducting the Sale Process with the goal of consummating a Sale Transaction if doing so, in the Debtors' business judgment, will maximize value for the benefit of all stakeholders.  If applicable, the Debtors shall distribute the proceeds from the Sale Transaction pursuant to the Plan.

### E.    What is the Wind-Down under the Plan?

After the Effective Date, the Debtors will initiate the Wind-Down process.  The Wind-Down is the wind down, liquidation, and dissolution of each of the Wind-Down Debtors, which will include, among other things, the disposition of some or all of the Wind-Down Debtors' remaining assets, potentially through one or more asset sales, together with distribution of the Net Proceeds in accordance with the Plan and the

---

[5]    "Claim" means any claim, as defined in section 101(5) of the Bankruptcy Code, against any of the Debtors.

[6]    "Interest" means, collectively, (a) any equity security in any Debtor and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, or repurchase rights; convertible, exercisable, or exchangeable securities; or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

wind down of each of the Debtors' Estates, all as provided in the Plan.  A Plan Administrator[7] will be appointed to facilitate the Wind-Down.

### F.    What will I receive from the Debtors if the Plan is consummated?

The following chart provides a summary of the anticipated recovery to Holders of Claims or Interests under the Plan.  Any estimates of allowed amounts, and recoveries on, Claims or Interests in this Disclosure Statement may vary from the final amounts allowed by the Bankruptcy Court and ultimate recoveries received.  Your ability to receive distributions under the Plan depends upon the ability of the Debtors to obtain Confirmation and meet the conditions precedent necessary to consummate the Plan.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN.[8]**

| SUMMARY OF EXPECTED RECOVERIES | | | | |
|---|---|---|---|---|
| **Class** | **Claim/Equity Interest** | **Treatment of Claim/Equity Interest** | **Projected Amount ($mm)** | **Projected Recovery** |
| 1 | Other Secured Claims | Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, each holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or the Wind-Down Debtors, as applicable, in full and final satisfaction of such Allowed Other Secured Claim, either: (i) payment in full in Cash in an amount equal to its Allowed Other Secured Claim; (ii) delivery of the collateral securing its Allowed Other Secured Claim; or (iii) such other treatment rendering its Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. | $[●] | [100]% |
| 2 | Other Priority Claims | Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, treatment consistent with section 1129(a)(9) of the Bankruptcy Code. | $[●] | [100]% |

---

[7]    "Plan Administrator" means the person, if any, selected by the Debtors, to have all powers and authorities set forth in Article IV.G of the Plan.

[8]    The recoveries set forth below may change based upon changes in the amount of Claims that are Allowed as well as other factors related to potential recoveries from Retained Causes of Action.

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Projected Amount ($mm) | Projected Recovery |
| 3 | ABL Claims | On the Effective Date, except to the extent that a Holder of an Allowed ABL Claim agrees to less favorable treatment, each Holder of an Allowed ABL Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of (i) or (ii) below, as applicable.  Notwithstanding the foregoing, it is expressly understood and agreed that all ABL Claims shall be reserved and preserved as against all Persons or Entities other than the Debtors (and as to the Debtors, all ABL Claims shall be subject to the Plan and Confirmation Order).<br><br>(i)   If Class 6 (General Unsecured Claims) votes to reject the Plan, 100% of Net Proceeds; or<br><br>(ii)  If Class 6 (General Unsecured Claims) votes to accept the Plan, 100% of the Net Proceeds less the GUC Contingent Recovery Pool. | $[728] | [●%] or [●][9] |
| 4 | Term Loan Claims | On the Effective Date, each Allowed Term Loan Claim shall be canceled, released, and extinguished as against the Debtors, and no Holder of an Allowed Term Loan Claim shall receive any distribution from the Debtors on account of such Claim; *provided* that it is expressly understood and agreed that all Term Loan Claims shall be reserved and preserved as against all Persons or Entities other than the Debtors (and as to the Debtors, all Term Loan Claims shall be subject to the Plan and Confirmation Order). | $[600] | [0%] |
| 5 | Subordinated Loan Claims | On the Effective Date, each Allowed Subordinated Loan Claim shall be canceled, released, and extinguished as against the Debtors, and no Holder of an Allowed Subordinated Loan Claim shall receive any distribution from the Debtors on account of such Claim; *provided* that it is expressly understood and agreed that all Subordinated Loan Claims shall be reserved and preserved as against all Persons or Entities other than the Debtors (and as to the Debtors, all Subordinated Loan Claims shall be subject to Plan and Confirmation Order). | $[216] | [0%] |

---

[9]   The Projected Recovery for Claims in Class 3 (ABL Claims) is based on (a) projected Net Proceeds resulting from consummation of the Sale Transaction and/or the Store Closing Sales and (b) whether Class 6 votes to accept or reject the Plan.  The Projected Recovery for Claims in Class 3 may vary based on the foregoing.

| SUMMARY OF EXPECTED RECOVERIES | | | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Projected Amount ($mm) | Projected Recovery |
| 6 | General Unsecured Claims | On the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive:<br><br>(i)    if Class 6 (General Unsecured Claims) votes to accept the Plan, its *pro rata* share of the GUC Contingent Recovery Pool; or<br><br>(ii)   if Class 6 (General Unsecured Claims) votes to reject the Plan, all Allowed General Unsecured Claims shall be canceled, released, and extinguished and will be of no further force or effect, and Holders of Allowed General Unsecured Claims shall not receive any distribution, property, or other value under the Plan on account of such Allowed General Unsecured Claims. | $[105] | 0% or [●]%[10] |
| 7 | Intercompany Claims | On the Effective Date, each Allowed Intercompany Claim shall be, at the option of the applicable Debtor or Wind-Down Debtor, either: (i) reinstated (solely for the purpose of facilitating the Wind-Down Transactions); (ii) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Claim; or (iii) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor. | N/A | [0% or 100%] |
| 8 | Intercompany Interests | On the Effective Date, each Allowed Intercompany Interest shall be, at the option of the applicable Debtor or Wind-Down Debtor, either: (i) reinstated (solely for the purpose of facilitating the Wind-Down Transactions); (ii) set off, settled, distributed, contributed, canceled, and released without any distribution on account of such Intercompany Interest; or (iii) otherwise addressed at the option of the applicable Debtor or Wind-Down Debtor. | N/A | [0% or 100%] |
| 9 | Existing Equity Interests | On the Effective Date, all Existing Equity Interests will be canceled, released, and extinguished and will be of no further force or effect. No Holders of Existing Equity Interests will receive a distribution under the Plan on account of such Existing Equity Interests. | N/A | [0%] |

---

[10]    The Projected Recovery for Claims in Class 6 (General Unsecured Claims) is based on (a) projected Net Proceeds resulting from consummation of the Sale Transaction and/or the Store Closing Sales and (b) whether Class 6 votes to accept or reject the Plan. The Projected Recovery for Claims in Class 6 may vary based on the foregoing.

| | | SUMMARY OF EXPECTED RECOVERIES | | |
|---|---|---|---|---|
| Class | Claim/Equity Interest | Treatment of Claim/Equity Interest | Projected Amount ($mm) | Projected Recovery |
| 10 | Section 510(b) Claims | Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims. | [$0] | [0%] |

**G.    What will I receive from the Debtors if I hold an Administrative Claim, Professional Fee Claim, or Priority Tax Claim, and how will payment of statutory fees be addressed under the Plan?**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims, have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in <u>Article III</u> of the Plan.  <u>Article XII.C</u> of the Plan addresses payment of statutory fees by the Debtors or the Wind-Down Debtors, as applicable, on and after the Effective Date.

**1.    Administrative Claims.**

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Wind-Down Debtors, as applicable, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim in accordance with the following:  (i) if an Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (ii) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (iii) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claim without any further action by the Holder of such Allowed Administrative Claim; (iv) at such time and upon such terms as may be agreed upon by such Holder and the Debtors or the Wind-Down Debtors, as applicable; or (v) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim that is an Assumed Liability under the Transaction Documents shall be an obligation of the Purchaser (as defined in the Plan) and shall not be an obligation of the Debtors or the Wind-Down Debtors.

Except as otherwise provided in <u>Article II.A</u> of the Plan, requests for payment of Administrative Claims must be Filed with the Claims and Noticing Agent and served on the Wind-Down Debtors by the applicable Administrative Claims Bar Date.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Wind-Down Debtors, their Estates, or their property, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors or the Wind-Down Debtors, as applicable, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity (as defined in the Plan).**  Objections to such

requests, if any, must be Filed with the Bankruptcy Court and served on the Debtors or the Wind-Down Debtors, as applicable, and the requesting party by the Claims Objection Deadline. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

**2.      Professional Fee Claims.**

**(a)      Final Fee Applications and Payment of Professional Fee Claims.**

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than forty-five (45) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Court. The Wind-Down Debtors shall pay Professional Fee Claims in Cash in the amount the Bankruptcy Court allows, including from funds held in the Professional Fee Escrow Account.

**(b)      Professional Fee Escrow Account.**

On the Effective Date, the Wind-Down Debtors shall establish and fund the Professional Fee Escrow Account with an amount of Cash equal to the Professional Fee Amount, less any unapplied cash deposited in respect of the Carve-Out (as defined in the Cash Collateral Order), which cash shall be added to the Professional Fee Escrow Account. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Debtors' Estates, the Wind-Down Debtors, or the Plan Administrator, as applicable. The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Wind-Down Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed; *provided* that the Debtors' and the Wind-Down Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all such Allowed amounts owing to Professionals have been paid in full, any remaining amount in the Professional Fee Escrow Account shall promptly be paid to the Wind-Down Debtors and constitute part of the Wind-Down Assets without any further notice to or action, order, or approval of the Bankruptcy Court, which amounts shall be considered Net Proceeds and promptly distributed in accordance with the Plan.

**(c)      Professional Fee Amount.**

Professionals shall reasonably estimate their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such estimates to the Debtors no later than three Business Days before the Effective Date; *provided*, *however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that may be Allowed pursuant to the Professional's final request for payment. If a Professional does not provide an estimate, the Debtors or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional for the purpose of determining the Professional Fee Amount. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

**(d)      Post-Effective Date Fees and Expenses.**

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtors or the Wind-Down Debtors, as applicable, shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented

legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Wind-Down Debtors, as applicable.  Upon the Effective Date, any requirement that Professionals comply with sections 327–331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors or the Wind-Down Debtors, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.     Priority Tax Claims.

All Allowed Priority Tax Claims shall either (a) be paid during the Chapter 11 Cases or (b) constitute an assumed liability (an "Assumed Liability") under the Sale Transaction Documents and shall be an obligation of the Debtors or the Wind-Down Debtors.  To the extent that an Allowed Priority Tax Claim was not otherwise paid during the Chapter 11 Cases or assumed and paid as an Assumed Liability under the applicable Sale Transaction Documents and the Holder of such Allowed Priority Tax Claim does not agree to less favorable treatment, in full and final satisfaction, settlement, and release of, and in exchange for, such Allowed Priority Tax Claim, such Holder of such Allowed Priority Tax Claim shall receive Cash equal to the full amount of its Claim or such other treatment in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

### 4.     Payment of Statutory Fees.

All monthly reports shall be Filed, and all fees due and payable pursuant to section 1930(a) of Title 28 of the United States Code shall be paid by the Debtors or the Wind-Down Debtors, as applicable, (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) on the Effective Date, and following the Effective Date, the Wind-Down Debtors (or the Disbursing Agent on behalf of each of the Wind-Down Debtors) shall pay such fees as they are assessed and come due for each quarter (including any fraction thereof) until such Wind-Down Debtor's Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.  The Wind-Down Debtors shall File quarterly reports in a form reasonably acceptable to the U.S. Trustee.  Each of the Debtors and the Wind-Down Debtors are jointly and severally liable for the payment of quarterly fees and shall remain obligated to pay such quarterly fees to the U.S. Trustee and to File quarterly reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.

### H.     Are any regulatory approvals required to consummate the Plan?

There are no known regulatory approvals that are required to consummate the Plan.  To the extent any such regulatory approvals or other authorizations, consents, rulings, or documents are necessary to implement and effectuate the Plan, however, it is a condition precedent to the Effective Date that they be obtained.

### I.     What happens to my recovery if the Plan is not confirmed or does not go effective?

In the event that the Plan is not confirmed or does not go effective, there is no assurance that the Debtors will be able to wind-down their business efficiently, and distributions to Holders of Allowed Claims may be delayed.  It is possible that any alternative may provide Holders of Allowed Claims with less than they would have received pursuant to the Plan.  For a more detailed description of the

consequences of a liquidation scenario, see <u>Article IX</u> of this Disclosure Statement, and the Liquidation Analysis.

    **J.**    **If the Plan provides that I get a distribution, do I get it upon Confirmation or when the Plan goes effective, and what is meant by "Confirmation," "Effective Date," and "Consummation"?**

"<u>Confirmation</u>" of the Plan refers to approval of the Plan by the Bankruptcy Court and entry of the Confirmation Order (as defined in the Plan) on the docket of the Chapter 11 Cases. Confirmation of the Plan does not guarantee that you will receive the distribution indicated under the Plan. After Confirmation of the Plan, there are conditions that need to be satisfied or waived so that the Plan can go effective. Initial distributions to Holders of Allowed Claims will only be made on the date the Plan becomes effective—the "<u>Effective Date</u>"—or as soon as reasonably practicable thereafter, as specified in the Plan. *See* <u>Article VII.R</u> of this Disclosure Statement, titled "*Conditions Precedent to the Effective Date*" for a discussion of the conditions precedent to consummation of the Plan.

    **K.**    **What are the sources of Cash and other consideration required to fund the Plan?**

On or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall fund or make distributions under the Plan, as applicable, with: (i) the Debtors' Cash on hand; (ii) the proceeds from the Debtors' ordinary course operations and Store Closing Sales; and (iii) the Sale Proceeds,[11] if applicable. Each distribution and issuance referred to in <u>Article VI</u> of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

    **L.**    **What is the effect of the Plan on the Debtors' ongoing businesses?**

The Debtors are liquidating under chapter 11 of the Bankruptcy Code regardless of whether they consummate a Sale Transaction. As contemplated under the Plan, on and after the Effective Date, the Debtors shall continue in existence as the Wind-Down Debtors for the purposes of carrying out the Wind-Down Transactions, including, as applicable: (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other term to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and/or the Restructuring Support Agreement and having other terms with which the applicable parties agree; (iii) to the extent applicable, the filing of a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); (iv) if applicable, effectuate distributions contemplated by the Plan; (v) liquidating or otherwise monetizing the Wind-Down Assets; and (vi) such other transactions that, in the business judgement of the Debtors, the Wind-Down Debtors, or the Plan Administrator, if applicable are required to effectuate the Wind-Down Transactions.

On the Effective Date and thereafter if additional Wind-Down Assets become available, the Wind-Down Debtors shall become successors to the Debtors' rights, title, and interests to any Estate assets,

---

[11]   "<u>Sale Proceeds</u>" means all proceeds of the Sale Transaction, including all Cash proceeds and non-cash proceeds, that the Debtors receive in accordance with the Purchase Agreement, if applicable.

which shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business.  The Wind-Down Debtors shall be managed by the Plan Administrator.  The Wind-Down Debtors shall be administered in accordance with the terms of the Plan Administrator Agreement[12] and shall be subject to the Wind-Down Amount.[13]  Any distributions to be made under the Plan shall be made by the Plan Administrator or its designee.  The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement, and all actions contemplated by the Plan will be deemed authorized and approved.

###### M.        Is there potential litigation related to the Plan?

Parties in interest may object to the approval of this Disclosure Statement and/or Confirmation of the Plan, which objections potentially could give rise to litigation.  *See* Article VII.A.3 of this Disclosure Statement.

If it becomes necessary to confirm the Plan over the rejection of certain Classes, the Debtors may seek confirmation of the Plan notwithstanding the dissent of such rejecting Classes.  The Bankruptcy Court may confirm the Plan pursuant to the "cramdown" provisions of the Bankruptcy Code, which allow the Bankruptcy Court to confirm a plan that has been rejected by an impaired Class if it determines that the Plan satisfies section 1129(b) of the Bankruptcy Code.  *See* Article IX.F of this Disclosure Statement.

###### N.        Does the Plan preserve Causes of Action?[14]

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan, the Wind-Down Debtors, shall retain and may enforce (or the Plan Administrator may enforce, if applicable) all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Wind-Down Debtors to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of

---

[12]    "Plan Administrator Agreement" means that certain agreement by and among the Debtors, the Plan Administrator, and the Wind-Down Debtors, which shall be included in the Plan Supplement, providing for the appointment, roles, powers, and duties of the Plan Administrator and the implementation of the Plan by the Plan Administrator.

[13]    "Wind-Down Amount" means Cash in an amount agreed to by the Debtors and the ABL Agent that is sufficient to fund the estimated fees, costs, and expenses necessary to administer the Wind-Down Transactions, in an amount that includes sufficient funds for the payment of all Administrative Claims as necessary to confirm the Plan.

[14]    "Cause of Action" means any action, claim, cross-claim, counterclaim, third-party claim, cause of action, controversy, dispute, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, loss, debt, fee or expense, damage, interest, judgment, cost, account, defense, remedy, offset, power, privilege, proceeding, license, and franchise of any kind or character whatsoever, known, unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws).  Causes of Action include:  (a) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breach of duties imposed by Law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress, usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state Law fraudulent transfer claim.

Action released or exculpated in the Plan (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors, as applicable, as of the Effective Date.

The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and the Wind-Down Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including, but not limited to, the Cash Collateral Order), the Wind-Down Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease (each as defined in the Plan) during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Wind-Down Debtor except as otherwise expressly provided in the Plan, including Article VIII of the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, through their authorized agents or representatives, including the Plan Administrator, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, including the Plan Administrator, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to Article IV.I of the Plan include any Claim or Cause of Action against a Released Party or Exculpated Party, or any Claim or Cause of Action released pursuant to the Cash Collateral Order.

### O.    Will there be releases, exculpation, and an injunction granted to parties in interest as part of the Plan?

Yes, the Plan proposes to release the Released Parties[15] and to exculpate the Exculpated Parties.[16]

---

[15]  "Released Party" means each of, and in each case in its capacity as such: (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) each Releasing Party; (f) the Purchaser, if any; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); *provided, however,* that, in each case, an Entity shall not be a Released Party if it: (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan, and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

[16]  "Exculpated Parties" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) the Wind-Down Debtors; and (c) with respect to the Entities in clauses (a) and (b) each of their respective current and former directors, the Disinterested Managers, managers, officers, attorneys, financial advisors,

The releases by the Debtors (the "Debtor Release"),[17] the releases by third parties (the "Third-Party Release"), and the exculpation provisions included in the Plan are an integral part of the Debtors' overall restructuring efforts and are an essential element of the negotiations among the Debtors and key stakeholders in obtaining their support for the Plan.  The Debtor Release, Third-Party Release, exculpation provision, and related provisions are set forth in their entirety in Article VIII of the Plan and Article V.G of this Disclosure Statement.

These provisions are the product of extensive good faith, arm's-length negotiations, were material inducements for the comprehensive settlement embodied in the Plan and are supported by the Debtors and the Consenting Lenders.  Moreover, the Released Parties and the Exculpated Parties have made substantial and valuable contributions to the Debtors' restructuring efforts, including, as applicable, by negotiating the Restructuring Support Agreement and the Plan, and providing the consensual use of the Cash Collateral. Moreover, each of the Exculpated Parties serves or served as a fiduciary of the Debtors' estates during the pendency of the Chapter 11 Cases.  Accordingly, the Released Parties warrant the benefit of the Debtor Release and the Third-Party Release, and each of the Exculpated Parties warrants the benefit of the exculpation provisions under the Plan.

The Plan does not contain any non-consensual release of any non-debtor by any third party.  By opting out of the Third-Party Release, Holders of Claims in all Classes will forgo the benefit of obtaining the releases set forth in Article VIII of the Plan if such party would otherwise be a Released Party.

Only Holders of Claims in Classes 3 and 6 (each, a "Voting Class," and collectively, the "Voting Classes") are entitled to vote to accept or reject the Plan.  The voting Ballots include the option to opt out of the Third-Party Release.  To affirmatively opt out of granting the Third-Party Release, a Holder of a Claim in the Voting Classes who returns a ballot must check the box indicated on the Ballot.

Holders of all Claims in Class 1, Class 2, Class 4, Class 5, Class 9, and Class 10 (each, a "Non-Voting Class," and collectively, the "Non-Voting Classes") will also have the opportunity to opt out of the Third-Party Release.  To affirmatively opt out of the Third-Party Release, Holders of Claims in the Non-Voting Classes must validly complete the applicable opt-out form (the "Opt-Out Form") and timely return it to the Debtors' claims and noticing agent, Stretto, Inc. ("Stretto" or the "Claims and Noticing Agent"), in accordance with instructions provided in the Opt-Out Form.

| SUMMARY OF APPLICABLE TREATMENT TO NON-VOTING CLASSES | | |
|---|---|---|
| **Class** | **Status** | **Treatment** |
| Class 1, Class 2, Class 7, Class 8 | Unimpaired—Presumed to Accept | Holders of Claims that are deemed to accept the Plan are not entitled to vote.  As such, Holders of such Claims, will receive a Notice of Non-Voting Status[18] and applicable Opt-Out Form in lieu of a Solicitation Package.  In accordance with the Disclosure Statement Order, Class 7 and Class 8 will not receive a Solicitation Package or any other type of notice in connection with the solicitation. |

---

consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

[17]  As discussed in greater detail in section Article V.H herein, the Debtor Release remains subject to the Independent Investigation being conducted by the Disinterested Managers.

[18]  "Notice of Non-Voting Status" has the meaning set forth in  the solicitation and voting procedures (the "Solicitation Procedures") attached as Exhibit 2 to the *Debtors' Motion for Entry of an Order (I) Conditionally*

| SUMMARY OF APPLICABLE TREATMENT TO NON-VOTING CLASSES | | |
|---|---|---|
| **Class** | **Status** | **Treatment** |
| Class 4, Class 5, Class 7, Class 8, Class 9, Class 10 | Impaired—Deemed to Reject | Holders of Claims or Interests that are deemed to reject the Plan are not entitled to vote. As such, Holders of Claims or Interests in Class 9 and Class 10 will receive a Notice of Non-Voting Status and applicable Opt-Out Form in lieu of a Solicitation Package. In accordance with the Disclosure Statement Order, Class 7 and Class 8 will not receive a Solicitation Package or any other type of notice in connection with the solicitation. |
| N/A | Disputed Claims | Holders of Claims that are subject to a pending objection that excludes Holders of such Claims from voting will receive a Notice of Non-Voting Status and Opt-Out Form, in lieu of a Solicitation Package. |

**ALL HOLDERS OF CLAIMS THAT (I) VOTE TO ACCEPT THE PLAN; (II) ARE DEEMED TO ACCEPT THE PLAN BUT WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN BY CHECKING THE BOX ON THE APPLICABLE NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED FOR IN THE PLAN; (III) ABSTAIN FROM VOTING ON THE PLAN, OTHER THAN THOSE WHO WERE NOT SENT A BALLOT OR AN OPT OUT FORM IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER, AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED FOR IN THE PLAN; OR (IV) VOTE TO REJECT THE PLAN OR ARE DEEMED TO REJECT THE PLAN AND WHO DO NOT AFFIRMATIVELY OPT OUT OF THE RELEASES PROVIDED FOR IN THE PLAN BY CHECKING THE BOX ON THE APPLICABLE BALLOT OR NOTICE OF NON-VOTING STATUS INDICATING THAT THEY OPT NOT TO GRANT THE RELEASES PROVIDED FOR IN THE PLAN WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED ALL CLAIMS AND CAUSES OF ACTION AGAINST THE RELEASED PARTIES, INCLUDING THE DEBTORS AND THE REORGANIZED DEBTORS.**

**YOUR FAILURE TO OPT OUT OF THE RELEASES PROVIDED BY THE PLAN IN ACCORDANCE WITH THE DISCLOSURE STATEMENT ORDER WILL RESULT IN YOUR IRREVOCABLE RELEASE OF ALL RELEASED CLAIMS AGAINST THE RELEASED PARTIES, INCLUDING THE CONSENTING STAKEHOLDERS.**

Based on the foregoing, the Debtors believe that the releases, exculpation, and injunction provisions in the Plan are necessary and appropriate and meet the requisite legal standard promulgated by the United States Court of Appeals for the Third Circuit. Moreover, the Debtors will present evidence at the Combined Hearing to demonstrate the basis for and propriety of the release and exculpation provisions. The release, exculpation, and injunction provisions that are contained in the Plan are copied in pertinent part below.

---

*Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* filed contemporaneously herewith (the "Disclosure Statement Motion").

**P.     What is the deadline to properly execute, complete, and submit Ballots (*i.e.*, vote)?**

All Ballots must be properly executed, completed, and submitted so that they are **actually received** by Stretto by April 14, 2026, at 4:00 p.m. (prevailing Eastern Time) (the "Voting and Opt-Out Deadline").

**Q.     How do I vote for or against the Plan?**

Detailed instructions regarding how to vote on the Plan are contained on the Ballots distributed to Holders of Claims or Interests that are entitled to vote on the Plan.  All Ballots for Holders of Claims in the Voting Classes must be properly completed, executed, and delivered, so that the applicable Ballot is **actually received by** the Claims and Noticing Agent **on or before April 14, 2026, at 4:00 p.m., prevailing Eastern Time**.  *See* Article VIII of this Disclosure Statement, titled "*Solicitation and Voting Procedures*" for more information.

**R.     Why is the Bankruptcy Court holding a Combined Hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan (the "Confirmation Hearing") and provides that any party in interest may object to Confirmation of the Plan.  In addition, the Debtors are seeking approval of this Disclosure Statement on a final basis at such Confirmation Hearing.

**S.     What is the effect of Confirmation of the Plan?**

The confirmation of a chapter 11 plan by a bankruptcy court binds the debtor, any issuer of securities under a chapter 11 plan, any person acquiring property under a chapter 11 plan, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order issued by the bankruptcy court confirming a chapter 11 plan resolves any debt of the debtor that arose before the confirmation of such chapter 11 plan and provides for the treatment of such debt in accordance with the terms of the confirmed chapter 11 plan.

**T.     When is the Combined Hearing set to occur?**

The Bankruptcy Court has scheduled the Combined Hearing for April 16, 2026, at 10:00 a.m. (prevailing Eastern Time).  The Combined Hearing may be adjourned from time to time without further notice.  Objections to Confirmation of the Plan and approval of the Disclosure Statement on a final basis must be filed and served on the Debtors, and certain other parties, by no later than April 14, 2026, at 4:00 p.m. (prevailing Eastern Time) in accordance with the Combined Hearing Notice that accompanies this Disclosure Statement and the Disclosure Statement Order (as defined below) incorporated by reference herein.

**U.     Whom do I contact if I have additional questions with respect to this Disclosure Statement or the Plan?**

If you have any questions regarding this Disclosure Statement or the Plan, please contact the Debtors' Claims and Noticing Agent via one of the following methods:

> *By calling the telephone number included in your Ballot, or by contacting the Claims and Noticing Agent by phone at*:
> 833-437-6838 (US/Canada, toll-free)

1-714-442-4326 (International, toll)

*By regular mail, hand delivery, or overnight mail at*:
Eddie Bauer LLC, et al. Ballot Processing
c/o Stretto
410 Exchange, Suite 100
Irvine, CA 92602

*By email to*:
EddieBauerInquiries@stretto.com

Copies of the Plan, this Disclosure Statement, and any other publicly filed documents in the Chapter 11 Cases are available upon written request to the Claims and Noticing Agent at the address above or by downloading the exhibits and documents from the website of the Claims and Noticing Agent at https://cases.stretto.com/EddieBauer or the Bankruptcy Court's website at https://www.deb.uscourts.gov (for a fee).

### V.    Do the Debtors recommend voting in favor of the Plan?

Yes.  The Debtors believe that the Plan provides for a larger distribution to Holders of Claims than would otherwise result from any other available alternative, including a hypothetical chapter 7 liquidation. The Debtors believe that the Plan is in the best interest of all Holders of Claims or Interests and that any other alternatives (to the extent they exist) fail to realize or recognize the value inherent under the Plan.

### III.    THE DEBTORS' CORPORATE HISTORY, STRUCTURE, AND BUSINESS OVERVIEW

### A.    Eddie Bauer's Background and Current Operations.

### 1.    The Beginning of the Eddie Bauer Story.

The Debtors are the exclusive licensee of the Eddie Bauer brand with respect to brick-and-mortar retail sales.  The Debtors sell Eddie Bauer goods in 175 retail locations in the United States and Canada. The Debtors do not own the Eddie Bauer brand, and the brand, along with wholesale and e-commerce sales thereunder, is not part of these Chapter 11 Cases.

The Eddie Bauer story began in 1920, when Mr. Bauer opened "Eddie Bauer's Tennis Shop" in Seattle, Washington in the back of a local hunting and fishing store, where he first specialized in building and repairing tennis gear.  Over the next five decades, Eddie Bauer pioneered goose down garments, outfitted the U.S. military in World War II, and outfitted some of the most daring mountain ascents in the world, including Jim Whitaker's ascent of Mt. Everest.

Eventually, after nearly five decades at the helm of the company he created, Mr. Bauer sold his stake to business partner William F. Niemi and his son in 1968.  Under the Niemis' leadership, the Company re-entered the brick-and-mortar retail market by opening a storefront in San Francisco, but soon sold to General Mills in 1971.  General Mills held the Company until 1988, during which time competing outdoor brands emerged.  The Company continued to develop high-performance outdoor gear in varying styles to compete in the evolving outdoor recreation market.  During this period, General Mills encouraged the expansion of the Company's catalog, as well as a wholesale business, which developed multiple sales channels for the Debtors.  General Mills also oversaw the addition of more casual clothing to the Company's traditional outdoor performance offerings and fostered cross-branding partnerships such as the "Eddie

Bauer Edition" of Ford vehicles, beginning in 1983. By 1988, the Debtors maintained approximately sixty retail locations throughout the United States and Canada.

General Mills sold the Company to catalog sales company Spiegel Inc. in 1988. Notwithstanding Spiegel's particular focus and expertise in catalogues, nearly all facets of the Debtors' business grew prodigiously under Spiegel's ownership. True to its history of innovation, the Company became one of the earliest adopters of the retail e-commerce sales channel when its website went live in 1996, just three years after the world wide web became readily available to the public. The Debtors' brick-and-mortar retail presence expanded dramatically over the same period. By 2002, the Company had amassed nearly 400 retail locations and over 100 outlet stores that provided outdoor clothing to consumers in nearly every U.S. state and several Canadian provinces. The Company also expanded beyond North America by adding retail locations in Japan and Germany and introducing a catalog offering in the United Kingdom. In addition, Spiegel oversaw the expansion of the Company's product lines beyond clothing by adding home furnishing offerings.

In 2003, however, in response to declining sales and mounting credit card defaults from Spiegel's unrelated high-risk consumer lending operation, Spiegel and its affiliates (including Eddie Bauer) filed for chapter 11 on March 17, 2003, in the Bankruptcy Court for the Southern District of New York (the "Spiegel Bankruptcy"). On June 21, 2005, Eddie Bauer emerged as a stand-alone company for the first time in thirty-four years, with ownership distributed to certain creditors of the Company's prepetition lenders. Thereafter, the Company began trading on the NASDAQ in October 2006 under the symbol EBHI.

This independent existence was short lived. Due to significant macroeconomic headwinds stemming from the 2008 financial crisis, coupled with additional debt obligations that the Company incurred following the Spiegel Bankruptcy, the Company filed for chapter 11 in its own right in the Bankruptcy Court for the District of Delaware on June 17, 2009. Eddie Bauer was sold out of those Chapter 11 Cases to Golden Gate Capital, and the Company was again under private ownership. Golden Gate Capital would go on to hold Eddie Bauer for twelve years.

In 2021, as the world began to recover from the COVID-19 pandemic, SPARC acquired Eddie Bauer's operating business, placing it alongside the other retailers in SPARC's portfolio. In January 2025, Penney Holdings LLC, the parent of JCPenney, acquired 100% of the equity of SPARC in an all-equity transaction. The ultimate parent company of the combined entities is primarily owned by Simon Property Group, Brookfield Corporation, and ABG. As described in greater detail herein, SPARC has historically provided, and continues to provide, a variety of operational and financial support to the Debtors. ABG currently owns the Eddie Bauer intellectual property (the "Eddie Bauer IP").

## 2.    Eddie Bauer's Business Operations Today.

### (a)    Sales Categories and Channels.

Today, the Company sells products under the Eddie Bauer name in brick-and-mortar retail stores in three primary categories: (i) sportswear; (ii) outerwear; and (iii) gifts, gear, accessories, and footwear. "Sportswear" includes a broad spectrum of men's and women's clothing, including pants, shorts, shirts, light hoodies, jackets, and other products and represents approximately 72 percent of all sales. "Outerwear" includes, among other products, the Company's array of down jacket offerings, as well as other coats and jackets, snowpants, and boots, and represents approximately 19 percent of all sales. Finally, as the name suggests, "gifts, gear, accessories, and footwear" is a catch-all category that encompasses the remainder of the Company's offerings, including hats, gloves, belts, boots, shoes, blankets, bags, and backpacks. Gifts, gear, accessories, and footwear account for approximately 9 percent of all sales. Within these varied

product categories, men's sportwear is by far the most significant driver of the Company's revenue, accounting for approximately 40 percent of all sales.

Historically, the Company maintained three primary sales channels: e-commerce, wholesale, and brick-and-mortar retail. In the 2025 fiscal year, e-commerce represented approximately 34 percent of total sales, wholesale represented approximately 24 percent, and brick-and-mortar retail made up approximately 42 percent. In 2025, the Company's brick-and-mortar retail and e-commerce business channels generated approximately $440 million in gross sales. The Company terminated its rights to operate the e-commerce and wholesale channels, effective January 31, 2026, as part of the License Termination Agreement discussed above.

Since entering into the License Termination Agreement, the Company has substantially slimmed down its operations throughout the United States and Canada. Leases for forty-nine unprofitable stores were not renewed. Store Closing Sales commenced at the remaining 175 stores between January 26, 2026 and February 7, 2026, and are expected to continue throughout these Chapter 11 Cases for any stores not sold as part of a going-concern sale of some or all of the Company's business.

**(b)    Management Services.**

In addition to financial support of approximately $215 million since the SPARC Acquisition in 2021, the Company has been able to take advantage of the expertise and resources of the entire Catalyst organization, which has supported and amplified the Company's business operations initiatives. In particular, over the last five years, SPARC and Catalyst have provided a wide array of operational support and financial assistance to the Debtors, including negotiating and maintaining a comprehensive corporate insurance program, calculating and remitting a majority of the Debtors' tax obligations on their behalf, and administering a complex suite of employee benefits. Such services have relieved the Debtors from certain substantial administrative burdens, ultimately enabling the Company to focus on delivering best-in-class products and customer experience.

Specifically, as part of the shared services arrangement, SPARC has historically (i) paid certain of the Debtors' expenses directly on the Debtors' behalf; (ii) transferred funds to the Debtors on a weekly basis to finance certain of the Debtors' expenses ((i) and (ii) together, the "Covered Expenses"); and (iii) provided the Debtors certain management and administrative services (the "SPARC Management Services"). In the case of (i), SPARC directly pays for and manages many of the Debtors' administrative functions on the Debtors' behalf, including paying employee wages, negotiating and funding employee benefits, and procuring and paying for a comprehensive corporate insurance program. With respect to (ii), SPARC remits funds to the Debtors on an as-needed basis to cover various expenses, such as the price of merchandise purchased from suppliers, that the Debtor entities typically pay for themselves. Finally, regarding (iii), certain Catalyst employees—many of whom have substantial industry expertise as retail executives—perform management and oversight functions for the Debtors. Historically, the Debtors have received an invoice allocation from SPARC for a monthly management fee that compensates SPARC for the SPARC Management Services provided by Catalyst executives and other employees (such fee, the "Management Fee"). Additionally, in the ordinary course of business, the Debtors, after paying certain expenses directly to vendors and other third parties, have historically transferred excess funds generated by their operations, if any, to SPARC on a weekly basis via an intercompany transfer (such transfers, the "SPARC Transfers").

The Debtors have benefited greatly from their shared services arrangement with SPARC. By paying directly or funding indirectly certain of the Debtors' operational expenses, including, among others, payroll expenses, insurance obligations, IT services, and marketing programs, SPARC has enabled the Debtors to preserve liquidity and meet obligations to third parties even amidst an ongoing acute liquidity

21

shortage. The Debtors have also benefited from economies of scale and synergies across the brands within Catalyst. By outsourcing accounting and treasury management functions to Catalyst, for example, personnel costs that the Debtors would otherwise have to bear alone are shared by the Debtors and other Catalyst brands. In addition, the Debtors enjoy preferential pricing on certain goods and services negotiated by Catalyst for the benefit of all brands across the Catalyst family. Finally, the shared services arrangement enables the Debtors to benefit from the operational expertise of Catalyst's leadership, who have substantial experience managing fashion brands similar to the Company.

**B.** **The Company's Prepetition Corporate and Capital Structure and Liquidity Profile.**

1. **Corporate Structure.**

An overview of the Company's current organizational structure is reflected below. The Company maintains its corporate headquarters in Bellevue, Washington.



2.    **Capital Structure.**

As of the Petition Date, the Debtors' long-term, funded debt obligations totaled approximately $1.7 billion, as reflected below:

| Prepetition Capital Structure (As of February 2026)[19] | | | | | | |
|---|---|---|---|---|---|---|
| | | Lead Lender | Maturity | Interest Rate | Commitment | Amount Outstanding |
| **ABL Facility** | **Loans** | Wells Fargo | September 19, 2030 | SOFR + 2.50% | $1,750,000,000 | **$728,477,563** |
| | **Letters of Credit** | | | Variable[20] | $202,000,000 | **$196,811,453** |
| **Term Loan Facility** | | WhiteHawk | September 19, 2030 | SOFR + 6.75% | $600,000,000 | **$600,000,000** |
| **Subordinated Loan Facility** | | Copper Retail JV LLC | February 19, 2031 | 15.0% | $211,844,000 | **$216,281,687** |
| **Total** | | | | | | **$1,741,570,703** |

While all of the Debtors are guarantors under the ABL Facility, only the U.S. Debtors are guarantors under the Term Loan Facility and Subordinated Loan Facility.  The borrower entities, specifically Penney Holdings LLC, Penney Borrower LLC, Penney OpCo LLC, and SPARC Group LLC, allocate proceeds of the Prepetition Loan Facilities to the Debtors and the other Catalyst brands according to a series of ordinary course arrangements.  In the case of the Debtors, operational shortfalls are funded by periodic draws on the ABL Facility, the proceeds of which draws are transferred through a series of intercompany transactions from the borrowers to the Debtor entities.  All of the Debtor entities have pledged substantially all of their assets in support of their respective obligations under the Prepetition Loan Facilities

(a)    **The ABL Facility.**

The U.S. Debtors guarantee all obligations, and the Canadian Debtors guarantee a portion of the obligations,[21] under that certain Credit Agreement (as amended, restated, supplemented, waived, or otherwise modified from time to time, the "ABL Credit Agreement," and the facility thereunder, the "ABL Facility") dated as of December 7, 2020 by and among Penney Holdings LLC, Penney Borrower LLC, Penney OpCo LLC, SPARC Group LLC, each Restricted Subsidiary of Penney Holdings LLC party thereto as a borrower (collectively, the "Catalyst Borrowers"), each Restricted Subsidiary of Penney Holdings LLC party thereto as a Subsidiary Guarantor (each as defined therein, and together with the Catalyst Borrowers and any other Loan Party (as defined therein), the "ABL Parties"), the lenders party thereto (the "ABL Lenders"), and Wells Fargo Bank, National Association, as administrative agent (the "ABL Agent").  The ABL Credit Agreement contemplates a revolving facility of up to $1.75 billion.  Interest under the ABL

---

[19]    The obligations set forth in this chart represent the aggregate funded debt obligations of the U.S. Debtors.

[20]    Each outstanding letter of credit issued under the Prepetition ABL Facility accrues a letter of credit fee on the stated amount thereof, which fee varies based on whether the letter of credit is a standby letter of credit or a trade letter of credit.

[21]    The Canadian Debtors' guarantee is limited to $6.4 million of obligations under the ABL Credit Agreement.

Facility accrues at SOFR[22] *plus* 2.5 percent annually, subject to an interest rate step-down of 2.25 percent annually and 2.0 percent annually based on the Quarterly Average Excess Availability (as defined in the ABL Credit Agreement) and is paid in cash.

The obligations under the ABL Facility (the "ABL Obligations," and claims on account of the ABL Obligations, the "ABL Claims") mature on September 19, 2030, and are secured by liens on substantially all of the assets of the ABL Parties.  As of the Petition Date, an aggregate amount of approximately $728 million in unpaid principal and accrued but unpaid interest was outstanding under the ABL Facility.

### (b)    The Term Loan Facility.

The U.S. Debtors guarantee all obligations pursuant to that certain Credit Agreement (as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "Term Loan Credit Agreement"), dated as of September 19, 2025, by and among the Catalyst Borrowers, each other restricted subsidiary of Penney Holdings LLC party thereto as a subsidiary guarantor (together with the Catalyst Borrowers, the "Term Loan Parties"), each lender from time to time party thereto (collectively, the "Term Loan Lenders"), and WhiteHawk Capital Partners LP (the "Term Loan Agent"), as administrative agent and collateral agent.  The Term Loan Credit Agreement contemplates a term loan facility (the "Term Loan Facility") of up to $600 million in aggregate principal, with interest accruing at SOFR *plus* 6.75 percent annually and is paid in cash.

The obligations under the Term Loan Credit Agreement (the "Term Loan Obligations") mature on September 19, 2030, and are secured by liens on substantially all of the assets of the Term Loan Parties.  As of the Petition Date, approximately $600 million in unpaid principal was outstanding under the Term Loan Facility.

### (c)    The Subordinated Loan Facility.

The U.S. Debtors guarantee all obligations pursuant to that certain Second Amendment to Amended and Restated Term Loan Credit Agreement (as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "Subordinated Loan Credit Agreement," and collectively with the ABL Credit Agreement and the Term Loan Credit Agreement, the "Prepetition Credit Agreements"), dated as of September 19, 2025, by and among the Catalyst Borrowers, each Restricted Subsidiary of Penney Holdings LLC party thereto as a Subsidiary Guarantor (as defined therein) (together with the Catalyst Borrowers, the "Subordinated Loan Parties," and, together with the ABL Parties and the Term Loan Parties, the "Prepetition Loan Parties"), each Lender (as defined therein) party thereto from time to time (collectively, the "Subordinated Loan Lenders," and, together with the ABL Lenders and the Term Loan Lenders, the "Prepetition Lenders"), and Copper Retail JV LLC, as administrative agent (the "Subordinated Loan Agent").  The Subordinated Loan Credit Agreement contemplates a term loan facility (the "Subordinated Loan Facility," and, together with the ABL Facility and Term Loan Facility, the "Prepetition Loan Facilities") of up to $216.2 million in aggregate principal, with compounding interest accruing at a rate of 15 percent, which, at the election of the Lead Administrative Borrower (as defined in the Subordinated Loan Credit Agreement) may be paid in kind.

The obligations under the Subordinated Loan Credit Agreement (the "Subordinated Loan Obligations") mature on February 19, 2031, and are secured by liens on substantially all of the assets of the

---

[22]    "SOFR" means the secured overnight financing rate published by the Federal Reserve Bank of New York (or by a successor) at http://www.newyorkfed.org (or at a successor's web page).

Subordinated Loan Parties.  As of the Petition Date, approximately $216.2 million in unpaid principal remained outstanding on account of the Subordinated Loan Obligations.

### (d)   The Intercreditor Agreements.

In connection with the Prepetition Loan Facilities, the Prepetition Lenders are party to two intercreditor agreements, which delineate collateral and payment rights among the Prepetition Lenders. **First**, the Prepetition Lenders are party to that certain Intercreditor Agreement, dated as of September 19, 2025, by and among the ABL Agent, the Term Loan Agent, the ABL Parties, and the Term Loan Parties (as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "ABL-Term Intercreditor Agreement").  The ABL-Term Intercreditor Agreement allocates payment and collateral rights as between the ABL Lenders and the Term Loan Lenders, specifically setting out which of the Debtors' assets constitute ABL Priority Collateral and Term Loan Priority Collateral (both as defined therein) as well as payment priority with respect to each category of collateral.  **Second**, the Prepetition Lenders are also party to that certain Intercreditor Agreement, dated as of September 19, 2025, by and among the ABL Agent, the Term Loan Agent, the Subordinated Loan Agent, and the Prepetition Loan Parties (as may be amended, restated, supplemented, waived, or otherwise modified from time to time, the "Subordinated Intercreditor Agreement").  The Subordinated Intercreditor Agreement subordinates the Subordinated Loan Agent to the ABL Agent and Term Loan Agent in both lien and payment priority.

### (e)   The SPARC Intercompany Payable.

Over the course of the approximately five-year period between the SPARC Acquisition and the Petition Date, the SPARC Transfers from the Debtors to SPARC have consistently been lower than the total amount of Covered Expenses, even before accounting for the Management Fee.  As a result, over time, the Debtors have accrued the SPARC Intercompany Payable, which represents the difference between the Debtors' accrued obligations to SPARC on account of the Covered Expenses and the Management Fee, on the one hand, and the aggregate funds that the Debtors have transferred to SPARC, on the other hand.  As of the Petition Date, the SPARC Intercompany Payable totals approximately $215 million.  The Covered Expenses, the SPARC Transfers, and the SPARC Intercompany Payable are recorded in the Debtors' centralized account system, monitored closely, and reconciled monthly.

## IV.   EVENTS LEADING TO THE CHAPTER 11 FILINGS

In 2021, the Company began a new chapter following the SPARC Acquisition.  At first, the Company seemed poised to benefit from COVID-19-era changes to consumer preferences as demand for outdoor apparel and gear increased and the outdoor equipment market grew by approximately 44 percent between 2019 and 2021.  Sales were further buoyed as consumers saw their discretionary funds spike as a result of COVID-19 federal relief spending.  These years were characterized by new consumers entering the outdoor apparel market and existing customers becoming more active.  Such positive trends continued as consumers began to return to in-person shopping following the conclusion of the COVID-19 pandemic, and the Company saw positive EBITDA of $21 million during the latter eight months of the Debtors' 2021 fiscal year.  The Debtors were also able to capture operational savings and enact measures aimed to increase overall profitability.

Despite this initial optimism, however, various macroeconomic headwinds have resulted in the Company being unable to sustain profitability.  The Debtors' sales volumes have continually decreased since 2023, tracking broader trends in the outdoor retail industry.  Specifically, the Debtors' trailing twelve-month revenue has dropped 19 percent compared to Fiscal Year 2022, and gross margin compressed by approximately 9.5 percent over the same period.

25

Like many retail businesses, the long-standing impacts of COVID-19 on supply chains resulted in shipping delays and increased the cost of materials, labor, and fuel.  In addition, until recently, the Debtors' business had been materially and negatively impacted by the ability of non-U.S. online retailers to take advantage of the "de minimis exemption," which exempted goods valued under $800 from import duties.  Certain non-U.S. online retailers used this exemption and passed significant savings onto consumers.  Consequently, retailers like the Debtors that must pay tariffs to purchase product for their stores and warehouses in the United States were undercut.  Although the "de minimis exemption" was canceled in August 2025, by that point the exemption had already materially and negatively impacted the Debtors' business.  Finally, recent reciprocal tariffs have significantly raised the cost of imports from nearly all countries.  The elevated tariff environment has continued to erode margins and created a challenging and uncertain environment for many retailers, including the Debtors.

Together, these factors have resulted in a substantially diminished operational and financial outlook for the Debtors.  The Debtors have lost more than $172 million over the last three fiscal years and, in fiscal year 2025 alone, the Debtors lost approximately $80 million.

## A.    Retention of Advisors.

On September 30, 2025, the Company retained Kirkland, as legal counsel, and, on October 8, 2025, the Company retained BRG, as financial advisor, to assist in evaluating measures and transactions available to meet the Company's goal of maximizing value for all stakeholders.  In addition, the Company retained Reevemark, LLC ("Reevemark") on October 14, 2025, as communications consultant to assist with public relations considerations, communications materials, and related services, and on November 24, 2025, the Company retained SOLIC, as investment banker.  In preparation for these Chapter 11 Cases, on January 12, 2026, the Company retained Cole Schotz P.C. ("Cole Schotz"), as co-counsel and conflicts counsel.  On January 15, 2026, the Company also retained Osler, Hoskin & Harcourt LLC ("Osler"), as Canadian counsel.  In addition, on January 22, 2026, after soliciting proposals from three qualified claims and noticing firms pursuant to the Court's *Protocol for Retention of Claims and Noticing Agents under 28 U.S.C. § 156(c) Pending Adoption of Local Rule*, the Debtors retained Stretto as Claims and Noticing Agent.  Finally, on January 29, 2026, the Debtors retained the Liquidator to assist with the wind-down of the Company's brick-and-mortar retail business, and on January 31, 2026, the Company and BRG entered into a separate engagement letter, pursuant to which the Company retained Stephen Coulombe and George Pantelis as Co-Chief Restructuring Officers for each of the Debtors.

## B.    Corporate Governance.

As part of the Company's evaluation of available measures and transactions to advance its strategic goals and maximize value for stakeholders, the Company conducted a review of its existing corporate governance infrastructure in late 2025.  The Company and its Advisors determined that it was in the best interests of the Company and its stakeholders to appoint two disinterested managers to each of the boards of Debtors Eddie Bauer LLC, SPARC EB Holdings LLC, and Eddie Bauer Gift Card Services LLC.  On October 3, 2025, the Company appointed the Disinterested Managers to each such board and delegated binding authority to the Disinterested Managers to, among other things:  (a) investigate and determine whether a conflict of interests exists or is reasonably likely to exist between the Debtors, on the one hand, and any of the Debtors' current or former managers, officers, committee members, direct and indirect equity holders, successors, assigns, subsidiaries, creditors, or affiliates, among others, on the other hand (the "Conflict Matters"); (b) take any action with respect to any Conflicts Matters, including the release or settlement of potential claims or causes of action and make any decision regarding all or part of any transaction that constitutes (in whole or in part) a Conflict Matter; and (c) retain and employ legal, financial, and other advisors to assist the Disinterested Managers in fulfilling their duties.  Subsequently, on February 5, 2026, the Disinterested Managers were appointed to the boards of Debtors 13051269 Canada

26

Inc. and Eddie Bauer of Canada Corporation and delegated certain authority to review, consider, and approve transactions that constitute Conflict Matters.

Prior to the Petition Date, with the assistance of the Company's proposed co-counsel and conflicts counsel, Cole Schotz, the Disinterested Managers began an initial assessment of (a) the existence of any potential claims or causes of action that the Debtors may hold relating to insiders and other affiliated entities; and (b) whether the Debtors should retain, release, or seek to settle any such potential claims or causes of action (the "Independent Investigation").

Since their appointment, the Disinterested Managers have held meetings with the Company's Advisors to analyze and discuss any potential Conflict Matters and the facts and circumstances surrounding potential claims and causes of action.  The Disinterested Managers, along with Cole Schotz, have also obtained access to a virtual data room containing, and are conducting a comprehensive review of, over 36,399 pages of diligence materials that may be relevant to the Independent Investigation.  As of the date hereof, the Independent Investigation remains ongoing, and the Debtor Release contemplated in the Plan and the Restructuring Support Agreement remains subject to the outcome of the Independent Investigation.

C.      **Pursuit of All Reasonable Alternatives.**

The Debtors exhausted all available alternatives before electing to commence these Chapter 11 Cases.  Specifically, in an effort to maximize value for all stakeholders, the Company (a) engaged in a variety of operational cost-cutting measures in an attempt to address the Company's sizable operating expenses, (b) made changes to its leadership team, including appointing a new Chief Executive Officer, Ken Ohashi, in January 2025, (c) evaluated and modified its merchandising strategy, (d) exited certain unprofitable store locations; and (e) began to explore a going concern sale of all or substantially all of the Company's brick-and-mortar retail business that is expected to continue during these Chapter 11 Cases. During this critical prepetition period while the Debtors explored every available avenue, SPARC continued to support the Company by funding the Debtors' operations.

D.      **The License Termination Transaction.**

As part of the SPARC Acquisition, the Company entered into the License Agreement, pursuant to which the Company licensed the Eddie Bauer IP from ABG for use in its e-commerce, wholesale, and brick-and-mortar retail business channels.  In exchange for the license rights, the Company paid fees based on net sales.  In addition to the percentage fees, the License Agreement contemplated a significant guaranteed minimum royalty (the "GMR") and an annual marketing fee (the "Annual Marketing Fee"), both of which were payable regardless of the Company's sales performance.  The initial term of the License Agreement ran through January 31, 2032.

In late 2025, the Debtors and the Advisors determined that sales had declined to an extent that they could no longer support payment of the fixed licensing fees.  Accordingly, the Company and ABG entered into discussions regarding the future of the License Agreement.  Following good-faith, arm's length negotiations and an exploration of alternatives, the Debtors and ABG entered into the License Termination Agreement.  The License Termination Agreement contained several key terms, among others:

- *Mutual Termination of Wholesale and E-Commerce Rights.* The License Termination Agreement terminated the wholesale and e-commerce rights of the Company in exchange for eliminating the GMR and Annual Marketing Fee.  The wholesale and e-commerce rights were transferred to Outdoor 5, LLC ("O5"), which is not part of these Chapter 11 Cases;

- ***Retention of North American Retail Rights.***  The License Termination Agreement contemplated the Company's retention of the license to operate brick-and-mortar retail locations and sell merchandise under the Eddie Bauer IP, subject only to actual and accrued royalties; and

- ***Sell-Off Period.***  The License Termination Agreement also contemplated a one-year sell-off period, during which the Company can sell existing e-commerce and wholesale inventory through its retail stores or existing wholesale relationships in the United States and Canada, subject to actual and accrued royalty fees.

The License Termination Agreement promised to save the Debtors approximately $220 million of combined GMR and Annual Marketing Fee obligations over the remaining term of the License Agreement. Additionally, the wholesale channel had become unprofitable, and the e-commerce channel had become only marginally profitable.  Accordingly, the Disinterested Managers determined that the License Termination Agreement represented the most value-maximizing path forward for the Company and, on October 10, 2025, voted to approve entry into the agreement.  The License Termination Agreement became effective as of January 31, 2026, on which date the Company's right to operate the e-commerce and wholesale businesses was formally terminated.  Following that date, the Company retained the right to operate its retail stores in the United States and Canada and remains obligated to pay the actual accrued royalty calculated as a percentage of net store sales without the accrual of any additional minimums or annual fees.

In addition, the License Termination Agreement required the Company to use commercially reasonable efforts to transfer the e-commerce and wholesale business channels, including related inventory, to O5 as third-party designee of ABG (the "O5 Transition").  Pursuant to the License Termination Agreement, the Company, with the assistance of Kirkland and BRG, negotiated a series of formal agreements (the "O5 Transition Documents") with O5 to effectuate the transfer of certain inventory, allocation of liabilities, treatment of employees, and the provision of transition services related to the e-commerce and wholesale businesses from the Company to O5.  On December 9, 2025, the Company entered into a series of agreements to effectuate the O5 Transition as contemplated by the License Termination Agreement, and on January 31, 2026, the License Termination Agreement became effective, formally terminating the Company's rights to operate the wholesale and e-commerce businesses.

### E.    The Store Closing Sales.

In addition to the License Termination Agreement, the Sale Process, and multiple other measures to maximize value, the Debtors initiated Store Closing Sales in all of their stores prior to the Petition Date in an effort to generate liquidity and reduce labor costs.  To streamline and facilitate the Store Closing Sales and store closings, the Debtors entered into a consulting agreement with the Liquidator to conduct Store Closing Sales on a pre- and postpetition basis.  The Debtors evaluated other national liquidation firms before selecting the Liquidator and determined that that the terms set forth in such agreement, including a percentage fee based on the proceeds from asset dispositions, were the best and most value-maximizing alternative for the conduct of asset sales and store closures.  The Debtors believe that utilizing the skills and resources of the Liquidator to effectively and efficiently conduct the sales and store closings will maximize value for all stakeholders.

Prior to the Petition Date, the Debtors took several steps to rationalize their lease footprint.  ***First***, leases for unprofitable stores were allowed to expire without renewal, specifically including forty-nine expiring on January 31, 2026.  As of the Petition Date, all such closings were completed.  ***Second***, on January 29, 2026, the Debtors executed the Agency Agreement with the Agent so that they could be prepared to effectuate a liquidation of all or any portion of their remaining store locations.  Store Closing

Sales commenced at the remaining 175 stores in the Debtors' brick-and-mortar retail footprint between January 26, 2026, and February 7, 2026, and have been ongoing throughout these Chapter 11 Cases.  The proceeds and eventual labor cost savings from these store closings are expected to provide the Debtors with much needed liquidity and will help fund these Chapter 11 Cases

### F.    The Brick-and-Mortar Retail Sale Process.

As previously discussed, the Company retained SOLIC to, among other things, develop and conduct the Sale Process for a potential going-concern sale of all or substantially all of the Company's remaining brick-and-mortar retail operations.  Prior to the Petition Date, the Debtors, with SOLIC's assistance, contacted 126 potential acquirers, including sixty-eight financial and fifty-eight strategic counterparties with investments and/or operational experience in the consumer retail space.  On January 16, 2026, SOLIC distributed a formal process letter informing these strategic and financial investors that initial indications of interest were to be submitted no later than January 30, 2026, by which date the Company received two IOIs from parties expressing interest in some or all of the Debtors' assets.  The Company commenced negotiations prior to the Petition Date.

As of the date hereof, thirty-four parties have executed nondisclosure agreements and been provided with access to the Debtors' virtual data room containing diligence materials regarding the Company (the "Data Room"), a confidential information presentation, and additional financial, operational, and legal diligence materials.  The process for soliciting formal bids will be conducted pursuant to the Bidding Procedures.  The procedures set forth in the Bidding Procedures create an orderly process for parties to submit formal bids and, if necessary, participate in an auction to select the highest or otherwise best bid.  The Bidding Procedures will ensure that any going-concern sale maximizes value for the Debtors, their creditors, and other parties in interest.

### G.    The Restructuring Support Agreement.

Notwithstanding the Debtors' efforts to pursue all available alternatives, in January 2026 it became clear to the Debtors, their management, and the Debtors' boards of directors that a comprehensive restructuring would be necessary to address the Debtors' balance sheet and operational challenges, especially in light of SPARC's message to the Company that SPARC intended to stop funding the Debtors' operations imminently.  Accordingly, the Debtors, with the assistance of their Advisors, engaged in hard fought, arm's-length negotiations with the Prepetition Lenders that culminated in the Restructuring Support Agreement.

Given that most Catalyst entities—including operating entities across all six of the Catalyst brands—are obligated on the Prepetition Loan Facilities, negotiations also focused on a potential amendment and forbearance agreement to be executed in anticipation of a potential chapter 11 filing by the Debtor entities.  Absent such an amendment and forbearance, the chapter 11 filing of the Debtors would have triggered events of default under the Prepetition Loan Facilities and entitled the Prepetition Lenders to accelerate their debt across the entire Catalyst enterprise.

On February 8, 2026, following good-faith, arm's-length negotiations, the Debtors and the Prepetition Lenders entered into an amendment and forbearance agreement (the "Amendment and Forbearance Agreement") pursuant to which (a) the Prepetition Lenders consented to the Debtors' entry into the Restructuring Support Agreement and consummation of the Restructuring Transactions; (b) the parties agreed that the Restructuring Transactions do not constitute a Default, Event of Default, or Material Adverse Effect under and as defined in the Prepetition Credit Agreements; and (c) Debtor entities

13051269 Canada Inc. and Eddie Bauer of Canada Corporation agreed to provide a limited, secured guarantee of up to $6.4 million of the obligations under the ABL Facility.

The Restructuring Support Agreement puts the Debtors in a position to (a) continue the Sale Process and, to the extent that doing so is value-maximizing, conduct an expeditious, going-concern sale of all or part of the Debtors' remaining operations and (b) pursue a winddown of any portion of the Company's remaining operations not sold in a Sale Transaction. Specifically, the Restructuring Support Agreement contemplates a transaction in accordance with the following key terms, among others:

- **Transactions and Implementation.** The Debtors may pursue (a) a Sale Transaction; and (b) notwithstanding the Sale Process, the Debtors will continue the Store Closing Sales.

- **Distributions to Creditors Pursuant to Chapter 11 Plan.** Through the Restructuring Support Agreement, the Debtors' entire funded-debt capital structure committed to support confirmation of the Plan, which (a) will pay all allowed administrative and priority claims in full; (b) provides that, subject to the class of general unsecured creditors voting to accept the Plan, 100% of Net Proceeds, whether from a going-concern sale or Store Closing Sales, *less* the GUC Contingent Recovery Pool, will be distributed to the ABL Lenders, with general unsecured creditors receiving their *pro rata* share of the GUC Contingent Recovery Pool; and (c) provides that Term Loan Claims, Subordinated Loan Claims, and existing equity interests will be extinguished with no recovery from the Debtors' estates, and holders of such claims will forego a distribution from the Debtors they would otherwise have had a right to in the event the class of general unsecured claims votes to accept the Plan. Notwithstanding the foregoing, all ABL Claims, Term Loan Claims, and Subordinated Loan Claims shall be reserved and preserved as against all Persons or Entities other than the Debtors (and as to the Debtors, all Allowed ABL Claims, Allowed Term Loan Claims, and Subordinated Loan Claims shall be subject to the Plan and Confirmation Order).

- **Releases.** The Plan contains the Debtor Release and the Third-Party Release, which are subject to the results of the Independent Investigation.

- **Amendment and Waiver.** Each of the Consenting Lenders (as defined in the Restructuring Support Agreement) executed amendments to their respective credit agreements waiving their rights to pursue remedies against any non-Debtor party, arising out of or related to the commencement and prosecution of the Chapter 11 Cases.

- **Cash Collateral.** The transactions contemplated by the Restructuring Support Agreement are to be funded through (a) the consensual use of cash collateral, (b) proceeds from the Debtors' ordinary course operations and/or Store Closing Sales, and (c) proceeds from any sale transaction or inventory liquidation.

- **Wind Down.** Following the conclusion of all Store Closing Sales and, if applicable, a going-concern sale, the Debtors will effectuate the Wind-Down.

- **Milestones.** The Restructuring Support Agreement requires the Debtors to file the Plan and the Disclosure Statement within fourteen days of the Petition Date, and to obtain confirmation of the Plan within seventy days of the Petition Date. The Restructuring Support Agreement milestones also include a bid deadline on or around March 3, 2026,

an auction (if needed) on or around March 6, 2026, and a sale hearing on or about March 12, 2026.

After executing the Restructuring Support Agreement on February 8, 2026, the Debtors commenced these Chapter 11 Cases on the Petition Date in order to implement the Restructuring Transactions for the benefit of all stakeholders.

## V.   MATERIAL DEVELOPMENTS AND ANTICIPATED DEVELOPMENTS OF THE CHAPTER 11 CASES

### A.   First Day Relief.

On the Petition Date, the Debtors filed several motions (the "First Day Motions") designed to facilitate the administration of the Chapter 11 Cases and minimize disruption to the Debtors' operations. A brief description of each of the First Day Motions and the evidence in support thereof is set forth in the First Day Declaration. At a hearing on February 10, 2026 (the "First Day Hearing"), the Bankruptcy Court granted certain of the relief initially requested in the First Day Motions on an interim and final basis, as applicable. As of the date hereof, the Bankruptcy Court has granted all of the First Day Motions on an interim or final basis, as specified below: [23]

- **Automatic Stay Motion**: On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 60] approving the *Debtors' Motion for Entry of an Order (I) Restating and Enforcing the Worldwide Automatic Stay, Anti-Discrimination Provisions, and Ipso Facto Protections of the Bankruptcy Code; (II) Approving the Form and Manner of Notice; and (III) Granting Related Relief* [Docket No. 18] on a final basis.

- **Cash Management Motion**: On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 66] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Using the Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Debtor Bank Accounts, Business Forms, and Books and Records; (II) Authorizing the Debtors to Continue to Perform Intercompany Transactions; (III) Waiving Certain U.S. Trustee Requirements; and (IV) Granting Related Relief* [Docket No. 9] (the "Cash Management Motion") on an interim basis. At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Cash Management Motion on a final basis.

- **Chapter 11 Complex Case Designation Application**: On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 57] approving the *Debtors' Application for Designation as Chapter 11 Complex Case* [Docket No. 4] on a final basis.

- **Creditor Matrix Motion**: On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 70] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) File a Consolidated List of the Debtors' Thirty Largest Unsecured Creditors, (B) File a Consolidated List of Creditors in Lieu of Submitting a Separate Mailing Matrix for Each Debtor, (C) Redact Certain Confidential Information of Customers, (D) Redact Certain Personally Identifiable Information of Individuals, and (E) Serve Certain Parties in Interest by Email; (II) Approving the Form and Manner of Service of the Notice of*

---

[23]   The First Day Motions, and all orders for relief entered in the Chapter 11 Cases, can be viewed free of charge on the website of the Claims and Noticing Agent at https://cases.stretto.com/eddiebauer/.

*Commencement; and (III) Granting Related Relief* (the "Creditor Matrix Motion") [Docket No. 20] on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Creditor Matrix Motion on a final basis.

- **Critical Vendors Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 64] (the "Critical Vendors Order") approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants; (II) Granting Administrative Expense Priority to Undisputed Obligations on Account of Outstanding Orders; and (III) Granting Related Relief* [Docket No. 14] ("Critical Vendors Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Critical Vendors Motion on a final basis.

- **Customer Programs Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 68] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain and Administer Customer Programs and (B) Honor Certain Prepetition Obligations Related Thereto and (II) Granting Related Relief* [Docket No. 19] (the "Customer Programs Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Customer Programs Motion on a final basis.

- **Foreign Representative Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 61] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Prepetition Claims of Certain Critical Vendors, Foreign Vendors, 503(B)(9) Claimants, and Lien Claimants; (II) Granting Administrative Expense Priority to Undisputed Obligations on Account of Outstanding Orders; and (III) Granting Related Relief* [Docket No. 14] (the "Foreign Representative Motion") on a final basis.

- **Insurance & Surety Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 71] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Insurance and Surety Coverage and the Surety Standby Letter of Credit Entered into Prepetition and Pay Related Prepetition Obligations and (B) Renew, Supplement, Modify, or Purchase Insurance, Surety Coverage, and Letters of Credit; and (II) Granting Related Relief* [Docket No. 15] (the "Insurance & Surety Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Insurance & Surety Motion on a final basis.

- **Joint Administration Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 56] approving the *Debtors' Motion for Entry of an Order (I) Directing Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 3] on a final basis.

- **Schedules/SOFAs Extension Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 59] (the "Schedules/SOFAs Extension Order") approving the *Debtors' Motion for Entry of an Order (I) Extending Time to File Schedules of Assets and Liabilities and Statements of Financial Affairs; and (II) Granting Related Relief* [Docket No. 21] on a final basis.

- **Scheduling Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 73] (the "Scheduling Order") approving the *Debtors' Motion for Entry of an Order (I) Scheduling Hearings and Objection Deadlines with Respect to the Debtors' Disclosure*

*Statement and Plan Confirmation and (II) Shortening the Notice Requirements Related Thereto* [Docket No. 6] on a final basis.

- **Store Closing Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 68] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Agency Agreement; (II) Authorizing and Approving the Conduct of Store Closing Sales and the Related Sale Guidelines, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances; (III) Modifying Customer Programs at the Closing Stores; and (IV) Granting Related Relief* [Docket No. 12] (the "Store Closing Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Store Closing Motion on a final basis.

- **Stretto Retention Application**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 5] approving the *Debtors' Application for Entry of an Order (I) Authorizing the Appointment of Stretto, Inc. as Claims and Noticing Agent Effective as of the Petition Date and (II) Granting Related Relief* [Docket No. 5] (the "Stretto Retention Application") on a final basis.

- **Taxes Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 63] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* [Docket No. 16] (the "Taxes Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Taxes Motion on a final basis.

- **Utilities Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 69] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment for Future Utility Services; (II) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Services; (III) Approving the Debtors' Proposed Procedures for Resolving Adequate Assurance Requests; (IV) Authorizing Fee Payments to the Utility Agents; and (V) Granting Related Relief* [Docket No. 17] (the "Utilities Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Utilities Motion on a final basis.

- **Wages Motion**:  On February 10, 2026, the Bankruptcy Court entered an order [Docket No. 62] approving the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses, and (B) Continue Employee Benefits Programs; and (II) Granting Related Relief* [Docket No. 13] ("Wages Motion") on an interim basis.  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Utilities Motion on a final basis.

## B.    Second Day and Other Relief.

Following the First Day Hearing, the Debtors filed certain motions seeking approval of interim or continuing professional compensation procedures to allow the Debtors to continue to progress in these Chapter 11 Cases:

- **Interim Compensation Motion**:  The Debtors anticipate that, at or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will enter an order (the "Interim Compensation Order") approving the *Debtors' Motion for Entry of an Administrative Fee Order Establishing*

*Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court* [Docket No. 130].

- **Ordinary Course Professional Motion**:  The Debtors anticipate that, at or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will enter an order (the "Ordinary Course Professional Order") approving the *Debtors' Motion for Entry of an Order Authorizing Employment and Payment of Professionals Utilized in the Ordinary Course of Business* [Docket No. 87].

### C.    Use of Cash Collateral.

The Debtors' businesses are cash-intensive, with significant daily and monthly cash needs to meet obligations to vendors, employees, and landlords, among others.  Prior to the Petition Date, however, substantially all of the Debtors' approximately $20 million in cash on hand was encumbered by validly perfected, unavoidable liens.  Accordingly, pursuant to section 363(c)(2) of the Bankruptcy Code, the Debtors would have been unable to use such cash absent relief from the Bankruptcy Court.  In light of these considerations, the Debtors commenced negotiations with the Prepetition Secured Parties[24] to obtain consensual use of their cash collateral to fund day-to-day operations during the Chapter 11 Cases.  With the assistance of BRG and other Advisors, the Debtors analyzed their projected cash needs and prepared a 13-week cash flow forecast (the "Budget") for the use of Cash Collateral during the Chapter 11 Cases.  Considerations underlying the Budget relate to forecasts of amounts needed to administer these Chapter 11 Cases, satisfy operational and trade payable obligations, and maximize the value of their estates.

Following good-faith, arm's-length negotiations, on the Petition Date, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 7] (the "Cash Collateral Motion") to obtain access to cash collateral on a consensual basis subject to provision of a standard adequate protection package to the Prepetition Secured Parties.  On February 10, 2026, the Bankruptcy Court entered an order approving the Cash Collateral Motion on an interim basis [Docket No. 67] (together with any order or orders, individually or collectively (as the context may require), entered in the Chapter 11 Cases authorizing the use of cash collateral (whether interim or final) that has been consented to and approved by the Consenting ABL Lenders, the "Cash Collateral Order").  At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Cash Collateral Motion on a final basis.

The relief granted in the Cash Collateral Order includes certain adequate protection (the "Adequate Protection Obligations") in favor of the Prepetition Secured Parties.  The Adequate Protection Obligations were intended to adequately protect the Prepetition Secured Parties from any diminution in the value, from and after the Petition Date, of their respective interests in the Prepetition Collateral (collectively, the "Diminution in Value").[25]  Specifically, the Prepetition Secured Parties were granted:

1.  Replacement liens on all or substantially all of the Debtors' assets (the "Adequate Protection Liens").  Subject to the Carve Out[26] and certain other liens, the terms of the Cash Collateral Order, and the

---

[24]    "Prepetition Secured Parties" has the meaning set forth in the Cash Collateral Order.

[25]    "Prepetition Collateral" has the meaning set forth in the Cash Collateral Order.

[26]    "Carve Out" has the meanings set forth in the Cash Collateral Order.

Intercreditor Agreements, the Adequate Protection Liens are senior to all other liens in the Debtors' assets; and

2.  Superpriority administrative expense claims (the "Superpriority Claims") in the amount of any Diminution in Value.  Subject to the Carve Out, the terms of the Cash Collateral Order, and the Intercreditor Agreements, the Superpriority Claims are senior to any and all other administrative expenses claims.

As additional adequate protection, the ABL Agent, on behalf of the ABL Lenders, will receive adequate protection cash payments (each, a "Weekly Paydown") in an amount equal to the greater of (i) the amount set forth in the line item titled "Distribution to Creditors," for the week of the determination date as set forth in the applicable Approved Budget (as defined in the Cash Collateral Order), and (ii) the Minimum Sweep Balance[27] as of the determination date (such amount, the "Weekly Paydown Amount"), subject to certain adjustments.

###    D.    Lease Rejections and Optimization.

As discussed in the First Day Declaration, one of the Company's key prepetition and postpetition objectives has been the continuation and completion of the Debtors' ongoing effort to rationalize their retail store footprint.  Such efforts have included:

###        1.    Store Closing Sales.

On February 9, 2026, the Debtors filed the Store Closing Motion, through which the Debtors sought approval of certain Sale Guidelines (as defined in the Store Closing Motion) and authority to continue Store Closing Sales at all of their retail locations.  The Store Closing Sales will continue throughout these Chapter 11 Cases unless the Debtors determine in their business judgment that it would be more value-maximizing to cease some or all of the Store Closing Sales and pivot to a Sale Transaction.

###        2.    Lease Rejections.

On February 11, 2026, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases; and (II) Granting Related Relief* [Docket No. 86] (the "Assumption-Rejection Procedures Motion," and the procedures contemplated thereby, the "Assumption-Rejection Procedures"), through which the Debtors sought approval of certain procedures for assuming or rejecting executory contracts and unexpired leases. At or before a hearing scheduled for March 3, 2026, the Bankruptcy Court will consider approving the Assumption-Rejection Procedures Motion on a final basis.

---

[27]  "Minimum Sweep Balance" means (a) the Debtors' good faith estimate of the actual ending cash balance as of the end of the determination date, *less* (b) the amount set forth in the line item titled "Ending Book Cash" for the week of the determination date in the applicable Approved Budget, *less* (c) all outstanding and unpaid disbursements through the determination date in the applicable Approved Budget, *less* (d) the greater of (i) zero, and (ii) (x) actual total cash receipts through the determination date *less* (y) the amount set forth in the line item titled "Cash Receipts" through the determination date in the applicable Approved Budget, *less* (e) the amount, if any, by which the amount due to be funded into the Funded Reserve Account (as defined in the Cash Collateral Order) pursuant to paragraph 13 of the Cash Collateral Order for such week exceeds the amount set forth in the line item titled "Professional Fees" for the week of the determination date in the applicable Approved Budget, *less* (f) the incremental amount attributable to the Permitted Variance (as defined in the Cash Collateral Order) applicable to such outstanding and unpaid disbursements referenced in (c).

E.      **Sale Process.**

The Debtors entered the Chapter 11 Cases with the intent to continue the Sale Process while monetizing existing inventory through the Store Closing Sales.  Prior to the Petition Date, SOLIC contacted 126 potential acquirers, including sixty-eight financial and fifty-eight strategic counterparties with investments and/or operational experience in the consumer retail space, and executed nondisclosure agreements with thirty-four parties who were provided access to the Data Room.  The two IOI Parties submitted IOIs prior to the Petition Date.

SOLIC continued the Sale Process postpetition and continued to engage with the IOI Parties to pursue the bids contemplated in the IOIs.  SOLIC conducted outreach to additional potentially interested parties as part of the postpetition marketing process, resulting in execution of one additional nondisclosure agreement as of the filing of this Disclosure Statement.

To streamline the Sale Process on a postpetition basis, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Approving the Bidding Procedures and Stalking Horse Bid Protections, (II) Scheduling Certain Dates and Deadlines with Respect Thereto, (III) Approving the Form and Manner of Notice Thereof, (IV) Establishing Notice and Procedures for the Assumption and Assignment of Contracts and Leases, (V) Authorizing the Assumption and Assignment of Assumed Contracts, (VI) Authorizing the Sale of Assets, and (VII) Granting Related Relief* [Docket No. 10] (the "Bidding Procedures Motion"), seeking approval of the Bidding Procedures.  On February 10, 2026, the Bankruptcy Court entered the Bidding Procedures Order approving the Bidding Procedures Motion and granting related relief.  The Bidding Procedures provide for a bid deadline of March 3, 2026, at 5:00 p.m., prevailing Eastern Time, an auction date of March 6, 2026, at 10:00 a.m., prevailing Eastern Time, a sale objection deadline of March 9, 2026, at 5:00 p.m., and a proposed sale hearing date of March 12, 2026.

To the extent that the Debtors, with the advice and assistance of SOLIC and the other Advisors, receive an actionable proposal for a going-concern sale of some or all of the Debtors' business, the Debtors will consider ceasing Store Closing Sales at the applicable retail locations and pivoting to a Sale Transaction to the extent that doing so would maximize value for the Debtors, their Estates, and other parties in interest.

F.      **The Bar Date Order.**

Contemporaneously herewith, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(b)(9) of the Bankruptcy Code, (II) Establishing a Rejection Damages Bar Date and an Amended Schedules Bar Date, (III) Approving the Form and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Form and Manner of Notice Thereof, and (V) Granting Related Relief* (the "Bar Date Motion") seeking approval of a proposed bar date order (the "Proposed Bar Date Order").  Pursuant to the Proposed Bar Date Order, if entered by the Bankruptcy Court, the last date for certain persons and entities to file Proofs of Claim[28] in these Chapter 11 Cases would be April 7, 2026 at 5:00 p.m. (prevailing Eastern Time) (the "General Claims Bar Date") and the last date for governmental units to file Proofs of Claim in the Debtors' Chapter 11 Cases would be August 10, 2026, at 5:00 p.m. (prevailing Eastern Time).

G.      **Schedules and Statements.**

On February 10, 2026, the Bankruptcy Court entered the Schedules/SOFAs Extension Order extending the deadline by which the Debtors were required to file their schedules of assets and liabilities

---

[28]   "Proofs of Claim" has the meaning set forth in the Proposed Bar Date Order.

and statements of financial affairs (the "Schedules and Statements") for a total of thirty-one days after the Petition Date.  Accordingly, the Debtors are required to file the Schedules and Statements by no later than March 12, 2026.  This schedule will provide creditors with ample time to analyze and evaluate scheduled claims in advance of solicitation and the General Claims Bar Date.

The Debtors and their Advisors are working expeditiously to prepare the Schedules and Statements and expect to be able to file the Schedules and Statements by the March 12, 2026 deadline.

### H.    The Disinterested Managers' Independent Investigation.

Prior to the Petition Date, the Company's board of directors appointed Jeffrey S. Stein and Anthony Horton as the Disinterested Managers.  As described in Article IV of this Disclosure Statement, the Disinterested Managers were delegated certain authority to:  (a) investigate and determine whether a conflict of interests exists or is reasonably likely to exist between the Debtors, on the one hand, and any of the Debtors' current or former managers, officers, committee members, direct and indirect equity holders, successors, assigns, subsidiaries, creditors, or affiliates, among others, on the other hand (the "Conflict Matters"); (b) take any action with respect to any Conflicts Matters, including the release or settlement of potential claims or causes of action and make any decision regarding all or part of any transaction that constitutes (in whole or in part) a Conflict Matter; and (c) retain and employ legal, financial, and other advisors to assist the Disinterested Managers in fulfilling their duties.

During the Independent Investigation, the Disinterested Managers, with the assistance of Cole Schotz, have to date issued document and information requests to the Debtors, and received and reviewed over 2,000 documents, comprising approximately 39,500 pages from the Debtors, relevant to the Independent Investigation.

The Independent Investigation remains ongoing as of the date of filing of this Disclosure Statement. During these Chapter 11 Cases, the Disinterested Managers will continue to investigate matters in accordance with their mandate and their fiduciary obligations.  Among other things, the Disinterested Managers will review substantial additional diligence materials from the Debtors and Related Parties.  The Disinterested Managers will provide further updates on the Independent Investigation when one or more amended Disclosure Statements are filed and will be prepared to advise the Bankruptcy Court on the status of the Independent Investigation at the Combined Hearing.

The outcome of the Independent Investigation could result in material modifications to the Plan, including, without limitation, changes to the release and exculpation provisions.

### I.    Proposed Confirmation Schedule.

In consultation with the Consenting Lenders, and pursuant to the milestones set forth in the Cash Collateral Order, the Restructuring Support Agreement, and the Scheduling Order, the Debtors have agreed to certain dates and deadlines to ensure an expeditious and value-maximizing conclusion to these Chapter 11 Cases.  The Debtors intend to proceed swiftly to confirmation of the Plan and emergence from these Chapter 11 Cases to mitigate uncertainty and curtail professional fees and administrative costs.  To that end, the Debtors have proposed the following case timeline, subject to Court approval and availability:

| Event | Date |
|---|---|
| Voting Record Date | March 16, 2026 |
| Solicitation Package Mailing Deadline[29] | Five days following the entry of the Disclosure Statement Order[30] |
| Combined Hearing Notice and Publication Deadline | March 17, 2026 |
| Plan Supplement Filing Deadline | April 1, 2026 |
| Voting and Opt-Out Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time |
| Combined Objection Deadline | April 14, 2026, at 4:00 p.m., prevailing Eastern Time |
| Deadline to File Voting Report | April 15, 2026, at 2:00 p.m., prevailing Eastern Time |
| Confirmation Brief Deadline | April 15, 2026 |
| Combined Hearing Date | April 16, 2026 |

## VI.    OVERVIEW OF THE PLAN

A bankruptcy court's confirmation of a chapter 11 plan binds the debtor, any entity or person acquiring property under the plan, any creditor of or equity security holder in a debtor, and any other entities and persons to the extent ordered by the bankruptcy court pursuant to the terms of the confirmed plan, regardless of whether such entity or person is impaired pursuant to the plan, has voted to accept the plan, or receives or retains property under the plan.  The Plan contemplates the distribution of the proceeds from the Sale Transaction, if applicable, and the Store Closing Sales.  The Plan is the best path forward for the Debtors and their estates.

The key terms of the Plan can be found in the Plan itself, attached hereto as **Exhibit A**, and in summary below and herein.

### A.    General Settlement of Claims and Interests.

As discussed in detail in the Plan and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good faith compromise and settlement of all such Claims, Interests, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best

---

[29]    If a valid Proof of Claim for a Claim in a Voting Class (a) that is not listed in the Schedules and (b) with respect to which a valid Proof of Claim has not been filed as of the Voting Record Date (an "Unknown Eligible Claim") is filed on or after the Voting Record Date and before the applicable general claims bar date (the "Claims Bar Date") established in connection with the Bar Date Motion, then the Claims and Noticing Agent will distribute a Solicitation Package to the Holder of such Unknown Eligible Claim within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.  Such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline for such Ballot to be counted.

[30]    "Disclosure Statement Order" means the Order attached as Exhibit A to the Disclosure Statement Motion.

38

interests of the Debtors and their Estates.  Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

**B.    Sale Transaction.**

The Debtors are in the process of conducting the Sale Process in accordance with the Bidding Procedures in order to identify and consummate a Sale Transaction to the extent that doing so would maximize the value of the Debtors' Estates.  To the extent that the Debtors, in their business judgment, elect to consummate a Sale Transaction, the Debtors shall seek Court approval of such Sale Transaction before or in connection with Consummation of the Plan

Pursuant to any Sale Transaction, the Acquired Assets shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances (except for those Liens, Claims, charges, Interests, or other encumbrances expressly assumed by the Purchaser pursuant to the terms of the Sale Transaction Documents) pursuant to sections 363 and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Sale Transaction Documents.  In exchange, the Purchaser shall pay to the Debtors the Sale Proceeds in accordance with the terms of the Sale Transaction Documents.

The Debtors and the Purchaser shall be authorized to take all actions as may be deemed necessary or appropriate to consummate the Sale Transaction pursuant to the terms of the Purchase Agreement, the Sale Order, and the Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without (i) further notice to or order of the Bankruptcy Court; (ii) any requirement to take any other action under applicable law, regulation, order, or rule; or (iii) the vote, consent, authorization, or approval of any Entity.  On and after the Effective Date, except as expressly set forth in the Purchase Agreement, the Sale Order, or other order of the Bankruptcy Court, neither the Purchaser nor any of its affiliates shall be liable for any Claims, Administrative Claims, or other liabilities of the Debtors or the Wind-Down Debtors (which shall be payable solely in accordance with the Plan) that do not constitute Assumed Liabilities or that were not otherwise transferred or assigned to the Purchaser or any of its affiliates pursuant to the Purchase Agreement, the Sale Order, or other order of the Bankruptcy Court.

On and after the Effective Date, except as otherwise provided in the Plan, the Wind-Down Debtors or the Purchaser, as applicable, may operate their business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; *provided,* that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing.

**C.    Store Closing Sales.**

The Debtors are in the process of conducting store-closing sales at all of the Debtors' store locations in accordance with the Store Closing Order.  The Debtors shall be authorized to take all actions necessary or appropriate to implement and consummate the Store Closing Sales, including entering into and performing under liquidation agreements, discounting and selling inventory, advertising and conducting store closing sales, rejecting executory contracts and unexpired leases in connection therewith, and taking such other actions as are customary in connection with retail liquidations, without further order of the Bankruptcy Court, except as otherwise provided in the Plan, the Store Closing Order, or any other Final Order.

Notwithstanding the foregoing, the Debtors, in consultation with the Consenting Lenders, shall retain the right, in the exercise of their business judgment, to suspend or terminate the Store Closing Sales

and pursue a Sale Transaction to the extent the Debtors determine that doing so would maximize the value of the Debtors' Estates.

**D.      Sources of Consideration for Plan Distributions.**

On or after the Effective Date, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall fund or make distributions under the Plan, as applicable, with:  (i) the Debtors' Cash on hand; (ii) the proceeds from the Debtors' ordinary course operations and Store Closing Sales; and (iii) the Sale Proceeds, if *applicable*.  Each distribution and issuance referred to in Article VI of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

**E.      Employment Obligations.**

The Debtors do not maintain any retiree benefit plans within the meaning of section 1114 of the Bankruptcy Code and, accordingly, section 1129(a)(13) of the Bankruptcy Code is inapplicable. To the extent any such retiree benefit obligations are determined to exist, on the Effective Date, the Wind-Down Debtors shall assume and continue to pay such benefits in accordance with applicable law, thereby satisfying the requirements of section 1129(a)(13) of the Bankruptcy Code.

**F.      The Wind-Down.**

**1.      Wind-Down Transaction**

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall enter into any transaction and shall take all actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including the steps set forth in the Wind-Down Transactions Memorandum, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down Transactions that are consistent with and pursuant to the terms and conditions of the Plan, including, as applicable: (i) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other term to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Plan Supplement, and/or the Restructuring Support Agreement and having other terms with which the applicable parties agree; (iii) to the extent applicable, the filing of a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); (iv) if applicable, effectuate distributions contemplated by the Plan; (v) liquidating or otherwise monetizing the Wind-Down Assets; and (vi) such other transactions that, in the business judgement of the Debtors, the Wind-Down Debtors, or the Plan Administrator, if applicable are required to effectuate the Wind-Down Transactions.

The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.  On and after the Effective Date, the Wind-Down Debtors or the Plan Administrator, as applicable, will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of any Debtor.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and of the Plan Administrator Agreement, compromise or settle any Wind-Down Assets remaining with the Wind-Down Debtors as a successor to the Debtors. On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action or Claims relating to any Wind-Down Assets remaining with the Wind-Down Debtors as successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided for in the Plan and in the Plan Administrator Agreement. The Wind-Down Debtors and the Plan Administrator shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

### 2.  Wind-Down Debtors.

The Debtors shall continue in existence after the Effective Date as the Wind-Down Debtors for the purposes of carrying out the Wind-Down Transactions.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, enjoined, or exculpated under the Plan or transferred pursuant to the Sale Transaction Documents on or prior to the Effective Date shall vest in the Wind-Down Debtors and shall be subject to administration by the Plan Administrator or the Wind-Down Debtors, as applicable, and the net proceeds thereof shall constitute the Wind-Down Assets.

On and after the Effective Date, except as otherwise provided in the Plan, each Wind-Down Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings, or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents, and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

### 3.  Wind-Down Assets.

On the Effective Date and thereafter if additional Wind-Down Assets become available, the Wind-Down Debtors shall become successors to the Debtors' rights, title, and interests to any Estate assets, which shall vest in the Wind-Down Debtors for the primary purpose of liquidating the Wind-Down Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business.

Notwithstanding any prohibition on assignability under applicable nonbankruptcy law, on the Effective Date and thereafter, if additional Wind-Down Assets become available, such additional Wind-Down Assets, subject to the Plan, the Confirmation Order, and the Plan Administrator Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the applicable Debtor with all of attendant rights, title, and interests in and to all of the Wind-Down Assets, in accordance with section 1141(c) of the Bankruptcy Code. At such time when any of the Wind-Down Assets vest in the Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the

Allowed Claims as set forth in the Plan and the Wind-Down Debtors' expenses as set forth in the Plan and in the Plan Administrator Agreement.

### 4. The Wind-Down Account.

On or prior to the Effective Date, the Debtors shall establish the Wind-Down Account by depositing Cash on hand in the amount of the Wind-Down Amount into the Wind-Down Account. The Wind-Down Account shall be used by the Wind-Down Debtors to fund the estimated fees, costs, and expenses necessary to fully administer the Wind-Down Transactions. Any amount remaining in the Wind-Down Account after the dissolution of the Wind-Down Debtors shall be distributed on account of unpaid Claims and Interests in accordance with the priorities and treatment set forth in Article III of the Plan until such Claims and Interests are paid in full.

### G. The Plan Administrator.

### 1. General.

On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, and officers of the Debtors or the Wind-Down Debtors, as applicable, shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers; *provided* that the Disinterested Managers shall not have any of their privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Wind-Down Debtors, the Purchaser, or any other Entity without the Disinterested Managers' prior written consent. The Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under the Plan in accordance with the Wind-Down Transactions and as otherwise provided in the Confirmation Order.

The Plan Administrator shall act in accordance with the Plan Administrator Agreement, which shall be entered into by and among the Debtors or the Wind-Down Debtors, as applicable, and the Plan Administrator Agreement shall be effective as of the Plan Effective Date. In the event of any conflict between the terms of Plan Article IV and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

The Plan Administrator may resign at any time upon thirty (30) days' written notice delivered to the Bankruptcy Court; *provided* that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator in accordance with the Plan Administrator Agreement. Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor (as set forth in the Plan Administrator Agreement) and all responsibilities of the predecessor Plan Administrator relating to the Wind-Down Debtors in the Plan Administrator Agreement shall be terminated.

### 2. Powers and Obligations.

The powers of the Plan Administrator shall be set forth in the Plan Administrator Agreement and in any event shall include any and all powers and authority to implement the Plan and wind down the business and affairs of the Debtors and Wind-Down Debtors, including: (i) making distributions under the Plan; (ii) performing any obligations under any Executory Contract or Unexpired Lease assumed but not

assigned on or before the Effective Date, including any transition services agreement entered into in connection with a Sale Transaction, if applicable; (iii) liquidating, receiving, holding, investing, supervising, and protecting the Wind-Down Assets to be administered by the Plan Administrator; (iv) taking all steps and executing all instruments and documents necessary to effectuate the distributions to be made under the Plan; (v) establishing and maintaining bank accounts in the name of the Wind-Down Debtors, including the Wind-Down Account; (vi) making distributions from the Wind-Down Account to facilitate the Wind-Down Transactions; (vii) subject to the terms set forth in the Plan, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (viii) paying all reasonable fees, expenses, debts, charges, and liabilities of the Wind-Down Debtors; (ix) except as otherwise provided for in the Plan, enforcing and prosecuting claims, interests, rights, and privileges under the Retained Causes of Action on the Schedule of Retained Causes of Action in accordance with <u>Article IV.I</u> of the Plan; (x) administering and paying taxes of the Wind-Down Debtors, including filing tax returns; (xi) representing the interests of the Wind-Down Debtors or the Estates before any taxing authority in all matters, including any action, suit, proceeding, or audit; (xii) resolving any disputed Claims and administering the Claims resolution process; (xiii) to the extent applicable, filing any certificate of dissolutions or equivalent documents, together with all with all other necessary corporate and company documents, to effect the dissolution of the Debtors under the applicable laws of their state of incorporation or formation (as applicable); (xiv) filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports; and (xv) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, the Confirmation Order, or any applicable orders of the Bankruptcy Court or as the Plan Administrator reasonably deems to be necessary and proper to carry out the provisions of the Plan.

From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Wind-Down Debtors. Nothing herein or in the Plan shall limit the authority of the Wind-Down Debtors or the Plan Administrator, as applicable, to continue the employment of any former manager or officer. The Debtors, before the Effective Date, and the Wind-Down Debtors or Plan Administrator, after the Effective Date, shall be permitted to make payments to employees pursuant to employment programs then in effect, and, in the reasonable business judgment of the Plan Administrator, to implement additional employee programs and make payments thereunder solely as necessary to effectuate the Wind-Down Transactions, without any further notice to or action, order, or approval of the Bankruptcy Court. Any distributions to be made under the Plan shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

### 3.    Retention of Professionals.

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, at the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties for the Wind-Down Debtors. The reasonable fees and expenses of such professionals, if applicable, shall be paid from the Wind-Down Account upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and expenses of the Wind-Down Debtors' retained professionals shall be made in the ordinary course of business from the Wind-Down Account and shall not be subject to the approval of the Bankruptcy Court.

### 4.    Compensation of the Plan Administrator.

The Plan Administrator's compensation shall be paid out of the Wind-Down Account as set forth in the Plan Administrator Agreement. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made

by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Account if such amounts relate to any actions taken hereunder.

### 5.      Plan Administrator Expenses.

All costs, expenses, and obligations incurred by the Plan Administrator or the Wind-Down Debtors in administering the Plan or in effecting distributions thereunder (including the reimbursement of reasonable expenses), including any costs, expenses, or obligations in any manner connected, incidental, or related thereto, shall be paid from the Wind-Down Account.

The Debtors and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.  In the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Account.

### 6.      Exculpation, Indemnification, Insurance, and Liability Limitation.

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Wind-Down Debtors.  The Plan Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The Plan Administrator may rely upon written information previously generated by the Debtors.

### 7.      Tax Returns.

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and, pursuant to section 505 of the Bankruptcy Code and subject to applicable law, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate.

### H.      Dissolution of the Wind-Down Debtors.

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made, completion of all its duties under the Plan, and entry of a final decree closing the last of the Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the filing of any documents with the secretary of state for the state in which each Wind-Down Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable state(s).

### I.      Release of Liens, Debtor Release, Third-Party Release, Exculpation, Injunction.

The Plan contains certain releases, as described in <u>Article II.O</u> of this Disclosure Statement, titled "*Will there be releases, exculpation, and an injunction granted to parties in interest as part of the Plan?*" The release, exculpation, and injunction provisions that are contained in the Plan are copied in pertinent part below.

1.      **Settlement, Compromise, and Release of Claims and Interests.**

Except as otherwise specifically provided in the Plan, the Confirmation Order, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan or the Confirmation Order, including the Plan Supplement and Definitive Documents, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Wind-Down Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims or Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan.  Except as otherwise provided in the Plan, any default or "event of default" by the Debtors or their non-Debtor Affiliates with respect to any Claim or Interest existing immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date.  Therefore, notwithstanding anything in section 1141(d)(3) to the contrary, all Persons or Entities who have held, hold, or may hold Claims or Interests based upon any act, omission, transaction, or other activity of any kind or nature related to the Debtors, the Wind-Down Debtors, or the Chapter 11 Cases that occurred prior to the Effective Date, other than as expressly provided in the Plan, shall be precluded and permanently enjoined on and after the Effective Date from interfering with the use and distribution of the Debtors' assets in the manner contemplated by the Plan.  The Confirmation Order shall be a judicial determination of the satisfaction and release of all Claims (other than any Reinstated Claims) and Interests (other than any Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date, except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan.

2.      **Release of Liens.**

**Except as otherwise specifically provided in the Plan, the Plan Supplement, the Confirmation Order, the Purchase Agreement (if applicable), or any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, except for Other Secured Claims that the Debtors elect to Reinstate in accordance with <u>Article III.B.1</u> of the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, benefit, title, and interest of any Holder (and the applicable Agents of such Holder) of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert and, as applicable, be reassigned, surrendered, reconveyed, or retransferred to the Wind-Down Debtors and their successors and assigns.  Any Holder of such Secured Claim (and the applicable Agents for such Holder) shall be authorized and directed, at the sole cost and expense of the Wind-Down Debtors, to release any collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder) and to take such actions as may be reasonably requested by the Wind-Down Debtors or the Plan Administrator, as applicable, to evidence the release of such Lien, including the execution,**

delivery, and filing or recording of such releases. The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens with respect to the Debtors.

If any Holder of a Secured Claim that has been satisfied or released in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

3.    **Releases by the Debtors.**[31]

Notwithstanding anything contained in the Plan or the Confirmation to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by and on behalf of the Debtors, their Estates, and, if applicable, the Wind-Down Debtors and the Plan Administrator, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Persons (as defined in the Plan), from any and all Claims and Causes of Action whatsoever (including any avoidance actions and any derivative claims asserted or assertable on behalf of the Debtors, their Estates, the Wind-Down Debtors, or the Plan Administrator), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort, contract, or otherwise, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that the Debtors, their Estates, the Wind-Down Debtors, if applicable, the Plan Administrator, if applicable, or their Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, and any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, the Debtors, their Estates, or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operations), or the Estates, the Chapter 11 Cases, the Restructuring Transactions, the Sale Process, the purchase, sale, or rescission of the purchase or sale of any Security (as defined in the Plan) of the Debtors, any direct or indirect investment in any Debtor by any Released Party, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any other benefit provided by any Debtor to any Released Party, cash management arrangements, the assertion of or enforcement of rights or

---

[31]    The Debtor Release remains subject in all respects to the results of the Independent Investigation.

remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the decision to File the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, including the Sale Transaction (if applicable) and the Wind-Down Transactions, the Credit Agreements, the Cash Collateral Order, the Disclosure Statement, the Plan Supplement, the Purchase Agreement (if applicable), the Plan and related agreements, instruments, and other documents, any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, (ii) any Retained Causes of Action by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement, or (iii) [any non-Debtor Loan Parties (as defined in the Prepetition Credit Agreements) from Claims, Causes of Action, obligations, rights or remedies arising under, or in connection with, the Prepetition Credit Agreements and related loan documents].

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (i) in exchange for the good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtor Release; (iii) in the best interests of the Debtors, their Estates, and all Holders of Claims, Interests, and Intercompany Interests; (iv) fair, equitable, and reasonable; (v) given and made after due notice and opportunity for hearing; and (vi) a bar to any of the Debtors, the Debtors' Estates, or, if applicable, the Wind-Down Debtors or the Plan Administrator, asserting any Claim or Cause of Action released pursuant to the Debtor Release.

4.      Releases by Holders of Claims and Interests.

Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Party's authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Wind-Down Debtors (if applicable)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether

sounding in tort, contract, or otherwise, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, or any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, the Debtors (including the Debtors' capital structure, management, ownership, or operations), or their Estates or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Sale Process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, any investment in any Debtor by any Released Party, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any benefit provided by a Debtor to any Released Party, cash management arrangements, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the decision to File the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, the Credit Agreements, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.  Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, and (ii) any Retained Causes of Action by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

5.        **Exculpation.**

Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring Transactions, the Sale Process, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Wind-Down Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing.  The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder.  This exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

6.        **Injunction.**

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to <u>Article VIII.C</u>, <u>Article VIII.D</u>, or

**Article VIII.E of the Plan without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.F of the Plan.**

### 7. Protections Against Discriminatory Treatment.

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Wind-Down Debtors, or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against the Wind-Down Debtors, or another Entity with whom the Wind-Down Debtors have been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

### 8. Cooperation and Document Retention.

On and after the Effective Date, the Wind-Down Debtors may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Wind-Down Debtors.

### 9. Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect on and following the Effective Date in accordance with their terms.

### 10. Subordinated Claims.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Wind-Down Debtors and the Plan Administrator reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**J.      Preservation of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, but subject to <u>Article VIII</u> of the Plan, the Wind-Down Debtors, shall retain and may enforce (or the Plan Administrator may enforce, if applicable) all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Wind-Down Debtors to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released or exculpated in the Plan (including, without limitation, by the Debtors) pursuant to the releases and exculpations contained in the Plan, including in <u>Article VIII</u> of the Plan, which shall be deemed released and waived by the Debtors and the Wind-Down Debtors, as applicable, as of the Effective Date.

The Wind-Down Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Wind-Down Debtors. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action against it. The Debtors and the Wind-Down Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including <u>Article VIII</u> of the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including, but not limited to, the Cash Collateral Order), the Wind-Down Debtors expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the corresponding Wind-Down Debtor except as otherwise expressly provided in the Plan, including <u>Article VIII</u> of the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, through their authorized agents or representatives, including the Plan Administrator, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Wind-Down Debtors, including the Plan Administrator, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to <u>Article IV.I</u> of the Plan include any Claim or Cause of Action against a Released Party or Exculpated Party, or any Claim or Cause of Action released pursuant to the Cash Collateral Order.

**K.      Cancellation of Existing Agreements and Interests.**

On the Effective Date, except to the extent otherwise provided in the Plan, including in <u>Article V.A</u> of the Plan, to the maximum extent permitted by law, all notes, instruments, certificates, Securities, shares, purchase rights, security agreements, collateral agreements, subordination agreements, the Intercreditor Agreements, and other documents evidencing Claims against or Interests in the Debtors, including credit agreements and indentures, shall be cancelled, and all present and future obligations of the Debtors or the Wind-Down Debtors, as applicable, or in any way related thereto shall be deemed satisfied in full, cancelled,

and of no force or effect without the need for further action or approval of the Bankruptcy Court or for a Holder to take further action, and the Agents shall be discharged and released and shall not have any continuing duties or obligations thereunder with respect to the Debtors.  Holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, Securities, and other documentation, or the cancellation thereof, except the rights provided for pursuant to the Plan.

L.        **Section 1146 Exemption.**

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Wind-Down Debtor, as applicable, or to any other Person) of property under the Plan or pursuant to:  (i) the issuance, Reinstatement, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors or the Wind-Down Debtors, as applicable; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iv) the making, assignment, or recording of any lease or sublease; (v) the Sale Transaction, if applicable; or (vi) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

M.        **Corporate Action.**

Upon the Effective Date, all actions contemplated under the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) shall be deemed authorized and approved in all respects, including, as and if applicable: (i)  formation of the Wind-Down Debtors and the selection of the Plan Administrator; (ii) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (iii) the implementation of the Restructuring Transactions; (iv) consummation of the Sale Transaction, if any, pursuant to the Purchase Agreement; (v) funding of all applicable escrows and accounts; and (vi) all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving the corporate structure of the Debtors or the Wind-Down Debtors and any corporate action required by the Debtors or the Wind-Down Debtors in connection with the Plan shall be deemed to have occurred and shall be in effect without any requirement of further action by the Security Holders, directors, officers, or managers of the Debtors or the Wind-Down Debtors.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors or the Wind-Down Debtors, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, Securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name

of and on behalf of the Wind-Down Debtors. The authorizations and approvals contemplated by Article IV.L of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law.

**N.    Effectuating Documents; Further Transactions.**

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order and the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

**O.    Closing the Chapter 11 Cases.**

Upon the occurrence of the Effective Date, the Wind-Down Debtors shall be permitted to close all of the Chapter 11 Cases except for one of the Chapter 11 Cases as determined by the Wind-Down Debtors, and all contested matters relating to each of the Debtors, including objections to Claims, shall be administered and heard in such Chapter 11 Case.

**P.    Director and Officer Liability Insurance.**

After the Effective Date, none of the Wind-Down Debtors shall terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies (including any "tail policy") in effect on or after the Petition Date, with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such policy for the full term of such policy, to the extent set forth therein, regardless of whether such directors and officers remain in such positions after the Effective Date.

On the Effective Date, any and all D&O Liability Insurance Policies shall be assumed by the Wind-Down Debtors pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered. Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals insured thereunder. The Wind-Down Debtors shall maintain tail coverage under any D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability no less than the aggregate limit of liability under, the D&O Liability Insurance Policies. In addition to such tail coverage, the D&O Liability Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases.

**Q.    Other Key Aspects of the Plan.**

    **1.    Treatment of Executory Contracts and Unexpired Leases.**

        **(a)    Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected by the applicable Debtor, Wind-Down Debtor, or the Plan Administrator, as applicable, in

accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan; (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a Filed motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is to be assumed by the Debtors and assigned to another third party in connection with a Sale Transaction, if any, including the Purchaser as set forth in the Purchase Agreement approved pursuant to the Sale Order; (v) is a contract, instrument, release, or other agreement or document entered into in connection with the Plan; (vi) is an Insurance Policy (including any D&O Liability Insurance Policies); or (vii) is an employee benefit plan, severance plan, or other Executory Contract under which employee obligations arise.

To ensure that counterparties to Executory Contracts and Unexpired Leases receive notice of the assumption or rejection of their Executory Contract or Unexpired Lease, if any, pursuant to the Plan, the Debtors will serve via mail (or, to the extent the Debtors are not aware of a counterparty's email address or email services is returned as undeliverable, via physical mail in paper form) an assumption or rejection notice, as applicable (the "Assumption Notice" or the "Rejection Notice"), to the applicable counterparty no later than April 9, 2026, which is seven days prior to the Combined Hearing Date. The Assumption Notice or Rejection Notice will adequately describe the treatment of the applicable counterparties' agreements under the Plan and provide sufficient detail as to how such counterparties can object to such assumption or rejection or obtain additional information regarding the Plan and these Chapter 11 Cases.

For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Plan, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code. To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with a Sale Transaction, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, or the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under a Sale Transaction, if any, to assume and assign Executory Contracts and Unexpired Leases to the Purchaser pursuant to the Purchase Agreement and any related documents relating to the Sale Transaction. Except as otherwise specifically set forth herein, in the Plan, or in the Confirmation Order or any Sale Transaction Documents approved pursuant to the Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in and be fully enforceable by the applicable contracting Wind-Down Debtor in accordance with its terms, except as such terms may have been modified by the provisions of the Plan, agreement of the parties thereto, or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Wind-Down Debtors.

Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve the right (i) in the event that the Debtors do not consummate a

Sale Transaction, to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the earlier of (A) 45 days following the Effective Date and (B) solely with respect to Unexpired Leases of nonresidential real property, the applicable deadline pursuant to section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the consent of the applicable landlord counterparty and (ii) in the event that the Debtors consummate a Sale Transaction, to alter, amend, modify, or supplement any schedule of Executory Contracts and Unexpired Leases that is attached to any Sale Transaction Documents, with the consent of the Purchaser, at any time prior to the earlier of (A) 90 days following the closing date of a Sale Transaction, and (B) solely with respect to Unexpired Leases of nonresidential real property, the applicable deadline pursuant to section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the consent of the applicable landlord counterparty, consistent with any Sale Transaction Documents, as applicable.

Subject to any Purchase Agreement and Sale Order, to the maximum extent permitted by law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (i) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (ii) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Wind-Down Debtors under such Executory Contract or Unexpired Lease, or (iii) result in the creation or imposition of a Lien upon any property or asset of the Debtors or the Wind-Down Debtors pursuant to the applicable Executory Contract or Unexpired Lease, and to the extent any provision in any such Executory Contract or Unexpired Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated by the Plan, the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, and any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof (subject to the other provisions of Article V of the Plan) shall be deemed satisfied by Confirmation.

**(b)     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases.**

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease to the extent of applicable law.  Without limiting the general nature of the foregoing, and solely to the extent afforded by applicable law, the Debtors and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased or services previously received by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

**(c)     Indemnification Obligations.**

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors,

officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Wind-Down Debtors.

> **(d)** **Claims Based on Rejection of Executory Contracts or Unexpired Leases.**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (i) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors no later than seven days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will, absent further order of the Bankruptcy Court to the contrary, be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind-Down Debtors, or the property of any of the foregoing without the need for any objection by the Debtors or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall, absent further order of the Bankruptcy Court to the contrary, be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Wind-Down Debtors and Holder of such Claim.

> **(e)** **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.**

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash as soon as reasonably practicable after the entry of an order approving such assumption or assumption and assignment, subject to the limitations described in the following sentence, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree; *provided* that nothing in the Plan shall prevent the Wind-Down Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim. The Wind-Down Debtors may also settle any Cure Claim without any further notice to or action, order, or approval of the Bankruptcy Court. Any such objection will be scheduled to be heard by the Bankruptcy Court at the next scheduled omnibus hearing, or such other time as requested by the Debtors or the Wind-Down Debtors, as applicable, and the objecting party. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption. In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the

meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Wind-Down Debtors, as applicable, may remove such Executory Contract or Unexpired Lease from the Schedule of Assumed Executory Contracts and Unexpired Leases, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. **Any Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, and for which any Cure Claim has been fully paid pursuant to <u>Article V.D</u> of the Plan, shall be deemed disallowed and expunged as of the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court**.

### (f) Insurance Policies.

Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (i) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (ii) all such Insurance Policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest, unaltered and in their entireties, in the Wind-Down Debtors.

Nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of Insurance Policies or (ii) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors or the Plan Administrator, as applicable, (or any Purchaser, solely to the extent assumed and assigned to the Purchaser under the Purchase Agreement) or draw on any collateral or security therefor.

### (g) Modifications, Amendments, Supplements, Restatements, Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

57

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

(h)     **Reservation of Rights.**

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan or the Plan Supplement, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor, Wind-Down Debtor, or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Wind-Down Debtors, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

(i)     **Nonoccurrence of Effective Date.**

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

R.     **Conditions Precedent to the Effective Date.**

1.     **Conditions Precedent to the Effective Date.**

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B of the Plan:

1.  the Restructuring Support Agreement shall not have been validly terminated by any of the parties thereto and shall continue to be in full force and effect;

2.  each document or agreement constituting the applicable Definitive Documents shall (a) be in form and substance consistent with the Plan, the Restructuring Support Agreement, and the Restructuring Term Sheet, (b) have been duly executed, delivered, acknowledged, Filed, and/or effectuated, as applicable, and (c) be in full force and effect, and any conditions precedent related thereto or contained therein shall have been satisfied prior to or contemporaneously with the occurrence of the Effective Date or otherwise waived;

3.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan, and all applicable regulatory or government-impose waiting periods shall have expired or been terminated;

4.  the Bankruptcy Court shall have entered the Confirmation Order, and such order shall not have been reversed, stayed, modified, dismissed, vacated, or reconsidered;

5.  if and as applicable, the Purchase Agreement shall have been executed and all conditions precedent to the effectiveness thereof shall have occurred or will occur substantially simultaneously with the effectiveness of the Plan;

6.  if and as applicable, the Purchaser shall deliver the Purchase Price, as specified in the Purchase Agreement, to the Debtors in exchange for the Wind-Down Debtors' transfer of the purchase assets to the Purchaser;

7.  the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed;

8.  the Debtors shall have funded the Wind-Down Amount in Cash;

9.  all actions, documents, and agreements necessary to implement and consummate the Restructuring Transactions shall have been effected and executed and shall be in form and substance consistent with the Plan and the Restructuring Support Agreement; and

10. the Professional Fee Escrow Account shall have been established and funded in Cash in an amount sufficient to pay in full all professional fees and expenses of retained professionals approved by the Bankruptcy Court before or after the Effective Date.

**2.      Waiver of Conditions.**

The conditions to the Effective Date set forth in <u>Article IX</u> of the Plan may be waived in whole or in part at any time by the Debtors only with the prior written consent (email shall suffice) of the Required Consenting Lenders, as defined in the Restructuring Support Agreement, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

**3.      Effect of Failure of Conditions.**

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release by the Debtors of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders of Claims or Interests, or any other Entity in any respect; *provided* that all provisions of the Restructuring Support Agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of (a) the Cash Collateral Order, including, without limitation, any releases provided for therein, or (b) the Sale Transactions and/or the Store Closing Sales, as applicable, or the revocation of the Debtors' authority under any Sale Order to consummate the Sale Transaction or the Store Closing Sales, as applicable, and all provisions of the Sale Transaction Documents and the Restructuring Support Agreement that survive termination thereof, as applicable, shall remain in effect in each case, in accordance with the terms thereof.

**4.      Substantial Consummation.**

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

## VII.   RISK FACTORS

**BEFORE TAKING ANY ACTION WITH RESPECT TO THE PLAN, HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH BELOW, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS**

**DISCLOSURE STATEMENT, THE PLAN, AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH, REFERRED TO, OR INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT, INCLUDING OTHER DOCUMENTS FILED WITH THE BANKRUPTCY COURT IN THE CHAPTER 11 CASES.  THE RISK FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESSES OR THE RESTRUCTURING AND CONSUMMATION OF THE PLAN.**

    **A.**      **Bankruptcy Law Considerations.**

The occurrence or non-occurrence of any or all of the following contingencies, and any others, could affect distributions available to Holders of Allowed Claims under the Plan but may not necessarily affect the validity of the vote of the Impaired Classes to accept or reject the Plan or necessarily require a re-solicitation of the votes of Holders of Claims in such Impaired Classes.

    **1.**      **The Restructuring Support Agreement May be Terminated.**

The Restructuring Support Agreement contains provisions that give the parties to the Restructuring Support Agreement (collectively or individually, as applicable) the ability to terminate the Restructuring Support Agreement upon the occurrence of certain events or if certain conditions are not satisfied.  To the extent that events giving rise to termination of the Restructuring Support Agreement occur, the Restructuring Support Agreement may terminate prior to the Confirmation or Consummation of the Plan, which could result in the loss of support for the Plan by important creditor constituencies.  Any such loss of support could adversely affect the Debtors' ability to confirm and consummate the Plan.

    **2.**      **The Debtors Will Consider All Available Restructuring Alternatives if the Wind-Down Transactions Are Not Implemented, and Such Alternatives May Result in Lower Recoveries for Holders of Claims Against and Interests in the Debtors.**

If the Wind-Down Transactions are not implemented, the Debtors will consider all available restructuring alternatives, including filing an alternative chapter 11 plan, converting to a chapter 7 plan, and any other transaction that would maximize the value of the Debtors' estates.  The terms of any alternative restructuring proposal may be less favorable to Holders of Claims against and Interests in the Debtors than the terms of the Plan as described in this Disclosure Statement.

Any material delay in the confirmation of the Plan, the Chapter 11 Cases, or the threat of rejection of the Plan by the Bankruptcy Court, would add substantial expense and uncertainty to the process.

The uncertainty surrounding a prolonged restructuring would have other adverse effects on the Debtors.  For example, it would adversely affect:

- the Debtors' ability to raise additional capital;

- the Debtors' liquidity;

- how the Debtors' business is viewed by regulators, investors, lenders, and credit ratings agencies;

- the Debtors' enterprise value; and

- the Debtors' business relationship with customers, landlords, and vendors.

### 3.    Parties in Interest May Object to the Plan's Classification of Claims and Interests.

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of the Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Interests each encompassing Claims or Interests, as applicable, that are substantially similar to the other Claims or Interests, as applicable, in each such Class.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### 4.    The Conditions Precedent to the Effective Date of the Plan May Not Occur.

As more fully set forth in Article IX of the Plan, the Confirmation and Effective Date of the Plan are subject to a number of conditions precedent.  If such conditions precedent are not waived and not met, the Confirmation and Effective Date of the Plan will not take place.

### 5.    The Debtors May Fail to Satisfy Vote Requirements.

If votes are received in number and amount sufficient to enable the Bankruptcy Court to confirm the Plan, the Debtors intend to seek, as promptly as practicable thereafter, Confirmation of the Plan.  In the event that sufficient votes are not received, the Debtors may need to seek to confirm an alternative chapter 11 plan or transaction.  There can be no assurance that the terms of any such alternative chapter 11 plan or other transaction would be similar or as favorable to the Holders of Interests and Allowed Claims as those proposed in the Plan and the Debtors do not believe that any such transaction exists or is likely to exist that would be more beneficial to the Estates than the Plan.

### 6.    The Debtors May Not Be Able to Secure Confirmation of the Plan.

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan, and requires, among other things, a finding by the Bankruptcy Court that:  (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to non-accepting holders of claims or equity interests within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtors were liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the requisite acceptances to confirm the Plan will be received.  Even if the requisite acceptances are received, there can be no assurance that the Bankruptcy Court will confirm the Plan.  A non-accepting Holder of an Allowed Claim might challenge either the adequacy of this Disclosure Statement or whether the balloting procedures and voting results satisfy the requirements of the Bankruptcy Code or Bankruptcy Rules.  Even if the Bankruptcy Court determines that this Disclosure Statement, the balloting procedures, and voting results are appropriate, the Bankruptcy Court could still decline to confirm the Plan if it finds that any of the statutory requirements for Confirmation are not met.  If a chapter 11 plan is not confirmed by the Bankruptcy Court, it is unclear when the Debtors will be able to liquidate their assets and what, if anything, Holders of Interests and Allowed Claims would ultimately receive.

The Debtors, subject to the terms and conditions of the Plan, reserve the right to modify the terms and conditions of the Plan as necessary for Confirmation.  Any such modifications could result in less favorable treatment of any non-accepting class of Claims or Interests, as well as any class junior to such non-accepting class, than the treatment currently provided in the Plan.  Such a less favorable treatment could include a distribution of property with a lesser value than currently provided in the Plan or no distribution whatsoever under the Plan.

      **7.**      **The Debtors May Not Be Able to Secure Nonconsensual Confirmation Over Certain Impaired Non-Accepting Classes.**

In the event that any impaired class of claims or interests does not accept a chapter 11 plan, a bankruptcy court may nevertheless confirm a plan at the proponents' request if at least one impaired class (as defined under section 1124 of the Bankruptcy Code) has accepted the plan (with such acceptance being determined without including the vote of any "insider" in such class), and, as to each impaired class that has not accepted the plan, the bankruptcy court determines that the plan "does not discriminate unfairly" and is "fair and equitable" with respect to the dissenting impaired class(es).  The Debtors believe that the Plan satisfies these requirements, and the Debtors may request such nonconsensual Confirmation in accordance with subsection 1129(b) of the Bankruptcy Code.  Nevertheless, there can be no assurance that the Bankruptcy Court will reach this conclusion.  In addition, the pursuit of nonconsensual Confirmation or Consummation of the Plan may result in, among other things, increased expenses relating to professional compensation.

      **8.**      **The Period in Which the Debtors Have an Exclusive Right to Propose the Plan May Expire.**

At the outset of the Chapter 11 Cases, the Bankruptcy Code provides the Debtors with the exclusive right to propose a chapter 11 plan and prohibits creditors and other parties from proposing a plan.  The Debtors have the exclusive right to propose the Plan through June 9, 2026, subject to extension by order of the Bankruptcy Court.  If the Bankruptcy Court terminates that right, however, or the exclusivity period expires, there could be a material adverse effect on the Debtors' ability to achieve confirmation of the Plan because creditors and other parties may propose a competing plan.

      **9.**      **The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code.**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code.  In such event, a chapter 7 trustee would be appointed or elected to liquidate such debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code.  The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (a) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (b) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation.

      **10.**      **The Debtors May Object to the Amount or Classification of a Claim.**

Except as otherwise provided in the Plan, the Debtors reserve the right to object to the amount or classification of any Claim under the Plan.  The estimates set forth in this Disclosure Statement cannot be relied upon by any Holder of a Claim where such Claim is subject to an objection.  Any Holder of a Claim that is subject to an objection thus may not receive its expected share of the estimated distributions described in this Disclosure Statement.

11. **Contingencies Could Affect Votes of Voting Impaired Classes to Accept or Reject the Plan.**

The distributions available to Holders of Allowed Claims under the Plan can be affected by a variety of contingencies, including, without limitation, whether the Bankruptcy Court orders certain Allowed Claims to be subordinated to other Allowed Claims. The occurrence of any and all such contingencies, which could affect distributions available to Holders of Allowed Claims under the Plan, will not affect the validity of the vote taken by the Impaired Class that is entitled to vote to accept or reject the Plan, or require any sort of revote by such Impaired Class.

12. **The Debtors Cannot Guarantee Recoveries or the Timing of Such Recoveries.**

The estimated Claims and creditor recoveries set forth in this Disclosure Statement are based on various assumptions, and the actual Allowed amounts of Claims may significantly differ from the estimates. Should one or more of the underlying assumptions ultimately prove to be incorrect, the actual Allowed amounts of Claims may vary from the estimated Claims contained in this Disclosure Statement. Moreover, the Debtors cannot determine with any certainty at this time, the number or amount of Claims that will ultimately be Allowed. Such differences may materially and adversely affect, among other things, the percentage recoveries to Holders of Allowed Claims under the Plan.

13. **Releases, Injunctions, and Exculpations Provisions May Not Be Approved.**

Article VIII of the Plan provides for certain releases, injunctions, and exculpations, including a release of liens and third-party releases that may otherwise be asserted against the Debtors, Wind-Down Debtors, or Released Parties, as applicable. The Debtor Release provided in the Plan remains subject to the completion of any ongoing diligence efforts by the Disinterested Managers and objection by parties in interest and may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan.

The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Debtors' wind down because the Released Parties and Exculpated Parties have made significant contributions to the Debtors' wind down efforts and have agreed to make future contributions. Such future contributions will include cooperation with the Wind-Down Debtors' investigation and commencement and pursuit of the Retained Causes of Action, but only if they receive the full benefit of the Plan's release and exculpation provisions. The Plan's release and exculpation provisions are an inextricable component of the Plan and the significant deleveraging and financial benefits embodied in the Plan.

14. **The Total Amount of Allowed Unsecured Claims May Be Higher than Anticipated by the Debtors.**

With respect to Holders of Allowed General Unsecured Claims, the claims filed against the Debtors' estates may be materially higher than the Debtors have estimated.

15. **The Total Amount of Allowed Administrative and Priority Claims May Be Higher than Anticipated by the Debtors.**

The amount of Cash the Debtors ultimately receive prior to and following the Effective Date may be lower than anticipated. Additionally Allowed Administrative Claims and Allowed Priority Claims may be higher than anticipated. Accordingly, there is a risk that the Debtors will not be able to pay in full in

Cash all Administrative Claims and Priority Claims on the Effective Date as is required to confirm a chapter 11 plan.

### 16.     Possible Tax Implications of the Plan.

Holders of Allowed Claims should carefully review Article X of this Disclosure Statement, titled "*Certain Material U.S. Federal Income Tax Consequences of the Plan*," to determine how the tax implications of the Plan and the Chapter 11 Cases may adversely affect the Debtors, Wind-Down Debtors, and Holders of certain Claims.

### 17.     The Debtors May Seek to Amend, Waive, Modify, or Withdraw the Plan at Any Time Prior to Its Completion.

The Debtors reserve the right, subject to the provisions of the Bankruptcy Code and Article X of the Plan, and the rights set forth in the Restructuring Support Agreement, to revoke or withdraw, or to alter, amend, or modify, the Plan with respect to each such Debtor, one or more times, prior to or after Confirmation and, to the extent necessary, initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, this Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  The potential impact of any such amendment, waiver, or modification on the Holders of Claims and Interests cannot presently be foreseen but may include a change in the economic impact of the Plan on some or all of the proposed Classes or a change in the relative rights of such Classes. All Holders of Claims and Interests will receive notice of such amendments, waivers, or modification required by applicable law and the Bankruptcy Court.  If, after receiving sufficient acceptances but prior to Confirmation of the Plan, the Debtors seek to modify the Plan, the previously solicited acceptances will be valid only if (i) all Classes of adversely affected creditors and interest holders accept the modification in writing or (ii) the Bankruptcy Court determines, after notice to designated parties, that such modification did not adversely change the treatment of Holders accepting Claims and Interests or is otherwise permitted by the Bankruptcy Code.

### B.     Risks Related to Recoveries under the Plan and Wind-Down Transactions.

### 1.     The Debtors May Not Be Able to Generate Sufficient Cash to Service All of Their Indebtedness.

The Debtors' ability to make scheduled payments depends on the Debtors' financial condition and operating performance, which are subject to prevailing economic, industry, and competitive conditions and to certain financial, business, legislative, regulatory, and other factors beyond the Debtors' control.  The Debtors may be unable to maintain a level of cash flow from operating activities sufficient to permit the Debtors to pay the principal, premium, if any, and interest on their indebtedness.

### 2.     The Debtors Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Cases.

For the duration of the Chapter 11 Cases, the Debtors' ability to operate, develop their businesses, and continue as a going concern, will be subject to the risks and uncertainties associated with bankruptcy. These risks include the following:  (a) the ability to develop, confirm, and consummate the Wind-Down Transactions specified in the Plan; (b) the ability to obtain Bankruptcy Court approval with respect to motions Filed in the Chapter 11 Cases from time to time; (c) the ability to maintain relationships with suppliers, vendors, service providers, customers, employees, and other third parties; (d) the ability to maintain contracts that are critical to the Debtors' operations; (e) the ability of third parties to seek and

obtain Bankruptcy Court approval to terminate contracts and other agreements with the Debtors; (f) the ability of third parties to seek and obtain Bankruptcy Court approval to terminate or shorten the exclusivity period for the Debtors to propose and confirm a chapter 11 plan, to appoint a chapter 11 trustee, or to convert the Chapter 11 Cases to chapter 7 proceedings; and (g) the actions and decisions of the Debtors' creditors and other third parties who have interests in the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

### 3. The Wind-Down Debtors May Be Adversely Affected by Potential Litigation, Including Litigation Arising Out of the Chapter 11 Cases.

The Debtors are currently subject to or interested in certain legal proceedings, which may adversely affect the Debtors. In the future, the Wind-Down Debtors may become party to litigation. In general, litigation can be expensive and time consuming to bring or defend against. Such litigation could result in settlements or judgments that could significantly affect the Wind-Down Debtors' financial results. It is also possible that certain parties will commence litigation with respect to the treatment of their Claims under the Plan. It is not possible to predict the potential litigation to which the Wind-Down Debtors may become party or the final resolution of such litigation. The impact of any such litigation on the Wind-Down Debtors' businesses and financial stability, however, could be material.

### 4. The Wind-Down Transactions Will Affect the Debtors' Operations.

The Debtors expect that substantially all of their assets will be sold pursuant to a Sale Transaction and/or the Store Closing Sales. Any remaining assets of the Debtors will vest in the Wind-Down Debtors and will either be operated in the ordinary course or wound down. It is anticipated that Wind-Down Debtors will have no active ongoing operations except as contemplated for the Wind-Down Debtors or the Plan Administrator, as applicable.

### 5. Estimated Recoveries to Holders of Allowed Claims and Interests Are Not Intended to Represent Potential Market Values.

The Debtors' estimated recoveries to Holders of Allowed Claims and Allowed Interests are not intended to represent the Debtors' market value. The estimated recoveries are based on numerous assumptions (the realization of many of which will be beyond the control of the Debtors), including: (a) the successful wind-down of the Debtors; (b) an assumed date for the occurrence of the Effective Date; (c) the Debtors' ability to maintain adequate liquidity to fund operations; (d) the assumption that capital and equity markets remain consistent with current conditions; and (e) the Debtors' ability to maintain critical existing customer relationships, including customer relationships with key customers.

### 6. Financial Results May Be Volatile and May Not Reflect Historical Trends.

During the Chapter 11 Cases, the Debtors expect that their financial results will continue to be volatile as restructuring activities and expenses, contract terminations and rejections, and claims assessments significantly impact the Debtors' consolidated financial statements. As a result, the Debtors' historical financial performance likely will not be indicative of their financial performance after the Petition Date.

### 7. The Loss of Key Personnel Could Adversely Affect the Debtors' Operations.

The Debtors' operations are dependent on a relatively small group of key management personnel. The Debtors' recent liquidity issues and the Chapter 11 Cases have created distractions and uncertainty for key management personnel and employees. As a result, the Debtors may experience increased levels of

employee attrition.  Because competition for experienced personnel can be significant, the Debtors may be unable to find acceptable replacements with comparable skills and experience, and the loss of such key management personnel could adversely affect the Debtors' ability to operate their business.  In addition, a loss of key personnel or material erosion of employee morale could have a material adverse effect on the Debtors' ability to meet expectations, thereby adversely affecting the Debtors' wind down.

8.    **The Debtors May Not Be Able to Accurately Report Their Financial Results.**

The Debtors have established internal controls over financial reporting.  However, internal controls over financial reporting may not prevent or detect misstatements or omissions in the Debtors' financial statements because of their inherent limitations, including the possibility of human error, and the circumvention or overriding of controls or fraud.  Therefore, even effective internal controls can provide only reasonable assurance with respect to the preparation and fair presentation of financial statements.  If the Debtors fail to maintain the adequacy of their internal controls, the Debtors may be unable to provide financial information in a timely and reliable manner within the time periods required under the terms of the agreements governing the Debtors' indebtedness.  Any such difficulties or failure could materially adversely affect the Debtors' business, results of operations, and financial condition.  Further, the Debtors may discover other internal control deficiencies in the future and/or fail to adequately correct previously identified control deficiencies, which could materially adversely affect the Debtors' businesses, results of operations, and financial condition.

## VIII.    SOLICITATION AND VOTING PROCEDURES

This Disclosure Statement, which is accompanied by a Ballot or Ballots to be used for voting on the Plan, is being distributed to the Holders of Claims in those Classes that are entitled to vote to accept or reject the Plan.  The procedures and instructions for voting and related deadlines are set forth in the Disclosure Statement Order.

*The Disclosure Statement Order is incorporated herein by reference and should be read in conjunction with this Disclosure Statement in formulating a decision to vote to accept or reject the Plan.*

A.    **Holders of Claims or Interests Entitled to Vote on the Plan.**

Only Holders of Claims in the Voting Classes are entitled to vote to accept or reject the Plan.  The Holders of Claims in the Voting Classes are Impaired under the Plan and may receive a distribution under the Plan.  Accordingly, Holders of Claims in the Voting Classes have the right to vote to accept or reject the Plan.  The Debtors are ***not*** soliciting votes from Holders of Claims or Interests in the Non-Voting Classes.

---

**THE DISCUSSION OF THE SOLICITATION AND VOTING PROCESS SET FORTH IN THIS DISCLOSURE STATEMENT IS ONLY A SUMMARY.**

PLEASE REFER TO THE DISCLOSURE STATEMENT ORDER AND SOLICITATION PROCEDURES FOR A MORE COMPREHENSIVE DESCRIPTION OF THE SOLICITATION AND VOTING PROCESS.

---

B.    **Voting Record Date.**

Contemporaneously herewith, the Debtors filed the Bar Date Motion, seeking approval of the Proposed Bar Date Order.  If entered by the Bankruptcy Court, the Proposed Bar Date Order will set **March 16, 2026**, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims in Class 3 ABL Claims and Class 6 General Unsecured Claims that either (i) are listed in the

Schedules and Statements or (ii) with respect to which a valid Proof of Claim is filed before March 16, 2026 (such Claims, "Known Eligible Claims"),[32] are entitled to vote on the Plan. For Holders of Claims that (a) (i) are not listed in the Schedules and (ii) are Unknown Eligible Claims, and (b) with respect to which a valid Proof of Claim is filed on or after the Voting Record Date but prior to the Claims Bar Date established in connection with the Bar Date Motion, Stretto shall serve the Solicitation Package to such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent, and such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline in order for such Ballot to be counted.

C.      **Voting on the Plan.**

The Court has approved **April 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** as the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Plan. The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are **actually received** by Stretto no later than the Voting and Opt-Out Deadline. Holders of Claims in the Voting Classes should submit their Ballots in accordance with the instructions provided on the applicable Ballot.

---

**PLEASE SUBMIT A BALLOT BY *ONE* OF THE FOLLOWING METHODS
SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE
VOTING AND OPT-OUT DEADLINE, WHICH IS
4:00 P.M. (PREVAILING EASTERN TIME) ON APRIL 14, 2026.**

**To submit a paper Ballot, you may submit your Ballot (with an original signature):**

| **by First-Class Mail:** | **by Overnight Courier, or Hand Delivery:** |
|---|---|
| Eddie Bauer LLC et al., Ballot Processing | Eddie Bauer LLC, et al., Ballot Processing |
| c/o Stretto Inc. | c/o Stretto Inc. |
| 410 Exchange, Suite 100 | 410 Exchange, Suite 100 |
| Irvine, CA 92602 | Irvine, CA 92602 |

**To submit your Ballot via electronic, online submission:**

To submit your Ballot via the Claims and Noticing Agent's online portal, visit https://cases.stretto.com/EddieBauer, click on the "E-Ballot" section of the website (the "E-Ballot Portal"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need your Unique Password to retrieve and submit your customized electronic Ballot:**

The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.

**Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

---

**IF YOU HAVE ANY QUESTIONS ABOUT THE SOLICITATION OR VOTING PROCESS, PLEASE
CALL THE CLAIMS AND NOTICING AGENT AT (833)-437-6838 (TOLL-FREE) OR (714)-442-4326
(INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM.**

---

[32]   Pursuant to the Schedules/SOFAs Extension Order, the Debtors must file their Schedules and Statements by March 12, 2026.

If a Ballot is received *after* the Voting and Opt-Out Deadline and if the Voting and Opt-Out Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors. Additionally, the following Ballots will *not* be counted:

1. any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

2. any Ballot cast by any Entity that does not hold a Claim in a Voting Class;

3. any unsigned Ballot or Ballot lacking an original signature (for the avoidance of doubt, a Ballot submitted via the Claims and Noticing Agent's online balloting portal shall be deemed to contain an original signature);

4. any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan;

5. any Ballot transmitted by any other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures or by separate order of the Court;

6. any Ballot sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' Advisors (other than the Claims and Noticing Agent) unless such Ballot is otherwise submitted by proper means; and

7. any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described in the Solicitation Procedures.

The method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the executed Ballot.

If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting and Opt-Out Deadline, the last dated, properly submitted, valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot.

Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes; accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted, and to the extent a Holder has multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of tabulating votes.

A person signing a Ballot in their capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing, and if required or requested by the Claims and Noticing Agent, the Debtors, or the Court, must submit proper evidence of such fiduciary or representative capacity to the requesting party to so act on behalf of such Holder.

<u>**PLEASE RETURN YOUR BALLOT PROMPTLY**</u>

**Eddie Bauer LLC, et al. Ballot Processing**
**c/o Stretto**
**410 Exchange, Suite 100**
**Irvine, CA 92602**

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT,**
**THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING,**
**PLEASE CALL THE CLAIMS AND NOTICING AGENT AT:**

**U.S. TOLL FREE:  (833)-437-6838**
**INTERNATIONAL:  (714)-442-4326**
**OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM.**

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT**
**ON OR BEFORE APRIL 14, 2026, AT 4:00 P.M., PREVAILING EASTERN TIME (AND IF THE**
**VOTING DEADLINE IS NOT EXTENDED) YOUR VOTE MAY BE COUNTED TOWARD**
**CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

    **D.**    **Votes Required for Acceptance by a Class.**

    Under the Bankruptcy Code, acceptance of a plan of reorganization by a class of claims or interests is determined by calculating the amount and, if a class of claims, the number, of claims and interests voting to accept, as a percentage of the allowed claims or interests, as applicable, that have voted.  Acceptance by a class of claims requires an affirmative vote of more than one-half in number of total allowed claims that have voted and an affirmative vote of at least two-thirds in dollar amount of the total allowed claims that have voted.  Acceptance by a class of interests requires an affirmative vote of at least two-thirds in amount of the total allowed interests that have voted.

    **E.**    **Certain Factors to Be Considered Prior to Voting.**

    There are a variety of factors that all Holders of Claims entitled to vote on the Plan should consider prior to voting to accept or reject the Plan.  These factors may impact recoveries under the Plan and include, among other things:

- unless otherwise specifically indicated, the financial information contained in this Disclosure Statement has not been audited and is based on an analysis of data available at the time of the preparation of the Plan and the Disclosure Statement;

- although the Debtors believe that the Plan complies with all applicable provisions of the Bankruptcy Code, the Debtors can neither assure such compliance nor that the Bankruptcy Court will confirm the Plan;

- the Debtors may request Confirmation without the acceptance of the Plan by all Impaired Classes in accordance with section 1129(b) of the Bankruptcy Code; and

- any delays of either Confirmation or Consummation could result in, among other things, increased Administrative Claims and Professional Fee Claims.

While these factors could affect distributions available to Holders of Allowed Claims and Allowed Interests under the Plan, the occurrence or impact of such factors may not necessarily affect the validity of the vote of the Voting Class or necessarily require a re-solicitation of the votes of Holders of Claims in the Voting Class pursuant to section 1127 of the Bankruptcy Code.

For a further discussion of risk factors, please refer to the "*Risk Factors*" section in <u>Article VIII</u> of this Disclosure Statement.

F.      **Solicitation Procedures.**

1.      **Claims and Noticing Agent.**

Pursuant to the Bankruptcy Court's Order approving the Stretto Retention Application, the Debtors have retained Stretto to act as, among other things, the Claims and Noticing Agent in connection with the solicitation of votes to accept or reject the Plan.

2.      **Solicitation Package.**

The Debtors will cause the Solicitation Package to be distributed to Holders of Claims entitled to vote on the Plan as of the Voting Record Date on or before the Solicitation Package Mailing Deadline; *provided* that the Debtors will (a) distribute the Combined Hearing Notice on or prior to, and (b) publish the Combined Hearing Notice in modified format on or as soon as practicable after, March 17, 2026 (the "<u>Combined Hearing Notice and Publication Deadline</u>").  The Solicitation Package will include the following documents (collectively, the "<u>Solicitation Package</u>"):  (t) a copy of the Solicitation and Voting Procedures; (u) the applicable Ballot, together with detailed voting instructions and instructions on how to submit the Ballot; (v) the Cover Letter, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan; (w) the Combined Hearing Notice; (x) the Disclosure Statement (and exhibits thereto, including the Plan); (y) the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and (z) any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

The Debtors are authorized to cause electronic copies of the Solicitation Package to be distributed through the Claims and Noticing Agent via email (using the email address maintained by the Debtors as of the Voting Record Date) to Holders of Claims in the Voting Classes.  To the extent (a) (i) an email address is not on file for any such Holders of Claims or (ii) distribution of the Solicitation Package via email as set forth in the previous sentence is returned as undeliverable; and (b) the Debtors are in possession of a physical mailing address for such Holders, the Claims and Noticing Agent shall mail the Solicitation Package to such Holders in electronic format (*i.e.*, USB flash drive form), along with a pre-addressed, prepaid return envelope; *provided* that any party that receives a Solicitation Package via email or for which service by USB flash drive imposes a hardship may receive a Solicitation Package in paper by contacting the Claims and Noticing Agent and requesting paper copies to the corresponding materials previously received via email or electronic format (*i.e.*, USB flash drive format).

3.      **Distribution of the Solicitation Package and Plan Supplement.**

The Debtors are causing the Claims and Noticing Agent to distribute the Solicitation Package to Holders of Claims in the Voting Classes on or prior to the date that is five business days following the entry of the Disclosure Statement Order (the "<u>Solicitation Package Mailing Deadline</u>"), or, to the extent such distribution is not made by the Solicitation Package Mailing Deadline, immediately thereafter; *provided*

that the Debtors shall distribute the Combined Hearing Notice on or prior to the Combined Hearing Notice and Publication Deadline, as provided in the Disclosure Statement Order.

The materials in the Solicitation Package are intended to be self-explanatory.  If you have any questions or would like paper copies of the Solicitation Package because receiving the Solicitation Package via email or USB flash drive imposes a hardship on you, please contact the Claims and Noticing Agent by: (i) visiting the Debtors' restructuring website at: https://cases.stretto.com/EddieBauer; (ii) calling the Claims and Noticing Agent at (833)-437-6838 (Toll-Free) or (714)-(442)-4326 (International); (iii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC Ballot Processing, c/o Stretto, 410 Exchange, Suite 100 Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.  Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may not advise you as to whether you should vote to accept or reject the Plan.

The Debtors will file the Plan Supplement (as defined in the Plan) by no later than April 1, 2026, and will serve a notice of Plan Supplement on all Holders of Claims or Interests, the U.S. Trustee, the 2002 List (regardless of whether such parties are entitled to vote on the Plan), which notice will: (i) inform parties that the Debtors filed the Plan Supplement; (ii) list the information contained in the Plan Supplement; and (iii) explain how parties may obtain copies of the Plan Supplement.

## IX.    CONFIRMATION OF THE PLAN

### A.    The Combined Hearing.

Under section 1128(a) of the Bankruptcy Code, the Bankruptcy Court, after notice, may hold a hearing to confirm a plan of reorganization.  The Combined Hearing may, however, be continued or adjourned from time to time without further notice to parties in interest other than an adjournment announced in open court or a notice of adjournment Filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules.  Subject to section 1127 of the Bankruptcy Code, the Plan may be modified, if necessary, prior to, during, or as a result of the Combined Hearing, without further notice to parties in interest.

Additionally, section 1128(b) of the Bankruptcy Code provides that a party in interest may object to Confirmation.  An objection to Confirmation of the Plan must be Filed with the Bankruptcy Court and served on the Debtors and certain other parties in interest in accordance with the applicable order of the Bankruptcy Court so that it is actually received on or before the deadline to file such objections as set forth therein.

### B.    Requirements for Confirmation of the Plan.

Among the requirements for Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code are:  (i) the Plan is accepted by all Impaired Classes of Claims or Interests, or if rejected by an Impaired Class of unsecured creditors, the Plan "does not discriminate unfairly" and is "fair and equitable" as to the rejecting Impaired Class; (ii) the Plan is feasible; and (iii) the Plan is in the "best interests" of Holders of Claims or Interests.

At the Combined Hearing, the Bankruptcy Court will determine whether the Plan satisfies all of the requirements of section 1129 of the Bankruptcy Code.  The Debtors believe that:  (i) the Plan satisfies,

or will satisfy, all of the necessary statutory requirements of chapter 11 for plan confirmation; (ii) the Debtors have complied, or will have complied, with all of the necessary requirements of chapter 11 for plan confirmation; and (iii) the Plan has been proposed in good faith.  In addition, the Bankruptcy Court will consider approval of this Disclosure Statement on a final basis at the Combined Hearing.

### C.    Best Interests of Creditors/Liquidation Analysis.

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that a bankruptcy court find, as a condition to confirmation, that a chapter 11 plan provides, with respect to each impaired class, that each Holder of a claim or an equity interest in such impaired class either (i) has accepted the plan or (ii) will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that the non-accepting Holder would receive or retain if the debtors liquidated under chapter 7 on such date.  The Debtors believe that the Plan will satisfy the best interests test because, among other things, the recoveries expected to be available to Holders of Allowed Claims and Interests under the Plan will be greater than the recoveries expected to be available in a chapter 7 liquidation, as discussed more fully below.

The Liquidation Analysis is being prepared by BRG, the Debtors' financial advisor, and will be attached to an amended version of this Disclosure Statement.  The Debtors expect that the Liquidation Analysis will show that liquidation of the Debtors' businesses under chapter 7 of the Bankruptcy Code would result in a substantial decrease in the value to be realized by Holders of Claims or Interests as compared to distributions contemplated under the Plan.

In a typical chapter 7 case, a trustee is elected or appointed to liquidate a debtor's assets and to make distributions to creditors in accordance with the priorities established in the Bankruptcy Code.  Generally, secured creditors are paid first from the proceeds of sales of their collateral.  If any assets remain in the bankruptcy estate after satisfaction of secured creditors' claims from their collateral, administrative expenses are next to be paid.  After accounting for administrative expenses, unsecured creditors (including any secured creditor deficiency claims) are paid from the sale proceeds of any unencumbered assets and any remaining sale proceeds of encumbered assets in excess of any secured claims, according to their respective priorities.  Unsecured creditors with the same priority share in proportion to the amount of their allowed claims in relationship to the total amount of allowed claims held by all unsecured creditors with the same priority.  Finally, interest holders receive the balance that remains, if any, after all creditors are paid.

The Plan effects a Wind-Down of the Debtors' remaining assets not otherwise sold in the Sale Transaction, if applicable, or disposed of pursuant to the Store Closing Sales.  The Debtors believe that the Plan provides a greater recovery to Holders of Claims than a chapter 7 liquidation would for several reasons.  Frist, the chapter 7 trustee will not have the technical expertise and knowledge of the Debtors' businesses that the Debtors had when they proposed to liquidate their assets and commence the Wind-Down.  Second, the distributable proceeds under a chapter 7 liquidation will be lower because of the fees and expenses of a chapter 7 trustee and any professionals retained by the chapter 7 trustee.  *See, e.g.*, 11 U.S.C. § 326(a) (providing for compensation of a chapter 7 trustee up to 3 percent of the value of the assets); 11 U.S.C. 503(b)(2) (providing administrative expense status for compensation and expenses of a chapter 7 trustee and such trustee's professionals).  Third, the conversion to chapter 7 would also require entry of a new bar date for filing claims at least ninety (90) days following conversion of the case to chapter 7.  *See* Fed. R. Bankr. P. 1019(b); 3002(c).  Thus, the amount of Claims ultimately filed and Allowed against the Debtors could materially increase, thereby further reducing creditor recoveries versus those available under the Plan.

The Debtors submit that a chapter 7 liquidation could result in materially reduced wind-down proceeds, increased expenses, delayed distributions, and the prospect of additional claims that were not

asserted in the Chapter 11 Cases.  Consequently, the Debtors and their management believe that Confirmation of the Plan will provide a substantially greater return to Holders of Claims or Interests than would a liquidation under chapter 7 of the Bankruptcy Code.

### D.    Feasibility.

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor, or any successor to the debtor (unless, as is the case here, such liquidation or reorganization is proposed in such plan of reorganization).

The Plan contemplates the distribution of the proceeds from the Sale Transaction, if applicable, and the Store Closing Sales followed by the Wind-Down of the Debtors' remaining Estates.  Accordingly, the Debtors believe that all Plan obligations will be satisfied without the need for further reorganization of the Debtors, the Plan provides for the highest possible return for creditors, and the Plan satisfies the feasibility requirement of section 11129(a)(11) of the Bankruptcy Code.

### E.    Acceptance by Impaired Classes.

The Bankruptcy Code requires, as a condition to confirmation, except as described in the following section, that each class of claims or equity interests impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is presumed to have accepted the plan and, therefore, solicitation of acceptances with respect to such a class is not required.[33]

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in a number of allowed claims in that class, counting only those claims that have *actually* voted to accept or to reject the plan.  Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of allowed interests in that class, counting only those interests that have *actually* voted to accept or to reject the plan.

Pursuant to <u>Article III.E</u> of the Plan, if a Class contains Claims eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

### F.    Confirmation Without Acceptance from All Classes.

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if all impaired classes have not accepted it; *provided* that the plan has been accepted by at least one impaired class.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired class's rejection or deemed rejection of the plan, the plan will be confirmed, at the plan proponent's request, in a procedure commonly known as a "cramdown" so long as the plan does not "discriminate unfairly" and is "fair and

---

[33]    A class of claims is "impaired" within the meaning of section 1124 of the Bankruptcy Code unless the plan (a) leaves unaltered the legal, equitable and contractual rights to which the claim or equity interest entitles the holder of such claim or equity interest or (b) cures any default, reinstates the original terms of such obligation, compensates the holder for certain damages or losses, as applicable, and does not otherwise alter the legal, equitable, or contractual rights to which such claim or equity interest entitles the holder of such claim or equity interest.

equitable" with respect to each class of claims or equity interests that is impaired under, and has not accepted, the plan.

Although certain Impaired Classes are conclusively deemed to reject the Plan, the Debtors reserve the right to seek to confirm the Plan utilizing the "cramdown" provision of section 1129(b) of the Bankruptcy Code. The Debtors may request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code. The Debtors, subject to the Plan, reserve the right to alter, amend, modify, revoke, or withdraw the Plan or any Plan Supplement document, including to amend or modify the Plan or any Plan Supplement document to satisfy the requirements of section 1129(b) of the Bankruptcy Code; *provided* that all provisions of the Restructuring Support agreement that survive termination thereof shall remain in effect in accordance with the terms thereof.

### 1. No Unfair Discrimination.

The "unfair discrimination" test applies to classes of claims or interests that are of equal priority and are receiving different treatment under a plan. The test does not require that the treatment be the same or equivalent, but that treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims or interests of equal rank (*e.g.*, classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly. A plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

### 2. Fair and Equitable Test.

The "fair and equitable" test applies to classes of different priority and status (*e.g.*, secured versus unsecured) and includes the general requirement that no class of claims receive more than 100 percent of the amount of the allowed claims in the class. As to the dissenting class, the test sets different standards depending upon the type of claims or equity interests in the class.

The Debtors submit that if the Debtors "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code, the Plan is structured so that it does not "discriminate unfairly" and satisfies the "fair and equitable" requirement. With respect to the unfair discrimination requirement, all Classes under the Plan are provided treatment that is substantially equivalent to the treatment that is provided to other Classes that have equal rank. With respect to the fair and equitable requirement, no Class under the Plan will receive more than 100 percent of the amount of Allowed Claims or Interests in that Class. The Debtors believe that the Plan and the treatment of all Classes of Claims or Interests under the Plan satisfy the foregoing requirements for nonconsensual Confirmation of the Plan.

### G. Valuation.

The Debtors believe that the comprehensive marketing process summarized in <u>Article V.E</u> herein provides the best mechanism to estimate the value of the Debtors. Because the Debtors are conducting the Sale Process, pursuant to which they are soliciting bids to purchase the Debtors' assets as a going concern if such transaction represents a more value-maximizing outcome than the completion of Store Closing Sales at all of the Debtors' stores, the Debtors have not conducted a "book based" valuation analysis. Nevertheless, the ultimate recoveries under the Plan will result from the Estates' realization of the highest available disposition of the Debtors' assets. Further, the Debtors determined that such a process satisfies obligations under section 1129 of the Bankruptcy Code and obviates the need for an independent valuation analysis. *See* 11 U.S.C. § 1125(b) ("The court may approve a disclosure statement without a valuation of

the debtor or an appraisal of the debtor's assets."); *In re Invitae Corporation*, No. 24-11362 (MBK) (Bankr. N.J. June 13, 2024) (ECF No. 633) (order approving disclosure statement without a valuation analysis).

## X.    CERTAIN MATERIAL U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A.    Introduction.

The following discussion is a summary of certain material U.S. federal income tax consequences of the consummation of the Plan to the Debtors and to certain Holders of Claims.  This summary is based on the U.S. Internal Revenue Code of 1986, as amended (the "IRC"), the U.S. Treasury Regulations promulgated thereunder (the "Treasury Regulations"), judicial decisions and authorities, published administrative rules, positions and pronouncements of the U.S. Internal Revenue Service (the "IRS"), and other applicable authorities, all as in effect on the date of this Disclosure Statement and all of which are subject to change or differing interpretations, possibly with retroactive effect, so as to result in U.S. federal income tax consequences different from those summarized herein.  Due to the lack of definitive judicial and administrative authority in a number of areas, substantial uncertainty may exist with respect to some of the tax consequences described below.  No opinion of counsel has been obtained, and the Debtors do not intend to seek a ruling or determination from the IRS as to any of the tax consequences of the Plan discussed below.  The discussion below is not binding upon the IRS or the courts and no assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than any position discussed herein.

This discussion does not purport to address all aspects of U.S. federal income taxation that may be relevant to the Debtors or to certain Holders of Claims in light of their individual circumstances.  This discussion does not address tax issues with respect to such Holders of Claims subject to special treatment under the U.S. federal income tax laws (including, for example, banks, brokers dealers, mutual funds, governmental authorities or agencies, pass-through entities, beneficial owners of pass-through entities, subchapter S corporations, dealers and traders in securities, insurance companies, financial institutions, trusts, tax-exempt organizations, controlled foreign corporations, passive foreign investment companies, small business investment companies, foreign taxpayers, Persons who are related to the Debtors within the meaning of the IRC, Persons liable for alternative minimum tax, Holders of Claims whose functional currency is not the U.S. dollar, Holders of Claims who prepare "applicable financial statements" (as defined in section 451 of the IRC), Persons using a mark-to-market method of accounting, Holders of Claims who are themselves in bankruptcy, regulated investment companies, and those holding, or who will hold Claims or any other consideration to be received under the Plan, or any property described herein as part of a hedge, straddle, conversion, or other integrated transaction).  This summary also does not address any aspect of U.S. non-income (including estate or gift), state, local, or non-U.S. taxation, considerations under any applicable tax treaty or any tax arising under section 1411 of the IRC (the "Medicare" tax on certain investment income), and this summary does not address any special arrangements or contractual rights that are not being received or entered into in respect of an underlying Claim or Interest, including the tax treatment of any backstop fees or similar arrangements (including any ramifications such arrangement may have on the treatment of a Holder under the Plan).  Additionally, this summary assumes that a Holder of an Allowed Claim holds only Claims in a single class and holds such Claims as "capital assets" (within the meaning of section 1221 of the IRC).  Moreover, this summary assumes that the various debt and other arrangements to which the Debtors or the Wind-Down Debtors are or will be a party will be respected for U.S. federal income tax purposes in accordance with their form, and that the Claims constitute interests in the Debtors "solely as a creditor" for purposes of section 897 of the IRC.  Furthermore, this discussion assumes that none of the Allowed Claims are treated as a "contingent payment debt instrument" for U.S. federal income tax purposes and that each of the Allowed Claims are denominated in U.S. dollars.  This summary does not discuss differences in tax consequences to Holders of Claims that act or receive consideration in a capacity other than as a Holder of a Claim, and the tax consequences for such Holders

may differ materially from that described below.  This summary does not address the U.S. federal income tax consequences to Holders of Claims (i) whose Claims are Unimpaired or otherwise entitled to payment in full in Cash under the Plan, (ii) that are deemed to reject the Plan, or (iii) that are otherwise not entitled to vote to accept or reject the Plan.

For purposes of this discussion, a "U.S. Holder" is a Holder of a Claim that for U.S. federal income tax purposes is: (i) an individual citizen or resident of the United States; (ii) a corporation (or other entity treated as a corporation for U.S. federal income tax purposes) created or organized under the laws of the United States, any state thereof or the District of Columbia; (iii) an estate the income of which is subject to U.S. federal income taxation regardless of the source of such income; or (iv) a trust (a) if a court within the United States is able to exercise primary jurisdiction over the trust's administration and one or more "United States persons" (within the meaning of section 7701(a)(30) of the IRC) has authority to control all substantial decisions of the trust or (b) that has a valid election in effect under applicable Treasury Regulations to be treated as a "United States person" (within the meaning of section 7701(a)(30) of the IRC).  For purposes of this discussion, a "Non-U.S. Holder" is any Holder of a Claim that is not a U.S. Holder other than any partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership (or other entity treated as a partnership or other pass-through entity for U.S. federal income tax purposes) is a Holder of a Claim, the tax treatment of a partner (or other beneficial owner) generally will depend upon the status of the partner (or other beneficial owner) and the activities of the partner (or other beneficial owner) and the partnership (or other pass-through entity).  Partners (or other beneficial owners) of partnerships (or other pass-through entities) that are Holders of Claims are urged to consult their respective tax advisors regarding the U.S. federal income tax consequences of the Plan.

**THE FOLLOWING SUMMARY OF CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND ADVICE BASED UPON THE INDIVIDUAL CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM.  ALL HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS FOR THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE PLAN, AS WELL AS THE CONSEQUENCES TO THEM OF THE PLAN ARISING UNDER ANY OTHER U.S. FEDERAL TAX LAWS OR THE LAWS OF ANY STATE, LOCAL, OR NON-U.S. TAXING JURISDICTION OR UNDER ANY APPLICABLE TREATY.**

**B.    Certain U.S. Federal Income Tax Consequences of the Plan to the Debtors - Characterization of the Sale Transaction, Store Closing Sales, and Wind-Down Transactions.**

**1.    In General.**

The Debtors are currently each treated as an entity disregarded as separate from its owner within the meaning of Treasury Regulation Section 301.7701-3 for U.S. federal income tax purposes and are directly or indirectly owned by Copper Retail JV LLC ("Copper").  Accordingly, the U.S. federal income tax consequences of consummating the Plan will generally not be borne by the Debtors, but by Copper's direct or indirect equityholders.

2.      **The Sale Transaction, Store Closing Sales, and Wind-Down Transactions.**

The Debtors expect that the Sale Transaction (if applicable), Store Closing Sales, and Wind-Down Transactions will be structured as one or more taxable sales with respect to all of the Debtors' assets, business and store locations.  The Debtors generally expect to recognize any gain or loss in an amount equal to the difference between the value of the consideration received by the Debtors (including, for this purpose, assumption of liabilities) and the Debtors' tax basis in such assets.

Purchaser will take a tax basis in the acquired assets equal to the amount of consideration paid and will not inherit any tax attribute of the Debtors.

3.      **Cancellation of Debt Income**

In general, absent an exception, a debtor will realize and recognize cancellation of debt income ("COD Income") upon satisfaction of its outstanding indebtedness for total consideration less than the amount of such indebtedness.  The amount of COD Income, in general, is the excess of (a) the adjusted issue price of the indebtedness satisfied, over (b) the fair market value of any consideration given in satisfaction of such indebtedness at the time of the exchange.

Under section 108 of the IRC, a taxpayer is not required to include COD Income in gross income (a) if the taxpayer is under the jurisdiction of a court in a case under chapter 11 of the Bankruptcy Code and the discharge of debt occurs pursuant to that case (the "Bankruptcy Exception"), or (b), to the extent that the taxpayer is insolvent immediately before the discharge (the "Insolvency Exception").  Instead, as a consequence of such exclusion, a taxpayer-debtor must reduce its tax attributes by the amount of COD Income that it excluded from gross income.  In general, tax attributes will be reduced in the following order:  (a) net operating losses ("NOLs"); (b) most tax credits; (c) capital loss carryovers; (d) tax basis in assets (but not below the amount of liabilities to which the debtor remains subject); (e) passive activity loss and credit carryovers; and (f) foreign tax credits.  Alternatively, the taxpayer can elect first to reduce the basis of its depreciable assets pursuant to section 108(b)(5) of the IRC.

Under section 108(d)(6) of the IRC, when an entity that is a flow-through entity (such as each of the Debtors) realizes COD Income, its regarded owners are treated as receiving their allocable share of such COD Income and the Bankruptcy Exception and the Insolvency Exception (and related attribute reduction) are applied at the owner level rather than at the entity level.  Accordingly, Copper's direct or indirect equityholders will be treated as receiving their allocable share, if any, of the COD Income realized by the Debtors.  Copper's direct or indirect equityholders will only be able to exclude COD Income to the extent they themselves meet the Bankruptcy Exception or the Insolvency Exception.

The Debtors are guarantors of the Class 3 ABL Claims.  Pursuant to the Plan, Holders of Class 3 ABL Claims shall receive proceeds in full and final satisfaction of the Debtors' obligations as guarantors, and all ABL Claims against borrowing persons or entities other than the Debtors shall be reserved and preserved, reduced by the amount of proceeds received.  The Debtors are therefore not expected to realize any COD Income with respect to the treatment of the Class 3 ABL Claims.  The Class 6 General Unsecured Claims are direct Claims against the Debtors.  The Debtors are expected to realize and recognize COD Income to the extent the aggregate adjusted issue price of the Claims satisfied is greater than the proceeds the Holders of Class 6 General Unsecured Claims receive in satisfaction of such Claims.

**C.      Certain U.S. Federal Income Tax Consequences of the Plan to Certain U.S. Holders of Class 3 ABL Claims and Class 6 General Unsecured Claims.**

The following discussion assumes that the Debtors will undertake the Sale Transaction (if applicable), Store Closing Sales, and Wind-Down Transactions currently contemplated by the Plan. U.S. Holders of Claims are urged to consult their tax advisors regarding the tax consequences of such transactions listed in the preceding sentence.

As described above, the Sale Transaction (if applicable), Store Closing Sales and Wind-Down Transactions are expected to be structured as one or more sales of some, all, or substantially all of the Debtors' assets followed by a distribution of the net cash proceeds therefrom in accordance with the Plan.

The character of any gain or loss recognized by a U.S. Holder as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the U.S. Holder, the nature of the Claim in such U.S. Holder's hands, whether the Claim constitutes a capital asset in the hands of the U.S. Holder, whether the Claim was purchased at a discount, and whether and to what extent the U.S. Holder has previously claimed a bad debt deduction with respect to its Claim.  If recognized gain is capital gain, it generally would be long term capital gain if the U.S. Holder held its Claim for more than one year at the time of the exchange.  The deductibility of capital losses is subject to certain limitations as discussed below.

**1.      Consequences to U.S. Holders of Class 3 ABL Claims.**

Except to the extent that a U.S. Holder of an ABL Claim agrees to less favorable treatment, each U.S. Holder of an ABL Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of: (i) if Class 6 (General Unsecured Claims) votes to reject the Plan, 100% of Net Proceeds; or (ii) if Class 6 (General Unsecured Claims) votes to accept the Plan, 100% of Net Proceeds *less* the GUC Contingent Recovery Pool.

Upon the consummation of the Plan, the Debtors are released in full as guarantors of Class 3 ABL Claims, and all ABL Claims against borrowing persons or entities other than the Debtors are reserved and preserved by the Holders of such Claims, reduced by the amount of proceeds received under the Plan.  To the extent receiving Cash, a U.S. Holder of an ABL Claim is treated as receiving payments under the ABL Facility and is not expected to recognize gain or loss in connection therewith.

For the treatment of the portion of the consideration received that is allocable to accrued but unpaid interest, original issue discount ("OID") or market discount, (which differs from the treatment described above), see the sections titled "*Accrued Interest*" and "*Market Discount*" below.

**2.      Consequences to U.S. Holders of Class 6 Allowed General Unsecured Claims.**

If Class 6 Holders of Allowed General Unsecured Claims vote to accept the Plan, then except to the extent that a U.S. Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each U.S. Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, its pro rata share of the GUC Contingent Recovery Pool.

To the extent receiving Cash, a U.S. Holder of an Allowed General Unsecured Claim is expected to recognize gain or loss equal to (a) the amount of any Cash received, *minus* (b) the Holder's adjusted tax basis in its Allowed General Unsecured Claim.

For the treatment of the exchange to the extent a portion of the consideration received is allocable to accrued but unpaid interest, OID or market discount, (which differs from the treatment described above), see the sections titled "*Accrued Interest*" and "*Market Discount*" below.

### 3.    Accrued Interest.

To the extent that the fair market value of the consideration received by a U.S. Holder on an exchange of its Allowed Claim under the Plan is attributable to accrued but unpaid interest or OID on such Allowed Claim, the receipt of such amount generally should be taxable to the U.S. Holder as ordinary interest income (to the extent such amount was not previously included in the gross income of such U.S. Holder).  Conversely, a U.S. Holder of an Allowed Claim may be able to deduct a loss to the extent that any accrued interest on such debt instruments was previously included in the U.S. Holder's gross income but was not paid in full by the Debtors.  Such loss may be ordinary, but the tax law is unclear on this point.

If the fair market value of the consideration received by a U.S. Holder of an Allowed Claim under the Plan is not sufficient to fully satisfy all principal and interest on its Allowed Claim, the extent to which such consideration will be attributable to accrued interest is unclear.  Under the Plan, the aggregate consideration distributed to U.S. Holders will be allocated first to the principal amount of the Allowed Claim, with any excess allocated to accrued but unpaid interest, if any, on such U.S. Holder's Allowed Claims.  Certain legislative history indicates that an allocation of consideration between principal and interest provided in a chapter 11 plan of reorganization is binding for U.S. federal income tax purposes, and certain case law generally indicates that a final payment on a distressed debt instrument that is insufficient to repay outstanding principal and interest will be allocated first to principal, rather than interest.  Certain Treasury Regulations, however, allocates payments first to any accrued but unpaid interest.  The IRS could take the position that the consideration received by the U.S. Holder should be allocated in some way other than as provided in the Plan.

***U.S. Holders of Allowed Claims are urged to consult their own tax advisors regarding the proper allocation of the consideration received by them under the Plan.***

### 4.    Market Discount.

Under the "market discount" provisions of the IRC, some or all of any gain realized by a U.S. Holder of an Allowed Claim who exchanges such Allowed Claim for an amount on the Effective Date may be treated as ordinary income (instead of capital gain), to the extent of the amount of "market discount" on such exchanged Allowed Claim.  In general, a debt instrument is considered to have been acquired with "market discount" if it is acquired other than on original issue and if the U.S. Holder's adjusted tax basis in the debt instrument is less than (a) the sum of all remaining payments to be made on the debt instrument, excluding "qualified stated interest" or (b) in the case of a debt instrument issued with original issue discount, its adjusted issue price, by at least a *de minimis* amount (equal to 1/4 of 1 percent of the sum of all remaining payments to be made on the debt instrument, excluding qualified stated interest, *multiplied* by the remaining number of complete years to maturity).

Any gain recognized by a U.S. Holder on the disposition of an Allowed Claim (determined as described above) which was acquired with market discount should be treated as ordinary income to the extent of the amount of market discount that accrued thereon while such Allowed Claim was treated as held by such U.S. Holder (unless such U.S. Holder elected to include such amount of market discount in income as it accrued).  To the extent that a U.S. Holder exchanges any Allowed Claim that was acquired with market discount in a tax-free transaction for other property, any market discount that accrued on such Allowed Claim (*i.e.*, up to the time of the exchange), but was not recognized by such U.S. Holder, is carried over to the property received therefor and any gain recognized on the subsequent sale, exchange,

redemption, or other disposition of such property is treated as ordinary income to the extent of such accrued, but not recognized, market discount.

*U.S. Holders of Allowed Claims are urged to consult their own tax advisors concerning the application of the market discount rules to their Allowed Claim.*

### 5.      Limitations on Use of Capital Losses.

A U.S. Holder who recognizes capital losses will be subject to limits on its use of capital losses. For a non-corporate U.S. Holder, capital losses may be used to offset any capital gains (without regard to holding periods) plus ordinary income to the extent of the lesser of (a) $3,000 ($1,500 for married individuals filing separate returns) or (b) the excess of the capital losses over the capital gains. A non-corporate U.S. Holder may carry over unused capital losses and apply them to capital gains and a portion of its ordinary income for an unlimited number of years. For corporate U.S. Holders, losses from the sale or exchange of capital assets may only be used to offset capital gains. A corporate U.S. Holder that has more capital losses than can be used in a tax year may be allowed to carry over the excess capital losses for use in succeeding tax years. Corporate U.S. Holders may only carry over unused capital losses for the five years following the capital loss year, but are allowed to carry back unused capital losses to the three years preceding the capital loss year.

### D.      Certain U.S. Federal Income Tax Consequences of the Plan to Non-U.S. Holders of Class 3 ABL Claims and Class 6 General Unsecured Claims.

The following discussion assumes that the Debtors will undertake the Sale Transaction (if applicable), Store Closing Sales, and Wind-Down Transactions currently contemplated by the Plan and includes only certain U.S. federal income tax consequences of the Plan to Non-U.S. Holders of ABL Claims, Term Loan Claims, Subordinated Loan Claims, and General Unsecured Claims. This discussion does not include any non-U.S. tax considerations. The rules governing the U.S. federal income tax consequences to Non-U.S. Holders are complex. Each Non-U.S. Holder is urged to consult its own tax advisor regarding the U.S. federal, state, local, non-U.S., and non-income tax consequences of the consummation of the Plan to such Non-U.S. Holder.

### 1.      Gain Recognition by Non-U.S. Holders.

Whether a Non-U.S. Holder realizes gain or loss on the exchange and the amount of such gain or loss is determined in the same manner as set forth above in connection with U.S. Holders.

Any gain realized by a Non-U.S. Holder generally will not be subject to U.S. federal income taxation unless (a) the Non-U.S. Holder is an individual who was present in the United States for 183 days or more during the taxable year in which the Sale Transaction (if applicable), Store Closing Sales, and Wind-Down Transactions occur and certain other conditions are met or (b) such gain is effectively connected with the conduct by such Non-U.S. Holder of a trade or business in the United States (and, if an applicable income tax treaty applies, such gain is attributable to a permanent establishment maintained by such Non-U.S. Holder in the United States).

If the first exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax at a rate of 30 percent (or at a reduced rate or exemption from tax under an applicable income tax treaty) on the amount by which such Non-U.S. Holder's capital gains allocable to U.S. sources exceed capital losses allocable to U.S. sources during the taxable year of the exchange. If the second exception applies, the Non-U.S. Holder generally will be subject to U.S. federal income tax with respect to any gain realized on the exchange if such gain is effectively connected with the Non-U.S. Holder's conduct of a trade or

business in the United States in the same manner as a U.S. Holder.  In order to claim an exemption from withholding tax, such Non-U.S. Holder will be required to provide a properly executed IRS Form W-8ECI (or suitable substitute or successor form or such other form as the IRS may prescribe).  In addition, if such a Non-U.S. Holder is a corporation, it may be subject to a branch profits tax equal to 30 percent (or such lower rate provided by an applicable income tax treaty) of its effectively connected earnings and profits for the taxable year, subject to certain adjustments.

## 2. Accrued Interest.

Subject to the discussion of FATCA below, payments to a Non-U.S. Holder that are attributable to accrued but untaxed interest (or original issue discount, if any) with respect to the Allowed Claims generally will not be subject to U.S. federal income or withholding tax, *provided* that the Non-U.S. Holder provides to the withholding agent, prior to receipt of such payment, appropriate documentation (generally, IRS Form W-8BEN or W-8BEN-E) establishing that the Non-U.S. Holder is not a U.S. person, unless:

a. the Non-U.S. Holder actually or constructively owns ten percent or more of the total combined voting power of all classes of Debtors' stock entitled to vote;

b. the Non-U.S. Holder is a "controlled foreign corporation" that is a "related person" with respect to Debtor (each, within the meaning of the IRC);

c. the Non-U.S. Holder is a bank receiving interest described in section 881(c)(3)(A) of the IRC; or

d. such interest is effectively connected with the conduct by the Non-U.S. Holder of a trade or business within the United States (in which case, provided the Non-U.S. Holder provides a properly executed IRS Form W-8ECI (or successor form) to the withholding agent, the Non-U.S. Holder (i) generally will not be subject to withholding tax, but (ii) will be subject to U.S. federal income tax on a net basis generally in the same manner as a U.S. Holder (unless an applicable income tax treaty provides otherwise), and a Non-U.S. Holder that is a corporation for U.S. federal income tax purposes may also be subject to a branch profits tax with respect to such Non-U.S. Holder's effectively connected earnings and profits that are attributable to the accrued interest at a rate of thirty percent (or at a reduced rate or exemption from tax under an applicable income tax treaty).

A Non-U.S. Holder that does not qualify for the exemption from withholding tax with respect to accrued but untaxed interest (or original issue discount, if any) that is not effectively connected income generally will be subject to withholding of U.S. federal income tax at a thirty percent rate (or at a reduced rate or exemption from tax under an applicable income tax treaty) on any payments that are attributable to accrued but untaxed interest (or original issue discount, if any).  For purposes of providing a properly executed IRS Form W-8BEN or W-8BEN-E, special procedures are provided under applicable Treasury Regulations for payments through qualified foreign intermediaries or certain financial institutions that hold customers' securities in the ordinary course of their trade or business.  As described above in more detail, the aggregate consideration to be distributed to Holders of Allowed Claims in each Class will be allocated first to the principal amount of such Allowed Claims, with any excess allocated to accrued but unpaid interest on such Allowed Claims, if any.

## 3. FATCA.

Under legislation commonly referred to as the Foreign Account Tax Compliance Act ("FATCA"), foreign financial institutions and certain other foreign entities must report certain information with respect

to their U.S. account holders and investors or be subject to withholding at a rate of 30 percent on the receipt of "withholdable payments." For this purpose, "withholdable payments" are generally U.S.-source payments of fixed or determinable, annual, or periodical income, and, subject to the paragraph immediately below, also include gross proceeds from the sale of any property of a type which can produce U.S.-source interest or dividends. FATCA withholding will apply even if the applicable payment would not otherwise be subject to U.S. federal nonresident withholding.

Withholding with respect to the gross proceeds of a disposition of any stock, debt instrument, or other property that can produce U.S.-source dividends or interest has been eliminated under proposed Treasury Regulations, which can be relied on until final regulations become effective.

Each Non-U.S. Holder is urged to consult its own tax advisor regarding the possible impact of FATCA withholding rules on such Non-U.S. Holder.

**4.      Information Reporting and Back-Up Withholding.**

The Debtors and applicable withholding agents will withhold all amounts required by law to be withheld from payments of interest and dividends, whether in connection with distributions under the Plan or in connection with payments made on account of consideration received pursuant to the Plan and will comply with all applicable information reporting requirements. The IRS may make the information returns reporting such interest and dividends and withholding available to the tax authorities in the country in which a Non-U.S. Holder is resident. In general, information reporting requirements may apply to distributions or payments made to a Holder of a Claim under the Plan. Additionally, under the backup withholding rules, a Holder may be subject to backup withholding (currently at a rate of 24 percent) with respect to distributions or payments made pursuant to the Plan unless that Holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates that fact; or (b) timely provides a correct taxpayer identification number and certifies under penalty of perjury that the taxpayer identification number is correct and that the Holder is not subject to backup withholding (generally in the form of a properly executed IRS Form W-9 for a U.S. Holder, and, for a Non-U.S. Holder, in the form of a properly executed applicable IRS Form W-8 (or otherwise establishes such Non-U.S. Holder's eligibility for an exemption)). Backup withholding is not an additional tax but is, instead, an advance payment that may be refunded to the extent it results in an overpayment of tax; *provided* that the required information is timely provided to the IRS.

In addition, from an information reporting perspective, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. Holders subject to the Plan are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

**THE U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ARE COMPLEX. THE FOREGOING SUMMARY DOES NOT DISCUSS ALL ASPECTS OF FEDERAL INCOME TAXATION THAT MAY BE RELEVANT TO A PARTICULAR HOLDER IN LIGHT OF SUCH HOLDER'S CIRCUMSTANCES AND INCOME TAX SITUATION. ALL HOLDERS OF CLAIMS SHOULD CONSULT WITH THEIR TAX ADVISORS AS TO THE PARTICULAR TAX CONSEQUENCES TO THEM OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING THE APPLICABILITY AND EFFECT OF ANY STATE, LOCAL OR NON-U.S. TAX LAWS, AND OF ANY CHANGE IN APPLICABLE TAX LAWS.**

## XI.    RECOMMENDATION OF THE DEBTORS

In the opinion of the Debtors, the Plan is preferable to all other available alternatives and provides for a larger distribution to the Debtors' creditors than would result in any other scenario.  Accordingly, the Debtors recommend that Holders of Claims entitled to vote on the Plan vote to accept the Plan and support Confirmation.

Dated:  February 23, 2026

Eddie Bauer LLC

on behalf of itself and all other Debtors

/s/  Stephen Coulombe
Stephen Coulombe
Chief Restructuring Officer
Eddie Bauer LLC

**Exhibit 2**

**Solicitation and Voting Procedures**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

## SOLICITATION AND VOTING PROCEDURES

        **PLEASE TAKE NOTICE THAT**, on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**A.     The Voting Record Date.**

The Court has approved **MARCH 16, 2026**, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims in Class 3 ABL Claims and Class 6 General Unsecured Claims (each a "Voting Class," and collectively, the "Voting Classes") that either (i) have been listed on the Debtors' Schedules or (ii) with respect to which a valid proof of claim (a "Proof of Claim") has been filed before March 16, 2026 (such Claims, "Known Eligible Claims"), are entitled to vote on the Plan.

For Holders of Claims that (a) (i) are not listed in the Schedules and (ii) with respect to which a valid Proof of Claim has not been filed as of March 16, 2026 (*i.e.*, the Voting Record Date) (such Claims, "Unknown Eligible Claims"), and (b) with respect to which a valid Proof of Claim is filed on or after the Voting Record Date but prior to the applicable general claims bar date (the "Claims Bar Date") established in connection with the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code; (II) Establishing a Rejection Damages Bar Date and an Amended Schedules Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief* [Docket No. [●]], Stretto Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent"), shall serve the Solicitation Package to such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

Regardless of whether a Holder has a Known Eligible Claim or an Unknown Eligible Claim, in each case, such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline (as defined below) for such Ballot to be counted.

**B.     The Voting and Opt-Out Deadline.**

The Court has approved **APRIL 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** as the deadline for Holders of Claims in the Voting Classes to vote to accept or reject the Plan (the "Voting and Opt-Out Deadline"). The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket. To be counted as votes to accept or reject the Plan, all ballots (the "Ballots") must be executed, completed, and delivered pursuant to the instructions set forth on the applicable Ballot so that they are **actually received** by the Claims and Noticing Agent no later than the Voting and Opt-Out Deadline. Holders of Claims in the Voting Classes should submit their Ballots in accordance with the instructions provided on the applicable Ballot.

**C.     Form, Content, and Manner of Notices.**

1.     The Solicitation Package.

The following materials shall constitute the Solicitation Package:

     a.     a copy of these Solicitation and Voting Procedures;

     b.     the applicable Ballot, together with detailed voting instructions and instructions on how to submit the Ballot;

    c.    the Cover Letter, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

    d.    the Combined Hearing Notice;

    e.    the Disclosure Statement (and exhibits thereto, including the Plan);

    f.    the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and

    g.    any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

    2.    <u>Distribution of the Solicitation Package</u>.

Within five (5) business days following entry of the Disclosure Statement Order, the Claims and Noticing Agent shall serve via email or cause to be served via email copies of the Solicitation Package to Holders of Known Eligible Claims entitled to vote on the Plan and other parties in interest.  To the extent an email address is not on file for any Holders of such Claims or initial email service is returned undeliverable, and the Claims and Noticing Agent is in possession of a physical mailing address for such Holders, the Claims and Noticing Agent shall serve the Solicitation Package on such Holders in electronic format (*i.e.*, USB flash drive format) via first-class mail.  **Any party for which service of a Solicitation Package via email or USB flash drive imposes a hardship, as applicable, may request a Solicitation Package in paper format from the Claims and Noticing Agent by:  (i) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (ii) contacting the Claims and Noticing Agent at <u>EddieBauerInquiries@stretto.com</u>; or (iii) writing to the Claims and Noticing Agent at Eddie Bauer LLC Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.  In addition, these Solicitation and Voting Procedures, the Disclosure Statement, the Plan, the Disclosure Statement Order, and all pleadings filed with the Court are available on the Debtors' case website at <u>https://cases.stretto.com/EddieBauer</u>.**

The Claims and Noticing Agent shall also serve via email or cause to be served via email electronic versions of the Solicitation Package (excluding Ballots and the Cover Letter) on the U.S. Trustee and all parties who have requested service of papers in this case pursuant to Bankruptcy Rule 2002.

The Claims and Noticing Agent will not distribute the Solicitation Package to:  (a) Holders of Claims that (i) have already been paid in full during the Chapter 11 Cases or that are otherwise paid in full in the ordinary course of business pursuant to an order previously entered by the Court or (ii) are scheduled to be paid in the ordinary course prior to the Voting and Opt-Out Deadline; or (b) any party to whom notice of the *Debtors' Motion for Entry of an Order (I) Conditionally Approving the Adequacy of the Information Contained in the Disclosure Statement, (II) Approving the Solicitation and Voting Procedures with Respect to Confirmation of the Plan, (III) Approving the Forms of Ballots and Notices in Connection Therewith, (IV) Scheduling Certain Dates with Respect Thereto, and (V) Granting Related Relief* was sent but was subsequently returned as undeliverable and for whom no physical forwarding address was available as of the time of such distribution; (iii) the Holders of Claims or Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests); or (iv) parties that received a Notice of Non-Voting Status.

    3.    <u>Resolution of Disputed Claims for Voting Purposes; Resolution Event</u>.

The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim for any other purpose, including distributions under the Plan.

Any amounts pre-populated on a Ballot by the Debtors through the Claims and Noticing Agent are solely for voting purposes and are not binding for purposes of allowance and distribution.  In resolving disputed Claims for voting purposes, the following principles shall apply:

a.  If a Claim in a Voting Class is subject to an objection, other than a "reduce and allow" objection, that is filed with the Court on or prior to seven (7) days before the Voting and Opt-Out Deadline:  (i) the Debtors shall cause the Holder to be served with the *Notice of Non-Voting Status*, substantially in the form annexed as <u>Exhibit 4</u> to the Disclosure Statement Order (the "<u>Notice of Non-Voting Status</u>"), and *Opt-Out Form*, substantially in the form annexed as <u>Exhibit 4A</u> to the Disclosure Statement Order (the "<u>Opt-Out Form</u>"), as applicable; and (ii) the applicable Holder shall not be entitled to vote or reject the Plan on account of such Claim unless a Resolution Event (as defined herein) occurs; *provided* that if such objection seeks to reduce and allow a Claim, such Claim shall be entitled to vote only in the proposed reduced amount unless otherwise ordered by the Court;

b.  If a Claim in a Voting Class is subject to an objection, other than a "reduce and allow" objection, that is filed with the Court less than seven (7) days prior to the Voting and Opt-Out Deadline, the applicable Claim shall be deemed temporarily allowed for voting purposes only, without further action by the Holder of such Claim and without further order of the Court, unless the Court orders otherwise; *provided* that if such objection seeks to reduce and allow a Claim, such Claim shall be entitled to vote only in the proposed reduced amount unless otherwise ordered by the Court;

c.  A "<u>Resolution Event</u>" means the occurrence of one or more of the following events no later than two (2) business days prior to the Voting and Opt-Out Deadline:

   i.  an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

   ii.  a Holder of a Claim files a motion in the Court seeking entry of an order to temporarily allow a timely filed Proof of Claim for purposes of voting on the Plan (a "<u>3018 Motion</u>") *and* the Court enters an order approving such 3018 Motion;

   iii.  a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

   iv.  the pending objection to the applicable Claim is voluntarily withdrawn by the objecting party;

d.  No later than two (2) business days following the occurrence of a Resolution Event, the Debtors shall cause the Claims and Noticing Agent to distribute a Solicitation Package to the relevant Holder via hand delivery, first-class mail, or email; and

5

e.  Claims that have been paid in full, scheduled to be paid in full in the ordinary course prior to the Voting and Opt-Out Deadline, or otherwise satisfied in full prior to the Voting and Opt-Out Deadline, are disallowed for voting purposes.

4.  <u>Notice of Non-Voting Status for Unimpaired, Impaired, and Disputed Claims and Opt-Out Forms</u>.

The following Holders of Claims or Interests will receive (x) the Notice of Non-Voting Status, which will instruct such Holders as to how they may obtain copies of the documents contained in the Solicitation Package (excluding Ballots), as well as how they may opt out of the Third-Party Release; and (y) the Opt-Out Form, with which such Holders of Claims or Interests may opt out of the Third-Party Release and, if applicable, make certain elections:

a.  Holders of Claims or Interests that are not classified in accordance with section 1123(a)(1) of the Bankruptcy Code or who are not entitled to vote because they are Unimpaired or otherwise presumed to accept the Plan under section 1126(f) of the Bankruptcy Code;

b.  Holders of Claims or Interests who are not entitled to vote because they are deemed to reject the Plan under section 1126(g) of the Bankruptcy Code; and

c.  Holders of Claims that are subject to a pending objection.

5.  <u>Notices in Respect of Executory Contracts and Unexpired Leases</u>.

Counterparties to Executory Contracts and Unexpired Leases that receive a *Notice of Assumption of Executory Contracts and Unexpired Leases*, substantially in the form attached as <u>Exhibit 8</u> to the Disclosure Statement Order, or a *Notice of Rejection of Executory Contracts and Unexpired Leases*, substantially in the form attached as <u>Exhibit 9</u> to the Disclosure Statement Order, may file an objection to the Debtors' proposed assumption, rejection, or cure amount, as applicable. Such objections must: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "<u>General Order</u>") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "<u>Supplemental Commentary</u>")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** (x) in the case of a notice of assumption, no later than **fourteen (14) days after the service of such notice of assumption** on the affected counterparties, or (y) in the case of a notice of rejection**, no later than **seven (7) days after the service of such notice of rejection**:

| *Debtors* |
|---|
| **Eddie Bauer LLC**<br>c/o Stretto Inc.<br>410 Exchange, Suite 100, Irvine, CA 92602 |

---

[3]  The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

| *Co-Counsel for the Debtors* |
| --- |
| **Kirkland & Ellis LLP** <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com); <br> Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.** <br> Court Plaza, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com); <br> Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| **[●]** <br> [Address] <br> Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee** <br> **United States Trustee, Region 3** <br> One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 <br> Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |
| *Counsel to the Consenting ABL Lenders* |
| **Otterbourg P.C.** <br> 230 Park Avenue, New York, New York 10169 <br> Attention:  David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP** <br> 1211 Avenue of the Americas, New York, New York 10036-8704 <br> Attention:  Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP** <br> Two International Place, Boston, Massachusetts 02110 <br> Attention:  Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**D.      Voting and Tabulation Procedures.**

1.   <u>Holders of Filed and Scheduled Claims Entitled to Vote</u>.

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with respect to such Claims.

   a.      Holders of Known Eligible Claims, *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim) shall be allowed to vote only in the amounts set forth in <u>Section D.2</u> below;

b.      Unless otherwise provided, Holders of Unknown Eligible Claims who file a valid Proof of Claim prior to the Claims Bar Date, that: (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Claims Bar Date; and (ii) is not the subject of a pending objection filed with the Court at least seven (7) days prior to the Voting and Opt-Out Deadline, pending a Resolution Event as provided herein; *provided* that a Holder of a Claim that is the subject of a pending objection on a "reduce and allow" basis shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection absent a further order of the Court;

c.      Holders whose Claims arise: (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court; (ii) from an order entered by the Court; or (iii) from a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed or the Claim was scheduled as contingent, unliquidated, or disputed;

d.      Holders of any Claim that has been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

e.      any Entity to which an Entity described in subparagraphs (a) through (d) above has transferred its Claim; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register (i) on the Voting Record Date with respect to Known Eligible Claims or (ii) on the Claims Bar Date with respect to Unknown Eligible Claims.

2.    <u>Establishing Claim Amounts for Voting Purposes</u>.

**ABL Claims**. The Claim amounts of ABL Claims, for voting purposes only, will be established based on the amount of the applicable positions held by such Holders, as of the Voting Record Date, as evidenced by the applicable records provided by the Prepetition ABL Administrative Agent in electronic Microsoft Excel format to the Debtors or the Claims and Noticing Agent no later than two (2) Business Days following the Voting Record Date.

**<u>Other Filed and Scheduled Claims (if applicable)</u>**. The Claim amounts established herein shall control for voting purposes only and shall not constitute the Allowed amount of any Claim. Moreover, any amounts filled in on Ballots by the Debtors through the Claims and Noticing Agent, as applicable, are solely relevant for voting purposes and are not binding for purposes of allowance and distribution.

a.      In tabulating votes, the following hierarchy shall be used to determine the amount of the Claim associated with each claimant's vote:

i.      the Claim amount (A) settled and/or agreed upon by the Debtors, as reflected in a document filed with the Court, (B) set forth in an order of the Court, (C) set forth in a document executed by the Debtors pursuant to authority granted by the Court, or (D) set forth in emailed instructions from the Debtors' counsel to the Claims and Noticing Agent with the applicable voter copied;

ii.     the Claim amount contained in a Proof of Claim that is not subject to an objection and that has been timely filed by the applicable bar date (or deemed timely filed by the Court under applicable law), except for any amounts

asserted on account of any interest accrued after the Petition Date; *provided* that any Ballot cast by a holder of a Claim who timely files a Proof of Claim in respect of (A) a contingent Claim or a Claim in a wholly-unliquidated or undetermined or unknown amount (as indicated on the face of the Claim or based on a reasonable review by the Debtors and/or the Claims and Noticing Agent) that is not the subject of an objection will count toward satisfying the numerosity requirement of section 1126(c) of the Bankruptcy Code and will count as a Ballot for a Claim in the amount of $1.00 solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code, or (B) a partially liquidated and partially unliquidated Claim will be Allowed for voting purposes only in the liquidated amount; *provided*, *further*, that to the extent the Claim amount contained in the Proof of Claim is different from the Claim amount set forth in a document filed with the Court as referenced in subparagraph (i) above, the Claim amount in the document filed with the Court shall supersede the Claim amount set forth on the respective Proof of Claim for voting purposes;

    iii.   the Claim amount listed in the Schedules (to the extent such Claim is not superseded by a timely filed Proof of Claim); *provided* that such Claim is not scheduled as contingent, disputed, or unliquidated and/or has not been paid; *provided*, *further*, that a Claim listed in the Schedules as contingent, disputed, or unliquidated shall vote at $1.00;

    b.   Proofs of Claim filed for $0.00 or Claims scheduled for $0.00 are not eligible to vote;

    c.   notwithstanding anything to the contrary contained herein, any creditor who has filed or purchased duplicate Claims within the same Voting Class shall be provided with only one Solicitation Package and one Ballot for voting a single Claim in such Class, regardless of whether the Debtors have objected to such duplicate Claims;

    d.   if a Proof of Claim has been amended by a later Proof of Claim that is filed on or prior to the Claims Bar Date, the later-filed amending Claim shall be entitled to vote in a manner consistent with these Solicitation and Voting Procedures, and the earlier-filed Claim shall be disallowed for voting purposes, regardless of whether the Debtors have objected to such amended Claim.  Except as otherwise ordered by the Court, any amendments to Proofs of Claim after the Claims Bar Date shall not be considered for purposes of these Solicitation and Voting Procedures; and

    e.   in the absence of any of the foregoing, such Claim shall be disallowed for voting purposes.

    3.   <u>Voting and Ballot Tabulation Procedures</u>.

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots so long as (x) such waiver is noted in the voting report and (y) such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Bankruptcy Local Rules:

    a.   any Claim filed in an amount denominated by a currency other than U.S. dollars will vote in the amount of $1.00;

b.  except as otherwise provided in these Solicitation and Voting Procedures, unless a Ballot is timely submitted and actually received by the Claims and Noticing Agent on or prior to the Voting and Opt-Out Deadline (as the same may be extended by the Debtors), the Debtors shall reject such Ballot as invalid and, therefore, shall not count it in connection with confirmation of the Plan;

c.  the Claims and Noticing Agent will date-stamp all Ballots when received;

d.  the Claims and Noticing Agent shall retain copies of Ballots and all solicitation-related correspondence for two (2) years following the closing of the Chapter 11 Cases, following which period the Claims and Noticing Agent is authorized to destroy and/or otherwise dispose of: (i) all copies of Ballots; (ii) printed solicitation materials, including unused copies of the Solicitation Package; and (iii) all solicitation-related correspondence (including undeliverable mail), in each case unless otherwise directed by the Debtors or the Clerk of the Court in writing within such two (2) year period;

e.  the Debtors will file the Voting Report by no later than April 15, 2026 at 2:00 p.m., prevailing Eastern Time, subject to any extension as a result of a change in the Combined Hearing Date;

f.  the Voting Report shall, among other things, delineate every Ballot that was excluded from the voting results (each an "Irregular Ballot"), which Ballots shall not be counted in determining acceptance or rejection of the Plan, and the Voting Report shall indicate the reason why such Irregular Ballots were rejected.  Irregular Ballots shall include any Ballot:

i.  that is illegible or contains insufficient information to permit the identification of the Holder of such Claim;

ii.  cast by any Entity that does not hold a Claim in a Voting Class as of the Voting Record Date (for Known Eligible Claims) or the Claims Bar Date (for Unknown Eligible Claims);

iii.  that is unsigned or that lacks an original signature (for the avoidance of doubt, a Ballot submitted via the Claims and Noticing Agent's online balloting portal shall be deemed to contain an original signature);

iv.  that is not marked to accept or reject the Plan or is marked both to accept and reject the Plan;

v.  transmitted by any other means not specifically approved pursuant to the Disclosure Statement Order or contemplated by these Solicitation and Voting Procedures or by separate order of the Court;

vi.  sent to any of the Debtors, the Debtors' agents or representatives, or the Debtors' advisors (other than the Claims and Noticing Agent) unless such Ballot is otherwise submitted by proper means; and

vii.  submitted by any Entity not entitled to vote pursuant to the procedures described herein;

10

g.  the Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report or a supplemental voting report, as applicable;

h.  neither the Debtors nor any other Entity will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report nor will any of them incur any liability for failure to provide such notification;

i.  unless waived or as ordered by the Court, any defects or irregularities in connection with submissions of Ballots must be cured prior to the Voting and Opt-Out Deadline or such Ballots will not be counted; *provided* that a valid opt-out election on an otherwise defective or Irregular Ballot submitted prior to the Voting and Opt-Out Deadline shall be honored as a valid opt-out election;

j.  the method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each Holder, and except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the executed Ballot;

k.  an executed Ballot is required to be submitted by the Entity or its authorized representative submitting such Ballot;

l.  delivery of a Ballot to the Claims and Noticing Agent by email, facsimile, or any electronic means, other than expressly provided in the applicable Ballot or these Solicitation and Voting Procedures, will not be valid;

m.  no Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), or the Debtors' financial or legal advisors, and, if so sent, such Ballot will not be counted unless the same is otherwise validly submitted by other means;

n.  if multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting and Opt-Out Deadline, the last dated, properly submitted, valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot;

o.  Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes; accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted, and to the extent there are multiple Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of tabulating votes;

p.  a person signing a Ballot in their capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing and if required or requested by the Claims and Noticing Agent, the Debtors, or the Court, must submit proper evidence of such fiduciary or representative capacity to the requesting party to so act on behalf of such Holder;

q.  in the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted or rejected;

r.  subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report;

s.  if a Claim has been estimated or otherwise Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only and not for purposes of allowance or distribution;

t.  if an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein;

u.  after the Voting and Opt-Out Deadline, no Ballot may be withdrawn or modified without the prior written consent of the Debtors or further order of the Court;

v.  the Debtors are authorized to enter into stipulations with the Holder of any Claim, email agreement between such Holder or its representatives and Debtors' counsel being sufficient, agreeing to the amount of a Claim for voting purposes;

w.  where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other solicitation and voting procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan;

x.  in the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted; and

y.  for purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided, however,* that if separate affiliated entities, including any funds or accounts that are advised or managed by the same entity or by affiliated entities, hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such Holders held one Claim in such Class, and the votes of each affiliated entity or managed fund or account will be counted separately for numerosity purposes as votes to accept or reject the Plan.

**E.  Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors reserve the right to make changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Package, Notice of Non-Voting Status, Ballots, Opt-Out Forms, Publication

Notice, Cover Letter, Solicitation and Voting Procedures, Plan Supplement Notice, Assumption Notice, Rejection Notice, and any related documents without further order of the Court, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any materials in the Solicitation Packages before distribution.

*      *      *      *

## Exhibit 3A

**Form of Ballot**

**(Class 3 – ABL Claims)**

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT FOR VOTING ON THE JOINT PLAN OF
REORGANIZATION OF EDDIE BAUER LLC AND ITS DEBTOR
AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

## Class 3 – ABL Claims

BEFORE COMPLETING THIS BALLOT, PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT (THIS "BALLOT") RELATING TO THE *JOINT PLAN OF REORGANIZATION OF EDDIE BAUER LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* [DOCKET NO. [●]] (AS MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"),[2] A COPY OF WHICH IS INCLUDED WITH THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN AND MAKE THE ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY STRETTO INC., THE CLAIMS, NOTICING, AND SOLICITATION AGENT FOR THE DEBTORS IN THE CHAPTER 11 CASES (THE "CLAIMS AND NOTICING AGENT") PRIOR TO **4:00 P.M., PREVAILING EASTERN TIME, ON APRIL 14, 2026** (THE "VOTING AND OPT-OUT DEADLINE").

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE SOLICITATION AND VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY (I) CALLING THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL); (II) CONTACTING THE CLAIMS AND NOTICING AGENT AT EDDIEBAUERINQUIRIES@STRETTO.COM; OR (III) WRITING TO THE CLAIMS AND NOTICING AGENT AT EDDIE BAUER LLC, ET AL., BALLOT PROCESSING C/O STRETTO INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602.

IF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "COURT") CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order (as defined in the Plan), as applicable.

PARTIES, IF APPROVED BY THE COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS OR INTERESTS IN THE MANNER DESCRIBED IN **ITEM 4** OF THIS BALLOT. IF YOU DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN, THE RELEASES WILL BE BINDING ON YOU.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement"), from Holders of Claims in Class 3 and Class 6 (each a "Voting Class," and collectively, the "Voting Classes") that are listed on the Debtors' Schedules.

You are receiving this Ballot because the Debtors' books and records indicate you are the Holder of a Class 3 ABL Claim as of **March 16, 2026** (the "Voting Record Date"). Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of such Claim and to elect to opt out of the Third-Party Release. **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

**Please review the detailed instructions regarding how to complete and submit this Ballot attached hereto as Annex A (the "Ballot Instructions")**. Once completed and returned in accordance with the attached Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class shall be deemed to have accepted the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in such Voting Class vote to accept the Plan. The Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan. Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Item 1** of this Ballot.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Third-Party Release, and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent **immediately** by: (a) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (b) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (c) writing to the Claims and Noticing Agent at Eddie Bauer LLC et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the solicitation package (the "Solicitation Package") you are receiving with this Ballot. If you received the Solicitation Package via email or if service in electronic format (*i.e.,* USB flash drive format) imposes a hardship, you may receive a Solicitation Package in paper format by contacting the Claims and Noticing Agent at the address, telephone number, or email address set forth above and requesting paper copies of the corresponding materials.

*You should review the Disclosure Statement, Plan, and voting instructions contained herein before you vote to accept or reject the Plan and before you decide whether to opt out of the Third-Party Release. You may wish to seek legal advice concerning the Wind-Down Transactions contemplated under the Plan.*

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan and regardless of whether you elect to opt out of the Third-Party Release. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that it is **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLASS 3 CLAIM.**

**THE VOTING AND OPT-OUT DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON APRIL 14, 2026.**

**VOTING – COMPLETE THIS SECTION**

<u>Item 1.</u>                Recovery.

Pursuant to <u>Article III</u> of the Plan, each Holder of an Allowed Class 3 Claim shall receive, in full and final satisfaction of such ABL Claim, the recovery as set forth in <u>Article III.B</u> of the Plan:

> On the Effective Date, except to the extent that a Holder of an Allowed ABL Claim agrees to less favorable treatment, each Holder of an Allowed ABL Claim shall receive, in full and final satisfaction of such Claim, its *pro rata* share of (i) or (ii) below, as applicable.  Notwithstanding the foregoing, it is expressly understood and agreed that all ABL Claims shall be reserved and preserved as against all other Loan Parties (as defined in the ABL Credit Agreement) other than the Debtors.
>
> > (i)        if Class 6 (General Unsecured Claims) votes to reject the Plan, 100% of Net Proceeds;[3] or
> >
> > (ii)       if Class 6 (General Unsecured Claims) votes to accept the Plan, 100% of the Net Proceeds *less* the GUC Contingent Recovery Pool.[4]
>
> Notwithstanding the foregoing, all ABL Claims shall be reserved and preserved as against [all Loan Parties other than the Debtors] (and as to the Debtors, all ABL Claims shall be subject to the Plan and Confirmation Order).

**For additional discussion of your treatment and rights for your Class 3 Claim under the Plan, please read the Disclosure Statement and the Plan.**

<u>Item 2.</u>                Amount of Claim and Vote on Plan.

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Claim in the Voting Class as set forth below.  You may vote to accept or reject the Plan.  You must check the applicable box below to "accept" or "reject" the Plan to have your vote counted.

Please note that you are voting all of your Claims in Class 3 either to accept or reject the Plan.  You may not split your vote.  If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted.  If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.

**For the avoidance of doubt, the amount of your Class 3 Claim for purposes of voting is listed immediately below.**

The Holder of the Allowed ABL Claim set forth below votes to (*please check <u>one and **only** one box</u>*):

<u>Debtor(s):</u>     _____

---

[3]        "<u>Net Proceeds</u>" means all Cash, if any, held by the Debtors or the Wind-Down Debtors, as applicable, on or after the Effective Date in accordance with the Cash Collateral Order, after (a) funding the Professional Fee Escrow Account, (b) funding the Wind-Down Account, and (c) paying or reserving amounts for Allowed Administrative Claims as set forth in <u>Article II.A</u> of the Plan.

[4]        "<u>GUC Contingent Recovery Pool</u>" means the greater of (a) $250,000 and (b) 10% of Net Proceeds in excess of the ABL Threshold Recovery Amount.

"<u>ABL Threshold Recovery Amount</u>" means (a) an amount equal to 60% of the cost value of all retail inventory, wholesale inventory, credit card accounts receivable, and wholesale receivables of the Debtors, based on the levels of such assets in the Approved Budget (as defined in the Cash Collateral Order) as of the Petition Date *less* (b) the aggregate amount of all Weekly Paydowns actually paid as of the Effective Date.

| Voting Class | Description | Amount | Vote to Accept the Plan | Vote to Reject the Plan |
|---|---|---|---|---|
| Class 3 | Class 3 consists of all Allowed ABL Claims | $_____ | ☐ | ☐ |

**Item 3.**          **Third-Party Release Information.**

**THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.   ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES. IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, THE DEBTORS WILL ASK THE COURT TO DEEM YOUR FAILURE TO AFFIRMATIVELY OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING THE COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.**

**YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN.**

**YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED REGARDLESS OF WHETHER YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTE TO ACCEPT THE PLAN IN ITEM 2 OF THIS BALLOT, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE. IF YOU VOTE TO ACCEPT THE PLAN AND YOU CHECK THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS ITEM 3, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN. FOR THE AVOIDANCE OF DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN ITEM 2 OF THIS BALLOT, YOU SHALL BE BOUND BY THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN.**

---

☐ **By checking this box, you elect to opt OUT of the Third-Party Release**

---

**Article VIII.D of the Plan provides for the following third-party release (the "Third-Party Release"):**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Party's authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Wind-Down Debtors (if applicable)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort, contract, or otherwise, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, or any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively),**

or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, the Debtors (including the Debtors' capital structure, management, ownership, or operations), or their Estates or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Sale Process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, any investment in any Debtor by any Released Party, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any benefit provided by a Debtor to any Released Party, cash management arrangements, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the decision to File the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, the Credit Agreements, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, and (ii) any Retained Causes of Action by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Court's finding that the Third Party Release is: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

Article VIII.E of the Plan provides for the following exculpation (the "Exculpation"):

Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring Transactions, the Sale Process, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Wind-Down Debtors, if applicable, in connection with the Plan and the Restructuring Transactions, or the transactions in furtherance of any of the foregoing. The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or

6

**regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder. This exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.**

<u>**Article VIII.F of the Plan provides for the following injunction (the "Injunction")**</u>**:**

**Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.**

**No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to <u>Article VIII.C</u>, <u>Article VIII.D</u>, or <u>Article VIII.E</u> of the Plan without the Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in <u>Article VIII.F</u> of the Plan.**

<u>Definitions related to the Third-Party Release, Exculpation, and Injunction:</u>

**Under the Plan**, "<u>*Affiliate*</u>" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

**Under the Plan**, "<u>*Related Party*</u>" means, collectively, with respect to any Person or Entity, each of, and in each case in its capacity as such, such Person's or Entity's current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his

or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

**Under the Plan**, "*Released Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) each Releasing Party; (f) the Purchaser, if any; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); provided, however, that, in each case, an Entity shall not be a Released Party if it: (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan, and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**Under the Plan**, "*Releasing Party*" means, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) all Holders of Claims that vote to accept the Plan; (f) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (g) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form in accordance with the Disclosure Statement Order, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (h) all Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) to the maximum extent permitted by law, each Related Party of each Entity in clause (a) through this clause (j); *provided* that, in each case, an Entity in clause (f) through clause (j) shall not be a Releasing Party if it: (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**Under the Plan**, "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such: (a) each of the Debtors; (b) the Wind-Down Debtors; and (c) with respect to the Entities in clauses (a) and (b), each of their respective current and former directors, the Disinterested Managers, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

**Item 4. Certification, Ballot Completion, and Delivery Instructions.**

By signing this Ballot, the undersigned certifies to the Court and the Debtors that:

(a) as of the Voting Record Date, either: (i) the undersigned is the Holder of the Claim in the Voting Class as set forth in **Item 2**; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in **Item 2**;

(b) the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) if the undersigned (or in the case of an authorized signatory, the Holder) votes to accept the Plan, it will be deemed to have consented to the Third-Party Release;

(d) the undersigned (or in the case of an authorized signatory, the Holder) has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(e) the undersigned (or in the case of an authorized signatory, the Holder) has cast the same vote with respect to

all Claims in the Voting Class identified in **Item 2**;

(f)   the undersigned (or in the case of an authorized signatory, the Holder), understands and acknowledges that if multiple Ballots are submitted with respect to the Claim set in **Item 2**, only the last properly completed Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting and Opt-Out Deadline shall be deemed to reflect the voter's intent and will supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

(g)   the undersigned (or in the case of an authorized signatory, the Holder) understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned (or in the case of an authorized signatory, the Holder) hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the undersigned (or in the case of an authorized signatory, the Holder) and shall not be affected by, and shall survive, the death or incapacity of the undersigned (or in the case of an authorized signatory, the Holder); and

(h)   no other Ballots with respect to the Claims in the Voting Class identified in **Item 2** have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan.  This Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

---

BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION

---

Name of Holder: _____

Signature: _____

Signatory Name (if other than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

9

**PLEASE SUBMIT A BALLOT BY *ONE* OF THE FOLLOWING METHODS
SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE
VOTING AND OPT-OUT DEADLINE, WHICH IS <u>4:00 P.M. (PREVAILING EASTERN TIME) ON
APRIL 14, 2026.</u>**

**To submit a paper Ballot, you may submit your Ballot (with an original signature):**

| **by First-Class Mail:** | **by Overnight Courier, or Hand Delivery:** |
| --- | --- |
| Eddie Bauer LLC et al., Ballot Processing | Eddie Bauer LLC, et al., Ballot Processing |
| c/o Stretto Inc. | c/o Stretto Inc. |
| 410 Exchange, Suite 100 | 410 Exchange, Suite 100 |
| Irvine, CA 92602 | Irvine, CA 92602 |

**To submit your Ballot via electronic, online submission:**

To submit your Ballot via the Claims and Noticing Agent's online portal, visit https://cases.stretto.com/EddieBauer, click on the "E-Ballot" section of the website (the "<u>E-Ballot Portal</u>"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Password:** _____

<u>The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.</u>

**Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM AND REFERENCE "EDDIE BAUER ABL BALLOT" IN THE SUBJECT LINE.**

<u>ANNEX A</u>

<u>INSTRUCTIONS FOR COMPLETING
THIS BALLOT (THESE "BALLOT INSTRUCTIONS")</u>

1.  The Debtors are soliciting the votes of Holders of Claims with respect to the Plan accompanying this Ballot. Capitalized terms used in the Ballot or in these Ballot Instructions but not otherwise defined therein or herein shall have the meanings set ascribed to them in the Plan, a copy of which also accompanies the Ballot.

    **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

    **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS BALLOT.**

2.  The Plan can be confirmed by the Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of Impaired creditors that vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  This Ballot contains voting and election options with respect to the Plan.

4.  To ensure your vote is counted, this Ballot must be properly completed, executed, and delivered to the Claims and Noticing Agent via (a) first-class mail at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602; (b) overnight courier, or hand delivery, at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (c) via the Claims and Noticing Agent's E-Ballot Portal at EddieBauerInquiries@stretto.com, so that the Ballot is actually received by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline, 4:00 p.m. (prevailing Eastern Time) on April 14, 2026.  The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket.

5.  The Claims and Noticing Agent's online voting portal is the sole manner in which Ballots will be accepted via electronic or online transmission.  Ballots submitted to the Claims and Noticing Agent by any means other than expressly provided for in the Solicitation and Voting Procedures, a copy of which also accompanies this Ballot, ***may not be valid and may not be counted***.

6.  If (a) service in electronic format (*i.e.,* USB flash drive format) imposes a hardship, and (b) you desire paper copies of the materials contained in the Solicitation Package, you may obtain them by contacting the Claims and Noticing Agent at the address, telephone number, or email address set forth above.

7.  Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors determine otherwise.

8.  To vote and make certain elections contained herein, you **MUST** deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline by one of the methods described above.  The Voting and Opt-Out Deadline is **April 14, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

9.  Any Ballot received by the Claims and Noticing Agent after the Voting and Opt-Out Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors determine otherwise.  Except as provided in the Solicitation and Voting Procedures, no Ballot may be withdrawn or modified after the Voting and Opt-Out Deadline without the Debtors' prior consent.

10. Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives the Ballot.  In all cases, you should allow sufficient time to assure timely submission.

11. If you submit multiple Ballots to the Claims and Noticing Agent, *only the last properly submitted Ballot* timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

12. You must vote your entire Claim in each Voting Class either to accept or reject the Plan and may not split your vote. Furthermore, if a Holder has multiple Claims within a Voting Class, the Debtors may direct the Claims and Noticing Agent to aggregate the Claims of any particular Holder within that Class for the purpose of counting votes.

13. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or an Interest in the Debtors' Chapter 11 Cases.

14. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated into the Disclosure Statement, and the Plan.

15. <u>SIGN AND DATE</u> your Ballot.[1] In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot. Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

16. If you have claims in other Voting Classes, you may receive more than one Ballot coded for each such account for which your Claims are held. Each Ballot votes only your Claims indicated on that Ballot. Accordingly, you must *complete and return each Ballot you receive*.

**<u>IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM AND REFERENCE "EDDIE BAUER ABL BALLOT" IN THE SUBJECT LINE.</u>**

**<u>PLEASE RETURN YOUR BALLOT PROMPTLY</u>**

---

**THE VOTING AND OPT-OUT DEADLINE IS APRIL 14, 2026, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THE BALLOT ON OR BEFORE THE VOTING AND OPT-OUT DEADLINE.**

---

[1] If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## **Exhibit 3B**

**Form of Ballot**

**(Class 6 – General Unsecured Claims)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

**BALLOT FOR VOTING ON THE JOINT PLAN OF**
**REORGANIZATION OF EDDIE BAUER LLC AND ITS DEBTOR**
**AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

### Class 6 – General Unsecured Claims

BEFORE COMPLETING THIS BALLOT, PLEASE CAREFULLY READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS BALLOT (THIS "BALLOT") RELATING TO THE *JOINT PLAN OF REORGANIZATION OF EDDIE BAUER LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE* [DOCKET NO. [●]] (AS MODIFIED, AMENDED, OR SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"),[2] A COPY OF WHICH IS INCLUDED WITH THIS BALLOT.  THIS BALLOT PERMITS YOU TO VOTE ON THE PLAN AND MAKE THE ELECTION TO OPT OUT OF THE THIRD-PARTY RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN.

THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO THAT IT IS **ACTUALLY RECEIVED** BY STRETTO INC., THE CLAIMS, NOTICING, AND SOLICITATION AGENT FOR THE DEBTORS IN THE CHAPTER 11 CASES (THE "CLAIMS AND NOTICING AGENT") PRIOR TO **4:00 P.M., PREVAILING EASTERN TIME, ON APRIL 14, 2026** (THE "VOTING AND OPT-OUT DEADLINE").

IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT OR THE SOLICITATION AND VOTING PROCEDURES, PLEASE CONTACT THE CLAIMS AND NOTICING AGENT BY (I) CALLING THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL); (II) CONTACTING THE CLAIMS AND NOTICING AGENT AT EDDIEBAUERINQUIRIES@STRETTO.COM; OR (III) WRITING TO THE CLAIMS AND NOTICING AGENT AT EDDIE BAUER LLC, ET AL., BALLOT PROCESSING C/O STRETTO INC., 410 EXCHANGE, SUITE 100, IRVINE, CA 92602.

IF THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY (THE "COURT") CONFIRMS THE PLAN, IT WILL BIND YOU REGARDLESS OF WHETHER YOU HAVE VOTED.

THE RELEASES BY THE RELEASING PARTIES, IF APPROVED BY THE COURT, WOULD PERMANENTLY ENJOIN HOLDERS OF CERTAIN CLAIMS AGAINST NON-DEBTOR THIRD PARTIES FROM ASSERTING SUCH CLAIMS AGAINST SUCH NON-DEBTOR THIRD PARTIES.  THE RELEASES BY THE RELEASING

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order (as defined in the Plan), as applicable.

PARTIES, IF APPROVED BY THE COURT, WILL BIND AFFECTED HOLDERS OF CLAIMS OR INTERESTS IN THE MANNER DESCRIBED IN **ITEM 4** OF THIS BALLOT. IF YOU DO NOT OPT OUT OF THE RELEASES CONTAINED IN ARTICLE VIII OF THE PLAN, THE RELEASES WILL BE BINDING ON YOU.

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes in accordance with title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), to accept or reject the Plan, attached as Exhibit A to the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement"), from Holders of Claims in Class 3 and Class 6 (each a "Voting Class," and collectively, the "Voting Classes") that are listed on the Debtors' Schedules.

You are receiving this Ballot because the Debtors' books and records indicate you are the Holder of a Class 6 General Unsecured Claim as of **March 16, 2026** (the "Voting Record Date"). Accordingly, you have the right to execute this Ballot and to vote to accept or reject the Plan on account of such Claim and to elect to opt out of the Third-Party Release. **For additional discussion of your treatment and rights under the Plan, please read the Disclosure Statement and the Plan.**

**Please review the detailed instructions regarding how to complete and submit this Ballot attached hereto as Annex A (the "Ballot Instructions")**. Once completed and returned in accordance with the attached Ballot Instructions, your vote on the Plan will be counted as set forth herein. A Voting Class shall be deemed to have accepted the Plan if Holders of at least two-thirds in amount and more than one-half in number of Claims that submit votes in such Voting Class vote to accept the Plan. The Court may confirm the Plan if the Plan otherwise satisfies the requirements of section 1129 of the Bankruptcy Code. If the Plan is confirmed by the Court, the Plan will be binding on all Holders of Claims or Interests, among others, regardless of whether such Holders voted to or were presumed to accept, voted to or were deemed to reject, or abstained from voting on the Plan. Subject to the terms and conditions of the Plan, you will receive the treatment identified in **Item 1** of this Ballot.

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan, opting out of the Third-Party Release, and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe that you have received the wrong Ballot, please contact the Claims and Noticing Agent **immediately** by: (a) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (b) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (c) writing to the Claims and Noticing Agent at Eddie Bauer LLC et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.

The rights and treatment for each Class are described in the Disclosure Statement, which is included in the solicitation package (the "Solicitation Package") you are receiving with this Ballot. If you received the Solicitation Package via email or if service in electronic format (*i.e.,* USB flash drive format) imposes a hardship, you may receive a Solicitation Package in paper format by contacting the Claims and Noticing Agent at the address, telephone number, or email address set forth above and requesting paper copies of the corresponding materials.

*You should review the Disclosure Statement, Plan, and voting instructions contained herein before you vote to accept or reject the Plan and before you decide whether to opt out of the Third-Party Release. You may wish to seek legal advice concerning the Wind-Down Transactions contemplated under the Plan.*

The Court may confirm the Plan and thereby bind all Holders of Claims and Interests, including you, regardless of whether you vote to accept or reject the Plan and regardless of whether you elect to opt out of the Third-Party Release. To have your vote count as either an acceptance or rejection of the Plan, you must complete and return this Ballot so that it is **actually received** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLASS 6 CLAIM.**

**THE VOTING AND OPT-OUT DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON APRIL 14, 2026.**

**VOTING – COMPLETE THIS SECTION**

<u>Item 1.</u>                 Recovery.

Pursuant to <u>Article III</u> of the Plan, each Holder of an Allowed Class 6 Claim shall receive, in full and final satisfaction of such General Unsecured Claim, the recovery as set forth in <u>Article III.B</u> of the Plan:

<table>
<tr><td>

On the Effective Date, except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each Holder of an Allowed General Unsecured Claim shall receive:

(i)    if Class 6 (General Unsecured Claims) votes to accept the Plan, its *pro rata* share of the GUC Contingent Recovery Pool;[3] or

(ii)   if Class 6 (General Unsecured Claims) votes to reject the Plan, all Allowed General Unsecured Claims shall be canceled, released, and extinguished and will be of no further force or effect, and Holders of Allowed General Unsecured Claims shall not receive any distribution, property, or other value under the Plan on account of such Allowed General Unsecured Claims.

</td></tr>
</table>

**For additional discussion of your treatment and rights for your Class 6 Claim under the Plan, please read the Disclosure Statement and the Plan.**

<u>Item 2.</u>                 Amount of Claim and Vote on Plan.

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of a Claim in the Voting Class as set forth below. You may vote to accept or reject the Plan. You must check the applicable box below to "accept" or "reject" the Plan to have your vote counted.

Please note that you are voting all of your Claims in Class 6 either to accept or reject the Plan. You may not split your vote. If you do not indicate that you either accept or reject the Plan by checking the applicable box below, your vote will not be counted. If you indicate that you both accept and reject the Plan by checking both boxes below, your vote will not be counted.

**For the avoidance of doubt, the amount of your Class 6 Claim for purposes of voting is listed immediately below.**

---

[3]    "<u>GUC Contingent Recovery Pool</u>" means the greater of (a) $250,000 and (b) 10% of Net Proceeds in excess of the ABL Threshold Recovery Amount.

"<u>ABL Threshold Recovery Amount</u>" means (a) an amount equal to 60% of the cost value of all retail inventory, wholesale inventory, credit card accounts receivable, and wholesale receivables of the Debtors, based on the levels of such assets in the Approved Budget (as defined in the Cash Collateral Order) as of the Petition Date *less* (b) the aggregate amount of all Weekly Paydowns actually paid as of the Effective Date.

The Holder of the Allowed General Unsecured Claim set forth below votes to (*please check <u>one and only **one** box</u>*):

**Debtor(s):** _____

| Voting Class | Description | Amount | Vote to Accept the Plan | Vote to Reject the Plan |
|--------------|-------------|--------|-------------------------|-------------------------|
| Class 6 | Class 6 consists of all Allowed General Unsecured Claims | $_____ | ☐ | ☐ |

<u>Item 3</u>.             **Third-Party Release Information.**

**THE PLAN CONTAINS MUTUAL THIRD-PARTY RELEASES.  ALL PARTIES THAT GRANT A RELEASE TO THE RELEASING PARTIES ARE ALSO RELEASED PARTIES.  IF YOU DO NOT WISH TO GRANT (AND RECEIVE) THIS MUTUAL THIRD-PARTY RELEASE, YOU MUST (I) VOTE TO REJECT THE PLAN OR ABSTAIN FROM VOTING ON THE PLAN AND (II) OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE, THE DEBTORS WILL ASK THE COURT TO DEEM YOUR FAILURE TO AFFIRMATIVELY OPT OUT AS CONSENT TO THE THIRD-PARTY RELEASES, INCLUDING THE COURT'S AUTHORITY TO GRANT THE THIRD-PARTY RELEASES.**

**YOU MAY CHECK THE BOX BELOW TO DECLINE TO GRANT THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN.**

**YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED REGARDLESS OF WHETHER YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTE TO ACCEPT THE PLAN IN <u>ITEM 2</u> OF THIS BALLOT, YOU MAY NOT OPT OUT OF THE THIRD-PARTY RELEASE.  IF YOU VOTE TO ACCEPT THE PLAN AND YOU CHECK THE BOX TO OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN THIS <u>ITEM 3</u>, YOUR VOTE TO ACCEPT THE PLAN WILL CONTROL AND YOU WILL BE DEEMED A "RELEASING PARTY" UNDER THE PLAN.  FOR THE AVOIDANCE OF DOUBT, IF YOU VOTE TO ACCEPT THE PLAN IN <u>ITEM 2</u> OF THIS BALLOT, YOU SHALL BE BOUND BY THE THIRD-PARTY RELEASE SET FORTH IN THE PLAN.**

> **☐ By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release**

**<u>Article VIII.D of the Plan provides for the following third-party release (the "Third-Party Release")</u>:**

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Party's authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Wind-Down Debtors (if applicable)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort, contract, or otherwise, whether arising under federal or state statutory or common Law, or any other**

5

applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, or any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, the Debtors (including the Debtors' capital structure, management, ownership, or operations), or their Estates or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Sale Process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, any investment in any Debtor by any Released Party, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any benefit provided by a Debtor to any Released Party, cash management arrangements, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the decision to File the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, the Credit Agreements, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, and (ii) any Retained Causes of Action by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement.

Entry of the Confirmation Order shall constitute the Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Court's finding that the Third Party Release is: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.

<u>Article VIII.E of the Plan provides for the following exculpation (the "Exculpation")</u>:

Except as otherwise expressly provided in the Plan or the Confirmation Order, to the fullest extent permitted by applicable law, no Exculpated Party will have or incur, and each Exculpated Party will be released and exculpated from, any Claim or Cause of Action arising prior to the Effective Date in connection with or arising out of the administration of the Chapter 11 Cases, the negotiation and pursuit of the Restructuring Support Agreement, the Restructuring Transactions, the Sale Process, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, and all other Definitive Documents, the solicitation of votes for, or Confirmation of, the Plan, the funding of the Plan, the occurrence of the Effective Date, the administration of the Plan or the property to be distributed under the Plan, the issuance of Securities under or in connection with the Plan, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors or the Wind-Down Debtors, if applicable, in connection with the Plan and the Restructuring

Transactions, or the transactions in furtherance of any of the foregoing.  The Exculpated Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan, including the issuance of Securities thereunder.  This exculpation will be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable Law or rules protecting such Exculpated Parties from liability.

**Article VIII.F of the Plan provides for the following injunction (the "Injunction")**:

Except as otherwise expressly provided in the Plan or the Confirmation Order or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties:  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iii) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action, or liabilities released or settled pursuant to the Plan.

No Person or Entity may commence or pursue a Claim or Cause of Action of any kind against the Debtors, the Wind-Down Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action subject to Article VIII.C, Article VIII.D, or Article VIII.E of the Plan without the Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action against any such Debtor, Wind-Down Debtor, Exculpated Party, or Released Party.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Article VIII.F of the Plan.

Definitions related to the Third-Party Release, Exculpation, and Injunction:

**Under the Plan**, "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

**Under the Plan**, "*Related Party*" means, collectively, with respect to any Person or Entity, each of, and in each case in its capacity as such, such Person's or Entity's current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors,

assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

**Under the Plan**, "*Released Party*" means, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) each Releasing Party; (f) the Purchaser, if any; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); provided, however, that, in each case, an Entity shall not be a Released Party if it:  (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan, and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**Under the Plan**, "*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) all Holders of Claims that vote to accept the Plan; (f) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (g) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form in accordance with the Disclosure Statement Order, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (h) all Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) to the maximum extent permitted by law, each Related Party of each Entity in clause (a) through this clause (j); *provided* that, in each case, an Entity in clause (f) through clause (j) shall not be a Releasing Party if it:  (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**Under the Plan**, "*Exculpated Parties*" means, collectively, and in each case solely in its capacity as such:  (a) each of the Debtors; (b) the Wind-Down Debtors; and (c) with respect to the Entities in clauses (a) and (b), each of their respective current and former directors, the Disinterested Managers, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

### Item 4.  Certification, Ballot Completion, and Delivery Instructions.

By signing this Ballot, the undersigned certifies to the Court and the Debtors that:

(a) as of the Voting Record Date, either:  (i) the undersigned is the Holder of the Claim in the Voting Class as set forth in **Item 2**; or (ii) the undersigned is an authorized signatory for an Entity that is the Holder of the Claims in the Voting Class as set forth in **Item 2**;

(b) the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the Disclosure Statement and the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c) if the undersigned (or in the case of an authorized signatory, the Holder) votes to accept the Plan, it will be deemed to have consented to the Third-Party Release;

(d) the undersigned (or in the case of an authorized signatory, the Holder) has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(e) the undersigned (or in the case of an authorized signatory, the Holder) has cast the same vote with respect to all Claims in the Voting Class identified in **Item 2**;

(f) the undersigned (or in the case of an authorized signatory, the Holder), understands and acknowledges that if multiple Ballots are submitted with respect to the Claim set forth in **Item 2**, only the last properly completed Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting and Opt-Out Deadline shall be deemed to reflect the voter's intent and will supersede and revoke any prior Ballots received by the Claims and Noticing Agent;

(g) the undersigned (or in the case of an authorized signatory, the Holder) understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the undersigned (or in the case of an authorized signatory, the Holder) hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the undersigned (or in the case of an authorized signatory, the Holder) and shall not be affected by, and shall survive, the death or incapacity of the undersigned (or in the case of an authorized signatory, the Holder); and

(h) no other Ballots with respect to the Claims in the Voting Class identified in **Item 2** have been cast or, if any other Ballots have been cast with respect to such Claims, then any such earlier Ballots voting those Claims are hereby revoked.

No fees, commissions, or other remuneration will be payable to any broker, dealer, or other person for soliciting votes on the Plan. This Ballot shall not constitute or be deemed a proof of claim or equity interest or an assertion of a claim or equity interest.

| BALLOT COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name (if other than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

**PLEASE SUBMIT A BALLOT BY *ONE* OF THE FOLLOWING METHODS
SO THAT IT IS ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY THE
VOTING AND OPT-OUT DEADLINE, WHICH IS <u>4:00 P.M. (PREVAILING EASTERN TIME) ON
APRIL 14, 2026.</u>**

**To submit a paper Ballot, you may submit your Ballot (with an original signature):**

| | |
|---|---|
| **by First-Class Mail:**<br>Eddie Bauer LLC et al., Ballot Processing<br>c/o Stretto Inc.<br>410 Exchange, Suite 100<br>Irvine, CA 92602 | **by Overnight Courier, or Hand Delivery:**<br>Eddie Bauer LLC, et al., Ballot Processing<br>c/o Stretto Inc.<br>410 Exchange, Suite 100<br>Irvine, CA 92602 |

**To submit your Ballot via electronic, online submission:**

To submit your Ballot via the Claims and Noticing Agent's online portal, visit https://cases.stretto.com/EddieBauer, click on the "E-Ballot" section of the website (the "<u>E-Ballot Portal</u>"), and follow the instructions to submit your Ballot.

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized electronic Ballot:**

**Unique Password:** _____

<u>The E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.</u>

**Holders who cast a Ballot using the E-Ballot Portal should NOT also submit a paper Ballot.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM AND REFERENCE "EDDIE BAUER GENERAL UNSECURED BALLOT" IN THE SUBJECT LINE.**

<u>ANNEX A</u>

<u>INSTRUCTIONS FOR COMPLETING
THIS BALLOT (THESE "BALLOT INSTRUCTIONS")</u>

1. The Debtors are soliciting the votes of Holders of Claims with respect to the Plan accompanying this Ballot. Capitalized terms used in the Ballot or in these Ballot Instructions but not otherwise defined therein or herein shall have the meanings set ascribed to them in the Plan, a copy of which also accompanies the Ballot.

   **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

   **PLEASE ALLOW SUFFICIENT TIME TO CAREFULLY READ AND COMPLETE THIS BALLOT.**

2. The Plan can be confirmed by the Court and thereby made binding upon Holders of Claims and Interests if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims in at least one class of Impaired creditors that vote on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code. Please review the Disclosure Statement for more information.

3. This Ballot contains voting and election options with respect to the Plan.

4. To ensure your vote is counted, this Ballot must be properly completed, executed, and delivered to the Claims and Noticing Agent via (a) first-class mail at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602; (b) overnight courier, or hand delivery, at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602; or (c) via the Claims and Noticing Agent's E-Ballot Portal at EddieBauerInquiries@stretto.com, so that the Ballot is actually received by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline, 4:00 p.m. (prevailing Eastern Time) on April 14, 2026. The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket.

5. The Claims and Noticing Agent's online voting portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted to the Claims and Noticing Agent by any means other than expressly provided for in the Solicitation and Voting Procedures, a copy of which also accompanies this Ballot, *may not be valid and may not be counted*.

6. If (a) service in electronic format (*i.e.,* USB flash drive format) imposes a hardship, and (b) you desire paper copies of the materials contained in the Solicitation Package, you may obtain them by contacting the Claims and Noticing Agent at the address, telephone number, or email address set forth above.

7. Any Ballot submitted that is incomplete or illegible, indicates unclear or inconsistent votes with respect to the Plan, or is improperly signed and returned will <u>NOT</u> be counted unless the Debtors determine otherwise.

8. To vote and make certain elections contained herein, you **MUST** deliver your completed Ballot so that it is **ACTUALLY RECEIVED** by the Claims and Noticing Agent on or before the Voting and Opt-Out Deadline by one of the methods described above. The Voting and Opt-Out Deadline is **April 14, 2026 at 4:00 p.m. (prevailing Eastern Time)**.

9. Any Ballot received by the Claims and Noticing Agent after the Voting and Opt-Out Deadline will not be counted with respect to acceptance or rejection of the Plan, as applicable, unless the Debtors determine otherwise. Except as provided in the Solicitation and Voting Procedures, no Ballot may be withdrawn or modified after the Voting and Opt-Out Deadline without the Debtors' prior consent.

10. Delivery of a Ballot reflecting your vote to the Claims and Noticing Agent will be deemed to have occurred only when the Claims and Noticing Agent actually receives the Ballot. In all cases, you should allow sufficient time to assure timely submission.

11. If you submit multiple Ballots to the Claims and Noticing Agent, *only the last properly submitted Ballot* timely received will be deemed to reflect your intent and will supersede and revoke any prior received Ballot(s).

12. You must vote your entire Claim in each Voting Class either to accept or reject the Plan and may not split your vote.  Furthermore, if a Holder has multiple Claims within a Voting Class, the Debtors may direct the Claims and Noticing Agent to aggregate the Claims of any particular Holder within that Class for the purpose of counting votes.

13. This Ballot does not constitute, and shall not be deemed to be, a Proof of Claim or Interest or an assertion or admission of a Claim or an Interest in the Debtors' Chapter 11 Cases.

14. You should not rely on any information, representations, or inducements made to obtain an acceptance of the Plan that are other than as set forth, or are inconsistent with, the information contained in the Disclosure Statement, the documents attached to or incorporated into the Disclosure Statement, and the Plan.

15. <u>SIGN AND DATE</u> your Ballot.[1]  In addition, please provide your name and mailing address if it is different from that set forth on the Ballot or if no address is preprinted on the Ballot.  Any unsigned Ballot will not be valid; however, for the avoidance of doubt, the scanned signature or e-signature included on an E-Ballot will be deemed immediately legally valid and effective.

16. If you have claims in other Voting Classes, you may receive more than one Ballot coded for each such account for which your Claims are held.  Each Ballot votes only your Claims indicated on that Ballot.  Accordingly, you must *complete and return each Ballot you receive*.

**<u>IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM AND REFERENCE "EDDIE BAUER GENERAL UNSECURED BALLOT" IN THE SUBJECT LINE.</u>**

**<u>PLEASE RETURN YOUR BALLOT PROMPTLY</u>**

---

**THE VOTING AND OPT-OUT DEADLINE IS APRIL 14, 2026, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THE BALLOT ON OR BEFORE THE VOTING AND OPT-OUT DEADLINE.**

---

[1]  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney-in-fact, or officer of a corporation or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, the Debtors' counsel, or the Court, must submit proper evidence to the requesting party of authority to so act on behalf of such Holder.

## **Exhibit 4**

**Notice of Non-Voting Status**

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF NON-VOTING STATUS
TO HOLDERS OR POTENTIAL HOLDERS OF
(I) UNIMPAIRED CLAIMS CONCLUSIVELY PRESUMED TO
ACCEPT THE PLAN, (II) IMPAIRED CLAIMS OR INTERESTS
DEEMED TO REJECT THE PLAN, AND (III) DISPUTED CLAIMS**

**PLEASE TAKE NOTICE THAT**, on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice as a Holder or potential Holder of a Claim against or Interest in the Debtors with respect to which, due to the nature and treatment of such Claim or Interest under the Plan, **you are not entitled to vote on the Plan**. Specifically, under the terms of the Plan, (i) Holders of Claims conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code, (ii) Holders of Claims or Interests deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and (iii) Holders of Claims subject to a pending objection by the Debtors, are **not** entitled to vote on the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider final approval of the Disclosure Statement and Confirmation of the Plan (the "Combined Hearing") will commence on **April 16, 2026**, at **10:00 a.m., (prevailing Eastern Time)**, or such other time that the Court determines, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to Confirmation of the Plan and final approval of the Disclosure Statement is **April 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline").  Any objection to the relief sought at the Combined Hearing *must*:  (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the **Combined Objection Deadline**:

| *Debtors* |
|---|
| **Eddie Bauer LLC**<br>c/o Stretto Inc.<br>410 Exchange, Suite 100, Irvine, CA 92602 |
| *Co-Counsel for the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com);<br>Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.**<br>Court Plaza, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com);<br>Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| [●]<br>[Address]<br>Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102<br>Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |

---

[3]    The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

| *Counsel to the Consenting ABL Lenders* |
|:---:|
| **Otterbourg P.C.**<br>230 Park Avenue, New York, New York 10169<br>Attention:  David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP**<br>1211 Avenue of the Americas, New York, New York 10036-8704<br>Attention:  Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP**<br>Two International Place, Boston, Massachusetts 02110<br>Attention:  Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**PLEASE TAKE FURTHER NOTICE THAT**, if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents**, you should contact Stretto Inc., the Debtors' Claims and Noticing Agent in these Chapter 11 Cases, by:  (i) visiting the Debtors' restructuring website at:  https://cases.stretto.com/EddieBauer; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free)  or  (714) 442-4326 (International); (iii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC, *et al.*, Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**PLEASE TAKE FURTHER NOTICE THAT**, if you are a Holder of a Claim that is subject to a pending objection by the Debtors, **you are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before a date that is two (2) business days before the Voting and Opt-Out Deadline** (each, a "Resolution Event"):

i.    an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code;

ii.    a Holder of a Claim files a motion in the Court seeking entry of an order to temporarily allow a timely filed valid Proof of Claim for purposes of voting on the Plan (a "3018 Motion") and the Court enters an order approving such 3018 Motion;

iii.    a stipulation or other agreement is executed between the Holder of such Claim and the Debtors temporarily allowing the Holder of such Claim to vote its Claim in an agreed upon amount; or

iv.    the pending objection is voluntarily withdrawn by the objecting party.

**PLEASE TAKE FURTHER NOTICE THAT**, if a timely Resolution Event occurs, then, no later than two (2) business day following the occurrence of such Resolution Event, the Debtors shall cause the Claims and Noticing Agent to distribute a Solicitation Package to the relevant Holder via hand delivery, first-class mail, or email, which must be returned to the Claims and Noticing Agent no later than the Voting and Opt-Out Deadline, which is on **April 14, 2026 at 4:00 p.m., prevailing Eastern Time**.  The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a notice on the Court's docket.

**ARTICLE VIII OF THE PLAN CONTAINS SETTLEMENT, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE.[4] YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN, CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**IF YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE, PLEASE COMPLETE, SIGN, AND DATE THE OPT-OUT FORM ATTACHED TO THE DISCLOSURE STATEMENT ORDER AS EXHIBIT 4A AND SUBMIT IT PROMPTLY THROUGH THE DEBTORS' CASE WEBSITE ACCORDING TO THE INSTRUCTIONS SET FORTH ON THE OPT-OUT FORM. IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII OF THE PLAN, THE THIRD-PARTY RELEASE WILL BE BINDING ON YOU.**

**YOUR COMPLETED OPT-OUT FORM MUST BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY APRIL 14, 2026 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

**YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY AND TO PROVIDE YOU WITH THE ATTACHED OPT-OUT FORM WITH RESPECT TO THE THIRD-PARTY RELEASE INCLUDED IN ARTICLE VIII.D OF THE PLAN. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.**

---

[4] "Third-Party Release" refers to the release given by each of the Releasing Parties to the Released Parties as set forth in Article VIII.D of the Plan.

Dated:  [●], 2026

/s/  *DRAFT*

| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Michael D. Sirota, Esq. | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Warren A. Usatine, Esq. | Joshua A. Sussberg, P.C. (admitted *pro hac vice*) |
| Felice R. Yudkin, Esq. | Matthew C. Fagen, P.C. (admitted *pro hac vice*) |
| Court Plaza North, 25 Main Street | Oliver Paré (admitted *pro hac vice*) |
| Hackensack, New Jersey 07601 | 601 Lexington Avenue |
| Telephone:  (201) 489-3000 | New York, New York 10022 |
| msirota@coleschotz.com | Telephone:  (212) 446-4800 |
| wusatine@coleschotz.com | Facsimile:   (212) 446-4900 |
| fyudkin@coleschotz.com | joshua.sussberg@kirkland.com |
| | matthew.fagen@kirkland.com |
| | oliver.pare@kirkland.com |

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## **Exhibit 4A**

### **Opt-Out Form**

# THIRD-PARTY RELEASE OPT-OUT FORM

You are receiving this opt-out form (the "Opt-Out Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan") pursuant to section 1126 of the Bankruptcy Code as of March 12, 2026 (the "Voting Record Date").[1] Article VIII of the Plan contains certain release, injunction, and exculpation provisions, including the third-party release set forth below (such release, the "Third-Party Release"). **You will be deemed to have irrevocably granted the Third-Party Release set forth below unless you (a) affirmatively opt out by completing and returning this Opt-Out Form in accordance with the instructions set forth herein on or before April 14, 2026, at 4:00 p.m. (prevailing Eastern Time) (the "Voting and Opt-Out Deadline") or (b) timely file an objection to the Third-Party Release with the Bankruptcy Court on or before the Voting and Opt-Out Deadline. The Debtors may extend the Voting and Opt-Out Deadline without further order of the Bankruptcy Court by filing a notice on the Bankruptcy Court's docket. Your decision to complete and return the Opt-Out Form is entirely voluntary and not a requirement under the Plan or applicable law.**

PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING THIS OPT-OUT FORM CAREFULLY BEFORE COMPLETING THIS OPT-OUT FORM.  IF YOU DO NOT OPT OUT OF THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII OF THE PLAN, THE THIRD-PARTY RELEASE WILL BE BINDING ON YOU.

If you choose to opt out of the Third-Party Release set forth in Article VIII.D of the Plan, you should (i) promptly complete, sign, and date this Opt-Out Form and return it via first class mail, overnight courier, or hand delivery to Stretto, Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-Out Form through the Claims and Noticing Agent's online opt-out portal (the "Opt-Out Portal") in accordance with the instructions provided below.  Parties that submit an Opt-Out Form using the Opt-Out Portal should NOT also submit a paper Opt-Out Form.

**THIS OPT-OUT FORM MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE ACTUALLY RECEIVED BY THE CLAIMS AND NOTICING AGENT BY APRIL 14, 2026, AT 4:00 P.M. (PREVAILING EASTERN TIME).  IF THE OPT-OUT FORM IS RECEIVED AFTER THE VOTING AND OPT-OUT DEADLINE, IT WILL NOT BE COUNTED, AND YOU WILL BE DEEMED TO HAVE IRREVOCABLY GRANTED THE THIRD-PARTY RELEASE.**

If you believe you have received this Opt-Out Form in error, please contact the Claims and Noticing Agent via: (i) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (ii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (iii) writing to the Claims and Noticing Agent at Eddie Bauer Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.

<u>Item 1.</u>        **Important information regarding the Third-Party Release:**

AS A HOLDER OF A CLAIM OR INTEREST, YOU ARE A "RELEASING PARTY" UNDER THE PLAN AND ARE IRREVOCABLY DEEMED TO PROVIDE THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN, AS SET FORTH BELOW.  YOU MAY ELECT NOT TO GRANT THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN ONLY IF (I) THE COURT DETERMINES THAT YOU HAVE THE RIGHT TO OPT OUT OF THE THIRD-PARTY RELEASE AND (II) YOU (A) CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE VOTING AND OPT-OUT DEADLINE OR (B) TIMELY OBJECT TO THE THIRD-PARTY RELEASE CONTAINED IN ARTICLE VIII.D OF THE PLAN AND SUCH OBJECTION IS NOT RESOLVED BEFORE THE DATE OF THE COMBINED HEARING.  THE ELECTION TO WITHHOLD CONSENT TO GRANT THE THIRD-PARTY RELEASE IS ENTIRELY OPTIONAL.  BY OPTING OUT OF THE THIRD-PARTY RELEASE SET FORTH IN

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, Disclosure Statement (as defined therein), or Disclosure Statement Order (as defined in the Plan) as applicable.

ARTICLE VIII.D OF THE PLAN, YOU WILL FOREGO THE BENEFIT OF OBTAINING THE RELEASES SET FORTH IN ARTICLE VIII OF THE PLAN IF YOU ARE A RELEASED PARTY IN CONNECTION THEREWITH, BUT **YOUR RECOVERY UNDER THE PLAN REMAINS UNAFFECTED REGARDLESS OF WHETHER YOU ELECT TO OPT OUT OF THE THIRD-PARTY RELEASE**.

**Article VIII.D of the Plan contains the following Third-Party Release**:

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, on and after the Effective Date, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all Claims and Causes of Action, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Persons that may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Persons, in each case solely to the extent of the Releasing Party's authority to bind any of the foregoing, including pursuant to agreement or applicable non-bankruptcy law, from any and all Claims and Causes of Action whatsoever (including any derivative claims asserted or assertable on behalf of the Debtors, their Estates, or the Wind-Down Debtors (if applicable)), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in Law or equity, whether sounding in tort, contract, or otherwise, whether arising under federal or state statutory or common Law, or any other applicable international, foreign, or domestic Law, rule, statute, regulation, treaty, right, duty, requirement, or otherwise, that such Holders or their estates, Affiliates, heirs, executors, administrators, successors, assigns, managers, accountants, attorneys, representatives, consultants, agents, or any other Persons claiming under or through them would have been legally entitled to assert in their own right (whether individually or collectively), or on behalf of the Holder of any Claim against, or Interest or Intercompany Interest in, the Debtors (including the Debtors' capital structure, management, ownership, or operations), or their Estates or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors or the Estates, the Chapter 11 Cases, the Sale Process, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtors, any investment in any Debtor by any Released Party, the Restructuring Transactions, the subject matter of, or the transactions or events giving rise to, any Claim, Interest, or Intercompany Interest that is treated under the Plan, the business or contractual arrangements or interactions between or among any Debtor and any Released Party, the ownership and/or operation of the Debtors by any Released Party or the distribution of any Cash or other property of the Debtors to any Released Party, any benefit provided by a Debtor to any Released Party, cash management arrangements, the assertion of or enforcement of rights or remedies against the Debtors, the restructuring of any Claim, Interest, or Intercompany Interest before or during the Chapter 11 Cases, the Debtors' in- or out-of-court restructuring efforts, any avoidance actions, intercompany transactions between or among a Debtor or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the decision to File the Chapter 11 Cases, the negotiation, formulation, preparation, dissemination, or consummation of the Restructuring Support Agreement, the Restructuring Transactions, the Credit Agreements, the Disclosure Statement, the Plan Supplement, the Plan and related agreements, instruments, and other documents, any contract, instrument, release, or other agreement or document (including any legal opinion requested by any Person regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) relating to any of the foregoing, created or entered into in connection with the Restructuring Transactions, the solicitation of votes with respect to the Plan, and all other Definitive Documents, in all cases based upon any act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Restructuring Transactions, and (ii) any Retained Causes of Action by the Debtors pursuant to a Schedule of Retained Causes of Action to be attached as an exhibit to the Plan Supplement.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan and, further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for good**

2

**and valuable consideration provided by each of the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (iv) a good faith settlement and compromise of the Claims released by the Third-Party Release; (v) in the best interests of the Debtors and their Estates; (vi) fair, equitable, and reasonable; (vii) given and made after due notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third Party Release.**

Definitions related to the Third-Party Release, and Injunction:

**Under the Plan**, "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if the reference Entity were a debtor in a case under the Bankruptcy Code.

**Under the Plan**, "*Related Party*" means, collectively, with respect to any Person or Entity, each of, and in each case in its capacity as such, such Person's or Entity's current and former directors, managers, officers, committee members, members of any Governing Body, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

**Under the Plan**, "*Released Party*" means, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) each Releasing Party; (f) the Purchaser, if any; (g) each current and former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h); provided, however, that, in each case, an Entity shall not be a Released Party if it:  (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan, and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**Under the Plan**, "*Releasing Party*" means, each of, and in each case in its capacity as such:  (a) each Debtor; (b) each Wind-Down Debtor and the Plan Administrator; (c) the Agents; (d) each Consenting Lender; (e) all Holders of Claims that vote to accept the Plan; (f) all Holders of Claims who are deemed to accept the Plan but who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (g) all Holders of Claims who abstain from voting on the Plan, other than those who were not sent a ballot or an opt out form in accordance with the Disclosure Statement Order, and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot indicating that they opt not to grant the releases provided for in the Plan; (h) all Holders of Claims or Interests who vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases provided for in the Plan by checking the box on the applicable ballot or notice of non-voting status indicating that they opt not to grant the releases provided for in the Plan; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) to the maximum extent permitted by law, each Related Party of each Entity in clause (a) through this clause (j); provided that, in each case, an Entity in clause (f) through clause (j) shall not be a Releasing Party if it:  (i) elects to opt out of the releases contained in the Plan; or (ii) timely objects to the releases contained in the Plan and such objection is not withdrawn or otherwise resolved before the Confirmation Order is entered.

**YOU MAY ELECT TO OPT OUT OF THE RELEASE CONTAINED IN <u>ARTICLE VIII.D</u> OF THE PLAN. YOU WILL BE CONSIDERED A "RELEASING PARTY" UNDER THE PLAN <u>UNLESS</u> YOU CHECK THE BOX BELOW AND SUBMIT THE OPT-OUT FORM BY THE VOTING AND OPT-OUT DEADLINE. YOUR DECISION TO COMPLETE AND RETURN THE OPT-OUT FORM IS ENTIRELY VOLUNTARY AND DOES NOT AFFECT YOUR RECOVERY UNDER THE PLAN.**

☐ **By checking this box, you elect to opt <u>OUT</u> of the Third-Party Release**

**Item 2.**            **Certifications.**

By signing this Opt-Out Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

- as of the Record Date, either:  (i) the Entity is the Holder of a Claim or Interest that is not entitled to vote on the Plan; or (ii) the undersigned is an authorized signatory of a Holder of Claim or Interest against the Debtors that is not entitled to vote on the Plan;

- the undersigned (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status*, and this Opt-Out Form is completed pursuant to the terms and conditions set forth therein;

- the undersigned has made the same election with respect to all of its Claims or Interests; and

- no other Opt-Out Form has been cast with respect to the Holder's Claims or Interests, or, if any other Opt-Out Forms have been cast with respect to such Claims or Interests, such Opt-Out Forms are hereby revoked.

THIS OPT-OUT FORM SHALL NOT CONSTITUTE OR BE DEEMED A PROOF OF CLAIM OR INTEREST OR AN ASSERTION OF A CLAIM OR INTEREST, AND YOUR RECEIPT OF THIS OPT-OUT FORM DOES NOT SIGNIFY THAT YOUR CLAIM OR INTEREST HAS BEEN OR WILL BE ALLOWED.

| OPT-OUT FORM COMPLETION INFORMATION — COMPLETE THIS SECTION |
|---|

Name of Holder: _____

Signature: _____

Signatory Name
(if other than the Holder): _____

Title: _____

Address: _____

Email Address: _____

Date Completed: _____

4

**IF YOU HAVE MADE THE OPTIONAL OPT-OUT ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-OUT FORM AND SUBMIT IT PROMPTLY BY ONLY *ONE* OF THE METHODS BELOW.**

**To submit a paper Opt-Out Form, you may submit your Opt-Out Form (with an original signature):**

| by First-Class Mail: | by Overnight Courier, or Hand Delivery: |
|---|---|
| Eddie Bauer LLC et al., Ballot Processing, c/o Stretto Inc. 410 Exchange, Suite 100 Irvine, CA 92602 | Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc. 410 Exchange, Suite 100 Irvine, CA 92602 |

**To submit your Opt-Out Form via electronic, online submission:**

To submit your Opt-Out Form via the Claims and Noticing Agent's online portal, visit https://cases.stretto.com/EddieBauer, click on the "Opt-Out Form" section of the website (the "Opt-Out Portal"), and follow the instructions to submit your Opt-Out Form.

The Opt-Out Portal is the sole manner in which Opt-Out Forms will be accepted electronically.  Opt-Out Forms submitted in electronic format by facsimile or email will not be counted.

**Holders who cast the Opt-Out Form using the Opt-Out Portal should NOT also submit a paper Opt-Out Form.**

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE CLAIMS AND NOTICING AGENT AT (833) 437-6838 (TOLL-FREE) OR (714) 442-4326 (INTERNATIONAL) OR EMAIL EDDIEBAUERINQUIRIES@STRETTO.COM AND REFERENCE "EDDIE BAUER OPT-OUT FORM" IN THE SUBJECT LINE.**

**THE VOTING AND OPT-OUT DEADLINE IS APRIL 14, 2026, AT 4:00 P.M., PREVAILING EASTERN TIME.**

**THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE THE OPT-OUT FORM ON OR BEFORE THE VOTING AND OPT-OUT DEADLINE.**

## Exhibit 5

**Cover Letter**



[●], 2026

<u>Via First-Class or Electronic Mail</u>

<u>RE</u>:    **Eddie Bauer LLC, *et al.*,**
          **Chapter 11 Case No. 26-11422 (SLM) (Jointly Administered)**

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") on February 9, 2026.

You have received this letter (the "<u>Cover Letter</u>") and the enclosed materials because you are entitled to vote on the *Joint Plan of Reorganization of Eddie Bauer and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>").[2]  On [●] [●], 2026, the Court entered an order [Docket No. [●]] (the "<u>Disclosure Statement Order</u>"): (i) authorizing the Debtors to solicit acceptances for the Plan; (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "<u>Solicitation Package</u>"); (iv) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

> **YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

In addition to this letter, the enclosed materials comprise your Solicitation Package and were approved by the Court for distribution to Holders of Claims in connection with the solicitation of votes to accept or reject the Plan. Please review these materials carefully and follow the instructions contained therein.  The Solicitation Package consists of the following, as applicable:

      a.   this Cover Letter, which describes the contents of the Solicitation Package and recommends that Holders of Claims in the Voting Classes vote to accept the Plan;

      c.   the Disclosure Statement (and exhibits thereto, including the Plan);

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

    b.   a copy of the Solicitation and Voting Procedures;

    c.   the applicable Ballot, together with detailed voting instructions and instructions on how to submit the Ballot;

    d.   the Combined Hearing Notice;

    e.   the Disclosure Statement Order (without exhibits, except for the Solicitation and Voting Procedures); and

    f.   any additional documents that the Court has ordered to be made available to Holders of Claims in the Voting Classes.

Eddie Bauer LLC (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept or reject the Plan. The Debtors believe that the acceptance of the Plan is in the best interests of their estates, Holders of Claims and Interests, and all other parties in interest. Moreover, the Debtors believe that any alternative to confirmation of the Plan could result in extensive delays and increased administrative expenses, which, in turn, likely would result in smaller distributions on account of Claims asserted in the Chapter 11 Cases.

---

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN IN ACCORDANCE WITH THE INSTRUCTIONS ON YOUR BALLOT.**

**THE DEADLINE TO VOTE TO ACCEPT OR REJECT THE PLAN AND OPT OUT OF THE THIRD-PARTY RELEASE IS APRIL 14, 2026 AT 4:00 P.M. (PREVAILING EASTERN TIME).**

---

The materials in the Solicitation Package are intended to be self-explanatory. If you have any questions or would like paper copies of the Solicitation Package because receiving the Solicitation Package via email or electronic format (*i.e.*, USB flash drive) imposes a hardship on you, please contact the Claims and Noticing Agent by: (i) visiting the Debtors' restructuring website at: https://cases.stretto.com/EddieBauer; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (iii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com, or (iv) writing to the Claims and Noticing Agent at Eddie Bauer Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein. Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials but may ***not*** advise you as to whether you should vote to accept or reject the Plan or otherwise provide legal advice.

Sincerely,

Dated: [●] [●], 2026

/s/ *Draft*
Name: [Stephen Coulombe]
Title: [Co-Chief Restructuring Officer]
Eddie Bauer LLC

## Exhibit 6

**Combined Hearing Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF (I) HEARING TO CONSIDER CONFIRMATION OF**
**THE CHAPTER 11 PLAN AND FINAL APPROVAL OF THE DISCLOSURE**
**STATEMENT AND (II) RELATED VOTING, OPT-OUT, AND OBJECTION DEADLINES**

        **PLEASE TAKE NOTICE THAT**, on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT,** the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing Date") will take place on **April 16, 2026**, at **10:00 a.m., (prevailing Eastern Time)**, or such other time that the Court determines, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, NJ 07102.

> **PLEASE BE ADVISED**:  THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH CONTINUANCE BEING ANNOUNCED IN OPEN COURT AND/OR BY A NOTICE OF THE SAME FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The Court has approved **March 16, 2026**, as the record date (the "Voting Record Date") for purposes of determining which Holders of Claims in Class 3 ABL Claims and Class 6 General Unsecured Claims (each a "Voting Class," and collectively, the "Voting Classes") that either (i) have been listed on the Debtors' Schedules or (ii) with respect to which a valid proof of claim (a "Proof of Claim") has been filed before March 16, 2026 (such Claims, "Known Eligible Claims"), are entitled to vote on the Plan.

For Holders of Claims that (a) (i) are not listed in the Schedules and (ii) with respect to which a valid Proof of Claim has not been filed as of March 16, 2026 (*i.e.*, the Voting Record Date) (such Claims, "Unknown Eligible Claims"), and (b) with respect to which a valid Proof of Claim is filed on or after the Voting Record Date but prior to the applicable general claims bar date (the "Claims Bar Date") established in connection with the *Order (I) Setting Bar Dates for Submitting Proofs of Claim, Including Requests for Payment Under Section 503(B)(9) of the Bankruptcy Code; (II) Establishing a Rejection Damages Bar Date and an Amended Schedules Bar Date; (III) Approving the Form, Manner, and Procedures for Filing Proofs of Claim; (IV) Approving Notices Thereof; and (V) Granting Related Relief* [Docket No. [●]], Stretto Inc., the claims, noticing, and solicitation agent for the Debtors in the Chapter 11 Cases (the "Claims and Noticing Agent"), shall serve the Solicitation Package to such Holder within two (2) business days after such valid Proof of Claim has been filed and processed by the Claims and Noticing Agent.

Regardless of whether a Holder has a Known Eligible Claim or an Unknown Eligible Claim, in each case, such Holder shall be required to submit a valid Ballot no later than the Voting and Opt-Out Deadline (as defined below) for such Ballot to be counted.

**Voting and Opt-Out Deadline**.  The deadline to vote on the Plan is **April 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Voting and Opt-Out Deadline").  The Debtors may extend the Voting and Opt-Out Deadline without further order of the Court by filing a Notice on the Court's Docket.  If you received the Solicitation Package, including a Ballot, and intend to vote on the Plan you **must**:  (i) follow the instructions contained on your Ballot carefully; (ii) complete **all** of the required information on the Ballot; and (iii) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is **actually received** by the Debtors' Claims and Noticing Agent, Stretto Inc., on or before the Voting and Opt-Out Deadline.

*Failure to follow such instructions may disqualify your vote*.

## CRITICAL INFORMATION REGARDING OBJECTION TO THE PLAN

**Combined Objection Deadline**.  The deadline for filing objections to confirmation of the Plan and final approval of the Disclosure Statement is **April 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline").  Any objection to the relief sought at the Combined Hearing ***must***:  (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order"), and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the **Combined Objection Deadline**:

| *Debtors* |
|---|
| **Eddie Bauer LLC** <br> c/o Stretto Inc. <br> 410 Exchange, Suite 100, Irvine, CA 92602 |
| *Co-Counsel for the Debtors* |
| **Kirkland & Ellis LLP** <br> 601 Lexington Avenue <br> New York, New York 10022 <br> Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com); <br> Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.** <br> Court Plaza, 25 Main Street <br> Hackensack, New Jersey 07601 <br> Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com); <br> Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| [●] <br> [Address] <br> Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee** <br> **United States Trustee, Region 3** <br> One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102 <br> Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |

---

[3]    The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

| *Counsel to the Consenting ABL Lenders* |
|---|
| **Otterbourg P.C.**<br>230 Park Avenue, New York, New York 10169<br>Attention: David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP**<br>1211 Avenue of the Americas, New York, New York 10036-8704<br>Attention: Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP**<br>Two International Place, Boston, Massachusetts 02110<br>Attention: Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**ARTICLE VIII OF THE PLAN CONTAINS SETTLEMENT, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.**

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you have any questions or would like paper copies of the Solicitation Package because receiving the Solicitation Package via email or USB flash drive imposes a hardship on you, please contact the Claims and Noticing Agent by: (i) visiting the Debtors' restructuring website at: https://cases.stretto.com/EddieBauer; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (iii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein. Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

**Filing the Plan Supplement**. The Debtors will file the Plan Supplement (as defined in the Plan) by April 1, 2026, and will serve a notice of Plan Supplement on all Holders of Claims or Interests, the U.S. Trustee, and any party that has requested notice pursuant to Bankruptcy Rule 2002 (regardless of whether such parties are entitled to vote on the Plan), which will: (i) inform parties that the Debtors filed the Plan Supplement; (ii) list the information contained in the Plan Supplement; and (iii) explain how parties may obtain copies of the Plan Supplement.

**<u>BINDING NATURE OF THE PLAN</u>**

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, REGARDLESS OF WHETHER SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM IN THESE CHAPTER 11 CASES, FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, OR VOTED TO REJECT THE PLAN.**

Dated:  [●], 2026

/s/  *DRAFT*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## **Exhibit 7**

**Plan Supplement Notice**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al*., | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT**, on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"): (i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors"), to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT**, as contemplated by the Plan and the Disclosure Statement Order, the Debtors filed the Plan Supplement with the Court on [●], 2026 [Docket No. [●]]. The Plan Supplement contains the following documents each as defined in the Plan: (i) the Schedule of Assumed Executory Contracts and Unexpired Leases; (ii) the Schedule of Retained Causes of Action; (iii) the Wind-Down Transactions Memorandum; (iv) the Plan Administrator Agreement; (v) the identity of the Plan Administrator; and (vi) additional documents filed with the Court prior to the Effective Date as amendments to the Plan Supplement.

**PLEASE TAKE FURTHER NOTICE THAT**, certain documents or portions thereof contained in the Plan Supplement may remain subject to ongoing negotiations among the Debtors and interested parties with respect thereto. The Debtors reserve all rights, subject to the terms and conditions set forth in the Plan and the Restructuring Support Agreement, to amend, revise, or supplement the Plan Supplement, and any of the documents and designations contained therein, at any time before the Effective Date of the Plan, or any such other date as may be provided for in the Plan or an order of the Court. Each of the documents contained in the Plan Supplement or its amendments are subject to certain consent and approval rights to the extent provided in the Plan and the Restructuring Support Agreement.

**PLEASE TAKE FURTHER NOTICE THAT**, the hearing at which the Court will consider confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing Date") will commence on **April 16, 2026**, at **10:00 a.m., (prevailing Eastern Time)**, or such other time that the Court determines, before the Honorable Stacey L. Meisel, United States Bankruptcy Judge, in Courtroom 3A of the United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, 3rd Floor, Newark, NJ 07102.

**PLEASE TAKE FURTHER NOTICE THAT**, the deadline for filing objections to confirmation of the Plan and final approval of the Disclosure Statement is **April 14, 2026, at 4:00 p.m. (prevailing Eastern Time)** (the "Combined Objection Deadline"). Any objection to the relief sought at the Combined Hearing *must*: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[3] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) shall be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the **Combined Objection Deadline**:

| *Debtors* |
|---|
| **Eddie Bauer LLC**<br>c/o Stretto Inc.<br>410 Exchange, Suite 100, Irvine, CA 92602 |

---

[3]    The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

| *Co-Counsel for the Debtors* |
|---|
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com);<br>Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.**<br>Court Plaza, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com);<br>Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| **[●]**<br>[Address]<br>Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102<br>Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |
| *Counsel to the Consenting ABL Lenders* |
| **Otterbourg P.C.**<br>230 Park Avenue, New York, New York 10169<br>Attention:  David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP**<br>1211 Avenue of the Americas, New York, New York 10036-8704<br>Attention:  Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP**<br>Two International Place, Boston, Massachusetts 02110<br>Attention:  Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**PLEASE TAKE FURTHER NOTICE THAT**, if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents** you should contact Stretto Inc., the Debtors' Claims and Noticing Agent in these Chapter 11 Cases, by: (i) visiting the Debtors' restructuring website at:  https://cases.stretto.com/EddieBauer; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free)  or  (714) 442-4326    (International); (iii) contacting the Claims and Noticing Agent at EddieBauerInquiries@stretto.com; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC, *et al.*, Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602.  You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

**ARTICLE VIII** OF THE PLAN CONTAINS SETTLEMENT, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.D** OF THE PLAN CONTAINS A **THIRD-PARTY RELEASE**.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.

Dated:  [●], 2026

/s/  *DRAFT*
_____

**COLE SCHOTZ P.C.**                                  **KIRKLAND & ELLIS LLP**
Michael D. Sirota, Esq.                              **KIRKLAND & ELLIS INTERNATIONAL LLP**
Warren A. Usatine, Esq.                              Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Felice R. Yudkin, Esq.                               Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Court Plaza North, 25 Main Street                    Oliver Paré (admitted *pro hac vice*)
Hackensack, New Jersey 07601                         601 Lexington Avenue
Telephone:  (201) 489-3000                           New York, New York 10022
msirota@coleschotz.com                               Telephone:  (212) 446-4800
wusatine@coleschotz.com                              Facsimile:  (212) 446-4900
fyudkin@coleschotz.com                               joshua.sussberg@kirkland.com
                                                     matthew.fagen@kirkland.com
                                                     oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*             *Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*                          *the Debtors in Possession*

## **Exhibit 8**

**Notice of Assumption of Executory Contracts and Unexpired Leases**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

**NOTICE OF (I) EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES TO BE ASSUMED**
**OR ASSUMED AND ASSIGNED PURSUANT TO THE PLAN, (II) CURE**
**COSTS, IF ANY, AND (III) RELATED PROCEDURES IN CONNECTION THEREWITH**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON SCHEDULE A ATTACHED HERETO. YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[2]**

---

**PLEASE TAKE NOTICE THAT** on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "Court") entered an order [Docket No. [●]] (the "Disclosure Statement Order"):

---

[1]   The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]   Nothing contained in the Plan or in any Schedule of Assumed Contracts and Unexpired Leases shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  Furthermore, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, as set forth in Article V of the Plan.

(i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[3] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (iv) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** on the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, shall be deemed automatically rejected by the applicable Debtor, applicable Wind-Down Debtor, or the Plan Administrator, as applicable, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with Confirmation of the Plan; (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a Filed motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is to be assumed by the Debtors and assigned to another third party in connection with a Sale Transaction, if any, including the Purchaser as set forth in the Purchase Agreement approved pursuant to the Sale Order; (v) is a contract, instrument, release, or other agreement or document entered into in connection with the Plan; (vi) is an Insurance Policy (including any D&O Liability Insurance Policies); or (vii) is an employee benefit plan, severance plan, or other Executory Contract under which employee obligations arise.

**PLEASE TAKE FURTHER NOTICE THAT** on [●] [●], 2026, the Debtors filed with the Court, as part of the *Plan Supplement for the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Plan Supplement"), the Schedule of Assumed Executory Contracts and Unexpired Leases, which lists the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned, as applicable, by the Debtors pursuant to the Plan, if any.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors, the Wind-Down Debtors, or the Plan Administrator, as applicable, reserve the right (i) in the event that the Debtors do not consummate a Sale Transaction, to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time prior to the earlier of (A) 45 days following the Effective Date and (B) solely with respect to Unexpired Leases of nonresidential real property, the applicable deadline pursuant to section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the consent of the applicable landlord counterparty and (ii) in the event that the Debtors consummate a Sale Transaction, to alter, amend, modify, or supplement any schedule of Executory Contracts and Unexpired Leases that is attached to any Sale Transaction Documents, with the consent of the Purchaser, at any time prior to the earlier of (A) 90 days following the closing date of a Sale Transaction, and (B) solely with respect to Unexpired Leases of nonresidential real property, the applicable deadline pursuant to section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the consent of the applicable landlord counterparty, consistent with any Sale Transaction Documents, as applicable.

---

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you or your affiliate(s) are a party to an Executory Contract or Unexpired Lease that will be assumed or assumed and assigned pursuant to the Plan.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan, including the Schedule of Assumed Executory Contracts and Unexpired Leases.

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption.  Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Schedule A** attached hereto (the "Cure Costs").  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there are no Cure Costs outstanding for such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash as soon as reasonably practicable after the entry of an order approving such assumption or assumption and assignment, subject to the limitations described in the following sentence, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree; *provided* that nothing herein shall prevent the Wind-Down Debtors from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim.  The Wind-Down Debtors may also settle any Cure Claim without any further notice to or action, order, or approval of the Court.  Any such objection will be scheduled to be heard by the Court at the next scheduled omnibus hearing, or such other time as requested by the Debtors or the Wind-Down Debtors, as applicable, and the objecting party.  Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption.  In the event of a dispute regarding (i) the amount of any payments to cure such a default, (ii) the ability of the Wind-Down Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

**PLEASE TAKE FURTHER NOTICE THAT** any objection by a counterparty to the proposed Cure Costs or to the assumption or assumption and assignment of an Executory Contract or Unexpired Lease under the Plan (an "Assumption Objection") ***must***:  (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[4] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon

---

[4]     The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

3

the following parties so as to be **actually received** no later than **fourteen (14) days after the service of this notice of assumption**:

| Debtors |
|---|
| **Eddie Bauer LLC**<br>c/o Stretto Inc.<br>410 Exchange, Suite 100, Irvine, CA 92602 |
| *Co-Counsel for the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com);<br>Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.**<br>Court Plaza, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com);<br>Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| **[●]**<br>[Address]<br>Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102<br>Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |
| *Counsel to the Consenting ABL Lenders* |
| **Otterbourg P.C.**<br>230 Park Avenue, New York, New York 10169<br>Attention:  David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP**<br>1211 Avenue of the Americas, New York, New York 10036-8704<br>Attention:  Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP**<br>Two International Place, Boston, Massachusetts 02110<br>Attention:  Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**PLEASE TAKE FURTHER NOTICE THAT** if you do not file an objection on or prior to the Assumption Objection Deadline, then: **(i) you will be deemed to have stipulated that the Cure Costs as determined by the Debtors are correct and (ii) you will be forever barred, estopped, and enjoined from (a) asserting any additional cure amount under the assumed Executory Contract or Unexpired Lease or (b) objecting to such proposed assumption or assumption and assignment, as applicable.** Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, assumption and assignment, or Cure Costs of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption, assumption and assignment, or Cure Costs.

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY (SOLELY TO THE EXTENT AGREED BETWEEN THE DEBTORS AND THE COUNTERPARTY TO AN APPLICABLE EXECUTORY CONTRACT OR UNEXPIRED LEASE), INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THAT THE DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM BASED UPON EXECUTORY CONTRACTS OR UNEXPIRED LEASES THAT HAVE BEEN ASSUMED IN THE CHAPTER 11 CASES, INCLUDING PURSUANT TO THE CONFIRMATION ORDER, AND OR WHICH ANY CURE CLAIM HAS BEEN FULLY PAID PURSUANT TO <u>ARTICLE V.D</u> OF THE PLAN, SHALL BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT THE NEED FOR ANY OBJECTION THERETO OR ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** any Assumption Objection that complies with these procedures shall be heard at a date to be fixed by the Court.

**PLEASE TAKE FURTHER NOTICE THAT** that notwithstanding anything to the contrary herein, the mere listing of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases does not require or guarantee that such Executory Contract or Unexpired Lease will be assumed or assumed and assigned by the Debtors at any time, and all rights of the Debtors with respect to such Executory Contract or Unexpired Lease are reserved.  Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures set forth in <u>Article V</u> of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** nothing herein:  (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease; (ii) creates a postpetition contract or agreement; or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents,** you should contact Stretto Inc., the Debtors' Claims and Noticing Agent in the Chapter 11 Cases (the "<u>Claims and Noticing Agent</u>"), by: (i) visiting the Debtors' restructuring website at: <u>https://cases.stretto.com/EddieBauer</u>; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (iii) contacting the Claims

and Noticing Agent at EddieBauerInquiries@stretto.com; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, https://cases.stretto.com/EddieBauer, or the Court's website at https://www.njb.uscourts.gov in accordance with the procedures and fees set forth therein.

---

**ARTICLE VIII OF THE PLAN CONTAINS SETTLEMENT, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE VIII.D OF THE PLAN CONTAINS A THIRD-PARTY RELEASE. YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.**

---

[*Remainder of Page Intentionally Left Blank*]

Dated: [●], 2026

/s/ *DRAFT*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com


*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

## **Exhibit 9**

**Notice of Rejection of Executory Contracts and Unexpired Leases**

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

*Proposed Co-Counsel to the Debtors and*
*the Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| EDDIE BAUER LLC, *et al.*, | Case No. 26-11422 (SLM) |
| Debtors.[1] | (Jointly Administered) |

### NOTICE OF (I) EXECUTORY
### CONTRACTS AND UNEXPIRED LEASES TO
### BE REJECTED PURSUANT TO THE PLAN, AND
### (II) RELATED PROCEDURES IN CONNECTION THEREWITH

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>SCHEDULE A</u> ATTACHED HERETO. YOU ARE ADVISED TO REVIEW CAREFULLY THE INFORMATION CONTAINED IN THIS NOTICE AND THE RELATED PROVISIONS OF THE PLAN.[2]**

**PLEASE TAKE NOTICE THAT** on [●] [●], 2026, the United States Bankruptcy Court for the District of New Jersey (the "<u>Court</u>") entered an order [Docket No. [●]] (the "<u>Disclosure Statement Order</u>"):

---

[1]    The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' Claims and Noticing Agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these Chapter 11 Cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

[2]    Nothing contained in the Plan or in any Schedule of Assumed Contracts and Unexpired Leases shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  Furthermore, the Debtors reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases, as set forth in <u>Article V</u> of the Plan.

(i) authorizing Eddie Bauer LLC and its affiliated debtors and debtors in possession (collectively, the "<u>Debtors</u>") to solicit acceptances for the *Joint Plan of Reorganization of Eddie Bauer LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Plan</u>");[3] (ii) conditionally approving the *Disclosure Statement Relating to the Joint Plan of Reorganization of Eddie Bauer LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "<u>Disclosure Statement</u>") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (iii) approving the solicitation materials and documents to be included in the solicitation package (the "<u>Solicitation Package</u>"); (iv) approving procedures for soliciting, noticing, receiving, and tabulating votes on the Plan; (v) establishing certain deadlines to vote on, object to, and opt out of the releases set forth in the Plan; and (vi) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** on [●] [●], 2026, the Debtors filed with the Court, as part of the *Plan Supplement for the Joint Plan of Reorganization of Eddie Bauer LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "<u>Plan Supplement</u>"), the Schedule of Assumed Executory Contracts and Unexpired Leases, which lists the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned, as applicable, by the Debtors pursuant to the Plan, if any.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you or your affiliate(s) are a party to an Executory Contract or Unexpired Lease that is not included on the Schedule of Assumed Executory Contracts and Unexpired Leases and will therefore be rejected pursuant to the Plan.  Therefore, you are advised to review carefully the information contained in this notice and the related provisions of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** unless otherwise provided by a Final Order of the Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to this Plan or the Confirmation Order, if any, must be Filed with the Court within thirty days after the later of (i) the date of service of notice of entry of an order of the Court (including the Confirmation Order) approving such rejection, (ii) the effective date of such rejection, or (iii) the Effective Date.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Court and served on the Debtors no later than seven days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Court within such time will, absent further order of the Court to the contrary, be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Wind-Down Debtors, or the property of any of the foregoing without the need for any objection by the Debtors or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall, absent further order of the Court to the contrary, be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**  All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with <u>Article III</u> of the Plan or such other treatment as agreed to by the Wind-Down Debtors and Holder of such Claim.

---

[3]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

**PLEASE TAKE FURTHER NOTICE THAT** any objection by a counterparty to the proposed rejection of an Executory Contract or Unexpired Lease under the Plan (a "Rejection Objection") **must**: (i) be in writing; (ii) conform to the Bankruptcy Rules, the Bankruptcy Local Rules, and orders of the Court; (iii) state with particularity the basis of the objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; (iv) be filed electronically with the Clerk of the Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary")[4] or, if not otherwise filed with the Clerk of the Court electronically, in hard copy; and (v) be served in accordance with the General Order and the Supplemental Commentary upon the following parties so as to be **actually received** on or before the date that is **seven (7) days after service of this notice of rejection**:

| Debtors |
|---|
| **Eddie Bauer LLC**<br>c/o Stretto Inc.<br>410 Exchange, Suite 100, Irvine, CA 92602 |
| *Co-Counsel for the Debtors* |
| **Kirkland & Ellis LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>Attention:  Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com);<br>Matthew C. Fagen, P.C. (matthew.fagen@kirkland.com); and Oliver Paré (oliver.pare@kirkland.com) |
| *Co-Counsel for the Debtors* |
| **Cole Schotz P.C.**<br>Court Plaza, 25 Main Street<br>Hackensack, New Jersey 07601<br>Attention:  Michael D. Sirota, Esq. (msirota@coleschotz.com);<br>Warren A. Usatine, Esq. (wusatine@coleschotz.com); and Felice R. Yudkin, Esq. (fyudkin@coleschotz.com) |
| *Counsel for the Committee* |
| [●]<br>[Address]<br>Attention:  [●] |
| *United States Trustee* |
| **Office of the United States Trustee**<br>**United States Trustee, Region 3**<br>One Newark Center, 1085 Raymond Boulevard, Suite 2100, Newark, New Jersey 07102<br>Attention:  Fran Steele (Fran.B.Steele@usdoj.gov) and David Gerardi (David.Gerardi@usdoj.gov) |

---

[4]    The General Order, the Supplemental Commentary, and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Court.

| *Counsel to the Consenting ABL Lenders* |
|:---:|
| **Otterbourg P.C.**<br>230 Park Avenue, New York, New York 10169<br>Attention:  David Morse (dmorse@otterbourg.com) |
| *Counsel to the Consenting Term Loan Lenders* |
| **Ropes & Gray LLP**<br>1211 Avenue of the Americas, New York, New York 10036-8704<br>Attention:  Max Silverstein (max.silverstein@ropesgray.com) |
| *Counsel to the Consenting Subordinated Loan Lenders* |
| **Choate, Hall & Stewart LLP**<br>Two International Place, Boston, Massachusetts 02110<br>Attention:  Mark Silva (msilva@choate.com) and Michael E. Comerford (mcomerford@choate.com) |

**PLEASE TAKE FURTHER NOTICE THAT** that notwithstanding anything to the contrary herein, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume or assume and assign each Executory Contract or Unexpired Lease pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures set forth in <u>Article V</u> of the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** nothing herein:  (i) alters in any way the prepetition nature of the Executory Contract or Unexpired Lease or the validity, priority, or amount of any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease; (ii) creates a postpetition contract or agreement; or (iii) elevates to administrative expense priority any claims of a counterparty to any Executory Contract or Unexpired Lease against the Debtors that may arise under such Executory Contract or Unexpired Lease.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to **obtain a copy of the Disclosure Statement, the Plan, or related documents**, you should contact Stretto Inc., the Debtors' Claims and Noticing Agent in the Chapter 11 Cases (the "<u>Claims and Noticing Agent</u>"), by: (i) visiting the Debtors' restructuring website at: <u>https://cases.stretto.com/EddieBauer</u>; (ii) calling the Claims and Noticing Agent at (833) 437-6838 (Toll-Free) or (714) 442-4326 (International); (iii) contacting the Claims and Noticing Agent at: <u>EddieBauerInquiries@stretto.com</u>; or (iv) writing to the Claims and Noticing Agent at Eddie Bauer LLC, et al., Ballot Processing, c/o Stretto Inc., 410 Exchange, Suite 100, Irvine, CA 92602. You may also obtain copies of any pleadings filed with the Court for free by visiting the Debtors' restructuring website, <u>https://cases.stretto.com/EddieBauer</u>, or the Court's website at <u>https://www.njb.uscourts.gov</u> in accordance with the procedures and fees set forth therein.

<u>ARTICLE VIII</u> **OF THE PLAN CONTAINS SETTLEMENT, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND** <u>ARTICLE VIII.D</u> **OF THE PLAN CONTAINS A** <u>THIRD-PARTY RELEASE</u>**.  YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. CONTACT THE CLAIMS AND NOTICING AGENT IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION.**

Dated:  [●], 2026

/s/  *DRAFT*
_____

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Felice R. Yudkin, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601
Telephone:  (201) 489-3000
msirota@coleschotz.com
wusatine@coleschotz.com
fyudkin@coleschotz.com


*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Matthew C. Fagen, P.C. (admitted *pro hac vice*)
Oliver Paré (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:  (212) 446-4900
joshua.sussberg@kirkland.com
matthew.fagen@kirkland.com
oliver.pare@kirkland.com


*Proposed Co-Counsel to the Debtors and
the Debtors in Possession*