| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)**<br><br>Bradford J. Sandler (N.J. Bar No. 009521996)<br>Robert J. Feinstein (*pro hac vice* pending)<br>Shirley S. Cho (*pro hac vice* pending)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>1700 Broadway, 36th Floor<br>New York, NY 10019<br>Telephone:  (212) 561-7700<br>Facsimile:   (212) 561-7777<br>bsandler@pszjlaw.com<br>rfeinstein@pszjlaw.com<br>scho@pszjlaw.com<br><br>*Proposed Counsel to the Official*<br>*Committee of Unsecured Creditors* | |
| In re:<br><br>EDDIE BAUER LLC, *et al.*,[1]<br><br>                       Debtors. | Chapter 11<br><br>Case No. 26-11422 (SLM)<br><br>Judge:  Stacey L. Meisel<br><br>(Jointly Administered) |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION TO THE PREPETITION SECURED
PARTIES, (III) SCHEDULING A FINAL HEARING, (IV) MODIFYING
THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby submits this objection (the "Objection") to the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the*

---

[1] The last four digits of Debtor Eddie Bauer LLC's tax identification number are 6060.  A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/EddieBauer.  The location of Debtor Eddie Bauer LLC's principal place of business is 10401 Northeast 8th Street, Suite 500, Bellevue, WA 98004; the Debtors' service address in these chapter 11 cases is 6501 Legacy Drive, Suite B100, Plano, TX 75024.

4919-7786-3062.2 20902.00002

*Debtors to Use Cash Collateral, (II) Granting Adequate Protection to the Prepetition Secured Parties, (III) Scheduling a Final Hearing, (IV) Modifying the Automatic Stay, and (V) Granting Related Relief* [Docket No. 7] (the "Motion").[2]  In support of this Objection, the Committee respectfully states as follows:

### Preliminary Statement

1. The Debtors are one of six brands owned by a company commonly referred to as "Catalyst Brands" or "Catalyst."  The non-Debtor brands owned by Catalyst include Brooks Brothers, Nautica, Aeropostale, Lucky Brand, and JCPenney.  All of these brands, besides JCPenney, operate under SPARC Group Holdings LLC or "SPARC" and use a shared services agreement and cash pooling arrangement.  Eddie Bauer, as one of the Catalyst brands, was run as a division of the whole enterprise, which included shared management and services between SPARC and its different brands.  Based on available information, these brands are valuable.  The Debtors are guarantors of the ABL Facility, of which $728 million remains outstanding, the Term Loan Facility, of which $600 million is outstanding, and the Subordinated Term Loan Facility, of which $216.3 million remains outstanding.  It appears that the Debtors did not receive any loan proceeds from these facilities, but rather that the Debtors' financing came in the form of unsecured intercompany debt.  The Debtors' secured lenders, who have recourse to all of the solvent non-Debtor Catalyst brands, are oversecured.

2. In this context, the Committee has reviewed the Motion and has attempted to engage with the Debtors and the Prepetition Secured Parties in good faith to modify certain provisions of a proposed final cash collateral order (the "Proposed Final Order") to safeguard the rights of unsecured creditors.  Although the Committee remains open to addressing its issues with

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

4919-7786-3062.2 20902.00002                                          2

the Proposed Final Order, no resolution has been reached to date. The Committee therefore objects to the Motion as follows:

3. First, given the extent of non-Debtor collateral value available to the Prepetition Secured Parties, the Committee objects to the broad-ranging grant of adequate protection liens and superpriority claims in favor of the Prepetition Secured Parties payable from assets that were unencumbered as of the Petition Date (the "<u>Unencumbered Assets</u>"), which include (a) Avoidance Actions, (b) commercial tort claims, (c) leasehold interests, (d) any estate claims or causes of action against the Prepetition Secured Parties themselves, and (e) the proceeds of each of the foregoing. At a minimum, the Prepetition Secured Parties must agree to marshal away from any previously Unencumbered Assets and to turn to those assts only as a last resort after their Debtor **and** non-Debtor collateral has been exhausted.

4. Second, the Committee objects to the proposed waivers of the estates' ability to surcharge the collateral of the Prepetition Secured Parties under section 506(c) of the Bankruptcy Code, marshaling rights, and "equities of the case" arguments as to the Prepetition Secured Parties. Specifically, all administrative expenses (including claims arising under section 503(b)(9) of the Bankruptcy Code) must be adequately provided for before any surcharge waiver can be considered. Marshaling and "equities of the case" waivers are also inappropriate in light of the substantial non-Debtor assets and previously encumbered assets that are available to the Prepetition Secured Parties.

5. Third, the Proposed Final Order would limit the Committee's investigation budget, and expedite the timetable, in connection with any Challenge. The Committee objects to such provisions, which would circumscribe the Committee's ability to exercise its statutory duties.

6. The Committee also objects to other provisions of the Proposed Final Order, including provisions relating to remedies, adequate protection payments, releases, reporting, the Carve Out, and the Committee's professional fee budget.

7. Based on the foregoing and for the reasons set forth below, the Committee requests that the Court deny the relief sought in the Motion and the Proposed Final Order.

## Background

8. On February 9, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

9. The Court entered an interim order on the Motion (the "Interim Order") on February 10, 2026 [Docket No. 67]. The hearing on the Proposed Final Order is currently scheduled for March 16, 2026. The Committee anticipates that the Proposed Final Order will include, among other objectionable provisions, an all-encompassing grant of adequate protection liens and superpriority claims in favor of the Prepetition Secured Parties payable from the Unencumbered Assets, waivers of surcharge, marshaling, and "equities of the case" rights, and limiting provisions with respect to the Committee's Challenge rights.

10. On January 26, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed the Committee to represent the interests of all unsecured creditors in these chapter 11 cases pursuant to section 1102 of the Bankruptcy Code.

**Objection**

I. **The Court Should Not Authorize the Debtors to Grant Liens on Unencumbered Assets in Favor of the Prepetition Secured Parties**

11. The Committee objects to the broad-ranging grant of adequate protection liens and superpriority claims in favor of the Prepetition Secured Parties payable from the Unencumbered Assets, including (a) Avoidance Actions, (b) commercial tort claims, (c) leasehold interests, (d) any estate claims or causes of action against the Prepetition Secured Parties themselves, and (e) the proceeds of each of the foregoing. The Prepetition Secured Parties are not advancing new money to the Debtors' estates, and there is no evidence that the Prepetition Secured Parties are undersecured in light of their liens and claims against the assets of the various solvent non-Debtor Catalyst brands. At a minimum, the Prepetition Secured Parties must agree to marshal away from any previously unencumbered assets and to turn to those assts only as a last resort after their Debtor **and** non-Debtor collateral has been exhausted.

12. The proposed grant of adequate protections liens and superpriority claims against the Unencumbered Assets through the Motion is a stepping stone to the Debtors' chapter 11 plan [Docket No. 197] (the "Plan"), through which the Debtors propose to release, *inter alia*, any and all claims held by the Debtors (both direct claims and derivative claims) against various "Released Parties," including the Debtors' Affiliates and "Related Parties," which would include current and former officers and directors, Catalyst, SPARC and their directors and officers, controlling Interest holders, and the Prepetition Secured Parties. *See* Plan Art. VIII.C.

13. There is no basis for the Debtors to pledge Unencumbered Assets to the Prepetition Secured Parties, only then to seek to release such claims through the proposed Plan. Both the Motion and the Plan (or its associated Disclosure Statement [Docket No. 198]) fail to address the types of estate claims that may exist against the Prepetition Secured Parties, the Holders of Interests

in the Debtors, or their Related Parties, or the potential value of such claims. Although the Committee will investigate any such claims in due course, there is no basis to simply pledge all such claims to the Prepetition Secured Parties as adequate protection without any evidence of diminution or any effort to value the Prepetition Secured Parties' non-Debtor collateral in the solvent Catalyst brands.

14. This is a highly unique case where the primary assets securing the Prepetition Secured Obligations reside with non-Debtors. Yet, the Motion provides no insight as to the value of such non-Debtor collateral. A secured party is not entitled to adequate protection absent a showing of the requisite cause. Specifically, a secured creditor is not entitled to adequate protection unless there is evidence that its collateral is declining a value. *See, e.g.*, *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) ("Post-*Timbers* courts have uniformly required a movant seeking adequate protection to show a decline in value of its collateral."); *Zink* v. *Vanmiddlesworth*, 300 B.R. 394, 402–03 (N.D.N.Y. 2003) (citations omitted) ("[T]he initial burden of showing the need for adequate protection [is] upon the creditor having an interest in the property being used by the debtor. In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value of establishing some other basis for the relief.").

15. Here, there is no evidence that the Prepetition Secured Parties are undersecured when their full Debtor **and** non-Debtor collateral package is taken into account, much less whether such value is declining postpetition. Hence, the Prepetition Secured Parties should not receive blanket liens on previously Unencumbered Assets, which are perhaps the only potential source of recovery for unsecured creditors. The purpose of adequate protection is to ensure that the Prepetition Secured Parties receive the security that they bargained for prior to the Petition Date.

"Neither the legislative history nor the [Bankruptcy] Code indicate that Congress intended the concept of adequate protection to go beyond the scope of protecting the secured claim holder from a diminution in the value of the collateral securing the debt." *In re Pine Lake Village Apartment Co.*, 19 B.R. 819, 824 (Bankr. S.D.N.Y. 1982).

16. Determinations regarding adequate protection are fact-specific. *See In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); *Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). The focus of the requirement is to protect a secured creditor from diminution in the value of its collateral during the use period. *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 368 (1988); *see also In re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *Delbridge v. Production Credit Ass'n & Fed. Land Bank (In re Delbridge)*, 104 B.R. 824 (E.D. Mich. 1989); *In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

17. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. Provision of a replacement lien in property equal to the value of the cash collateral used specifically complies with section 361(2) of the Bankruptcy Code and provides adequate protection within the meaning of section 363(e) of the Bankruptcy Code. *See, e.g.*, *In re O'Connor*, 808 F.2d at 1398; *In re Dynaco Corp.*, 162 B.R. 389, 393–95 (Bankr. D. N.H. 1993); *In re T.H.B. Corp.*, 85 B.R. 192, 195 (Bankr. D. Mass. 1988).

18. The proposed package of "adequate protection" and other lender concessions in these cases greatly enhance the Prepetition Secured Parties' collateral position at the expense of unsecured creditors, who are prejudiced by the grant of security interests and superpriority claims

payable from the Unencumbered Assets, including potential claims against the Prepetition Secured Parties themselves.

19. Avoidance actions in particular are uniquely for the benefit of unsecured creditors of the estates, not secured creditors, and such actions are rarely encumbered in favor of secured lenders. The intent behind avoidance powers and a debtor's power to bring causes of actions is to allow the debtor in possession to gain recoveries for the benefit of all unsecured creditors. *See Buncher Co. v. Official Comm. of Unsecured Creditors of GenFarm Ltd. Partn. IV*, 229 F.3d 245, 250 (3d Cir. 2000); *see also In re Sweetwater*, 55 B.R. 724, 735 (D. Utah 1985) (stating that avoidance powers are meant to benefit creditors generally and to promote equitable distribution among all creditors).

20. Therefore, Avoidance Actions and the proceeds thereof should remain unencumbered by the liens and superpriority claims of the Prepetition Secured Parties for the benefit of all unsecured creditors. Indeed, courts routinely exclude unencumbered assets from the scope of adequate protection liens and superpriority claims. *See, e.g.*, *In re Gymboree Grp., Inc.*, No. 19-30258 (KLP), Docket No. 348 (Bankr. E.D. Va. Feb. 15, 2019) (excluding avoidance actions, commercial tort claims, and the proceeds thereof from adequate protection liens and claims); *In re Frank Theatres Bayonne/South Cove, LLC*, No. 18-34808 (SLM), Docket No. 212 (Bankr. D.N.J. Jan. 28, 2019) (same); *In re Aralez Pharms. US Inc.*, No. 18-12425 (MG), Docket No. 98 (Bankr. S.D.N.Y. Sept. 14, 2018) (providing that adequate protection liens only attach to prepetition collateral and further providing that adequate protection claims cannot be paid out of the proceeds of avoidance actions); *In re The Weinstein Co. Holdings LLC*, No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018) (excluding avoidance actions and commercial tort claims from adequate protection liens and claims).

21. The Debtors' use of cash collateral should not be a means by which unsecured creditors are stripped of what may be their only sources of recovery. Accordingly, any final order on the Motion should make clear that the Unencumbered Assets shall remain unencumbered, especially in these cases where the Prepetition Secured Parties are free to turn to the substantial value of their collateral held through non-Debtor Catalyst brands.

II. **The Prepetition Secured Parties are Not Entitled to Waivers of Section 506(c) Surcharge Claims, Section 552(b) "Equities of the Case" Rights, and Marshaling Remedies**

22. The Debtors propose to waive the estates' ability to surcharge the Collateral under section 506(c) of the Bankruptcy Code as to any costs or expenses of administration incurred at any time during the course of these cases. *See* Interim Order ¶ 21. The Debtors also propose to waive any marshaling rights and "equities of the case" arguments as to the Prepetition Secured Parties. *See id.* ¶¶ 20, 22. The Committee objects to such waivers, especially given that there is no assurance that all reasonably projected and accrued administrative expenses, specifically including any claims arising under section 503(b)(9) of the Bankruptcy Code, will be paid in full.

23. The effect of the section 506(c) waiver is to eliminate a further avenue of recovery for the estates and to create a risk that the costs of the Debtors' cases will be borne by unsecured creditors rather than the Prepetition Secured Parties. This result contravenes the essential purpose of section 506(c) of the Bankruptcy Code. *See Precision Steel Shearing v. Fremont Fin. Corp. (In re Visual Indus.)*, 57 F.3d 321, 325 (3d Cir. 1995) (citation omitted) ("[Section] 506(c) is designed to prevent a windfall to the secured creditor . . . . The rule understandably shifts to the secured party . . . the costs of preserving or disposing of the secured party's collateral, which costs might otherwise be paid from the unencumbered assets of the bankruptcy estate . . . ."); *see also In re Codesco, Inc.*, 18 B.R. 225, 230 (Bankr. S.D.N.Y. 1982) ("The underlying rationale for charging a lienholder with the costs and expenses of preserving or disposing of the secured

collateral is that the general estate and unsecured creditors should not be required to bear the cost of protecting what is not theirs."). Indeed, courts have rejected the waiver of surcharge rights under section 506(c) under similar circumstances. *See, e.g.*, *In re Colad Grp., Inc.*, 324 B.R. 208, 224 (Bankr. W.D.N.Y. 2005) (refusing to approve a postpetition financing agreement to the extent that it sought to modify statutory rights and obligations created by the Bankruptcy Code by prohibiting any surcharge of collateral under section 506(c)).

24. Further, there should be no restriction on the Court's ability to implement equitable marshaling as to the Prepetition Secured Parties. Equitable marshaling in these cases may be important in order to enable asset values to be maximized for these estates, particularly given that there is substantial non-Debtor collateral to which the Prepetition Secured Parties should turn to first. *See Official Comm. v. Hudson United Bankr. (In re America's Hobby Ctr.)*, 223 B.R. 275, 287 (Bankr. S.D.N.Y. 1998); *Ramette v. United States (In re Bame)*, 279 B.R. 833 (B.A.P. 8th Cir. 2002) (invoking the marshaling doctrine against taxing authorities to benefit of unsecured creditors). For instance, the Debtors' assets may need to be marshaled at some point to ensure that the Prepetition Secured Parties are only permitted to turn to certain Unencumbered Assets to the extent that their adequate protection liens and superpriority claims, if allowed, are not otherwise satisfied from the proceeds of the Prepetition Collateral. Courts have granted such marshaling relief in prior cases. *See, e.g.*, *In re Samuel's Jewelers, Inc.*, No. 18-11818 (KJC), Docket No. 252 (Bankr. D. Del. Sept. 18, 2018); *In re The Weinstein Co. Holdings LLC*, No. 18-10601 (MFW), Docket No. 267 (Bankr. D. Del. Apr. 19, 2018); *In re The Bon-Ton Stores, Inc.*, No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Nine West Holdings, Inc.*, No. 18-10947 (SCC), Docket No. 450 (Bankr. S.D.N.Y. June 28, 2018); *In re Frank Theatres Bayonne/South Cove, LLC*, No. 18-34808 (SLM), Docket No. 212 (Bankr. D.N.J. Jan. 28, 2019);

*In re Westmoreland Coal Co.*, No. 18-35672 (DRJ), Docket No. 520 (Bankr. S.D. Tex. Nov. 15, 2018).

25. The Debtors also propose that the "equities of the case" exception under section 552(b) of the Bankruptcy Code not apply to the Prepetition Secured Parties with respect to proceeds or profits of their collateral. The "equities of the case" exception allows a debtor, committee, or other party in interest to exclude postpetition proceeds from prepetition collateral on equitable grounds, including to avoid having unencumbered assets fund the cost of a secured lender's adequate protection. "The purpose of the equity exception is to prevent a secured creditor from reaping benefits from collateral that has appreciated in value as a result of the trustee's/debtor-in-possession's use of other assets of the estate (which normally would go to general creditors) to cause the appreciated value." *In re Muma Servs.*, 322 B.R. 541, 558–59 (Bankr. D. Del. 2005) (quoting *Delbridge*, 104 B.R. at 826). Such rights should not be prospectively waived in these cases. *See In re Metaldyne Corp.*, No. 09-13412 (MG), 2009 WL 2883045, at *6 (Bankr. S.D.N.Y. June 23, 2009) ("[T]he Court, in its discretion, declines to waive prospectively an argument that other parties in interest may make. If, in the event, the Committee or any other party [in] interest argues that the equities of the case exception should apply to curtail a particular lender's rights, the Court will consider it."); *Sprint Nextel Corp. v. U.S. Bank Nat'l Ass'n (In re TerreStar Networks, Inc.)*, 457 B.R. 254, 272–73 (Bankr. S.D.N.Y. 2011) (finding that a request for a section 552(b) waiver was premature because the factual record had not been fully developed).

26. For these reasons, any final order entered on the Motion should not approve a section 506(c) surcharge waiver, marshaling waiver, or section 552(b) "equities of the case" waiver.

### III. The Lien Validation and Challenge Provisions are Objectionable

27. Through the Motion, the Debtors propose to circumscribe the Committee's ability to exercise its statutory duties. The Committee is given a paltry investigation budget of $50,000 and a Challenge Period of 60 calendar days from the date of the Committee's appointment to investigate the validity of the Prepetition Secured Parties' liens and claims and any possible affirmative claims that the estates may have against such parties. *See* Interim Order ¶¶ 4(f), 5(c). The circumstances underlying these chapter 11 cases require a thorough investigation that cannot and should not be rushed.

28. The Committee requests that: (i) any final order on the Motion contains a provision allowing for the Challenge Period to be extended by the Court for cause and (ii) the Committee's investigation budget should be increased to no less than $200,000.

29. Further, given that certain of the Debtors are limited liability companies, any final order on the Motion should confirm that the Committee has the right and standing to assert any available Challenge notwithstanding anything to the contrary under applicable nonbankruptcy law. *See, e.g.*, *Gavin/Solmonese LLC v. Citadel Energy Partners, LLC (In re Citadel Watford City Disposal Partners, L.P.)*, 603 B.R. 897, 908 (Bankr. D. Del. 2019) (dismissing the liquidating trustee's complaint asserting fiduciary duty claims of LLC and limited partnership debtors due to lack of standing, and finding the creditors' committee lacked standing, as assignor under the plan, where applicable state law offered no option for derivative standing for creditors, including of insolvent entities); *Official Comm. v. Comvest Grp. Holdings (In re HH Liquidation, LLC)*, 590 B.R. 211, 284 (Bankr. D. Del. 2018) ("[A creditors' committee's] rights to assert derivative claims are limited to the derivative standing of its members, none of whom have standing as creditors of a Delaware LLC to assert derivative claims of breach of fiduciary duty on behalf of the company.").

**IV. Other Objections**

30. In addition to the foregoing, the Committee objects to the following provisions of the Proposed Final Order:

   a. <u>Remedies</u>.  The Prepetition Secured Parties' remedy in the event of a termination or default should be limited to termination of the Debtors' authority to use Cash Collateral, not automatic lifting of the stay so that the Prepetition Secured Parties can foreclose on the Debtors' assets on only five business days' notice.  *See* Interim Order ¶ 12(a).  The Prepetition Secured Parties should be required to file a motion seeking relief from the automatic stay before they are unilaterally permitted to foreclose on the Debtors' assets.

   b. <u>Adequate Protection Payments and Releases</u>.  Adequate protection payments on account of Prepetition ABL Obligations must be subject to Challenge rights and must not be irrevocable.  *See* Interim Order ¶ 7(h).  Likewise, the Debtors' release of the Prepetition Secured Parties must be expressly subject to Challenge rights.  *See id.* ¶ 14.

   c. <u>Reporting</u>.  Any final order on the Motion should provide that the Committee shall have the same rights with respect to information, access, and reporting as the Prepetition Secured Parties and that the Committee shall receive the foregoing concurrently therewith, including advance notice of any amendments, waivers, or other modifications to the Approved Budget.  Moreover, there should be no changes to the line items for Committee professional fees and expenses without the express written consent of the Committee.

   d. <u>Carve Out</u>.  The Carve Out should be expanded to include all budgeted administrative expenses and allowed section 503(b)(9) claims.  Moreover, the

Carve Out is proposed to be unlimited as to the Debtors' professional fees, but it is limited to the Approved Budget with respect to the Committee's professional fees. *See* Interim Order ¶ 13(a). The Committee should not be discriminated against in this way. The Committee's professional fee budget should be increased from $1 million to no less than $3.5 million in the aggregate (consisting of $1.75 million for Committee counsel and $1.75 million for the Committee's financial advisor).

WHEREFORE, the Committee requests that the Court decline to enter the Proposed Final Order for the reasons set forth herein and grant the Committee such other and further relief to which it may be entitled.

Dated: March 11, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**

*/s/ Bradford J. Sandler*
Bradford J. Sandler (N.J. Bar No. 009521996)
Robert J. Feinstein (*pro hac vice* pending)
Shirley S. Cho (*pro hac vice* pending)
1700 Broadway, 36th Floor
New York, NY 10019
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
bsandler@pszjlaw.com
rfeinstein@pszjlaw.com
scho@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*